Case No. 22-56090

In the United States Court of Appeals
for the Ninth Circuit

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants*,

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

**APPELLANTS' OPENING BRIEF**

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

December 19, 2022

# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure, counsel for Plaintiffs-Appellants make these disclosures:

## JUNIOR SPORTS MAGAZINES, INC.

Junior Sports Magazines, Inc., certifies that it has no parent corporation and no publicly held corporation owns more than 10 percent of its stock.

## CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC.

California Youth Shooting Sports Association, Inc. ("CYSSA"), is a California nonprofit organization. CYSSA is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

## REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC.

Redlands California Youth Clay Shooting Sports, Inc. ("RCYSS"), is a California nonprofit organization. RCYSS is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

## CALIFORNIA RIFLE & PISTOL ASSOCIATION, INC.,

California Rifle & Pistol Association, Inc. ("CRPA"), is a California nonprofit organization. CRPA is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

## THE CRPA FOUNDATION

The CRPA Foundation is a California nonprofit organization. The CRPA Foundation is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

## GUN OWNERS OF CALIFORNIA, INC.

Gun Owners of California, Inc. ("GOC") is a California nonprofit organization. GOC is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

## SECOND AMENDMENT FOUNDATION

The Second Amendment Foundation ("SAF") is a nonprofit organization. SAF is not a publicly held corporation, does not have a parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

Date: December 19, 2022

**MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants Junior Sports Magazines, Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.*

Date: December 19, 2022

**LAW OFFICES OF DONALD KILMER, APC.**

s/ Donald Kilmer
Donald Kilmer
*Attorney for Plaintiff-Appellant Second Amendment Foundation*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants request oral argument. This case raises important First Amendment questions about the rights to free speech, association, and assembly as those rights relate to rights protected by the Second Amendment. Counsel's responses to inquiries from the Court may aid the Court in its decisional process. *See* Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement.................................................................... i

Statement Regarding Oral Argument........................................................... iii

Table of Contents......................................................................................... iv

Table of Authorities .................................................................................... vii

Jurisdictional Statement ............................................................................... 1

Statement Regarding Addendum.................................................................. 1

Statement of the Issues Presented................................................................ 1

Statement of the Case ................................................................................... 2

I.      Factual Background ........................................................................... 2

        A.      California's Assembly Bill 2571 (Bauer-Kahan) ......................... 2

        B.      The Effect of AB 2571 on Appellants' Protected Conduct....................... 6

II.     Procedural History............................................................................ 9

III.    The Decision on Appeal .................................................................. 10

Summary of Argument ............................................................................... 12

Standard of Review .................................................................................... 15

Argument..................................................................................................... 15

I.      Standard of Review.......................................................................... 15

I.      The District Court Erred in Holding that Appellants Were Not Likely to Succeed on the Merits of Their Claims ................................................. 17

        A.      AB 2571 Violates the First Amendment Right to Free Speech.............. 17

1. The Court Should Reject the State's Attempt to Carve Out a Broad Exception to the First Amendment for Speech Directed to Minors ........................................................................................... 18

    a. The State cannot ban speech intended for adults just because minors might observe it. ......................................... 18

    b. The State cannot ban speech intended for minors even if the State were to classify it as violent. .................................. 20

    c. The State cannot deprive minors of their right to receive information about lawful products that they can lawfully use. ......................................................................................... 23

2. Strict Scrutiny Applies Because AB 2571 Is a Content-based and Viewpoint-discriminatory Ban on Speech ..................................... 26

3. The Commercial Speech Doctrine Does Not Apply; Even if it Did, the Doctrine Cannot Save AB 2571 ..................................... 31

    a. The commercial speech doctrine is obsolete. .................... 31

    b. Even if the *Central Hudson* test applies, AB 2571 fails it. .... 32

        i. AB 2571 restricts non-misleading speech about lawful activities. .......................................................... 33

        ii. The substantial state interests of AB 2571 are already addressed by existing law. ......................................... 35

        iii. AB 2571 does not directly and materially advance the State's purported interests. .................................. 36

        iv. AB 2571 is far more extensive than necessary to achieve the State's purported interests .................... 39

B. AB 2571 Violates the First Amendment Right to Freedom of Association ................................................................................. 44

C. AB 2571 Violates the Equal Protection Clause ......................... 44

II. The Remaining Preliminary Injunction Factors Support Temporary Relief ..... 46

A. Irreparable Harm Is Presumed Because the AB 251 Violates Appellants' Rights Under the First Amendment and Equal Protection Clause ......... 46

B.    The Balance of Equities and Public Interest Warrant Relief ................... 47

Conclusion .......................................................................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civ. Libs. Union v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) ............................................................ 47

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ........................................................... 15

*Aptheker v. Sec. of State,*
    378 U.S. 500 (1964) ........................................................................... 42

*Ark. Writers' Project v. Ragland,*
    481 U.S. 221 (1987) ........................................................................... 26

*Ashcroft v. Am. Civ. Libs. Union,*
    535 U.S. 564 (2002) ........................................................................... 21

*Bd. of Ed. v. Pico,*
    457 U.S. 853 (1982) ..................................................................... 24, 25

*Bd. of Trs. v. Fox,*
    492 U.S. 469 (1989) ........................................................................... 32

*Bigelow v. Virginia,*
    421 U.S. 809 (1975) ........................................................................... 32

*Boos v. Barry,*
    485 U.S. 312 (1988) ........................................................................... 29

*Brandenburg v. Ohio,*
    395 U.S. 444 (1969) ..................................................................... 14, 38

*Brown v. Entertainment Merchants Ass'n,*
    564 U.S. 786 (2011) ...................................................................*passim*

*Carey v. Pop. Services Int'l,*
    431 U.S. 678 (1977) ................................................................14, 20, 38

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
    447 U.S. 557 (1980) ...................................................................*passim*

*Chalk v. U.S. Dist. Ct. (Orange Cnty. Superin. of Schs.),*
    840 F.2d 701 (9th Cir. 1998) ........................................................................ 15

*Chaplinsky v. New Hampshire,*
    315 U.S. 568 (1942) ..................................................................................... 21

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    __U.S.__, 142 S. Ct. 1464 (2022) ...............................................26, 27, 29

*Commodity Futures Trading Comm'n v. Schor,*
    478 U.S. 833 (1986) ..................................................................................... 42

*Doe v. Harris,*
    772 F.3d 563 (9th Cir. 2014) ....................................................................... 16

*Edenfield v. Fane,*
    507 U.S. 761 (1993) ..................................................................................... 36

*Elrod v. Burns,*
    427 U.S. 347 (1976) ..................................................................................... 46

*Erznoznik v. Jacksonville,*
    4322 U.S. 205 (1975) ................................................................... 21, 22, 37, 39

*Gordon v. Holder,*
    721 F.3d 638 (D.C. Cir. 2013) ..................................................................... 47

*Greater New Orleans Broad. Ass'n v. United States,*
    528 U.S. 173 (1999) ..................................................................................... 36

*Griswold v. Connecticut,*
    381 U.S. 479 (1965) ..................................................................................... 25

*Harris v. Bd. of Supervisors, L.A. Cnty.,*
    366 F.3d 754 (9th Cir. 2004) ....................................................................... 16

*Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,*
    452 U.S. 640 (1981) ..................................................................................... 27

*Hunt v. City of Los Angeles,*
    601 F. Supp. 2d 1158 (C.D. Cal. 2009) ...................................................... 30

*Index Newsps. LLC v. U.S. Marshalls Serv.,*
    977 F.3d 817 (9th Cir. 2020) ....................................................................... 47

*Int'l Dairy Foods Ass'n v. Boggs*,
 622 F.3d 628 (6th Cir. 2010) ......................................................................... 35

*Jr. Sports Mags. v. Bonta*,
 No. 22-70185 (9th Cir. 2022) ....................................................................... 10

*Jr. Sports. Mags. v. Bonta*,
 No. 22-cv-4663, 2022 U.S. Dist. LEXIS 193730 (C.D. Cal. 2022) ........................... 8

*Klein v. City of San Clemente*,
 584 F.3d 1196 (9th Cir. 2009) ....................................................................... 47

*Lamont v. Postmaster Gen.*,
 381 U.S. 301 (1965) ...................................................................................... 25

*Lorillard Tobacco Co. v. Reilly*,
 533 U.S. 525 (2001) ...................................................................................... 18

*Loving v. Virginia*,
 388 U.S. 1 (1967)........................................................................................... 45

*Martin v. Struthers*,
 319 U.S. 141 (1943) ...................................................................................... 24

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ......................................................................... 46

*Meyer v. Nebraska*,
 262 U.S. 390 (1923) ...................................................................................... 24

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
 __ U.S. __, 142 S. Ct. 2111 2129-30 (2022) ................................................... 22

*N.Y. Times Co. v. Sullivan*,
 376 U.S. 254 (1964) ...................................................................................... 32

*NAACP v. Patterson*,
 357 U.S. 449 (1958) ...................................................................................... 44

*Nken v. Holder*,
 556 U.S. 418 (2009) ...................................................................................... 47

*Peel v. Att'y Regis. & Discip. Comm'n*,
 496 U.S. 91 (1990) .................................................................................. 34, 35

*Pierce v. Soc. of Sisters*,
    268 U.S. 510 (1925) ................................................................................ 24

*Pittsburgh Press Co. v. Human Relations Comm'n*,
    413 U.S. 376 (1973) ................................................................................ 38

*Police Dep't of Chic. v. Mosley*,
    408 U.S. 92 (1972) ............................................................................ 26, 45

*In re R.M.J.*,
    455 U.S. 191 (1982) ................................................................................ 34

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ............................................................................ 26, 27

*Reno v. Am. Civ. Libs. Union*,
    521 U.S. 844 (1997) ................................................................................ 19

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ............................................................... 48

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ................................................................................ 36

*Rucker v. Davis*,
    237 F.3d 1113 (9th Cir. 2001) ............................................................... 16

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ................................................................................ 28

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 552 (2011) ............................................................................ 32, 37

*Stanley v. Georgia*,
    394 U.S. 557 (1969) ................................................................................ 25

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002) ............................................................................ 37, 40

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969) ................................................................................ 25

*Tracy Rifle & Pistol LLC v. Harris*,
    339 F. Supp. 3d 1007 (E.D. Cal. 2018) .............................................. 36, 43

*Turner Broad. Sys. v. FCC,*
   512 U.S. 622 (1994) ........................................................................ 32

*United States v. Playboy Entm't Grp., Inc.,*
   529 U.S. 803 (2000) ........................................................................ 31

*United States v. Stevens,*
   559 U.S. 460 (2010) ........................................................................ 28

*United States v. United Foods, Inc.,*
   533 U.S. 564 (2001) ...................................................................*passim*

*Va. Pharm. Bd. v. Va. Citzs. Consumer Council,*
   425 U.S. 748 (1976) ..........................................................14, 37, 38

*Valle Del Sol v. Whiting,*
   709 F.3d 808 (9th Cir. 2013) ......................................................... 40

**Statutes**

U.S.C. § 922 ..................................................................................13, 43

U.S.C. § 924 ...................................................................................... 13

18 U.S.C. § 371 ................................................................................. 43

28 U.S.C. § 1292 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1343 ................................................................................. 1

42 U.S.C. § 1983 ................................................................................. 1

Cal. Bus. & Prof. Code § 22949.80.............................................*passim*

Cal. Bus. & Prof. Code § 22950 ..................................................... 41

Cal. Bus. & Prof. Code § 22952 ..................................................... 41

Cal. Penal Code § 182 ..................................................................... 43

Cal. Penal Code § 183 ..................................................................... 43

Cal. Penal Code § 184 ................................................................. 43

Cal. Penal Code § 185 ................................................................. 43

Cal. Penal Code § 663 ................................................................. 43

Cal. Penal Code § 664 ................................................................. 43

Cal. Penal Code § 26835 ........................................................ 41, 43

Cal. Penal Code § 27505 ........................................................ *passim*

Cal. Penal Code § 27510 ................................... 13, 29, 33, 43

Cal. Penal Code § 27590 ............................................................. 43

Cal. Penal Code § 28050 ............................................................. 43

Cal. Penal Code § 28700 ............................................................. 43

Cal. Penal Code § 28701 ............................................................. 43

Cal. Penal Code § 28702 ............................................................. 43

Cal. Penal Code § 28703 ............................................................. 43

Cal. Penal Code § 28704 ............................................................. 43

Cal. Penal Code § 28705 ............................................................. 43

Cal. Penal Code § 28706 ............................................................. 43

Cal. Penal Code § 28707 ............................................................. 43

Cal. Penal Code § 28708 ............................................................. 43

Cal. Penal Code § 28709 ............................................................. 43

Cal. Penal Code § 28710 ............................................................. 43

Cal. Penal Code § 28711 ............................................................. 43

Cal. Penal Code § 28712 ............................................................. 43

Cal. Penal Code § 28713 ............................................................. 43

Cal. Penal Code § 28714 ................................................................................. 43

Cal. Penal Code § 28715 ................................................................................. 43

Cal. Penal Code § 29615 ..............................................................................*passim*

Cal. Penal Code § 29655 ..............................................................................*passim*

Cal. Penal Code § 29800 ................................................................................. 13

Cal. Penal Code § 29805 ................................................................................. 13

Cal. Penal Code § 29815 ................................................................................. 13

Cal. Penal Code § 29820 ................................................................................. 13

Cal. Penal Code § 29825 ................................................................................. 13

Cal. Welf. & Inst. Code § 8100 ...................................................................... 13

## Other Authorities

Antonin Scalia & Bryan Garner, *Reading the Law: The Interpretations of Legal Texts*, § 39 Related Statutes Canon (2012) ............................................. 42

Black's Law Dictionary 1677 (11th ed. 2019) .............................................. 27

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ............................................................................................. 46

Fed. R. App. Proc. 3 .......................................................................................... 1

Fed. R. App. Proc. 4 .......................................................................................... 1

Ninth Cir. R. 3-1 ................................................................................................ 1

Ninth Cir. R. 3-2 ................................................................................................ 1

Ninth Cir. R. 3-3 ................................................................................................ 1

Rosalio Ahumada, *Gavin Newsom Signs New Gun Safety Laws Targeting Illegal Weapons, Marking to Kids*, Sac. Bee (July 1, 2022), *available at* https://www.sacbee.com/news/local/crime/article263108183.html; ............ 45

U.S. Const. amend. I ......................................................................................*passim*

U.S. Const. amend. II...............................................................................15, 22, 45

U.S. Const. amend. XIV ................................................................................ 45

# JURISDICTIONAL STATEMENT

Because this suit arises under the Constitution and laws of the United States, the district court had original jurisdiction under 28 U.S.C. § 1331. 5-ER-979. Because this is a 42 U.S.C. § 1983 action, brought to redress the deprivation of constitutional rights under the color of law, the lower court also had jurisdiction under 28 U.S.C. § 1343(a)(3). 5-ER-979.

The district court denied Plaintiffs-Appellants' motion for preliminary injunction on October 24, 2022. 1-ER-2, 52. Appellants filed a timely notice of appeal on November 21, 2022, 2-ER-55-56, according to Federal Rules of Appellate Procedure 3 and 4 and Ninth Circuit Rules 3-1–3-3.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because the order on review is an appealable order denying Appellants' motion for preliminary injunction.

# STATEMENT REGARDING ADDENDUM

An addendum reproducing relevant constitutional and statutory provisions is bound with this brief.

# STATEMENT OF THE ISSUES PRESENTED

1.      The First Amendment protects the right to speak freely, share ideas, receive information, and associate. It thus limits the government's power to restrict speech based on its content or viewpoint. California bans all speech and print ads by "firearm industry members" that could reasonably be considered "attractive to minors" if that communication seeks to encourage the audience to "engage in a

commercial transaction" for a "firearm-related product." Did the lower court err in holding that California's law likely does not violate the First Amendment?

2.     Laws that restrict speech based on its viewpoint and those which are stepped in animus for the speaker or their ideas violate the Equal Protection Clause. The record shows that California's ban on firearm-related speech attractive to minors is both viewpoint-discriminatory and motivated by animus for pro-gun speech. Does the law violate the right to equal protection?

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

### A.    California's Assembly Bill 2571 (Bauer-Kahan)

In June 2022, the California Legislature passed—and (within hours) Governor Gavin Newsom signed—urgency legislation known as Assembly Bill 2571 ("AB 2571"). 3-ER-452-55. The bill added section 22949.80 to the California Business & Professions Code, and it took effect immediately. 3-ER-452. Months later, the legislature adopted Assembly Bill 160 ("AB 160") in a (fruitless) attempt to address the constitutional infirmities of the new law and void this lawsuit. 2-ER-93-96, 223, 233.[1] But as amended, AB 2571 still improperly prohibits "firearm industry members" from making or distributing any "communication" "in exchange for monetary compensation" if the speech (1) "offers" or "promotes" a "firearm-related product," (2) is designed, intended, or could reasonably be considered "attractive to minors,"

---

[1] For ease of reference, Appellants refer to AB 2571 (as adopted and as later amended by AB 160) and California Business & Professions Code § 22949.80 as "AB 2571."

and (3) seeks to encourage the audience to "engage in a commercial transaction." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6).[2]

AB 2571 imposes civil penalties of up to twenty-five thousand dollars ($25,000) for each violation. *Id.* § 22949.80(e)(1). Civil actions can be commenced to recover those fines by Defendant Attorney General Rob Bonta ("the State") or "by any district attorney, county counsel, or city attorney in any court of competent jurisdiction." *Id.* AB 2571 also authorizes any "person harmed by a violation of this section" to "commence a civil action to recover their actual damages," as well as attorney's fees and costs. *Id.* § 22949.80(e)(3)-(5).

AB 2571 targets speech not only "designed or intended" for minors, but that which might "reasonably appear ... to be attractive to minors." *Id.* Though the phrase is open to broad subjective interpretation, AB 2571 provides some (inadequate) "guidelines" for courts tasked with determining whether a communication is "attractive to minors." *Id.* § 22949.80(a)(2). "[A] court shall consider the totality of the circumstances," including, but not limited to, whether the communication:

> (A)    Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.
>
> (B)    Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.
>
> (C)    Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

---

[2] Because AB 2571 was already amended once during this litigation, Appellants' briefing will address the law as it exists today and undisputed facts revealing AB 2571's impact on Plaintiff-Appellants' First Amendment activities.

(D)     Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E)     Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F)     Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

*Id.* § 22949.80(a)(2). It would be difficult to come up with speech attributes that are more content-based than this list.

Not satisfied with content censorship, AB 2571 is also viewpoint-based regulation of speech and press that only bars some speakers from "advertising and marketing" "firearm-related products." Indeed, the law targets only "firearm industry members," which the law defines in two ways:

(A)     A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B)     A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i)      Advertises firearm-related products.

(ii)     Advertises events where firearm-related products are sold or used.

(iii)    Endorses specific firearm-related products.

(iv)     Sponsors or otherwise promotes events at which firearm-related products are sold or used.

AB 2571 thus does not apply to members of the book, movie, television, and video game industries, even though the author of AB 2571 expressly identified the

"slick advertising" of "firearm-related products" in children's books, cartoons, and video games as sources of "shameless" advertising of "weapons" to children. 3-ER-500. The law does, however, apply to organizations formed to promote and preserve the rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses or firearm-safety training, and gun show promoters—not just firearms manufacturers and retailers. Cal. Bus. & Prof. Code § 22949.80(c)(4).

Under AB 2571 (as amended), "[m]arketing or advertising means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." *Id.* § 22949.80(c)(6).

Finally, AB 160 amended AB 2571 to provide an exception for speech offering or promoting (1) "any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event," or (2) "membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp." *Id.* § 22949.80(a)(3). This post-litigation exception recognizes that, under California law, minors may lawfully possess and use firearms and ammunition. For instance, minors may possess firearms when they are engaged in or traveling to or from recreational sports if a parent or guardian is present or if the minor is accompanied by another responsible adult and their parent has given written consent. Cal. Penal Code §§ 29615(a)-(b), 29655; *see also* 3-

5

ER-554 (California Department of Fish & Wildlife parental consent form for minor to "handle, manipulate, and/or use firearms" during the state hunter's safety course).[3]

### B. The Effect of AB 2571 on Appellants' Protected Conduct

In short, even after California tweaked AB 2571 through trivial amendments, the new law prohibits Appellants' protected conduct—distributing to the public, including both adults and children, information about firearm-related products that they might wish to use for lawful hunting and shooting activities.

For example, even after being amended, AB 2571 still bars Appellant Junior Sports Magazines from publishing and circulating *Junior Shooters* magazine in California. Suppl. 2-ER-182-83. That is because AB 2571 still expressly prohibits the sorts of advertisements promoting the sale of lawful firearm-related products found on the pages of the publication. 2-ER-182-83. To prevent substantial liability under AB 2571, Junior Sports Magazines must either remove all such advertisements from *Junior Shooters* magazine (even though they are both truthful and lawful in the 49 other states where *Junior Sports* maintains circulation) or continue to bar distribution of the magazine in California entirely. 2-ER-182-83. Of course, advertising makes the publication of the magazine economically possible, so ending such advertising is not an option. 2-ER-182-83.

Appellants Junior Sports Magazines and CRPA will also continue to be barred from publishing articles and images that endorse firearm-related products designed for use by minors or that come in colors or sizes that might be appealing to minors.

---

[3] Similarly, if the minor's parent consents, and the minor is at least 16 or is engaging in recreational sports on "lands lawfully possessed by their parent or guardian," no adult even need be present. Cal. Penal Code § 29615(c)-(d).

2-ER-182-83, 189. And they could not publish articles written by youth shooters endorsing specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters. 2-ER-182, 189.

Appellants Brown and CRPA will continue to see restrictions on the speech that takes place during their firearms training and safety programs and hunter's education courses. 2-ER-186-87, 217-18. That is because the newly amended law exempts only speech "offering" or "promoting" these courses. 2-ER-93-94 (Cal. Bus. & Prof. Code § 22949.80(a)(3)). It does not exempt the speech that naturally takes place at them. As a result, Appellants Brown and CRPA must consider whether it is too risky to resume offering such courses to youth under 18. 2-ER-186-87, 217-18. Even if they do choose to resume such offerings, they must carefully censor their speech since such courses inherently include speech promoting firearm-related products, including recommendations about specific products. 2-ER-186-87, 217-18.

Similarly, Appellants CYSSA's and RCYCSS's volunteers and affiliated coaches and trainers remain barred from endorsing, promoting, or suggesting that their young athletes obtain firearm-related products necessary for their success in the shooting sports. 2-ER-199. And they will be barred from endorsing a specific brand of ammunition or a particular firearm that works best for young and smaller athletes without risking violating the law. 2-ER-199.

Finally, even with the new exemption for advertising competitive shooting and hunting programs, AB 2571 still restricts Appellants' ability to host and sponsor such activities for youth. *See, e.g.*, 2-ER-190-92, 211-12. That is because these events regularly involve signage, flyers, discussions, branded merchandise, giveaways, and

other communications that promote or offer firearm-related products. 2-ER-191-92, 211-212. What's more, like most large-scale events, the cost of hosting these opportunities for youth generally must be offset by sponsors, including businesses that sell or manufacture firearms, ammunition, and related goods. 2-ER-191-92. Sponsors are offered vendor booth space, banners, logo placement, or other forms of advertising at these events in exchange for their financial support. 2-ER-191-92. It is also customary, just like in other sports, to place sponsor logos on youth competitors' uniforms and commemorative t-shirts. 2-ER-191-92. Because AB 2571 provides no exception for sponsors of youth shooting events or for the speech that takes place at such events, the law threatens Appellants' ability to offer these events for young shooters and effectively silences all the commercial and non-commercial speech that takes place that them. 2-ER-191-92, 211-212.

What's more, the AB 160 amendments do not address the vagueness and overbreadth concerns that the Appellants identified in their complaint and moving papers. 5-ER-980, 991, 1008-09; *see also* Plaintiffs' Memorandum of Points & Authorities in Support of Motion for Preliminary Injunction 15, *Jr. Sports. Mags. v. Bonta*, No. 22-cv-4663, 2022 U.S. Dist. LEXIS 193730 (C.D. Cal. 2022)(ECF No. 12-1); Plaintiffs' Reply to Defendant's Opposition to Motion for Preliminary Injunction 4, *Jr. Sports. Mags. v. Bonta*, No. 22-cv-4663, 2022 U.S. Dist. LEXIS 193730 (C.D. Cal. 2022) (ECF No. 21). By adding even more unclear language rather than taking it away, AB 160 makes the law in many ways more vague and more overbroad. 2-ER-93-95 (retaining overbroad and highly subjective references to communications that are "designed, intended, or reasonably appear[] to be attractive to minors" and adding

vague references to "any similar program, course, or event"). Appellants thus remain unsure exactly what speech is permissible under the law. So every single time they host an event open to youth, publish a magazine or bulletin, offer merchandise for sale, collaborate with industry-member sponsors or advertisers, or communicate with minors, they must weigh the risks of engaging in this otherwise lawful and truthful speech against the very real and very substantial risk of civil liability. 2-ER-183, 193-94, 199, 204, 213-14, 217-18.

Finally, during oral argument on the Appellants' motion for preliminary injunction, the Appellants asked whether disclaimers (e.g., "Notice: Firearm Sales to Minors Are Prohibited.") could provide immunity to AB 2571's ham-fisted assault on the First Amendment. Both the Court and the Attorney General's office declined to provide any clarity. 2-ER-79-80.

As of the date this brief is being filed, minors are still being deprived of industry information about products they are lawfully entitled to use. The Appellants' speech and press rights are still being chilled by the severe civil penalties that AB 2571 imposes and the threat of costly litigation that can (and is designed to) bankrupt organizations, foundations, and institutions devoted to youth shooting sports.

## II. PROCEDURAL HISTORY

Appellants sued in the United States District Court for the Central District of California, challenging AB 2571 because it violates the First Amendment rights to free speech, free press, and free association, as well as the right to equal protection under the law. 5-ER-1007-13. Not long after, Appellants filed a motion for preliminary injunction and noticed a hearing on the motion for August 22, 2022. Just days before

Appellants' motion was to be heard, the State informed counsel for Appellants that the California legislature was considering a bill to amend AB 2571. With that development, the district court vacated the August 22nd hearing and set a status conference for September 12, 2022. 2-ER-220-233. Because of the gravity of the censorship, Appellants filed a writ of mandamus, asking this Court to direct the trial court to rule on the motion at once. Emergency Petition for Writ of Mandamus 3, *Jr. Sports Magazines v. Bonta*, No. 22-70185 (9th Cir. 2022)(ECF No. 1-2). The writ was denied. Order, *Jr. Sports Magazines v. Bonta*, No. 22-70185 (9th Cir. 2022)(ECF No. 2).

The district court entertained supplemental briefing by the parties and conducted a hearing. 2-ER-61. The district court denied the motion for preliminary injunction in a memorandum order filed on October 24, 2022. 1-ER-2, 52. Appellants filed a timely notice of appeal on November 21, 2022. 2-ER-55-56.

## III. THE DECISION ON APPEAL

In denying Plaintiffs' motion for summary judgment, the district court analyzed each of Appellants' constitutional claims and held that they were unlikely to succeed on the merits of any of them. 1-ER-13-50. First, the court held that Plaintiffs were not likely to succeed on their political and ideological right-to-free-speech and freedom-of-association claims because "AB 2571, as amended, is properly read as only applying to commercial speech." 1-ER-19; *see also* 1-ER-23, 48. The court reached that conclusion based on "California's stated purpose of enacting AB 2571," which was to "further restrict the marketing and advertising of firearms to minors." 1-ER-19. But the court largely ignored the real-life consequences of the law and its impact on their ability to engage in non-commercial speech—harms that the Plaintiffs' declarations

laid out in great detail. *Compare* 1-ER-19-20, *with* 2-ER-180-219. Instead, the court held, it saw "no reason to not take the government at its word … that the primary intent of the marketing bans is the regulation of commercial speech." 1-ER-19. And the court agreed with the State that "AB 2571, as amended, is properly understood as a restriction on the marketing and advertising of firearms, ammunition, and firearms components and accessories to minors to encourage the purchase by them of these products…." 1-ER-20.

Next, the district court rejected Appellants' commercial speech claim. 1-ER-23-47. While the court correctly held that AB 2571 restricts more than just misleading speech or speech about unlawful activities, the court ultimately held that *Appellants* had not met their burden to prove that AB 2571 does not materially and directly advance the State's substantial interest. 1-ER-38. The court held that the State has a substantial interest "in taking measures designed to effectuate [its] restriction" on firearm sales to minors. 1-ER-28. And, likening AB 2571 to restrictions on advertising tobacco products to youth, the district court held that "by restricting advertising of firearm-related products designed to appeal to minors, AB 2571 directly and materially advance[s]" that interest. 1-ER-38

Finally, because the court held that Appellants' equal protection claim is "essentially the same" as their First Amendment claims, the court likewise held that Appellants were not likely to succeed on that claim either. 1-ER-50.

Because the district court held that Appellants were not likely to succeed on the merits of their constitutional claims, it naturally held that the remaining preliminary injunction factors did not tip in Appellants' favor. 1-ER-50-52.

11

## SUMMARY OF ARGUMENT

California Assembly Bill 2571 is a content-based and viewpoint-discriminatory law that penalizes firearm-related speech made only by "firearm industry members." This new law seeks to punish words that "advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any *firearm-related* product in a manner that is designed, intended, or *reasonably appears to be attractive to minors.*" Cal. Bus. & Prof. Code § 22949.80 (emphasis added). The pretext for this censorship is the State's bare assertion—without proof—that it will somehow deter (the already illegal) sale of firearms to minors. The district court committed reversible error when it denied Appellants' motion for a preliminary injunction, holding that California's censorship of this pro-gun speech does not likely offend Appellants' rights under the First Amendment and Equal Protection Clause. This Court should reverse that error.

Essentially, the district court held that AB 2571 regulates only commercial speech about firearms, and since selling firearms to minors is illegal, California may ban commercial speech about all "firearm-related products" (not just firearms) that is somehow "attractive to minors." The State should not be allowed to hide behind the commercial speech doctrine for at least two reasons: (1) the commercial speech doctrine is itself obsolete (if it ever was valid)[4] or is inapplicable here; and (2) assuming the commercial speech doctrine applies, the district court improperly

---

[4] Justice Thomas has observed "that there is no "philosophical or historical basis for asserting that 'commercial' speech is of 'lower value' than 'noncommercial' speech." Indeed, I doubt whether it is even possible to draw a coherent distinction between commercial and noncommercial speech." *Lorillard Tobacco v. Reilly*, 533 U.S. 525, 575 (2001) (Thomas, J., concurring).

applied it to these facts. Either way, the district court erred when it rejected the Appellants' First Amendment arguments in support of their request for a preliminary injunction enjoining AB-2571.

Federal law already makes it a crime—with severe penalties—for any licensed firearm dealer to sell a firearm to a minor. U.S.C. § 922(b)(1) (minor being defined as 18 for handguns and 21 for rifles and shotguns); *id.* §§ 924, et seq. California law mirrors that policy on sales with some nuances. For instance, Penal Code section 27505(a) makes it a crime for any person (not just licensed dealers) to sell, loan, or transfer a firearm to a minor while also distinguishing between firearm types in subsection (b). Penal Code § 27510 applies to state-licensed dealers and imposes additional conditions on the sale, loan, or transfer of firearms to minors. Possession and use of firearms by minors is another matter. Federal law is silent for all practical purposes relating to this action, while California law expressly authorizes minors to possess and use firearms for lawful activities like sport shooting, hunting, and target practice while under adult supervision or with adult permission. Cal. Penal Code §§ 27505(b), 27510(b), 29615, 29655.

Contrast this with the absolute ban on both the sale *and* possession of firearms California applies to classifications like felons (*id.* § 29800), certain misdemeanants (*id.* § 29805), probationers (*id.* § 29815), juvenile offenders (*id.* § 29820), persons subject to restraining orders (*id.* § 29825), and persons adjudicated mentally ill (Cal. Welf. & Inst. Code §§ 8100, et seq.). California could not censor all commercial speech that "reasonably appears attractive" to felons, probationers, and the mentally ill simply because it is already illegal to sell firearms to them. How would a court determine that

13

a commercial ad was somehow attractive to a felon, but not a law-abiding citizen or vice-versa? Such a law would necessarily be both overinclusive *and* underinclusive.

Contrast such an obvious First Amendment violation with AB 2571, which is not only undermined by vagueness and overbreadth, but also by the uncontested statutory right that minors have to lawfully use and possess firearms under California law. Governments may not "completely suppress the dissemination of concededly truthful information about entirely lawful activity," even when that information could be categorized as "commercial speech" that includes minors as consumers. *Carey v. Pop. Services Int'l*, 431 U.S. 678, 700 (1977) (quoting *Va. Pharm. Bd. v. Va. Citzs. Consumer Council*, 425 U.S. 748, 773 (1976)).

The district court's error and California's attack on the First Amendment while aiming at the Second, are based on the same false premise. Governments cannot suppress speech under the pretext of regulating conduct (e.g., firearms sales to minors), even if the speech is commercial, even if the speech is aimed at minors, even if the speech is about strictly regulated but legal conduct. "[W]hatever might be the case if the advertisements directly incited illicit … activity among the young, none of the advertisements in this record can even remotely be characterized as 'directed to inciting or producing imminent lawless action and… likely to incite or produce such action.' *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). They merely state the availability of products and services that are not only entirely legal, […] but constitutionally protected." *Carey*, 431 U.S. at 701-02 (internal citation omitted).

California's constitutional nihilism is on full display with AB 2571, including its adoption as emergency legislation and its scramble to amend the law after this suit was

filed. California's government has anthropomorphized the Second Amendment into the Devil and will stop at nothing to eradicate it.

> **Roper:** So now you'd give the Devil benefit of the law!
>
> **More:** Yes. What would you do? Cut a great road through the law to get after the Devil?
>
> **Roper:** I'd cut down every law in England to do that!
>
> **More:** Oh? And when the last law is down, and the Devil turned round on you where would you hide, Roper, the laws all being flat? This country's planted thick with laws from coast to coast – Man's laws, not God's – and if you cut them down – and you're just the man to do it – d'you really think you could stand upright in the winds that would blow then? Yes, I'd give the Devil benefit of law, for my own safety's sake.

Robert Bolt's, A MAN FOR ALL SEASONS (Act I).

The protection of our First Amendment—even when applied to speech about the Second Amendment directed at minors—must be upheld for safety's sake. The Appellants' motion to enjoin AB 2571 should have been granted.

## STANDARD OF REVIEW

## ARGUMENT

## I.    STANDARD OF REVIEW

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange Cnty. Superin. of Schs.)*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain relief, Appellants must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Because the burdens at this stage track those at trial,

Appellants bear only "the initial burden of making a colorable claim that [their] First Amendment rights have been infringed, or are threatened with infringement," then "the burden shifts to the government to justify the restriction." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (citation omitted).

Generally, this Court reviews the denial of a motion for preliminary injunction for abuse of discretion. *See, e.g.*, *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir. 2001) (en banc), *rev'd on other grounds*, *Dep't of Hous. & Urb. Devel. v. Rucker*, 535 U.S. 125 (2002). But when a district court's ruling on a motion for preliminary injunction rests only on the law and the facts are either established or undisputed, appellate court review of whether the trial court applied the appropriate legal standard is de novo. *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754 (9th Cir. 2004). Further, where applying the correct rule compels the resolution of the ultimate issues, the court of appeals may reach the merits. *Rucker*, 237 F.3d at 1118-19.

Below, the district court made a fundamental, reversible error when it held that it was Plaintiffs' burden to prove that AB 2571 does *not* materially and directly advance the State's substantial interests, rather than the State's burden to prove that it *does*. 1-ER-38. But that error was only the beginning of the court's improper application of substantive law to Plaintiffs' constitutional claims. This Court should review the district court's misapplication of the law de novo. And because the resolution of the ultimate issues necessarily follows the application of the proper rule of law, this Court should rule on the merits.

I.    **THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS WERE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

A.    **AB 2571 Violates the First Amendment Right to Free Speech**



This anachronistic ad from a bygone era identifies a product, invites a sale, and names a price. Yet one still has to guess whether its subject matter is forbidden speech under AB 2571. The advertisement depicts a child with a gun. *See* Cal. Bus. & Prof. Code § 22949.80(a)(2)(E) ("Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products"). But the manufacturer states that guns are not toys while trying to convey the message that its product is safe around children as this "firearm industry member" advertises that its handguns are lawful products intended for sale to adults to exercise the right of self-defense. So did the Iver Johnson Arms & Cycle Works Company "advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting [a] firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors"? The question highlights so well AB 2571's attack on content and viewpoint, and it also manages to showcase the law's ambiguities, vagueness, and overbreadth.

17

1. **The Court Should Reject the State's Attempt to Carve Out a Broad Exception to the First Amendment for Speech Directed to Minors**

    a. **The State cannot ban speech intended for adults just because minors might observe it.**

AB 2571 bans speech about lawful products that are legal for adults to purchase and for *both* adults and minors to use (even in California). *See, e.g.*, Cal. Penal Code §§ 29615, 29655.[5] So much for any claim that the law targets unprotected commercial speech that promotes an illegal transaction. But even if minors could not lawfully possess and use firearms, and even if the State has an interest in preventing minors' access to such products, there is no principled argument that speech about lawful products available to adults can be censored just because minors might be exposed to the message. On this point, the Supreme Court's reasoning in *Lorillard Tobacco Co. v. Reilly* is particularly instructive. 533 U.S. 525 (2001).

In *Lorillard*, the Supreme Court faced a First Amendment challenge to Massachusetts' tobacco advertising restrictions, including (among other things) a ban on outdoor advertising of smokeless tobacco and cigars within a 1,000-foot radius from any school or playground. *Id.* at 534-35. The Court noted that Massachusetts

---

[5] AB 2571 also likely bans speech about lawful "firearm-related products" that are legal for minors to purchase themselves. Under the challenged law, "firearm-related products" include not just firearms, which are subject to age-based purchase restrictions, but also "firearm accessories." As defined by the law, a "firearm accessory" is any "attachment or device designed or adapted to be inserted into, affixed onto, *or used in conjunction with*, a firearm which is designed, intended, or functions *to alter or enhance* the firing capabilities of a firearm, the lethality of the firearm, *or a shooter's ability to hold, carry, or use a firearm*." Cal. Bus. & Prof. Code § 22949.80(c)(3) (emphasis added).

While this definition of "firearm-related products" is yet another example of AB 2571's vagueness, products like holsters, portable locked gun cases, and specialty glasses, that are "used in conjunction with" firearms "to alter or enhance" the user's "ability to hold, carry or use a firearm," are likely covered by a plain reading of the law. There are no restrictions on minors purchasing these items.

18

had made it illegal to distribute tobacco products to minors and accepted as uncontroversial that the state has a compelling interest in preventing minors' access to such products. *Id.* at 552. Even still, the Court held, "the sale and use of tobacco products by adults is a legal activity. [And w]e must consider that tobacco retailers and manufacturers have an interest in conveying truthful information about their products to adults, and adults have a corresponding interest in receiving truthful information about tobacco products." Finally, the Court reiterated that "the governmental interest in protecting children from harmful materials does not justify an unnecessarily broad suppression of speech addressed to adults." *Id.* at 564 (citing *Reno v. Am. Civ. Libs. Union*, 521 U.S. 844, 875 (1997)). The Supreme Court thus struck Massachusetts' restriction on tobacco marketing likely to be observed by children. *Id.* at 565-66.

Like Massachusetts' ban on outdoor tobacco advertising intended for adults that might also be observed by children, California's AB 2571 restricts not only speech that directly targets children, but also speech directed to adults that "appears to be attractive to minors" under California's highly subjective criteria. Cal. Bus. & Prof. Code § 22949.80(a)(1). Unlike the prohibition on minor tobacco use imposed by Massachusetts and countenanced by the *Lorillard* Court, however, California's AB 2571 implicitly endorses—by expressly authorizing speech about—lawful firearm use by minors. *Id.* § 22949.80(a)(3). It stands to reason then that California's ban on firearm-related speech is on even shakier ground than Massachusetts' unconstitutional ban on tobacco-related speech. For it can hardly be argued with a straight face that children must be shielded from all mention of the market for firearm-related products

19

while acknowledging with the same breath that they may lawfully participate in shooting and hunting activities where they will handle and use actual firearms.

That said, even if California could constitutionally deny minors the right to possess and use firearms altogether, AB 2571 would still be unconstitutional under *Lorillard*. Indeed, the government overreaches when it broadly suppresses truthful speech by and for adults about lawful (constitutionally protected) products. *Lorillard*, 533 U.S. at 565-66; *see also Carey*, 431 U.S. at 700-02. AB 2571 is fatally overbroad because it targets speech directed at adults if it might reasonably be said to be attractive to minors, and because it penalizes speech to both adults and minors, even if the products are lawful for minors to use. This California may not do. The district court, like the Court of Appeals in *Lorillard*, erred when it found that the State has "an interest in taking measures designed to effectuate [its] restriction" on firearm sales to minors without "follow[ing] through with an analysis of the countervailing First Amendment interests" of adults to convey or receive truthful information about these lawful products. *Lorillard*, 533 U.S. at 564.

### b. The State cannot ban speech intended for minors even if the State were to classify it as violent.

The speech that AB 2571 targets is not violent, but the State has relied on claims about violence committed by minors to prop up its speech ban. So it should be noted that even violent speech that is aimed at or attractive to minors is protected by the First Amendment. Such speech does not fall within any of the narrow exceptions to the right to free speech, and the government may not simply ban it because the government thinks the message it sends might harm children.

In *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), the Supreme Court took up the issue of violent video games marketed, sold, and rented to minors. Citing well-established precedent, the Court struck California's law banning the sale or rental of "violent video games" to minors and requiring packaging that identified the material as for adults over 18. *Id.* at 789. The Court observed that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* at 790 (quoting *Ashcroft v. Am. Civ. Libs. Union*, 535 U.S. 564, 573, (2002) (internal quotations omitted)). And even "'[m]inors are entitled to a significant measure of First Amendment protection.'" *Id.* at 794 (quoting *Erznoznik v. Jacksonville*, 4322 U.S. 205, 212-13 (1975)). Only in *narrow* circumstances, the Court held, "may the government bar public dissemination of protected materials to them." *Id.* In short, the State does not have "a free-floating power to restrict the ideas to which children may be exposed"—even under the guise of protecting children from harm. *Id.* at 795.

The *Brown* Court did recognize that there are "well-defined and narrowly limited classes of speech," like obscenity, incitement, and fighting words, that may be restricted without constitutional offense. *Id.* at 790-91 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)). But it rejected California's calls to broaden that list to include content-based restrictions designed to protect minors from harm. *Id.* at 794-95. Instead, the Court held, "[s]peech that is neither obscene[6] as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for

---

[6] The *Brown* Court was very clear that the First Amendment's "obscenity" exception refers only to depictions of "sexual conduct," not to "whatever a legislature finds shocking"—even gratuitous violence. 564 U.S. at 792-93.

them." *Id.* at 795 (quoting *Erznoznik*, 4322 U.S. at 213-14) (internal quotations omitted). The Court reached that decision, in part, because there is no "longstanding tradition in this country of specially restricting children's access to depictions of violence." *Id.* at 795-96. Relatedly, the Supreme Court recently held that the appropriate analysis for Second Amendment challenges requires that "[t]he government … justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, __ U.S. __, 142 S. Ct. 2111 2129-30 (2022).

AB 2571, which impacts conduct protected by the Second Amendment by taking aim at conduct protected by the First, is subject to the same mode of historical analysis the Supreme Court championed in both *Brown* and *Bruen*. There is "no longstanding tradition in this country of specially restricting children's access to" firearms advertising. *Brown*, 564 U.S. at 795-96.

c. **The State cannot deprive minors of their right to receive information about lawful products that they can lawfully use.**



Since California authorizes minors to possess firearms for lawful purposes under adult supervision, what is to be made of an advertisement like the one above? It identifies a firearm-related product, names the price, and invites a commercial transaction. And the ad itself conveys the message that this model rifle is suitable for anyone aged 12 to 60. Which invites the question: If California law permits minors to use and possess firearms for lawful purposes but bans speech about the firearms and other products necessary for them to do so, where will adults get information about

suitable firearms for their minor children to shoot if not from such advertisements? And where will minors who participate in the shooting sports learn of the products suitable for their particular needs?

Minors have a statutory right to use and possess firearms (under adult supervision) consistent with California law. *See* Cal. Penal Code §§ 29615, 29655. The State does not dispute this and even amended AB 2571 after this suit was filed to "clarify" that point. *See* 2-ER-233. If minors have the right to use and possess firearms, it necessarily follows that they should have the right to learn about the products they may lawfully use. Indeed, "the right to receive ideas follows ineluctably from the sender's First Amendment right to send them: 'The right of freedom of speech and press ... embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin v. Struthers*, 319 U.S. 141, 143 (1943) (citation omitted). There is no justification for denying minors that right. In fact, the Supreme Court has rejected the premise.

In *Board of Education v. Pico*, 457 U.S. 853 (1982), the Supreme Court considered the authority of local school boards to remove books from public school libraries. The *Pico* Court recognized that "school boards have broad discretion in the management of school affairs." *Id.* at 863 (citing *Meyer v. Nebraska*, 262 U.S. 390, 402 (1923); *Pierce v. Soc. of Sisters*, 268 U.S. 510, 534 (1925)). But it also noted that courts must be careful to balance that authority with the free speech rights of minor students. *Id.* at 864; *see also id.* at 866 ("First Amendment rights, applied in light of the special characteristics of the school environment, are available to ... students."). Ultimately, the Court held "that the First Amendment rights of students may be

24

directly and sharply implicated by the removal of books from the shelves of a school library" because "'the Constitution protects the right to receive information and ideas,'" *id.* at 866 (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)), and "'the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge,'" *id.* (quoting *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965)). After all, "[t]he dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers." *Id.* at 867 (citing *Lamont v. Postmaster Gen.*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring)).

The *Pico* Court also emphasized that the right to receive information is fundamental to the listener's "meaningful exercise of his own rights of speech, press, and political freedom." *Id.* This is just as important for minors as it is for adults. Access to ideas "prepares students for active and effective participation in the pluralistic, often contentious society in which they will soon be adult members." *Id.* at 868. Children do not shed their First Amendment rights at the schoolhouse gate, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), and they should not be forced to give them up to participate in the shooting sports.

****

AB 2571's creation of a whole new category of speech about "firearm-related products" that is somehow attractive only to minors (but only if uttered by "firearm industry members") cannot withstand scrutiny under any legal doctrine. The Supreme Court in *Lorillard*, *Brown*, and *Pico* was unwilling to carve out an exception to the First Amendment for speech directed at minors. In defense of AB 2571, the State

25

essentially asks this Court to reject the Supreme Court's precedents and do exactly that. The Court should instead reject the State's position. The district court committed reversible error when it denied Appellants' motion for a preliminary injunction. This Court should correct that error.

### 2. Strict Scrutiny Applies Because AB 2571 Is a Content-based and Viewpoint-discriminatory Ban on Speech

"[A]bove all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chic. v. Mosley*, 408 U.S. 92, 95 (1972). Government restrictions that selectively ban speech based on its "particular subject matter" or "its function or purpose" are "content-based regulations." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Relatedly, "the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination'" known as viewpoint discrimination. *Id.* at 168. Content- and viewpoint-based speech restrictions are presumed invalid. *Id.* Indeed, finding that a government restriction on speech that is content- or viewpoint-based is often determinative. *See, e.g.*, *Ark. Writers' Project v. Ragland*, 481 U.S. 221, 231-32 (1987).

The Supreme Court recently revisited *Reed* (without overruling it) in *City of Austin v. Reagan National Advertising of Austin, LLC*, __U.S.__, 142 S. Ct. 1464 (2022). In a 5-4 opinion, the *Reagan* Court clarified that *Reed* does not stand for the broad holding that "*any* classification that considers function or purpose is *always* content based." *Id.* at 1474 (emphasis added). But the Court did not disturb the rule that regulations of solicitation or "'attempt[s] or effort[s] to gain business,'" *id.* at 1473

(quoting Black's Law Dictionary 1677 (11th ed. 2019), "do not inherently present 'the potential for becoming a means of suppressing a particular point of view,' **so long as they do not discriminate based on topic, subject matter, or viewpoint,**" *id.* (quoting *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 649 (1981)) (double emphasis added). Driving this point home, the Court noted its determination that "the City's ordinance is facially content neutral does not end the First Amendment inquiry. If there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *Id.* at 1475-76 (citing *Reed*, 576 U.S. at 164).

What human activity is AB 2571 designed to prevent, given that minors can lawfully use and possess firearms under California law? The answer lies in the public statements of Governor Newsom when he signed AB 2571 like this one:



The California Legislature and Governor Newsom are engaged in both content- and viewpoint-based discrimination because they think that advertisements for a JR-15 rifle are (1) in poor taste, (2) because this rifle looks like an AR-15, and (3) they object to the use of some macabre imagery associated with this product. But the

JR-15 is simply a low-power rifle that is suitable for young and entry-level shooters and shoots a .22 caliber rim-fire cartridge—the same as the Browning .22 Automatic Rifle in the ad above. But neither the appearance of these rifles nor any marketing connected with them makes these rifles exempt from laws that prohibit sales to minors or that require adult supervision when minors use them. Governor Newsom's strong language condemning the cosmetics of the JR-15 and the graphics used to promote it is thus little more than a popular tactic of all censors—attacking the most obnoxious speech in a category to suppress the entire category. *See Snyder v. Phelps*, 562 U.S. 443 (2011); *United States v. Stevens*, 559 U.S. 460 (2010). But, as discussed above, even gratuitously violent imagery intended for minors is not grounds for censorship. *Brown*, 564 U.S. at 794-95.

What's more, the legislative history reveals that AB 2571's purpose is to "limit the exposure of, and consumption by, minors to [firearms] advertising and marketing material, given the lethality (and general illegality for minors) of the products being advertised." 3-ER-475. And the State argued below that "studies have shown that restrictions on advertising are associated with the decreased use of certain products by youth." 3-ER-361. The only conclusion that can be drawn is that AB 2571 was intended to trench on the "thought crime" of a minor developing a desire for any kind of firearm after looking at an advertisement for that firearm—under the pretext that children should not aspire to use the same (or similar) shooting equipment as their parents or guardians. To paraphrase Justice Thomas's concurrence in *Lorillard*, AB 2571 is:

> [N]ot concerned with any 'secondary effects' of [firearm]
> advertising—it is concerned with the advertising's primary effect,
> which is to induce those who view the advertisements to purchase
> and use [firearm] products. Cf. *Boos v. Barry,* 485 U.S. 312, 321
> (1988) ("'Listeners' reactions to speech are not the type of 'secondary
> effects' we referred to in *Renton*"). *In other words, it seeks to suppress speech
> about [firearms] because it objects to the content of that speech.*

533 U.S. at 574 (Thomas, J., concurring) (emphasis added). Preventing governments

from regulating human thought, especially through the suppression of ideas it

disagrees with, is the DNA of the First Amendment.

Still, the district court chose to apply the commercial speech doctrine, instead

of strict scrutiny, to Appellants' protected expressive activities. 1-ER-27. But *Reagan*

instructs lower courts to be wary of regulations that impact both commercial and non-

commercial speech and suggests (in line with Justice Thomas's concurrence in

*Lorillard*, 533 U.S. at 575) that such restrictions are subject to a *pure speech analysis*

instead of the test found in *Central Hudson Gas & Electric Corp. v. Public Service*

*Commission of New York*, 447 U.S. 557 (1980). *See Reagan*, 142 U.S. at 1471, n.3

(recognizing that the challenged law regulated both commercial and non-commercial

speech while employing a pure speech analysis).

As noted, minors can lawfully use and possess firearms under adult supervision

for lawful activities such as target practice, hunting, and sport shooting. *See* Cal. Penal

Code §§ 27505(b), 27510(b), 29615, 29655. The function of advertising is to provide

information about the suitability and availability of a manufacturer's product to its

likely consumers. Under California law, a firearm purchaser must be an adult, but the

end-user can be a minor. Moreover, adults teaching minors to hunt and shoot,

necessarily implies that they obtain suitable firearms for those minors. And commerce

29

mixed with education is entitled to full constitutional protection. *See Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158 (C.D. Cal. 2009), *aff'd*, 638 F.3d 703 (9th Cir. 2011) ("The sale of merchandise inextricably intertwined with a religious, political, ideological, or philosophical message is fully protected by the First Amendment."). Because, at the very least, AB 2571 restricts speech that is both commercial and educational, this Court should apply the test for pure speech.

But even outside the commercial speech paradigm, AB 2571 restricts Appellants' purely non-commercial speech as well. Appellants Junior Sports Magazines and CRPA publish magazines that include articles and images that endorse firearm-related products designed for use by minors or that come in colors or sizes that might be appealing to minors. 2-ER-182, 189. Non-commercial speech subject to AB 2571 includes articles written by youth shooters promoting specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters. 2-ER-182, 189. Appellant Junior Sports Magazines also declared that it had to cease all distribution to California of *Junior Shooters* magazine because its existence relies in large part on the income generated by advertisements that AB 2571 bans. 2-ER-181-83.[7]

In short, Appellants seek to engage in all manner of protected expression— including political, ideological, and educational speech, as well as commercial speech—about the lawful sale, possession, and use of "firearm-related products." The State, through AB 2571, has banned Appellants' speech based on the content and

---

[7] For further discussion of the non-commercial speech that is restricted by AB 2571 (as amended), see Statement of the Case, Part I.B., *supra*, and 2-ER-180-219.

viewpoint of their message—a message that California lawmakers hardly try to conceal their contempt for. This Court must thus apply strict scrutiny to AB 2571. Under that test, the State bears the burden to "prov[e] the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). But the State was so confident that AB 2571 is neither content- nor viewpoint-based, it did not even try to justify AB 2571 under strict scrutiny. *See* 3-ER-352-364. As a result, the State waived any argument that it could survive such review. So if this Court agrees that AB 2571 likely imposes a content-based restriction on protected speech, it should hold that Appellants have shown a likelihood of success on the merits of their First Amendment free speech claim.

### 3. The Commercial Speech Doctrine Does Not Apply; Even if it Did, the Doctrine Cannot Save AB 2571

#### a. The commercial speech doctrine is obsolete.

Justice Thomas has observed "that there is no "philosophical or historical basis for asserting that 'commercial' speech is of 'lower value' than 'noncommercial' speech." Indeed, I doubt whether it is even possible to draw a coherent distinction between commercial and noncommercial speech." *Lorillard*, 533 U.S. at 575 (Thomas, J., concurring).

A decade later the trend of U.S. Supreme Court decisions continues to chip away at the commercial speech doctrine, especially when the government's censorship is aimed at content or is view-point based. "It is true that restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct. It is also true that the First Amendment does not prevent

31

restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health, Inc.,* 564 U.S. 552 (2011). Yet the *Sorrell* Court struck down a regulation of pharmaceutical marketing because the law imposed "a burden based on the content of speech and the identity of the speaker." *Id.* at 567. The Court noted that even speech that "results from economic motive, [has] a great deal of vital expression." *Id.* (citing *Bigelow v. Virginia*, 421 U.S. 809 (1975); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)); *United States v. United Foods, Inc.,* 533 U.S. 564 (2001)).

At least for content- and viewpoint-based regulations of speech, this Court should abandon the incoherent distinction between commercial and non-commercial speech.

> **b.** **Even if the *Central Hudson* test applies, AB 2571 fails it.**

Even if this Court elects to analyze AB 2571 under the commercial speech doctrine, the law fails constitutional muster. Purely commercial speech receives First Amendment protection if it is not misleading and concerns a lawful activity. *Cent. Hudson*, 447 U.S. at 563-64. Government restrictions on such speech are constitutional *only* if they directly advance a substantial government interest and are not broader than necessary to serve that interest. *Id.* at 564. "There must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Sorrell*, 564 U.S. at 572 (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 480-81 (1989). "As in other contexts, these standards ensure not only that the State's interests are proportional to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message." *Id.* (citing *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662-63 (1994)).

### i. AB 2571 restricts non-misleading speech about lawful activities.

The State has claimed that the Appellants' intended speech is unprotected (and may thus be banned) because, in its view, the "truthfulness" of "marketing materials in which firearm-related products are attractive to minors" is "debatable." 3-ER-474-75. For support, the State made the exaggerated claim that "in most cases," minors "cannot lawfully possess" firearms in California. 3-ER-474-75. But California law specifically authorizes minors to possess and use firearms for lawful activities like sport shooting, hunting, and target practice—although under adult supervision. Cal. Penal Code §§ 27505(b), 27510(b), 29615, 29655. And the State even amended AB 2571 after this lawsuit was filed, clarifying that very point by expressly exempting advertisements promoting such lawful activities. 2-ER-242-43.

That minors can and do lawfully possess and use firearms in California was not lost on the legislature when it was considering AB 2571. On the contrary, the legislative history recognizes that "advertising and marketing materials that encourage minors to possess and use firearms may *or may not* concern a lawful activity." 3-ER-475 (emphasis added). But instead of targeting only speech that would promote unlawful activities, the State chose to ban even speech about legal (and constitutionally protected) conduct. To paraphrase Justice Thomas (again), "[e]ven if [California] could prohibit advertisements reading, 'Hey kids, buy [guns] here,' [AB 2571] sweep[s] much more broadly than that." *Lorillard*, 533 U.S. at 579 (Thomas, J., concurring). Indeed, it bans any compensated communication uttered by a "firearm industry member" that is designed, intended, or might "reasonably appear" to be

attractive to minors if it promotes the sale of any "firearm-related product." Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(6).

Thus, AB 2571 restricts speech encouraging the lawful purchase of firearms by adults shopping for themselves or a suitable firearm for their minor child's lawful use. It also bans speech informing minors themselves of firearms that are available for their lawful sporting use or that they might wish to purchase once they turn 18. And because the statutory definition of "firearm-related products" includes not just firearms but also other products legal for people of all ages to buy AB 2571 restricts speech marketing those lawful products to both adults and minors, too.

Ignoring that AB 2571 bans all this speech that does *not* encourage minors to illegally purchase firearms, the district court wrongly held that AB 2571 is merely a "restriction on the marketing and advertising of firearms, ammunition, and firearms components and accessories to minors *to encourage the purchase by them* of these products …." 1-ER-20 (emphasis added). The court also made the tautological finding that "[t]o the extent that AB 2571 restricts advertising encouraging minors to purchase firearms, it regulates speech that is misleading and that invites unlawful activity because it is illegal to sell a firearm to a minor in California under Penal Code Section 27505." 1-ER-25. And while the district court found that advertisements about minors using or possessing firearms are not *inherently* misleading, but only potentially misleading, 1-ER-23 (citing *In re R.M.J.*, 455 U.S. 191, 203 (1982)), it did not extend that analysis or perform the more complete analysis found in later cases.

For instance, in *Peel v. Attorney Registration & Disciplinary Commission*, 496 U.S. 91 (1990), the Supreme Court reiterated the rule that, when faced with merely *potentially*

misleading advertising, courts should inquire into whether the potential to mislead can be cured. *Id.* at 100. In *International Dairy Foods Association v. Boggs*, 622 F.3d 628 (6th Cir. 2010), the Sixth Circuit made that inquiry, holding that because disclaimers could have dispelled any potentially misleading information to consumers, a full ban on such speech necessarily failed the *Central Hudson* test. *Id.* at 640-41.

But here, when the State was asked whether disclaimers attached to "firearm-related marketing" would address the State's purported interests, counsel for the State declined to provide a clear answer. 2-ER-79-80. The district court neither pressed the State for an answer nor conducted the analysis on its own. Refusing to address whether a simple disclaimer would address the State's pretextual justification for AB 2571, the district court erred and the State failed to carry its burden.

### ii. The substantial state interests of AB 2571 are already addressed by existing law.

The second prong of *Central Hudson* requires the State to prove that it has a substantial governmental interest in the restriction of commercial speech. 447 U.S. at 566. The findings of AB 2571 identify two interests it declares are "compelling"—"ensuring that minors do not possess [firearms]" and protecting Californians from gun violence. 3-ER-467. But a general interest in protecting Californians from gun violence is far too abstract to be taken seriously—even under a commercial speech analysis. And AB 2571 was amended by AB 160 to clarify that minors may possess and use firearms for lawful purposes under adult supervision. The district court thus described a narrower governmental interest, holding that the State has "an interest in taking measures designed to effectuate [its] restriction" on firearm sales to minors. 1-

ER-28. But even assuming that narrowed interest is substantial, AB 2571 is flawed because, as discussed below, it is overbroad and abridges protected First Amendment rights in its pursuit of regulating conduct that is already illegal.

### iii. AB 2571 does not directly and materially advance the State's purported interests.

The third prong of *Central Hudson* requires the government to show "that the speech restriction directly and materially advances the asserted governmental interest[s]." *Greater New Orleans Broad. Ass'n v. United States*, 528 U.S. 173, 188 (1999). "This burden requires more than 'mere speculation or conjecture; rather, a governmental body seeking to restrain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1013 (E.D. Cal. 2018) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). This prong is "critical; otherwise, 'a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.'" *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 771).

The Assembly Judiciary Committee's analysis claimed that AB 2571 "directly advances its stated governmental interests to limit the exposure of, and consumption by, minors to such advertising and marketing material, given the lethality (and general illegality for minors) of the products being advertised." 3-ER-475. The argument rests on at least two faulty premises. First, it builds on the deceptive claim that minors may not lawfully possess firearms in California. But more importantly, it subtly morphs the

36

State's pretextual interest in protecting minors from physical harm into an illegitimate interest in limiting the exposure of minors to certain speech the Legislature finds too harmful for them to hear. *See Erznoznik*, 422 U.S. at 213-14 (holding that protected speech "cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them").

Essentially, the State speculates that by silencing speech that promotes the use of firearms in ways that might appear attractive to minors, the State might reduce the demand for possession of firearms by minors and thereby serve its interest in curbing gun violence. At best, this is an impermissible restriction on speech that only indirectly serves the State's public safety interest—if it serves it at all. *Sorrell*, 564 U.S. at 554-55 (holding that the state may not "achieve its policy objectives through the indirect means of restraining certain speech by certain speakers").

At worst, it is the sort of "paternalistic approach" the Supreme Court has long condemned. *Va. Bd. of Pharm.*, 425 U.S. at 770. By denying Californians access to truthful information about lawful firearm-related products, the State seeks to deter minors' supposedly harmful (but legal) possession and use of firearms, as well as their parents' exercise of their right to consent to such use by their minor children. "There is, of course, an alternative to this highly paternalistic approach," the Supreme Court once held. "That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." *Id.*; *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002) (holding that the state cannot justify content-based

restrictions based on the "fear that people would make bad decisions if given truthful information").

Indeed, in *Carey v. Population Services International*, the Supreme Court struck down a state law that prohibited the advertisement of contraceptives to everyone and prohibited both the advertisement and the sale of such products to minors. 431 U.S. 678 at 700-02 (1977). The *Carey* Court reiterated that the government may not "completely suppress the dissemination of concededly truthful information about entirely lawful activity," even when that information could be categorized as "commercial speech." *Id.* at 700 (quoting *Va. Pharm. Bd.*, 425 U.S. at 773). That an expression "may be offensive to some does not justify its suppression." *Id.* at 701 (internal quotation omitted). And "[a]s for the possible 'legitimation' of illicit … behavior":

> [W]hatever might be the case if the advertisements directly incited illicit … activity among the young, none of the advertisements in this record can even remotely be characterized as 'directed to inciting or producing imminent lawless action and… likely to incite or produce such action.' *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). **They merely state the availability of products and services that are not only entirely legal**, *cf. Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376 (1973), **but constitutionally protected**."

*Id.* 701-02 (emphasis added).

When California amended AB 2571 while this lawsuit was pending, it adopted a new exemption for communications promoting or offering certain firearm-related programs. With AB 160's amendments to AB 2571, California now acknowledges that minors may lawfully participate in shooting and hunting activities with parental authorization—and that such behavior is, dare we say, normal conduct. If shooting

and hunting by minors is itself lawful conduct, California has flitted away whatever meager justification it might have had to forbid the dissemination and receipt of communications advertising the availability of lawful firearm-related products necessary for minors to engage in those activities. In short, the law does not directly or materially advance any substantial state interest.

### iv. AB 2571 is far more extensive than necessary to achieve the State's purported interests

The last prong of *Central Hudson* requires the State to show that the speech restriction "is no more extensive than necessary to further" its purported interests. 447 U.S. at 569-70. Even commercial speech restrictions purportedly aimed at protecting minors must be narrowly drawn to achieving an asserted state interest. *See, e.g.*, *Lorillard*, 533 U.S. at 565-66 (striking restrictions on tobacco marketing likely to be observed by children). Again, "minors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may the government bar public dissemination of protected materials to them." *Erznoznik*, 422 U.S. at 212-13. So even if the Court assumes AB 2571 directly advances some substantial interest, the law must still be struck down because it is far more extensive than necessary to achieve that interest.

As noted, AB 2571 includes communications that are equally attractive to adults who have a right to obtain information about such products to make informed decisions for both themselves and their children. As the bill's legislative history confirms, "*the prohibition on marketing of firearms that are 'attractive to children' applies whether the media is directed to children or a general audience*. In other words, it applies to all

marketing, regardless of the target audience." 3-ER-462 (emphasis added). AB 2571 thus impinges on the protected interest of "firearm industry members" to convey "truthful information about their products to adults," and adults' "corresponding interest in receiving truthful information about [firearm-related] products" to make informed decisions for both themselves and their children. *Lorillard*, 533 U.S. at 564. It is also "seriously overinclusive because it abridges the First Amendment rights of young people whose parents … think [the shooting sports] are a harmless [even beneficial] pastime." *Brown*, 564 U.S. at 805.

But even if AB 2571 targeted a narrower class of speech, it would remain far too broad for the simple reason that the State "has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech." *Valle Del Sol v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013). "[I]f the [g]overnment could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the [g]overnment must do so." *Thompson*, 535 U.S. at 371. Among the many options available to the State, the most obvious is to directly regulate the very conduct with which the State purports to be concerned—or to enforce its existing regulations on that conduct. *See, e.g.*, *Valle Del Sol*, 709 F.3d at 826-27 (holding that Arizona could further its interest in traffic safety by enforcing existing traffic regulations); *Lorillard*, 533 U.S. at 586 (Thomas, J., concurring) (observing that "Massachusetts already prohibits the sale of tobacco to minors, but it could take steps to enforce that prohibition more vigorously").

California knows how to craft narrow and targeted speech regulations to deter commercial sales it deems harmful to children. In the Business & Professions Code

section immediately following AB 2571 (codified at section 22949.8), California addresses the marketing of tobacco products to minors. Stop Tobacco Access to Kids Enforcement ("STAKE") Act, Cal. Bus. & Prof. Code §§ 22950, et seq.[8] The STAKE Act lists the enforcement duties of the State Department of Public Health that sets forth (among other mechanisms) a protocol for all tobacco retailers requiring conspicuous posting at each point of purchase of "a notice that selling tobacco products to anyone under 21 years of age is illegal and subject to penalties." *Id.* § 22952(b). Presumably, other than making a knowing and willful sale of tobacco products to a minor, that notice fulfills the tobacco retailer's duty to refrain from soliciting an illegal tobacco transaction from a minor, and all without censoring the invitation to commercial transactions for adults who want to purchase tobacco.

Likewise, California law also already requires notices to be posted by all licensed firearms dealers setting forth the core federal and state laws relating to firearms sales (which necessarily include the prohibition of firearm sales to minors). Cal. Penal Code § 26835. The notices must also include mandatory warnings about allowing minors to have access to firearms without adult supervision. *Id.* § 26835(a)(1)-(5). If the notice requirement and other enforcement mechanisms of the STAKE Act are enough to deter tobacco sales to minors, the existing notice and disclaimer requirements about firearms should likewise be enough to address the interests California claims to have under AB 2571.

---

[8] Tobacco sales to minors are also illegal under existing law, but without the adult-supervised-use exception found in (and endorsed) by California's firearms laws.

These parallel statutes mandating commercial speech at the point of sale of products that may not be sold to minors necessarily invoke the canon that legislatures are presumed to be knowledgeable about existing laws pertinent to the legislation they enact. This canon of statutory construction requires courts to interpret statutes relating to the same subject matter to be construed together, so that ambiguities in one statute may be resolved by looking at another statute on the same subject. *See* Antonin Scalia & Bryan Garner, *Reading the Law: The Interpretations of Legal Texts*, § 39 Related Statutes Canon (2012). The ambiguity, and therefore overbreadth of AB 2571, arises in at least two ways. First, the Attorney General's inability to coherently address whether disclaimers would immunize firearm industry members from liability during oral argument constitutes an admission by the State of the ambiguity of AB 2571. Second, the trial court's own lack of inquiry and its reluctance to press the State to address this issue, further reveals the ambiguity and constitutes reversible error on the part of the trial court. 2-ER-79-80.

"'Court[s] will often strain to construe legislation so as to save it against constitutional attack, [but] it must not and will not carry this to the point of perverting the purpose of a statute . . .' or judicially rewriting it." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986) (quoting *Aptheker v. Sec. of State*, 378 U.S. 500, 515, (1964)). If this Court cannot rewrite AB 2571 to include immunity from the law if firearm-related advertisements (that are somehow attractive to minors) include appropriate disclaimers, then this Court must find that AB 2571 is fatally overbroad because it does not include an express disclaimer provision like the STAKE Act (even

though there is an implied disclaimer already required by existing law at Penal Code section 26835).

Again, selling firearms to minors is already a crime in California. U.S.C. §§ 922(b)(1); Cal. Penal Code §§ 27505, 27510, 27590. Words making up an attempt or conspiracy to violate laws banning the sale of firearms to minors also constitute a crime. *See* Cal. Penal Code §§ 663-664 (criminal attempt); *id.* §§ 182-185 (conspiracy); 18 U.S.C. § 371 (federal conspiracy). And critically, all commercial firearm transactions in California must take place through a federally licensed firearm dealer at either the dealer's principal place of business or at a highly regulated gun show event. Cal. Penal Code §§ 28050, 28700-28715. Since it is already illegal to sell firearms to minors, and all commercial firearm transactions in California are limited to licensed firearm dealers, it is hard to see what interest California has in censoring marketing communication of any kind to anyone to prevent what is already an illegal act in a highly regulated industry.

In other words, California already has all of the law enforcement tools it needs to *directly* combat the unlawful sale of firearms to minors. The First Amendment is at the heart of the tension between this policy and the statutory right of minors to possess and use firearms under adult supervision. "If the [State] considers its existing safeguards inadequate to combat [firearm misuse by minors], it may pass additional direct regulations within constitutionally permissible boundaries." *Tracy Rifle*, 339 F. Supp. 3d at 1018-19.6 Or it may counter firearm advertising with which it disagrees with "more speech, not enforced silence." *Lorillard*, 533 U.S. at 586 (Thomas, J., concurring). What the State may not do is censor information—even commercial

information that is directed at minors—about lawful products used for lawful activities.

**B.** **AB 2571 Violates the First Amendment Right to Freedom of Association**

The First Amendment protects not only the right to free speech but also the right to freely associate. U.S. Const., amend. I. The freedom to associate often merges with the right to free expression because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Patterson*, 357 U.S. 449, 462 (1958). "Governmental action which may have the effect of curtailing" this right "is subject to the *closest* scrutiny." *Id.* at 461-62. So for the same reasons AB 2571 offends the First Amendment right to speech, it also offends the right of Appellants to associate.

AB 160's amendments to AB 2571 after this lawsuit was filed appear to be a correction by the State to avoid the facial challenge set forth in Appellants' initial motion for preliminary injunction. To that extent, Appellants are already the prevailing party on their freedom of association claim. The amendments to AB 2571 do not, however, mitigate any as-applied challenge that Appellants have raised. While Appellants waive no such claim, they acknowledge that resolution of that claim may have to wait for further development of the facts because the State amended AB 2571 while the motion for preliminary injunction was pending.

**C.** **AB 2571 Violates the Equal Protection Clause**

Singling out Appellants because of the content of their speech, as AB 2571 does, also violates Appellants' fundamental rights under the Equal Protection Clause.

U.S. Const. amend. XIV. The Supreme Court, long ago, recognized that *both* the Equal Protection Clause *and* the First Amendment forbid the government from granting "the use of a forum to people whose views it finds acceptable, but deny[ing] use to those wishing to express less favored or more controversial views." *Mosley*, 408 U.S. at 96. If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heightened scrutiny. *See Loving v. Virginia*, 388 U.S. 1, 11 (1967).

AB 2571, which targets only "firearm industry members," *including organizations whose purpose is to preserve and promote the Second Amendment right to keep and bear arms*, is undeniably infused with the State's desire to harm this politically unpopular group. It was introduced at the direction of the popular governor of California, who does not believe that those who engage in or support the now-banned speech are "decent human beings" or have "common sense." Rosalio Ahumada, *Gavin Newsom Signs New Gun Safety Laws Targeting Illegal Weapons, Marketing to Kids*, Sac. Bee (July 1, 2022), *available at* https://www.sacbee.com/news/local/crime/article263108183.html;[9] *see also* 3-ER-459, 493, 514, 535-36, 538-40, 543-52. And the bill's legislative history is littered with references to the State's concerns with the "problem" of exposing children to the "gun culture." *See, e.g.*, 3-ER-460-61, 465, 474-75, 498-99, 517-18.

Once again, the State cannot justify AB 2571 under either heightened scrutiny for purposes of the First Amendment, and it cannot justify it for purposes of equal protection either. Because the law is not narrowly tailored to serve some compelling

---

[9] The entire video of Governor Newsom's remarks is available on the Sacramento Bee website and the official Twitter page of the Office of the Governor of California.

government interest, it unconstitutionally denies Appellants equal protection under the law. It is invalid, and the district court erred in holding that the Appellants were not likely to succeed on the merits of their equal protection claim.

## II. THE REMAINING PRELIMINARY INJUNCTION FACTORS SUPPORT TEMPORARY RELIEF

Wrongly holding that the Appellants had not proven they were likely to succeed on the merits, the district court did not consider seriously the remaining preliminary injunction factors. 1-ER-50-52. But because the Appellants are likely to succeed and AB 2571 violates their fundamental rights, the remaining factors necessarily weigh in the Appellants' favor.

### A. Irreparable Harm Is Presumed Because the AB 251 Violates Appellants' Rights Under the First Amendment and Equal Protection Clause

If this Court concludes that Appellants are likely to succeed on any one of their alleged constitutional violations, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). In the First Amendment context, such harm is particularly acute. Indeed, the Supreme Court has long held that "[t]he loss of First Amendment freedoms, for even minimal periods, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.

46

### B. The Balance of Equities and Public Interest Warrant Relief

When the government is a party, the final two factors of the preliminary injunction test—whether the balance of equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court's inquiry thus weighs the interests of the Appellants, the government, and the public, balancing the relative harms to each should preliminary relief be granted or denied. Applying this test here favors injunctive relief.

The Ninth Circuit has consistently held that when challenging government action that affects the exercise of constitutional rights—especially First Amendment freedoms—"[t]he balance of equities and the public interest ... tip *sharply* in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (emphasis added). Certainly, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights. *Index Newsps. LLC v. U.S. Marshalls Serv.*, 977 F.3d 817 (9th Cir. 2020). Certainly, there is a "'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional [law] ... would infringe not only the free expression interests of plaintiffs but also the interests of other people' subjected to the same restrictions." *Id.* (citation omitted). "[E]nforcement of an unconstitutional law," on the other hand, "is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013); *see also Am. Civ. Libs. Union v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a law that is probably unconstitutional.")

Enjoining the enforcement of AB 2571 will end the irreparable harm are now suffering, including the violation of their rights to free speech, free association, and equal protection under the law, as well as the state's improper interference with their missions. But not only the Appellants' rights are at stake, but so too are the rights of all people seeking to engage in protected expression barred by the state's extraordinarily broad ban, as well as those who seek to hear the messages the state has banished. These interests far outweigh whatever burden the State might trot out. The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

To be sure, the State may have a general public safety interest in preventing "gun violence" or even a specific interest in stopping minors from illegally obtaining firearms. But enforcement of AB 2571 does not serve those interests in any meaningful (or appropriately tailored) way—particularly because the State can readily further such goals by enforcing existing laws directly prohibiting the unlawful possession and sale of firearms to and by minors.

/ / /

/ / /

/ / /

48

## CONCLUSION

For these reasons, the district court committed a reversible error in denying the Appellants' motion for preliminary injunction. Appellants ask this Court to reverse that order and remand for further proceedings.

Dated: December 19, 2022                    Respectfully submitted,

                                            **MICHEL & ASSOCIATES, P.C.**

                                            s/ Anna M. Barvir
                                            ────────────────────────
                                            Anna M. Barvir
                                            *Attorneys for Plaintiffs-Appellants Junior Sports*
                                            *Magazines, Inc., Raymond Brown, California*
                                            *Youth Shooting Sports Association, Inc., Redlands*
                                            *California Youth Clay Shooting Sports, Inc.,*
                                            *California Rifle & Pistol Association,*
                                            *Incorporated, The CRPA Foundation, and Gun*
                                            *Owners of California, Inc.*

Date: December 19, 2022                     **LAW OFFICES OF DONALD KILMER, APC.**

                                            s/ Donald Kilmer
                                            ────────────────────────
                                            Donald Kilmer
                                            *Attorney for Plaintiff-Appellant Second*
                                            *Amendment Foundation*

49

# ADDENDUM

# ADDENDUM

**U.S. Const. amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**U.S. Const. amend. XIV, § 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Cal. Bus. & Prof. Code § 22949.80**

(a)  (1) A firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

(2) In determining whether marketing or advertising of a firearm-related product is attractive to minors, as described in paragraph (1), a court shall consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:

(A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

(3) This subdivision does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

(b) A firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

(c) As used in this chapter:

(1) "Ammunition" has the same meaning as provided in subdivision (b) of Section 16150 of the Penal Code.

(2) "Firearm" has the same meaning as provided in subdivisions (a) and (b) of Section 16520 of the Penal Code.

(3) "Firearm accessory" means an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm.

(4) "Firearm industry member" means any of the following:

(A) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i) Advertises firearm-related products.

(ii) Advertises events where firearm-related products are sold or used.

(iii) Endorses specific firearm-related products.

(iv) Sponsors or otherwise promotes events at which firearm-related products are sold or used.

(5) "Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that meets any of the following conditions:

(A) The item is sold, made, or distributed in California.

(B) The item is intended to be sold or distributed in California.

(C) It is reasonably foreseeable that the item would be sold or possessed in California.

(D) Marketing or advertising for the item is directed to residents of California.

3

(6) "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction.

(7) "Minor" means a natural person under 18 years of age who resides in this state.

(d) This section shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered.

(e) (1) Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

(2) The court shall impose a civil penalty under paragraph (1) for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(3) A person harmed by a violation of this section may commence a civil action to recover their actual damages.

(4) The court shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the court deems necessary to prevent the harm described in this section.

(5) Upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in an action brought pursuant to this section.

(6) Each copy or republication of marketing or advertising prohibited by this section shall be deemed a separate violation.

(f) The provisions of this section are severable. If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter. The Legislature hereby declares that it would have adopted this section and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this section or application thereof would be subsequently declared invalid.

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, an electronic PDF of APPELLANTS' OPENING BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: December 19, 2022      Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
Anna M. Barvir
*Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-56090

I am the attorney or self-represented party.

**This brief contains** | 13,318 | **words,** including | 349 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [ ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Anna M. Barvir | **Date** | 12/19/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*