Case No. 22-56090

In the United States Court of Appeals
for the Ninth Circuit

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants*,

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

**APPELLANTS' EXCERPTS OF RECORD
VOLUME I OF V**

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

December 19, 2022

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                Attorneys Present for Defendants:

Not Present                                      Not Present

**Proceedings:**      (IN CHAMBERS) - PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION (Dkt. 12-1, filed on July 20, 2022)

## I.   INTRODUCTION

On July 7, 2022, plaintiffs Junior Sports Magazines Inc.; Raymond Brown, California Youth Shooting Sports Association, Inc.; Redlands California Youth Claw Shooting Sports, Inc.; California Rifle & Pistol Association, Incorporated; The CRPA Foundation; Gun Owners of California, Inc.; and Second Amendment Foundation (collectively, "plaintiffs") filed suit against Rob Bonta, in his official capacity as the Attorney General of California.   Dkt. 1 ("Compl.").   Plaintiffs challenge the constitutionality and seek to prevent the enforcement of California Business & Professions Code Section 22949.80, which prohibits firearm industry members from advertising or marketing, as defined, firearm-related products in a "manner that is designed, intended, or reasonably appears to be attractive to minors."

Plaintiffs' complaint asserts claims for (1) violation of the right to free speech ("political & ideological speech") under the First Amendment; (2) violation of the right to commercial speech under the First Amendment; (3) violation of the rights to association and assembly under the First Amendment; and (4) violation of the Fourteenth Amendment's Equal Protection Clause.  Compl., ¶¶ 107–230.

On July 20, 2022, plaintiffs filed a motion for a preliminary injunction enjoining enforcement of Section 22949.80.  Dkt. 12-1 ("Mot.").  That same day, plaintiffs filed an *ex parte* application to shorten time for a hearing on their preliminary injunction motion, dkt. 13, which the Court denied on July 22, 2022, dkt. 15.

0002

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

On August 8, 2022, defendant filed his opposition. Dkt. 19 ("Opp."). On August 15, 2022, plaintiffs filed their reply. Dkt. 21 ("Reply").

On August 18, 2022, plaintiffs filed an *ex parte* application to file a supplemental brief in light of defendant's communications with plaintiffs alerting them to potential legislative changes to the challenged statutory provisions. Dkt 23.

On August 19, 2022, the Court granted plaintiffs' *ex parte* application to file the supplemental brief. Dkt. 26. The Court then vacated the hearing scheduled for August 22 in light of the then-pending introduced amendments, and scheduled a status conference for September 12, 2022, to schedule further briefing on the motion for preliminary injunction. Dkt. 24.

On August 24, 2022, plaintiffs filed an emergency petition to the Ninth Circuit for a writ of mandamus to compel a ruling on the preliminary injunction motion. Junior Sports Magazines Inc., et al. v. United States District Court for the Central District of California, No. 22-70185 (9th Cir. Aug. 25, 2022). The Ninth Circuit denied the emergency petition on August 25, 2022. Id.

On August 30 and 31, 2022, the California Senate and Assembly passed AB 160, containing amendments to Section 22949.80.

On September 12, 2022, the Court held a status conference at which it directed the parties to file supplemental briefing addressing the impact of AB 160's amendments to Section 22949.80 on plaintiffs' motion for preliminary injunction.

On September 28, 2022, plaintiffs filed a supplemental brief and supporting declarations. Dkt. 30 ("Pls.' Supp. Brief").

On September 29, 2022, Governor Gavin Newsom signed AB 160 into law.

On October 7, 2022, defendant filed his supplemental brief. Dkt. 32 ("Def.'s Supp. Brief").

On October 17, 2022, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

## II.    BACKGROUND

The following facts are taken from the complaint, the declarations and exhibits submitted in support and opposition to plaintiffs' motion, and matters subject to judicial notice.

### A.    Increase in gun violence spurs legislative action in California

Gun violence has increased in the United States over the past several years. See, e.g., Plaintiffs' Request for Judicial Notice ("RJN"), Ex. 7 at 1. This year alone, several mass shootings, such as the killing of 19 children at an elementary school in Uvalde, Texas, have sparked calls to action across the country. RJN, Ex. 6 at 6. In California, state legislators have introduced several new bills. See RJN, Ex. 7 at 3 (listing related gun legislation). Governor Gavin Newsom signed many of them into law, including Business & Professions Code Section 22949.80 (referred to hereinafter as "AB 2571"), challenged in this litigation.

On February 18, 2022, Assemblymember Rebecca Bauer-Kahan introduced AB 2571. The stated purpose of AB 2571 was to "restrict the marketing and advertising of firearms to minors in all media. Specifically, [AB 2571] would prohibit [a firearm industry member] . . . from marketing or advertising firearms, ammunition, or reloaded ammunition to minors." RJN, Ex. 4 at 1.

On June 30, 2022, after both houses of the state legislature had passed AB 2571, Governor Gavin Newsom signed the bill into law. Compl., ¶ 43. AB 2571 was designated an "urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution," enabling it to take immediate effect. RJN, Ex. 1 at 4.

AB 2571 was passed with an accompanying policy statement. Specifically, the Legislature found that California "has a compelling interest in ensuring that minors do not possess these dangerous weapons and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." Id. at 2. Accordingly, the Legislature found that "[t]he proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." Id. at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

The Legislature further determined that "[t]hese weapons are especially dangerous in the hands of minors because current research and scientific evidence shows that minors are more impulsive, more likely to engage in risky and reckless behavior, unduly influenced by peer pressure, motivated more by rewards than costs or negative consequences, less likely to consider the future consequences of their actions and decisions, and less able to control themselves in emotionally arousing situations." Id. at 1–2. The Legislature noted that "firearms manufacturers and retailers continue to market firearms to minors," even with the fact that "children are especially susceptible to marketing appeals, as well as more prone to impulsive, risky, thrill-seeking, and violent behavior than other age groups." See id. at 2. As the Legislature described, "[f]irearms marketing contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully." Id.

The Legislature concluded that "intent . . . in enacting this act" is "to further restrict the marketing and advertising of firearms to minors." Id.

**B. What AB 2571 seeks to regulate**

As initially enacted, AB 2571 adds Chapter 39 "Marketing Firearms to Minors" to the California Business and Professions Code. Section 22949.80(a)(1) establishes that "[a] firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors."

The chapter further defines what "firearm industry member," "firearm-related product," "attractive to minors," and "marketing or advertising" respectively mean.

"Firearm industry member" is defined by Subsection 22949.80(c)(4) in two non-exclusive ways. The first definition is a "person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products." Id., § 22949.80(c)(4)(A). The second definition is:

> A person, firm corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

    (i)     Advertises firearm-related products.

    (ii)    Advertises events where firearm-related products are sold or used.

    (iii)   Endorses specific firearm-related products.

    (iv)   Sponsors or otherwise promotes events at which firearm-related products are sold or used.

Id., § 22949.80(c)(4)(B).

A "firearm-related product" is defined by Subsection 22949.80(c)(5) as a "firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory" meeting any of these four conditions: "[t]he item is sold, made, or distributed in California," "[t]he item is intended to be sold or distributed in California," "[i]t is reasonably foreseeable that the item would be sold or possessed in California," or "[m]arketing or advertising for the item is directed to residents of California." Id., § 22949.80(c)(5).

AB 2571 defines "marketing or advertising" in Subsection 22949.80(c)(6) to mean, "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase or use the product or service." Id., § 22949.80(c)(6).

To determine whether "marketing or advertising of a firearm-related product is attractive to minors,"[1] Subsection 22949.80(a)(2) establishes a "totality of the circumstances" test for courts to use. Id., § 22949.80(a)(2). Factors to be considered include, but are not limited to, whether the marketing or advertising:

    (A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

---

[1] In this chapter, "minor" is defined as a "natural person under 18 years of age who resides in [California]." Id., § 22949.80(c)(7).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|-------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

(B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

Id.

Anyone who violates AB 2571 "shall be liable for a civil penalty not to exceed [$25,000] for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction." Id. § 22949.80(e)(1).[2] Subsection 22949.80(e)(3) also authorizes any "person harmed by a violation of this section" to "commence a civil action to recover their actual damages," as well as "reasonable attorney's fees and costs." Id. § 22949.80(e)(3)–(5).[3]

Finally, AB 2571 contains a severability clause, stating in full that:

---

[2] Subsection 22949.80(e)(6) provides that "each copy or republication of marketing or advertising prohibited by this section shall be deemed a separate violation."

[3] Additionally, AB 2571 contains two privacy-related provisions, Subsections 22949.80(b) and 22949.80(d). Neither of those have been challenged by plaintiffs in their complaint or briefing on this motion, although they are evidently encompassed by plaintiffs' request to "enjoin the enforcement of section 22949.80." Mot. at 25.

0007

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

The provisions of this section are severable. If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter. The Legislature hereby declares that it would have adopted this section and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this section or application thereof would be subsequently declared invalid.

Id. § 22949.80(f).

### C.     AB 160 Amends AB 2571

The amendments to AB 2571 changed the statute in three ways. First, the amendment replaced the phrase "*concerning* any firearm-related product" with "*offering or promoting* any firearm-related product" in Subsection 22949.80(a)(1). That section now reads in full that "[a] firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors." Id. § 22949.80(a)(1).

Second, the amendment modified the definition of "marketing or advertising" in Subsection 22949.80(c)(6) to remove references to the words "use" and "service." The subsection now defines "marketing or advertising" to mean, "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." Id. § 22949.80(c)(6).

Third, the amendment created Subsection 22949.80(a)(3), which states that Subsection 22949.80(a)'s prohibition "does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp." Id. § 22949.80(a)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

### D.    Plaintiffs' claims for relief

As set forth above, plaintiffs bring four claims for relief. In their initial moving papers filed on July 20, 2022, before the enactment of the amendments, plaintiffs contended that the definition of "firearm industry member" may be read to encompass "organizations formed to promote and preserve the rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses or firearm-safety training, and gun show promoters[.]" Mot. at 3.

Similarly, plaintiffs asserted that AB 2571 restricts not only marketing or advertising for the purchase of firearms by minors but also "honest commercial speech promoting lawful activities and services," as well as "a broad category of pure speech," including communications by youth hunting and shooting magazines seeking to promote shooting sports; education campaigns by gun rights organizations encouraging youth to engage in recreational or competitive shooting activities; promotional merchandise and giveaways by firearm industry members, including nonprofit Second Amendment organizations; recommendations provided in youth firearm- and hunter-safety courses; and communications depicting minors enjoying or encouraging minors to enjoy their right to possess and use firearms at recreational or competitive shooting events, as well as communications promoting such events; among other communications. Id. at 4.

Throughout their briefing, plaintiffs also argue that California lawmakers have shown clear "contempt" and "animus" for the firearm industry in public discussions of the statute. See, e.g., id. at 1, 8, 9.

Accordingly, plaintiffs argue that as content-based and viewpoint-based regulation of protected, non-commercial speech, AB 2571 does not withstand strict scrutiny under the First Amendment. Plaintiffs also argue that to the extent AB 2571 restricts commercial speech, it cannot withstand scrutiny under the less stringent test set forth in Central Hudson Gas & Electric Corporation v. Public Service Commission of New York, 447 U.S. 557, 566 (1980). Finally, plaintiffs argue that to the extent that AB 2571 restricts their political and ideological free speech rights, the legislation thereby violates plaintiffs' right to associate under the First Amendment and right to equal protection under the Fourteenth Amendment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL       'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

In their supplemental briefing filed on September 28, 2022, after AB 2571 was amended, plaintiffs contend that the statutory provisions, as amended, still violate their constitutional rights, with the changed language constituting a "trivial word swap," and the added category for exceptions simply highlighting the law's allegedly unconstitutional censorship. See generally Pls.' Supp. Brief.

Defendant disputes plaintiffs' contentions as set forth in greater detail below.

## III.    REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 empowers a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also Mullis v. U. S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).

Here, plaintiffs request that the Court take judicial notice of the following documents:

(1) Assembly Bill 2571, 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex.1);

(2) Assembly Privacy & Consumer Prot. Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan) – As Amended April 7, 2022, 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 2);

(3) Assembly Judiciary Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan) – As Amended April 7, 2022, 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 3);

(4) Assembly Appropriations Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan) – As Amended April 27, 2022, 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 4);

(5) Assembly, Assembly Floor Analysis Re: AB 2571 (Bauer-Kahan and Gipson) – As Amended April 27, 2022, 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 5);

(6) Senate Judiciary Comm., Bill Analysis Re: AB 2571 (Bauer-Kahan), 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 6);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

(7) Senate Appropriations Comm. Bill Analysis Re: AB 2571 (Bauer-Kahan), 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 7);

(8) Senate Rules Comm., Senate Floor Analysis Re: AB 2571 (Bauer-Kahan and Gipson), 2021-2022 Reg. Sess. (Cal. 2022) (RJN Ex. 8); and

(9) Assembly, Concurrence in Senate Amendments Re: AB 2571 (Bauer-Kahan and Gipson) – As Amended June 15, 2022 (RJN Ex. 9); and

(10) Assembly Bill 160, 2021–2022 Reg. Sess. (Cal. 2022) (Plaintiffs' Supplemental RJN "Supp. RJN").

The Court finds and concludes that plaintiffs' request for judicial notice, which defendant does not oppose, is appropriate. "Legislative history is properly a subject of judicial notice." Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). Accordingly, the Court **GRANTS** plaintiffs' request for judicial notice as to these documents.

## IV. LEGAL STANDARD

### A. Preliminary injunction

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)); accord Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as follows: a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." City & County of San Francisco v. USCIS, 944 F.3d 773, 788–89 (9th Cir. 2019) (quoting Winter, 555 U.S. at 20) (alterations in original). "Likelihood of success on the merits is the most important factor." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018) (quotations omitted).

Alternatively, " 'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the

0011

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

Finally, in the Ninth Circuit, a preliminary injunction is disfavored when it is "identical to the ultimate relief sought in the case." Progressive Democrats for Soc. Just. v. Bonta, No. 21-CV-03875-HSG, 2021 WL 6496784, at *11 (N.D. Cal. July 16, 2021) (citing Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808–09 (9th Cir. 1963). "It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial." Tanner, 316 F.2d at 808–09.

### B.    Constitutional avoidance of facial challenges

"To succeed in a typical facial attack, [a plaintiff] would have to establish that no set of circumstances exists under which [the statute] would be valid, or that the statute lacks any plainly legitimate sweep." United States v. Stevens, 559 U.S. 460, 472 (2010) (internal citations and quotation marks omitted). Claims of facial invalidity are disfavored because they "carr[y] much too promise of premature interpretation of statutes on the basis of factually barebones records." Sabri v. United States, 541 U.S. 600, 609 (2004) (internal formatting and quotation marks omitted).

When constitutional issues are raised, facial challenges are also to be analyzed in light of the rules of construction that counsel in favor of avoiding constitutional questions where reasonably possible. See Ashwander v. Tennessee Valley Auth., 297 U.S. 288 (1936). Thus, when "an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature]." Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988).

In light of these principles, the Supreme Court has repeatedly cautioned that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the

0012

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

people." Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 329 (2006) (quoting Regan v. Time, Inc., 468 U.S. 641, 652 (1984) (plurality opinion)). Accordingly, "the touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'" Id. at 330 (quoting Califano v. Westcott, 443 U.S. 76, 94 (1979) (Powell, J., concurring in part and dissenting in part)). When an application or portion of a statute is deemed unconstitutional, courts "must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" Id.

### C.     Principles of statutory interpretation

"If the statutory language is plain, [a court] must enforce it according to its terms." King v. Burwell, 576 U.S. 473, 486 (2015). "But oftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" Id. (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S., 120, 132 (2000)). Therefore, "when deciding whether the language is plain, [a court] must read the words 'in their context and with a view to their place in the overall statutory scheme.'" Id. The Ninth Circuit has further described the steps in this task: courts "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of [the legislature]. Then, if the language of the statute is unclear, [courts] look to its legislative history." Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 830–31 (9th Cir. 1996), as amended on denial of reh'g (May 30, 1996) (internal quotation omitted).

## V.     DISCUSSION

### A.     Likelihood of Success on the Merits

To prevail on their motion for a preliminary injunction, plaintiffs must at a minimum establish that there are "serious questions" on the merits of at least one of its claims for relief. Cottrell, 632 F.3d at 1135. As discussed below, the Court finds and concludes that plaintiffs fail to raise serious questions going to the merits of their claims.

#### 1.     First Amendment Free Speech Claim (Political and Ideological)

Plaintiffs' first claim asserts that AB 2571 violates their right to free speech under the First Amendment to the U.S. Constitution. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." "Content-based laws" are "those that target speech based on its communicative content." Reed v. Town of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

Gilbert, 576 U.S. 155, 163 (2015). A content-based restriction on speech is generally subject to strict scrutiny. Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."). Applying that standard, a law found to be content based is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, 576 U.S. at 163. However, "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Cent. Hudson v. Pub. Serv. Comm'n, 447 U.S. at 562–63 (internal citation omitted).

Determining whether AB 2571 restricts non-commercial speech subject to strict scrutiny requires interpretation of the scope and application of the challenged law. To provide clarity on the statutory interpretation issues presented by AB 2571, the Court first describes the parties' pre-amendment arguments before addressing the parties post-amendment arguments.

### a. Parties' Arguments About the Scope of AB 2571 As Originally Enacted

In their initial memorandum in support of their motion for a preliminary injunction, plaintiffs argued that AB 2571 regulates political and educational, as well as commercial, speech and constitutes a content-based and viewpoint-based restriction. Mot. at 11. Plaintiffs identified several provisions of AB 2571 that they argued result in restricting non-commercial speech. First, plaintiffs pointed to § 22949.80(c)(4), which defines "firearm industry members," whose speech the statute restricts, to include the following:

B. A person, firm corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i)     Advertises firearm-related products.

(ii)    Advertises events where firearm-related products are sold or used.

(iii)   Endorses specific firearm-related products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

    (iv)    Sponsors or otherwise promotes events at which firearm-related products are sold or used.

According to plaintiffs, Section 22949.80(c)(4), as originally enacted, may be read to encompass "organizations formed to promote and preserve the rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses or firearm-safety training, and gun show promoters[.]" Id. at 3.

Plaintiffs additionally point to Subsection 22949.80(c)(6), which defines "marketing or advertising" to mean, "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product or service the primary purpose of which is to encourage recipients of the communication to purchase or use the product or service." Lastly, plaintiffs point to § 22949.80(a)(1), which restricts marketing or advertising communications "*concerning* any firearm-related product." Id. (emphasis added).

Plaintiffs contend that, taken together, these provisions encompass communications concerning firearms by firearm industry members, including "organizations formed to promote and preserve the rights to keep and bear arms," with the primary purpose of "promot[ing] not just the purchase but even 'the *use* [of] the product or service.' " Mot. at 3 (quoting Cal. Bus. & Prof. Code § 22949.80(c)(6)). Thus, plaintiffs assert that AB 2571 restricts not only marketing or advertising aimed at selling firearms to minors, but also "honest commercial speech promoting lawful activities and services," as well as "a broad category of pure speech," including communications by youth hunting and shooting magazines seeking to promote shooting sports; education campaigns by gun rights organizations encouraging youth to engage in recreational or competitive shooting activities; promotional merchandise and giveaways by firearm industry members, including nonprofit Second Amendment organizations; recommendations provided in youth firearm- and hunter-safety courses; and communications depicting minors enjoying or encouraging minors to enjoy their right to possess and use firearms at recreational or competitive shooting events, as well as communications promoting such events; among other communications. Id. at 4.

Plaintiffs go on to argue that these prohibitions on speech constitute content-based restrictions because they "single[] out speech based on both its 'particular subject matter' . . . and its 'function or purpose.' " Id. at 11 (quoting Reed v. Town of Gilbert, 576 U.S. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|-------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

163 (explaining that content-based restrictions "defin[e] regulated speech by particular subject matter" or "by its function or purpose.")). Plaintiffs further contend that AB 2571 discriminates based on viewpoint because it "target[s] only the speech of organizations formed to promote the possession and use of 'firearm-related products,' " including nonprofit organizations soliciting youth membership and promoting pro-gun messages, while permitting anti-gun organizations to solicit youth membership and promote anti-gun messages. Id. at 12. See Reed, 576 U.S. at 168 ("Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.' ") (quoting Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995)). In support of the position that AB 2571 constitutes viewpoint discrimination, plaintiffs argue that California lawmakers have shown clear "contempt" for the firearm industry in public discussions of the statute. Mot. at 1, 8, 9.

According to plaintiffs, AB 2571 is subject to strict scrutiny, which applies to content-based restrictions on speech and requires that such restrictions be upheld only if the government proves that they are "narrowly tailored to serve [a] compelling state interest." Reed, 576 U.S. at 163; Mot. at 13. In the alternative, plaintiffs urge the Court to apply intermediate scrutiny, requiring the government to prove that AB 2571 is "narrowly tailored to serve a significant government interest." Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 764 (1994); Mot. at 13.

In opposition to plaintiffs' argument that AB 2571's prohibitions encompass political speech, defendant contends that plaintiffs read the statute too broadly and that, when read holistically and in its entirety, it is clear that the statute "does not purport to restrict communications of *any* kind about firearms or firearm-related activities" but rather regulates the advertising of firearms-related products to minors in exchange for monetary compensation. Opp. at 9–10. Defendant points to several aspects of the statute in support of this reading. First, defendant cites the definition of "firearm-related product," "which encompasses only certain tangible products, described as 'items' – firearms, their components, and accessories." Id. at 9 (quoting § 22949.80(c)(5)). Next, defendant argues that the terms "marketing and advertising" imply "an offer to engage in a *commercial* transaction for the *sale and purchase*" of a product. Id. Further, defendant contends that the title of the bill, "Marketing Firearms to Minors," additionally supports this reading, as does the bill's legislative purpose and history, which explicitly reflect an intent to regulate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

"commercial speech" and "advertising of firearms to minors." Id. at 9–10 (quoting RJN, Ex. 1 at 1, 2).

Contrary to plaintiffs' contention that the word "use" in the statute's definition of "marketing or advertising" sweeps within its scope a host of communications promoting use of firearms, defendant argued that the word "use" is limited by the definition of product, and, therefore, the statute's restrictions on marketing and advertising with the primary purpose of encouraging "use of a product or service" do not include communications concerning educational or sporting events or political speech. Id. at 9, n.3. Rather, they apply to communications encouraging use of a product offered for sale, that is, in "exchange for monetary compensation." Id. § 22949.80(c)(6).

When given its appropriate and intended meaning, defendant argues, AB 2571 is properly understood as a restriction of only commercial speech. Opp. at 8. According to defendant, "[f]actors to be considered in deciding whether speech constitutes 'commercial speech' include whether (1) the speech is an advertisement; (2) the speech refers to a particular product; and (3) the speaker has an economic motivation." Id. (citing Hunt v. City of Los Angeles, 638 F.3d 703, 715 (9th Cir. 2011) (citing Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66–68 (1983)). As AB 2571 restricts advertising, marketing or arranging for placement of an advertising or marketing communication, it "regulates speech with an obvious economic or commercial motivation." Id. Further, defendant points to the reference to "exchange for monetary compensation" in the definition of "marketing or advertising" and to the reference to "firearm-related products" as evidence that the legislation only intended to restrict advertisements promoting commercial transactions involving particular products. Id.

Defendant goes on to argue that AB 2571 is not a content-based or viewpoint-based restriction because it "regulates commercial speech, and was not adopted to regulate speech 'because of disagreement with the message it conveys.' " Opp. at 10 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). Defendant maintains that AB 2571 would not restrict the speech of Second Amendment rights organizations unless those organizations were "advertising firearms-related products to minors in exchange for monetary compensation," id. at 10 (internal quotation marks omitted), speech that would likewise be prohibited if the party engaged in the same advertising or marketing were an anti-gun organization, id. at 11. Plaintiffs' allegations regarding the alleged contempt for the firearms industry shown by California lawmakers, defendant argues, does not render AB 2571 a viewpoint-based restriction. Id. See Nordyke v. King, 644 F.3d 776, 792 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

Cir. 2011) (declining to look to individual county supervisor's comments to ascertain the motivation of county ordinance prohibiting possession of firearms on county property).

In reply, plaintiffs argue that they do not make "an unfairly broad interpretation of AB 2571" but rather that "[i]t is a plain reading of the law as it was drafted and adopted by the Legislature." Reply at 3. Plaintiffs depict defendant's opposition as presenting "a tortured interpretation of AB 2571 that misrepresents key provisions of the law, ignores the plain language of the statute, and replaces that language with 'implicit' meanings that the Legislature did not adopt." Id. at 5. For example, plaintiffs argue that while a bill's title "may reflect the law's basic thrust or help clarify ambiguous statutory language . . . it is 'not meant to take the place of the detailed provisions of the text' and 'cannot limit the plain meaning of the text.' " Id. (quoting Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528, 529 (1947) (emphasis omitted).

More specifically, plaintiffs dispute defendant's interpretation of "in exchange for monetary compensation" as written in subsection 22949.80(c)(6)'s definition of "marketing or advertising." Id. at 8. Because that phrase comes at the start of the definition rather than at the end, plaintiffs contend that the subsection unambiguously refers to "making a communication in exchange for monetary compensation—whether or not it also proposes an exchange of monetary compensation with regard to the subject product. . . ." Id. Based on an interpretation of the statute that prohibits more than advertising a product for sale, plaintiffs accordingly argue that the Bolger factors defendant cites are inapplicable here. See, e.g., id. at 9–10 ("[T]he third Bolger factor does not support the State's position because, again, the law does not restrict only speech proposing an exchange of products or services for monetary compensation.")

       **b. Parties' Arguments In Light of AB 160's Amendments to AB 2571**

In their supplemental briefing on the amendments to AB 2571, plaintiffs argue that "aside from adding subsection (c)(3), which carved out a limited exemption for some categories of pure speech," the amendments "made just two non-substantive changes to the original text of AB 2571." Pls.' Supp. Brief at 3. Plaintiffs contend that the amendments merely swap out the word "concerning" for "offering or promoting" in subsection (a)(1), and remove references to "service" and "use" in subsection (c)(6). Id. According to plaintiffs, "AB 2571 (as amended by AB 160) will prohibit 'firearm industry members' from making or distributing any 'communication' 'in exchange for monetary compensation' if the speech (1) 'offers' or 'promotes' a 'firearm-related product,' (2) is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

designed, intended, or could reasonably be considered 'attractive to minors,' and (3) seeks to encourage the audience to 'engage in a commercial transaction.' " Id. Plaintiffs argue that even with the amendments, AB 2571 is still a content- and viewpoint-based regulation "that targets the messages of particular speakers based on the communications' 'subject matter' and its 'function or purpose.' " Id. at 4. Consequently, while the amended statute "no longer prohibits" plaintiffs from promoting junior membership in their organizations and "allows" plaintiffs to resume advertising to youth for their hunting, sporting, and firearm safety programs, plaintiffs argue that a wide breadth of non-commercial speech will still remain restricted. Id. at 2. This includes, according to plaintiffs, their ability to endorse, promote, or communicate about firearm-related products in person or at specified locations. Id. at 5 (citing Dkt. 31 ("Supp. Brown Decl."); Dkt. 30-3 ("Supp. Minch Decl.")).

In supplemental briefing, defendant argues that the amendments to AB 2571 "serve to obviate" plaintiffs' assertions. Def.'s Supp. Brief at 1. Defendant argues that plaintiffs' initial arguments relied on unreasonably expansive interpretations of AB 2571's terms "concerning", "use" and "service." Id. at 5–6 (citing Mot. at 3–4, 11, 15, 17; Reply at 4, 7). Instead, defendant notes that the word "concerning" has been replaced with "offering or promoting" that "make[s] clear that the law addresses commercial speech," and that the words "use" and "service" have been entirely removed from the relevant subsection. Id. at 6. Defendant argues that to characterize these amendments as "trivial" and to adopt plaintiffs' earlier "incorrect reading of the statute" would be "untenable" now. Id. Accordingly, defendant argues that plaintiffs' scenarios of non-commercial speech that might be covered by the statute no longer apply, and that this statute makes clear that it only covers speech that has the "primary purpose" to "encourage recipients of the communication to engage in a commercial transaction." Id. (citing Cal. Bus. & Prof. Code § 22949.80(c)(6)).

Having carefully reviewed the statute and the parties' arguments, the Court concludes that AB 2571, as amended, is properly read as only applying to commercial speech. Here, where California's stated purpose of enacting AB 2571, "Marketing Firearms to Minors," is to "further restrict the marketing and advertising of firearms to minors," RJN, Ex. 1 at 1–2, the Court "see[s] no reason not to take the government at its word in this circumstance, and in doing so, find[s] that the primary intent of the marketing bans is the regulation of commercial expression," Disc. Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509, 539 (6th Cir. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

To that end, the Court agrees with defendant that, when read in its entirety, AB 2571, as amended, is properly understood as a restriction on the marketing and advertising of firearms, ammunition, and firearm components and accessories to minors to encourage the purchase by them of these products, and not as a blanket restriction on communications relating to firearms more broadly. As amended, AB 2571 restricts advertising or marketing "offering or promoting any firearm-related product," Cal. Bus. & Prof. Code § 22949.80(a)(1), where "firearm-related product" is defined as follows:

"(5) Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a firearm accessory that meets any of the following conditions:

(A)     The item is sold, made, or distributed in California.

(B)     The item is intended to be sold or distributed in California.

(C)     It is reasonably foreseeable that the item would be sold or possessed in California.

(D)     Marketing or advertising for the item is directed to residents of California."

Id., § 22949.80(c)(5).

The Court reads this definition of firearm-related product, taken together with the other provisions of the statute, to mean a firearm, ammunition, or a firearm component or accessory to be sold or distributed to minors in California. This reading is supported by the commonsense meaning of "product," which implies an item for sale, as well as the conditions in §§ 22949.80(c)(5)(A)–(D), which reasonably suggest that the item is being sold or is intended to be sold. See also PRODUCT, Black's Law Dictionary (11th ed. 2019) ("Something that is distributed commercially for use or consumption and that is usu. (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption.").

The statute's definition of "marketing or advertising" further supports this interpretation. "Marketing or advertising" is defined as "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of

0020

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

which is to encourage recipients of the communication to engage in a commercial transaction." Cal. Bus. & Prof. Code § 22949.80(c)(6).

    The Court finds plaintiffs' characterizations of the amendments to this subsection (and the statute as a whole) as "trivial" and "non-substantive" to be unpersuasive. While plaintiffs claimed that the statute broadly swept in non-commercial speech through its inclusion of the word "use" in the definition of "marketing or advertising," plaintiffs do not now meaningfully argue that the new amended definition—standing on its own or in light of the prior version—must carry the same sweep as their interpretation of the prior definition. Compare Mot. at 11–12; Reply at 10–13; with Pls.' Supp. Brief at 3–4 ("For the reasons already laid out in Plaintiffs' moving papers . . . the amended law is still a content- and viewpoint-based regulation . . . . Indeed, the State's trivial word swaps do not change what is really being prohibited—distributing to the public, including both adults and children, information about firearm-related products that they might wish to use for lawful hunting and shooting activities.").

    Additionally, as described above, the parties dispute the meaning and application of the phrase "in exchange for monetary compensation" within this definition of "marketing or advertising." Specifically, plaintiffs argue that the placement of the phrase "in exchange for monetary compensation" at the beginning of the definition applies to speech "whether or not it also proposes an exchange of monetary compensation with regard to the subject product. . . ." Reply at 8.

    In construing a statute, "[p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." United States v. Lewis, 67 F.3d 225, 228–29 (9th Cir. 1995) (citing Dole v. United Steelworkers of America, 494 U.S. 26, 35 (1990)). As stated above, the " 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.' " King v. Burwell, 576 U.S. at 486 (quoting Brown & Williamson Tobacco Corp., 529 U.S. at 132). In addition to looking at the plain language, considering phrases in context also requires "construing the provisions of the entire law, including its object and policy, to ascertain the intent of [the legislature]." Nw. Forest Res. Council v. Glickman, 82 F.3d at 830–31.

    Looking at these factors, the limiting condition of "in exchange for monetary compensation" indicates that the statute restricts the marketing or advertising of a firearm-related product for sale to minors. The bill's title, ("Marketing Firearms to Minors"), as well as the legislative purpose, additionally indicate that AB 2571 restricts the marketing

0021

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

and advertising of firearms, ammunition, and firearm components and accessories, for sale, to minors. See RJN, Ex. 1, at 1 ("This bill would prohibit a firearm industry member, as defined, from advertising or marketing any firearm-related product as defined, in a manner that is designed, intended, or reasonably appears to be attractive to minors."); id. at 2 ("It is the intent of the Legislature in enacting this act to further restrict the marketing and advertising of firearms to minors.").

Finally, the amendments to AB 2571 added a new subsection, Subsection 22949.80(a)(3), which states that AB 2571 "does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp." Cal. Bus. & Prof. Code § 22949.80(a)(3). While plaintiffs characterize this subsection as a "carve-out for censorship," Pls.' Supp. Brief at 1, the Court instead views this subsection in light of the other amendments, the overall statutory text and framework, and the legislative purpose, to establish that the statute's scope does not encompass non-commercial speech.

Reading AB 2571, as amended, to restrict only marketing and advertising directed at minors for the sale of firearms, ammunition, and firearm components and accessories, the Court agrees with defendant that the statute constitutes a restriction only on commercial speech.[4] All three of the Bolger factors used to determine whether speech is "commercial

---

[4] At oral argument, counsel for plaintiffs raised the questions as to how application of this statute would not require certain plaintiffs to cease publication of their periodicals within California and other jurisdictions, and if so, whether that would impermissibly impose California's will on other states. Additionally, counsel for plaintiffs argued that AB 2571 on its face cannot be limited to just commercial speech, because by its breadth it sweeps in protected non-commercial speech and collapses the distinction between commercial and non-commercial speech for the purposes of Central Hudson scrutiny analysis.

As stated elsewhere within the order, the Court finds that the absence of a full factual record makes these questions too speculative to resolve, and that they are better considered on an as-applied basis. Additionally, the Court recognizes that interpreting AB 2571 as restricting non-commercial, political speech and discriminating based on content and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|-------------------|
| Title    | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

speech" are present here. <u>See</u> <u>Bolger</u>, 463 U.S. at 66–68 (considering whether (1) the speech is an advertisement; (2) the speech refers to a particular product; and (3) the speaker has an economic motivation."). The speech at issue is "an advertisement," <u>see</u> Cal. Bus. & Prof. Code § 22949.80(a) ("[a] firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication"), and refers to a "particular product," <u>see</u> <u>id.</u> (restricting communications "offering or promoting any firearm-related product"). And the speaker "has an economic motivation" because the speaker is advertising a product "in exchange for monetary compensation." <u>Id.</u>, § 22949.80(c)(6).

Accordingly, the Court concludes that AB 2571, as amended, may be read to only restrict commercial speech. Therefore, for purposes of evaluating a facial attack to the statute on this motion, the Court concludes that plaintiffs are not likely to succeed on their political and ideological right-to-free-speech claims.

2.     <u>First Amendment Commercial Speech Claim</u>

Alternatively, plaintiffs' second claim asserts that AB 2571 unconstitutionally infringes on their commercial speech. As the Supreme Court has explained "for commercial speech to come within [the First Amendment], it at least must concern lawful

───────────────

viewpoint would subject the statute to strict scrutiny and potentially raise serious constitutional questions. Mot. at 13. But "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court [should] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature]." <u>Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council</u>, 485 U.S. 568, 575 (1988). This is not a case where construing a statute to avoid serious constitutional problems would be "plainly contrary" to the intent of the legislature. <u>Id.</u> Rather, as described above, reading AB 2571 to restrict advertising and marketing directed at minors for the sale of firearms, ammunition, and firearm components and accessories is supported by the text of the statute as well as the legislative purpose reflected in the legislative record and the bill's title. Moreover, where plaintiffs bring only a facial challenge and there is no evidentiary record indicating that the State has enforced the statute in a manner contrary to its interpretation, the Court "see[s] no reason not to take the government at its word," <u>Disc. Tobacco City & Lottery, Inc.</u>, 674 F.3d at 539, and to interpret the statute in this way.

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|-------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

activity and not be misleading." <u>Cent. Hudson</u>, 447 U.S. at 566. When commercial speech instead concerns unlawful activity, or "when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive." <u>In re R. M. J.</u>, 455 U.S. 191, 203 (1982).

Moreover, commercial speech that is protected by the First Amendment may still be regulated, but is subject to analysis in light of the factors set forth in the Supreme Court's seminal case, <u>Central Hudson v. Public Service Commission of New York</u>. When reviewing protected commercial speech, courts must "ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, [the court] must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." 447 U.S. at 566.

### c. Regulation of commercial speech concerning unlawful activity

Plaintiffs state that AB 2571 constitutes a restriction on protected commercial speech because it regulates speech that is not misleading and that concerns lawful activity. Mot. at 16. While plaintiffs appear to acknowledge that AB 2571 restricts speech promoting certain unlawful activity—specifically, the sale of firearms to minors in California—they argue that, because minors can, under certain circumstances, lawfully possess firearms in California, the restrictions in AB 2571 pertain to lawful activity and therefore constitute restrictions on protected commercial speech. <u>Id.</u> Plaintiffs characterize the statutory exceptions to California Penal Code Section 29610, which prohibits minors from possessing firearms, as being "so broad that [they] nearly swallow[] the rule." <u>Id.</u> Specifically, plaintiffs point out that "minors may legally possess firearms and ammunition when they are engaged in or traveling to or from recreational sports if a parent or guardian is present or if the minor is accompanied by another responsible adult and their parent has given written consent." Mot. at 16 (citing Cal. Penal Code §§ 29615(a)–(b), 29655). Further, plaintiffs argue, such possession is legal with parental consent, even without an adult present, if the minor is at least sixteen years of age or engaging in recreational sports on lands lawfully possessed by their parent or guardian. <u>Id.</u> at 17 (citing Cal. Penal Code §§ 29615(c), (d)). Plaintiffs additionally contend that the definition of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

"militia" under federal law to include "all able-bodied male [citizens] of at least 17 years of age," 10 U.S.C. § 246, anticipates minors' possession of firearms. Mot. at 17. In light of these statutory provisions permitting minors' possession of firearms as well as the fact that adults may lawfully use firearm-related products, plaintiffs argue that AB 2571 bans speech concerning legal conduct. Id.

In its opposition, defendant responds by characterizing plaintiffs' exceptions as "quite narrow and carefully circumscribed." Opp. at 12. Defendant points out that "[i]t is illegal in California to sell a firearm to a minor under any circumstances, and illegal to loan or transfer any firearm to a person under 21 years of age, subject to narrow exceptions." See Cal. Penal Code §§ 27505, 27510, 29615; Opp. at 12. Additionally, Cal. Penal Code § 29610 "generally prohibits a minor from possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any firearm." Id. A minor's possession of a firearm pursuant to any of the statutory exceptions requires some form of adult supervision or permission. Id. According to defendant, this statutory scheme refutes plaintiffs' assertion that the exceptions undermine the statute's aim of preventing illegal sales of firearms to minors. Id. Defendant contends, "AB 2571 regulates commercial speech respecting unlawful activity – the sale of guns to minors," as well as commercial speech that is misleading because "[i]t is inherently misleading to advertise the sale of a product to an audience that is legally barred from purchasing the product being advertised." Id. at 12–13.

In reply, plaintiffs contend that any acknowledgment that "AB 2571 does, in fact, ban such [unlawful] speech is no big revelation. Of course, it does. What matters is that the law also restricts a substantial amount of truthful, lawful, and fully protected commercial (and non-commercial) speech." Reply at 14. For instance, plaintiffs describe how, because the language of the provisions target advertising or marketing "attractive to minors," "AB 2571 restricts speech promoting the purchase of firearms not only by minors, but also the lawful purchase of lawful firearms by adults." Id. Accordingly, plaintiffs argue that the law "restricts protected commercial speech and . . . must survive heightened scrutiny." Id.

In their supplemental briefing, plaintiffs argue that "by now, it is beyond dispute that AB 2571, both as adopted and as recently amended, bans truthful commercial speech about lawful conduct," because the amendment law "acknowledges on its face that, even if they must do so under adult supervision or with parental consent, minors may legally handle and shoot firearms in California." Pls.' Supp. Brief at 7–8. Defendant argues that the law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|-------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

regulates commercial speech that is "misleading and relates to illegal conduct – the sale of firearms to minors, which remains illegal, and the possession of firearms by minors, which remains illegal unless specific qualifying circumstances present." Def.'s Supp. Brief at 1. Even if the law would restrict some commercial speech, defendant contends that it survives intermediate scrutiny. Id.

To the extent that AB 2571 restricts advertising encouraging minors to purchase firearms, it regulates speech that is misleading and that invites unlawful activity because it is illegal to sell a firearm to a minor in California under Penal Code Section 27505. See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 388–89 (1973) (explaining that regulations may constitutionally restrict advertisements proposing or soliciting illegal activity, even when the "illegality . . . may be less overt"); see also Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1068 (10th Cir. 2001) (distinguishing between statutes restricting truthful, non-misleading commercial speech and statutes banning advertising of alcohol giveaways where such giveaways are already unlawful under state law).

However, it appears that AB 2571 regulates speech that is not inherently misleading and that does not concern unlawful activity. For example, an advertisement marketing a firearm for sale that displays a minor using the firearm in a recreational setting does not necessarily promote illegal activity since minors may use firearms with adult supervision and permission under the statutory exceptions. See Cal. Bus. & Prof. Code § 29615 (listing exceptions to general prohibition on youth possession of firearms). Further, courts have treated restrictions on advertising as regulations on commercial speech related to lawful activity where the activity at issue was age-restricted but otherwise lawful, and where the advertising was not solely distributed to minors. See Educ. Media Co. at Virginia Tech v. Swecker, 602 F.3d 583, 589 (4th Cir. 2010) (finding that restriction on alcohol advertisements in college student publication regulated speech concerning lawful activity because the speech was not "solely distributed to underage students" but rather "also reach[ed] of-age readers"). Because the advertising that is "designed, intended, or reasonably appears to be attractive to minors," Cal. Bus. & Prof. Code § 22949.80(a)(1), may also reach adults who can legally purchase firearms, the law regulates more than just commercial speech relating to unlawful activity.

Thus, because the scope of AB 2571, as amended, encompasses commercial speech that may not be misleading or concern unlawful conduct, it is subject to the remainder of the Central Hudson test below. See 447 U.S. at 566 (the test asks "whether the asserted

0026

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

governmental interest is substantial . . . whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest").

### d.  <u>Central Hudson</u> factors for regulation of protected commercial speech

The parties dispute whether AB 2571—to the extent it regulates protected commercial speech—satisfies each prong of the <u>Central Hudson</u> test, which the Court addresses in turn.

#### (1)  <u>Does the government have a substantial interest?</u>

Here, plaintiffs "assume, without conceding that it is the State's actual interest, that the State generally has a substantial interest in preventing violence against its citizens." Mot. at 18.  However, plaintiffs contend that the two stated interests of AB 2571, " 'ensuring that minors do not possess [firearms]' and protecting Californians from gun violence" are in fact not "genuine" and "undercut by the State's laws expressly allowing minors to possess firearms for lawful purposes." <u>Id.</u> at 17 (citing RJN, Ex. 1 at 3).

Defendant disputes plaintiffs' characterization of the government's interests advanced by AB 2571.  In addition to AB 2571's stated purpose, as cited by plaintiffs, defendant also quotes the bill's legislative findings that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state."  Opp. at 14 (citing RJN, Ex. 1 at 1).  Defendant contends that the pre-existing statutory framework in California "reflects a policy concern that firearm possession by minors—for any purpose, including the narrowly specified, permissible uses set out in statute—presents inherent safety concerns." <u>Id.</u> at 15.  As such, defendant argues that rather than being "undercut" by the state's limited exceptions for minors, AB 2571 instead supports California's interest in the "safety concerns regarding the *illegal* possession and use of firearms by minors." <u>Id.</u>  To that end, defendant cites Supreme Court and Ninth Circuit precedent holding that the government has "a compelling interest in protecting the physical and psychological well-being of minors," <u>Sable Commc'ns of California, Inc. v. F.C.C.</u>, 492 U.S. 115, 126 (1989), and that "the government may have a compelling interest in protecting minors from certain things that it does not for adults," <u>Nunez by Nunez v. City of San Diego</u>, 114 F.3d 935, 945 (9th Cir. 1997).

California has a substantial interest in promoting public safety broadly, along with the more specific goals to reduce gun violence and crime, especially those affecting and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

committed by minors.[5]  And because it already outright forbids firearm sales to minors, it has likewise an interest in taking measures designed to effectuate that restriction.  These interests are "substantial" and also "compelling," as borne out in Supreme Court and Ninth Circuit precedent.  See e.g., Sable Commc'ns, 492 U.S. at 126 ("We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors."); Pena v. Lindley, 898 F.3d 969, 980 (9th Cir. 2018) ("There is no doubt that the governmental safety interests identified for the CLI and MDM [chamber load indicator and magazine detachment mechanism] requirements are substantial.  California represents that the legislature's goal in requiring CLIs and MDMs 'was targeting the connection between cheaply made, unsafe handguns and injuries to firearms operators and crime.'  These interests are undoubtedly adequate."); Silvester v. Harris, 843 F.3d 816, 827 (9th Cir. 2016) ("The waiting period in California has had the objective of promoting safety and reducing gun violence.  The parties agree that these objectives are important.  The first step is undisputedly satisfied.").

Protecting minors and the public broadly from gun violence is a substantial government interest.  Whether or not AB 2571 is appropriately tailored to advance that interest in a constitutional manner is better addressed by the other Central Hudson factors.

> (2)  Does the regulation directly and materially advance the government interest?

In their moving papers, plaintiffs identify two disagreements with the Assembly Judiciary Committee's claim that AB 2571 "directly advances its stated governmental interests to limit the exposure of, and consumption by, minors to such advertising and marketing material, given the lethality (and general illegality for minors) of the products being advertised."  Mot. at 18 (quoting RJN, Ex. 3 at 11).  First, plaintiffs argue that this claim ignores the statutory exceptions to the general rule that minors cannot possess firearms in the state of California, as well as the host of lawful activities that plaintiffs interpret the statute to cover, such as recreational and training activities.  Id.  Plaintiffs

---

[5] While in their moving papers plaintiffs argue that AB 2571's two stated interests do not "appear[] genuine" and that plaintiffs "assume, without conceding" that the State generally has a substantial interest, Mot. at 17–18, plaintiffs in their reply claim that they "do not now argue that the State's interest . . . is not compelling," Reply at 15 (citation omitted).

0028

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

suggest that, because AB 2571 limits such lawful activity, it is not appropriately tailored to directly advance the state's interest in preventing unlawful activity.

Second, plaintiffs state that the Assembly Judiciary Committee's findings "morphs the State's likely substantial interest in protecting minors from physical harm to an illegitimate interest in limiting the exposure of minors to certain speech the Legislature finds too harmful for them to hear." Id. Plaintiffs argue that silencing speech promoting the use of firearms in ways that may appear attractive to minors only indirectly serves the state's public safety interest and that the State is only speculating that such speech restrictions may reduce minors' demand for firearms and thereby reduce gun violence. Id. Plaintiffs additionally characterize AB 2571 as "the sort of 'paternalistic approach' the Supreme Court has long condemned," id. (citing Va. Bd. of Pharm. v. Va. Citzs. Consumer Council, 425 U.S. 748, 770 (1976)), because it "den[ies] Californians access to truthful information concerning lawful firearm-related products . . . to deter minors' supposedly harmful, but legal, possession and use of firearms, as well as their parents' exercise of their right to consent to such use by their minor children," id. Plaintiffs argue that the better approach "is to open the channels of communication rather than to close them." Id. (quoting Va. Bd. of Pharm., 425 U.S. at 770).

In his opposition, defendant argues that "the Supreme Court has long held that the government may restrict advertising in order to dampen demand, and thereby advance a substantial government interest." Opp. at 15–16 (citing U.S. v. Edge Broadcasting Co., 509 U.S. 418, 434 (1993). Defendant points to the Legislature's findings that the illegal possession of firearms by minors constitutes a serious health and safety risk and to studies linking advertising to the use of harmful products by minors, as well as studies linking restrictions on advertising to decreased demand for harmful products among minors. Id. at 16. Defendant additionally cites the Violence Policy Center finding relied upon by the Legislature that firearm industry members have been directly advertising and marketing firearms to minors. Id. at 16–17. Taken together, defendant asserts, these findings support the conclusion that restricting advertising and marketing of firearm-related products to minors will reduce demand for such products among minors and will likely reduce the unsafe use of firearms by minors, thereby directly advancing the State's goals of reducing gun violence perpetrated by and against minors. Id. at 17.

In response to plaintiffs' argument that the Assembly Judiciary Committee's finding ignores the statutory exceptions to the general prohibition making it illegal for minors to possess firearms in California, as well as the host of lawful activities that plaintiffs interpret

0029

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

the statute to address, defendant states that "this argument oversimplifies both AB 2571 and the background prohibition on possession of firearms by minors, which permits only narrow exceptions[.]" Id.

In reply, plaintiffs argue that the fact that the "very purpose of advertising is to encourage the use of the advertised products . . . does not give the State carte blanche to ban truthful speech about otherwise lawful (and constitutionally protected) products and commercial transactions." Reply at 16. More specifically, plaintiffs claim that—by "reduc[ing] demand for firearm-related products among minors by restricting such advertising and marketing," AB 2571 is "at best, an impermissible restriction on speech that only indirectly serves the State's compelling public safety interest." Id. (citing Opp. at 17). In support, plaintiffs cite the Supreme Court's opinion in Sorrell v. IMS Health Inc. holding that a state may not "achieve its policy objectives through the indirect means of restraining certain speech by certain speakers." 564 U.S. 552, 577 (2011). Finally, plaintiffs reiterate their contention that "restrictions on advertising of alcohol, tobacco, and cannabis to children are irrelevant because—unlike possession and use of firearms—it is not legal for minors to possess or use those substances in California. And none of those products are constitutionally protected." Reply at 17 n. 5 (citing Mot. at 11–12).

In supplemental briefing, plaintiffs emphasize their argument that AB 2571 fails to advance the state's underlying interest: "Rather than *directly* attack the perceived problem of *illegal* possession and use of firearms by minors, AB 2571 approaches the issue exactly backwards. It seeks to *indirectly* dampen the demand for even *legal* possession of firearm-related products through advertising restrictions aimed at both minors and adults. But it does so while simultaneously authorizing speech encouraging minors to participate in activities where they will, in fact, be using firearms and related products." Pls.' Supp. Brief at 9. Additionally, plaintiffs cite to the Supreme Court's opinion in Carey v. Population Services International striking down state laws prohibiting advertisements of contraceptives in support of their contention that California may not seek to banish "constitutionally protected products" from the marketplace. Id. at 10 (citing 431 U.S. 678 (1977)).

In response, defendant reiterates that "since the sale of firearms directly to minors is never permitted, and the possession of a firearm by a minor is allowed only under limited and well-defined circumstances, to permit marketing or advertising those items in a way that is appealing to minors – even if there are limited exceptions to those baseline rules – would not be rational or consistent with that overarching and longstanding policy." Def.'s

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

Supp. Brief at 9–10. Accordingly, defendant claims that the law is "far from exactly backwards or working indirectly," because "the prohibited communications signal to minors and others who may be unaware of the contours of the law that such conduct is permitted. That AB 2571 now explicitly exempts certain communications related to the exceptions to these rules does not conflict with that policy in a way that it might if the statutory scheme granted minors an unfettered right to possess firearms in California under any circumstances." Id. at 10.

Here, the Court finds the case law regarding the regulation of tobacco and alcohol advertising provides a relevant framework for assessing the parties' Central Hudson arguments.[6] In Lorillard Tobacco Co. v. Reilly—cited in plaintiffs' briefing—the Supreme Court assessed the constitutionality of a series of cigarette, smokeless tobacco, and cigar regulations promulgated by the Massachusetts Attorney General, the purpose of which was to "eliminate deception and unfairness in the way cigarettes and smokeless tobacco products are marketed, sold and distributed in Massachusetts in order to address the incidence of cigarette smoking and smokeless tobacco use by children under legal age . . . [and] in order to prevent access to such products by underage consumers." 533 U.S. at 533 (citation omitted). The Supreme Court applied the Central Hudson test to two types of regulations: (1) outdoor advertising restrictions, and (2) point-of-sale advertising regulations.[7]

First, the outdoor advertising regulations prohibited *any* smokeless tobacco or cigar advertising within 1,000 feet of schools or playgrounds, according to which the definition of "outdoor" included "not only advertising located outside an establishment, but also

---

[6] Although California (like many states) prohibits the purchase by minors of alcohol, the State does have certain limited exemptions, *e.g.*, minors employed by law enforcement may purchase alcohol for the purposes of exposing illegal alcohol sales to minors, Cal. Bus. & Prof. Code § 25658, and minors are permitted to possess alcohol while making a delivery in "pursuance of the order of a parent, responsible adult relative . . . or of employment," Cal. Bus. & Prof. Code § 25662.

[7] A third type of restriction on sales practices was upheld under First Amendment analysis unrelated to Central Hudson's commercial speech test because those provisions "regulate conduct that may have a communicative component, but Massachusetts seeks to regulate the placement of tobacco products for reasons unrelated to the communication of ideas." Id. at 569.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

advertising inside a store if that advertising is visible from outside the store. The regulations restrict advertisements of any size and the term advertisement also includes oral statements." Id. at 562. The Massachusetts Attorney General had promulgated the regulations on the basis that "advertising affects demand for tobacco products." Id. at 558. The state relied on several studies, such as one conducted by the Food and Drug Administration finding that "the period prior to adulthood is when an overwhelming majority of Americans first decide to use tobacco products, and that advertising plays a crucial role in that decision." Id. at 557–58. These studies pointed to "sufficient evidence" in support of this basis, such as the fact that youth choice of cigarette brands "directly track[ed] the most heavily advertised brands," or that "television advertising of small cigars increased dramatically in 1972 and 1973, filled the void left by cigarette advertisers, and sales soared." Id. at 558–60 (internal quotations omitted).

The Supreme Court concluded that these regulations satisfied the "directly and materially advances" prong of Central Hudson. The Court found that the "Attorney General has provided ample documentation of the problem," disagreeing with "petitioners' claims that there is no evidence that preventing targeted campaigns and limiting youth exposure to advertising will decrease underage use of smokeless tobacco and cigars." Id. The Court held, "[o]n this record and in the posture of summary judgment, we are unable to conclude that the Attorney General's decision to regulate advertising of smokeless tobacco and cigars in an effort to combat the use of tobacco products by minors was based on mere 'speculation [and] conjecture.'" Id. at 561 (quoting Edenfield v. Fane, 507 U.S., at 770).

Second, the point-of-sale-advertising regulation in Lorillard prohibited advertising "placed lower than five feet from the floor of any retail establishment which is located within a one thousand foot radius of any school or playground." Id. at 566 (citation omitted). The Supreme Court held that this provision failed the "directly and materially advances" prong, in which a regulation cannot be sustained "if it only provides ineffective or remote support" or "if there is little chance that the restriction will advance the State's goal." Id. (citations omitted). The state's goal there was to "prevent minors from using tobacco and to curb demand for that activity by limiting youth exposure to advertising." Id. However, the Court concluded that "the 5–foot rule does not seem to advance that goal. Not all children are less than 5 feet tall, and those who are certainly have the ability to look up and take in their surroundings." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

In <u>Educational Media Company at Virginia Tech, Inc. v. Swecker</u>, the Fourth Circuit applied the <u>Central Hudson</u> "directly and materially advances" prong to a Virginia regulation that "prohibits various types of advertisements for alcohol in any 'college student publication,' which it defines as any college or university publication that is: (1) prepared, edited, or published primarily by its students; (2) sanctioned as a curricular or extracurricular activity; and (3) 'distributed or intended to be distributed primarily to persons under 21 years of age.' " 602 F.3d 583, 587 (4th Cir. 2010) (citation omitted). The regulation restricted qualifying publications from printing advertisements for beer, wine, or mixed beverages unless the ads are 'in reference to a dining establishment.' " <u>Id.</u>

The Fourth Circuit held that the regulation directly and materially advances the government's interest in decreasing demand for alcohol by college students. While the "correlation between advertising and demand alone is insufficient to justify advertising bans in every situation," the court explained that the correlation in its case was "strengthened because 'college student publications' primarily target college students and play an inimitable role on campus." <u>Id.</u> at 590. The court further reasoned that "[this link is also supported by the fact that alcohol vendors *want* to advertise in college student publications. It is counterintuitive for alcohol vendors to spend their money on advertisements in newspapers with relatively limited circulation, directed primarily at college students, if they believed that these ads would not increase demand by college students." <u>Id.</u> Additionally, the court rejected the plaintiffs' arguments that the regulation's exemptions for restaurant ads undermined its effectiveness because the "argument fails to take into account the actual scope of [the exemption]." <u>Id.</u> at n. 5 (holding the regulation's "exception for restaurants does not render it futile").

In <u>Discount Tobacco City & Lottery, Inc. v. U.S.</u>, the Sixth Circuit applied the <u>Central Hudson</u> "directly and materially advances" prong to four regulations established by the Federal Family Smoking Prevention and Tobacco Control Act: (1) a ban on distribution of free tobacco product samples, (2) a ban on non-tobacco brand merchandise, (3) a ban on brand name event sponsorship, and (4) a ban on "continuity programs." 674 F.3d 509 at 537, 543 (6th Cir. 2012).

As a threshold matter, the Sixth Circuit noted that a claim "that there is no causal connection between product advertising and the consumer behavior of children . . . stretches the bounds of credulity, even in the absence of the extensive recorded submitted by the government." <u>Id.</u> at 539–40. The court then examined a variety of studies, similar to those discussed above in <u>Lorillard</u>, showing that "the massive amount of money invested

0033

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

by the tobacco industry in advertising and marketing is largely devoted to (1) attracting new young adult and juvenile smokers, and (2) brand competition in the young adult and juvenile market." Id. at 540. Without "credible evidence" to rebut these propositions, the court found as a general precept that "there is a substantial state interest in curbing juvenile tobacco use that can be directly advanced by imposing limitations on the marketing of tobacco products." Id.

The Sixth Circuit then analyzed whether each of the four bans directly and materially advanced this interest. First, it found that the ban on distributing free tobacco product samples directly and materially advanced the state's interest because, given the "extensive documentation," "providing an opportunity for an underage nonsmoker to actually try a tobacco product, at no cost, may serve as the best advertisement of all for a product that is physiologically addictive, and socially attractive to youth." Id.

Second, the court examined the ban on tobacco branding of non-tobacco merchandise. The court highlighted two sources, including a "Gallup poll [that found] that nearly half of adolescent smokers—and more than a quarter of non-smokers—owned at least one tobacco-related promotional item" and studies showing that "obtaining tobacco branded non-tobacco products precedes, and reliably predicts, smoking initiation. . . ." Id. at 541–42 (citation and internal quotation omitted). Considering this support, the court found that the ban directly and materially advanced the state's interest.

Third, the court held that the ban on tobacco-branded sponsorship of events directly and materially advanced the government's interest. The government had offered "substantial evidence . . . that the exposure (which includes television broadcasts) that young people have to sponsored events is substantial." Id. at 542 (citation and internal quotation omitted). The court explained that "just as in traditional advertising mediums, tobacco advertising through event sponsorship has an effect on juvenile tobacco consumption." Id.

On the other hand, the court concluded that the ban on continuity programs ("loyalty programs") in connection with tobacco product sales did not directly and materially advance the government's interest. The court noted the "relative dearth of evidentiary support showing that juveniles are significantly influenced by continuity programs." Id. at 544. To that end, because continuity programs are "by nature directly linked to consumption," the court reasoned that the "overwhelming beneficiaries, both numerically and comparatively, of these continuity programs are adult consumers." Id. As such,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

regulating an adult program would not directly and materially advance the government's interests in protecting minors.

The Court concludes that AB 2571 directly and materially advances California's compelling interest in protecting minors. Plaintiffs' two primary arguments to the contrary are unavailing. Their first argument—that the governmental interests in AB 2571 in discouraging the illegal sale of firearms to minors are undercut by the exemptions to the prohibitions on the possession and use of firearms by minors —is unpersuasive because the exceptions do not undermine AB 2571's overriding purpose. At its core, by restricting advertising of firearm-related products designed to appeal to minors, AB 2571 directly and materially advances California' explicit prohibition on firearm sales to minors. While California permits the possession and use of firearms by minors in certain limited and specified contexts,[8] AB 2571's focus on the "safety concerns regarding the *illegal*

---

[8] The exemptions from California's blanket restriction on the possession of firearms by minors are as follows:

(a) The minor is accompanied by a parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity or hunting education, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves this use of a firearm.

(b) The minor is accompanied by a responsible adult, the minor has the prior written consent of a parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity or hunting education, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(c) The minor is at least 16 years of age, the minor has the prior written consent of a parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity or hunting education, or a motion picture, television, or video production, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

possession and use of firearms by minors" conforms with California's existing statutory framework "reflect[ing] a policy concern that firearm possession by minors—for any purpose, including the narrowly specified, permissible uses set out in statute—presents inherent safety concerns." Opp. at 15

Plaintiffs' second argument—that the State engages in "speculation" and thereby "paternalistical[ly] silences speech"—similarly does not undermine the defendant's showing that AB 2571 directly and materially advances the State's interests. While plaintiffs cite to the Supreme Court's opinion in Virginia State Pharmacy Board v. Virginia Citizens Consumer Council rejecting a "paternalistic approach" to advertising, this case is inapposite to the statute at issue here. 425 U.S. at 770, quoted in Mot. at 19. Virginia State

---

entertainment or theatrical event, the nature of which involves the use of a firearm.

(d) The minor has the prior written consent of a parent or legal guardian, the minor is on lands owned or lawfully possessed by the parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(e) The minor possesses, with the express permission of their parent or legal guardian, a firearm, other than a handgun or semiautomatic centerfire rifle, and both of the following are true:

(1) The minor is actively engaged in, or in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or an agricultural, ranching, or hunting activity or hunting education, the nature of which involves the use of a firearm.

(2) The minor is 16 years of age or older or is accompanied by a responsible adult at all times while the minor is possessing the firearm.

Cal. Penal Code § 29615. Each listed exemption contains a variation of the phrase "actively engaged in, or is in direct transit to or from . . . ."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

<u>Pharmacy</u> concerned a blanket ban on publishing prescription drug prices which was not tailored to serve a substantial state interest. The Supreme Court nonetheless held that "some forms of commercial speech regulation are surely permissible" (including regulating commercial speech that is "provably false," "wholly false," "deceptive," or "misleading"). <u>Id.</u> at 771. Plaintiffs' reliance on the Supreme Court's opinions in <u>Sorrell v. IMS Health Inc.</u> and <u>Carey v. Population Services International</u> is unhelpful for the same reason. The Supreme Court in <u>Sorrell</u> found that the invalidated statute, which prohibited pharmacies from selling prescriber-identifying information and for use in marketing by pharmaceutical manufacturers, only indirectly served the state's interest in protecting physician confidentially and promoting public health, and noted that the state did not claim the provision "will prevent false or misleading speech." 564 U.S. at 573–75; <u>see also id.</u> at 577 (explaining that skepticism against paternalism "appl[ies] with full force when the audience, in this case prescribing physicians, consists of 'sophisticated and experienced' consumers"). And while <u>Carey</u> did concern regulations of what plaintiffs described as "constitutionally protected products," those regulations restricted the advertising of contraceptives under any condition whatsoever. <u>See</u> 431 U.S. at 681 n. 1 (quoting New York Ed. Law § 6811(8) (McKinney 1972)). The regulations in <u>Carey</u> are distinguishable from AB 2571 which, rather than on its face prohibiting the advertising of firearms under all circumstances, restricts the advertising of firearms to minors who cannot legally purchase and own those products.

Ultimately, plaintiffs have not sufficiently shown that AB 2571 fails to directly and materially advances the state's interests by restricting firearms sales advertising that is "attractive" to minors.[9] The Supreme Court has repeatedly "acknowledged the theory that

---

[9] At oral argument, counsel for plaintiffs cited to a case from the Eastern District of California striking down California's ban on handgun advertising placed within stores and visible from outside the premises. In <u>Tracy Rifle & Pistol LLC v. Harris</u>, the court granted summary judgment in favor of plaintiffs' commercial speech claim, finding that the government failed to show that the handgun advertising regulation directly and materially advanced California's interest in reducing impulsive handgun purchases (contributing to violence and suicide), and that the regulation was no more extensive than necessary. 339 F. Supp. 3d 1007, 1018 (E.D. Cal. 2018).

The Court finds the underlying regulation and litigation posture of <u>Tracy Rifle</u> distinguishable from the instant motion. First, the decision in <u>Tracy Rifle</u> cited by plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

product advertising stimulates demand for products, while suppressed advertising may have the opposite effect." Lorillard, 533 U.S. at 557 (citing Rubin, 514 U.S., at 487; United States v. Edge Broadcasting Co., 509 U.S. 418, 434, (1993); Central Hudson, 447 U.S., at 568–569). Here, the State has shown that the "harms [of gun violence] it recites are real and that its restriction [on advertising unlawful firearm transactions to minors] will in fact alleviate them to a material degree." See Edenfield, 507 U.S. at 762; see also Opp. at 3 ("AB 2571 also reflects the fact that '[f]or decades, researchers have recognized children as a vulnerable consumer group because of their budding developmental abilities.') (quoting Kelly Dec., Ex. C); Discount Tobacco, 674 F.3d at 539–40 ("[The claim] that there is no causal connection between product advertising and the consumer behavior of children . . . stretches the bounds of credulity, even in the absence of the extensive record submitted by the government.").

Both defendant's briefing and AB 2571's legislative history provide "ample documentation of the problem." Lorillard, 533 U.S. at 528. As discussed above, defendant lays out the harms of gun violence involving children:

> The Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." See id., Exh. 1, at 1. This finding is borne out by the facts:

---

arose on a motion for summary judgment. However, in a prior order the Tracy Rifle court denied plaintiffs' motion for preliminary injunction, emphasizing that the lack of a completed evidentiary record weighed against preliminary determinations of the constitutionality of the regulation at issue. 118 F. Supp. 3d 1182, 1194 (E.D. Cal. 2015), aff'd, 637 F. App'x 401 (9th Cir. 2016) ("Given the seriousness of these issues [handgun crime and violence], it is not in the public interest to impose the extraordinary remedy of a preliminary injunction without further fact finding and more formal guidance."). Moreover, the factual record and legal analysis in the Tracy Rifle summary judgment order is not analogous to AB 2571's restrictions. While the court in Tracy Rifle concluded that the "Government may not restrict speech that persuades adults, who are neither criminals nor suffer from mental illness, from purchasing a legal and constitutionally-protected product, merely because it distrusts their personality trait and the decisions that personality trait may lead them to make later down the road," 339 F. Supp. 3d at 1014, here, as stated, California prohibits through AB 2571 the targeted advertising of firearms to minors, who may not lawfully purchase and own them.

0038

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

"[i]n 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries." See id., Exh. 6, at 9. Furthermore, to date, there have been at least 169 unintentional shootings by children in 2022, resulting in 74 deaths and 104 injuries nationally. See [. . .] Kelly Dec. Exh. D. And in 2020, for the first time, firearms-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide for children and adolescents. See [RJN, Ex. 7] at 1; Kelly Dec., Exh. C, at 1955.

Opp. at 14–15; see also RJN, Ex. 6 at 6–7 ("Not only are children increasingly the victims, but also the perpetrators of school shootings . . . . The median age of school shooters is 16.") (citing John Woodrow Cox, et al., More than 310,000 students have experienced gun violence at school since Columbine, Washington Post (May 27, 2022)).

Additionally, the California Senate Judiciary Committee summarized studies showing that "the gun industry markets a variety of products explicitly to children, a new report shows, from armed stuffed animals to lighter versions of rifles. And some see kids as a vital group of future gun buyers who need to be brought into the fold at a young age." RJN, Ex. 6 at 8 (quoting Anna North, Marketing Guns to Children, New York Times (February 19, 2022)); see also id. ("One particularly acute example is a product marketed by WEE1 Tactical . . . [of] a semi-automatic rifle for kids modeled on the AR-15, which has been used in a number of deadly mass shootings . . .") (citing Agence France Presse, US Gunmaker Unveils Semi-automatic Rifle Marketed To Kids, Barron's (February 18, 2022)). The Senate Judiciary Committee also cited to studies noting the parallels between youth advertising in the tobacco context: "Much like the tobacco industry's search for replacement smokers, the gun industry is seeking replacement shooters to purchase its deadly products." Id. at 7 (quoting Josh Sugarmann, "Start Them Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children, Violence Policy Center (February 2016)).

Given the foregoing, it follows that the State has shown that it is reasonable to conclude that restricting advertising of firearm-related products "designed, intended, or reasonably appear[ing] to be attractive to minors" would reduce the unlawful purchase and possession of firearms by minors. See, e.g., Educ. Media Co. at Virginia Tech, 602 F.3d at 590 ("It is counterintuitive for alcohol vendors to spend their money on advertisements in newspapers with relatively limited circulation, directed primarily at college students, if they believed that these ads would not increase demand by college students.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

Accordingly, the Court concludes that plaintiffs are unlikely to successfully prove that AB 2571 fails to materially and directly advance the State's substantial interests.

> (3)    Is the regulation no more extensive than necessary to serve that interest?

Plaintiffs make two arguments that AB 2571 is broader than necessary to serve the State's interests. First, plaintiffs contend that AB 2571 sweeps too broadly because the phrase "attractive to children" applies "whether the media is directed to children or a general audience." Mot. at 20 (quoting RJN, Ex. 2 at 6). As a result, plaintiffs claim that the regulation prohibits "communications that are equally attractive to adults who have a right to obtain information about such products to make informed decisions for themselves and their children." Id. (citing Lorillard, 533 U.S. at 562). Similarly, the prohibition is "seriously overinclusive because it abridges the First Amendment rights of young people whose parents . . . think [the shooting sports] are a harmless [even beneficial] pastime." Id. (quoting and paraphrasing Entm't Merchs. Ass'n, 564 U.S. at 804).

Second, plaintiffs claim that even if AB 2571 were not overinclusive in the ways alleged in the preceding paragraph, it would still "remain far too broad for the simple reason that the State 'has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech.' " Id. (quoting Valle Del Sol v. Whiting, 709 F.3d 808, 826 (9th Cir. 2013)). Plaintiffs suggest that California could "counteract firearm advertising with which it disagrees with 'more speech, not enforced silence,' " id. (citing Lorillard, 533 U.S. at 586 (Thomas, J., concurring)), such as "launch[ing] an educational campaign promoting safe firearm handling, storage, and use" or "reminding retailors of their responsibilities with regard to sales to minors," id.

Defendant contests plaintiffs' portrayal of AB 2571's regulatory scope. Although plaintiffs point to the state legislature's statement that the statute's prohibition "applies whether the media is directed to children or a general audience," Mot. at 20 (quoting RJN, Ex. 2 at 6), defendant argues that "plaintiffs ignore that AB 2571 narrowly regulates advertising and marketing communications that are 'designed, intended, or reasonably appear[] to be attractive to minors' as demonstrated by a variety of non-exclusive factors," Opp. at 18 (citing § 22949.80(a)(2)).

Additionally, defendant disagrees with plaintiffs' characterization of the constitutional latitude afforded in regulating commercial speech. Defendant contends that courts "must look for a fit between the government's ends and the means chosen to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

accomplish those ends that is reasonable," a fit that represents " 'not necessarily the single best disposition but one whose scope is in proportion to the interest served . . . .' " Id. at 17 (quoting Bd. Of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)). When such a fit is achieved, defendant argues, courts " 'leave it to governmental decisionmakers to judge what manner of regulation may be best employed.' " Id.

In reply, plaintiffs reiterate their arguments that AB 2571 sweeps more broadly than permissible under this Central Hudson prong. Reply at 17–20. Plaintiffs contend that "firearms in nontraditional colors are just as fun and attractive to many adults" and that "parents have a protected interest in receiving non-misleading information about these lawful products so they may responsibly decide whether a particular firearm is a good fit for their child's lawful recreational or competitive shooting needs." Id. at 19.

In supplemental briefing, plaintiffs reiterate their arguments, explaining that "[e]ven if minors could constitutionally be denied all manner of firearm use and possession, the government goes a bridge too far when it broadly suppresses truthful speech by and for adults about lawful and, in fact, constitutionally protected products."[10] Pls.' Supp. Brief at 13. Plaintiffs argue that the statute's amendments "fail to clear up this fatal overbreadth." Id.

In response, defendant reiterates his contention that AB 2571 "narrowly regulates advertising that is 'designed, intended, or reasonably appears to be attractive to minors,' which is analyzed by a 'totality of circumstances' test, a test that courts routinely apply in other contexts. Def.'s Supp. Brief at 10–11 ("the idea that, at the margins, one or more of these characteristics might also appeal to an adult should not serve to invalidate the entire scheme"). In particular, defendant claims that plaintiffs' reliance on Lorillard is inapposite to the extent that "AB 2571 operates much more narrowly to address its concerns" than the provisions struck down by the Supreme Court. Id.

While blanket bans on forms of advertising may not satisfy the "no more extensive than necessary" prong of Central Hudson, see Zauderer, 471 U.S. at 649 ("Broad prophylactic rules may not be so lightly justified if the protections afforded commercial

---

[10] For the first time, plaintiffs cite in their supplemental brief to the Supreme Court's recent Second Amendment decision in New York State Rifle & Pistol Ass'n v. Bruen, --- U.S. ---, 142 S. Ct. 2111 (2022). See Pls.' Supp. Brief at 14. However, plaintiffs do not bring a Second Amendment claim in this suit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

speech are to retain their force."), not every commercial speech restriction can be classified as a blanket ban. Additionally, the Supreme Court has explained that the tailoring required with respect to commercial speech is not as exacting as that required under strict scrutiny review: "The least restrictive means is not the standard." Lorillard, 533 U.S. at 556. Here again, the Court finds tobacco and alcohol advertising case law to be a relevant framework for assessing the parties' tailoring arguments.

In Lorillard, as discussed above, the Supreme Court assessed the constitutionality of outdoor advertising restrictions and point-of-sale advertising regulations. Having held that the outdoor advertising regulations satisfied the "directly and materially advance" prong, see supra, Part V.A.2.b.2, the Supreme Court held that these regulations failed the "no more extensive than necessary" prong because in several parts of the state, "these regulations would constitute nearly a complete ban on the communication of truthful information about smokeless tobacco and cigars to adult consumers. The breadth and scope of the regulations, and the process by which the Attorney General adopted the regulations, do not demonstrate a careful calculation of the speech interests involved." Id. at 562. As to the point-of-sale advertising restriction, the Supreme Court found that "while Massachusetts may wish to target tobacco advertisements and displays that entice children, much like floor-level candy displays in a convenience store," the blanket height restriction was poorly tailored because it "does not constitute a reasonable fit with that goal." Id. at 567; see also id. at 566 ("Not all children are less than 5 feet tall, and those who are certainly have the ability to look up and take in their surroundings.").

In applying the Central Hudson test to regulations designed to protect minors from tobacco advertising, the Supreme Court in Lorillard explained that "[a] careful calculation of the costs of a speech regulation does not mean that a State must demonstrate that there is no incursion on legitimate speech interests, but a speech regulation cannot unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products." Id. at 565. Importantly, the Court also recognized, "[t]o the extent that studies have identified particular advertising and promotion practices that appeal to youth, tailoring would involve targeting those practices while permitting others." Id. at 565.

Accordingly, courts throughout the country have applied the Central Hudson tailoring prong to various youth-centered advertising regulations, upholding those that satisfy the test and striking down those that do not.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                              'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

In Educational Media Company at Virginia Tech, Inc., as discussed above, the Fourth Circuit applied the Central Hudson "no more extensive than necessary" prong to Virginia's regulation that "prohibits various types of advertisements for alcohol in any 'college student publication.' " 602 F.3d at 587 (citation omitted). The regulation restricted qualifying publications from printing advertisements for beer, wine, or mixed beverages unless the ads are 'in reference to a dining establishment.' " Id. These exempted ads "may not refer to brand or price, but they may use five approved words and phrases, including 'A.B.C. [alcohol beverage control] on-premises,' 'beer,' 'wine,' 'mixed beverages,' 'cocktails,' or 'any combination of these words.' " Id.

The Fourth Circuit found that the regulation was sufficiently tailored because it is "not a complete ban on alcohol advertising in college newspapers." Id. at 590. First, the court explained that "the regulation only prohibits certain types of alcohol advertisements" because it "allows restaurants to inform readers about the presence and type of alcohol they serve." Id. at 590–91. Second, the restriction "only applies to 'college student publications'—campus publications targeted at students under twenty-one." Id. at 591. Because it does not "affect all possible student publications on campus," the court found the restriction to be "sufficiently narrow." Id. Additionally, the court considered how the government created this regulation to "complement" non-speech alternatives such as its state alcohol education and law enforcement programs. Id.

In Discount Tobacco, the Sixth Circuit applied the Central Hudson "no more extensive than necessary" prong to the five federal regulations previously discussed above. The Sixth Circuit upheld the ban on distribution of free tobacco product samples despite the plaintiffs' arguments that it is not narrowly tailored because "it cast[s] an unduly broad net that sweeps in vital speech to Plaintiffs' adult tobacco customers." 674 F.3d at 541. The court found that the ban was reasonable given the government's "extensive documentation that free samples of tobacco products are [an] 'easily accessible source of these products to young people' . . . and freely obtainable, even with the tobacco industry's 'voluntary codes that supposedly restrict distribution of free samples to underage persons.' " Id. (citation omitted).

The court also concluded that the ban on tobacco branding of non-tobacco products was no more extensive than necessary. The plaintiffs had contended that the ban, like the others at issue, was over-inclusive for "encompass[ing] marketing that is geared toward and largely received by adults, and is 'critical . . . in inter-brand competition for adult consumers.' " Id. at 538. They argued that it was more extensive than required because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

"more tailored solutions were available to address the court's youth-spill-over concerns, such as . . . limiting the brand-name merchandise ban to the types of items that can become 'walking advertisements' (e.g., caps and t-shirts, but not matchbooks or key chains)." Id. at 542. The court held that because the Act included an exception for matchbooks, one of the only two items that Plaintiffs highlight as being unreasonably swept up by the regulation, strongly supports our finding that the provision is sufficiently tailored to survive scrutiny under Central Hudson." Id.

Additionally, the Sixth Circuit upheld the ban on tobacco-branded sponsoring of "any athletic, musical, artistic, or other social or cultural event, or any entry or team in any event." Id. at 538. The plaintiffs argued that the ban is overly broad because it encompasses events that "are youth-restricted" and "for which there is no evidence whatsoever of any media coverage." Id. at 543. These arguments were unavailing. The court found that, as with its reasoning for branded non-tobacco merchandising restrictions, the ban on tobacco-branded event sponsorships was sufficiently tailored because it "reaches a wide audience of juveniles and contributes to their decisions to use tobacco products." Id.; see also id. at 542 ("At the time of the 1996 FDA rulemaking, it was estimated that more than 64 million children each year were exposed to tobacco advertising on television through auto-racing sponsorship alone."). Additionally, for all three of these upheld bans, the court rejected the plaintiffs' identification of alternative means to combat underage tobacco marketing and consumption.[11]

On the other hand, the court held that the bans on continuity programs ("loyalty programs") and use of color and imagery in tobacco product packaging and labelling could not withstand Central Hudson scrutiny. The plaintiffs argued that continuity programs are designed to maintain the loyalty of existing customers and not to attract new ones. The

---

[11] The plaintiffs in that case had raised several alternatives, including "restricting media coverage of brand-name-sponsored events or limiting the brand-name merchandise ban to the types of items that can become 'walking advertisements,' strengthening laws prohibiting the sale of tobacco products to minors, improving the state's use of funds negotiated through the 1998 Master Settlement Agreement, raising the legal age of purchase to 19 years-old, which would remove legal-age tobacco users from high schools; penalizing youth use by suspending offenders' drivers' licenses; public advertising campaigns; and social-influence-focused interventions." Id. at 538.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

court found that such a ban was overly broad: "because there is no real dispute that '[a]dults consume more than 98% of all tobacco products sold in this country,' and continuity programs are by nature directly linked to consumption, logic dictates that the overwhelming beneficiaries, both numerically and comparatively, of these continuity programs are adult consumers." <u>Id.</u> at 544.

Similarly, the court found overly broad the restrictions on color and imagery in cigarette and smokeless tobacco product labeling and advertising. Though the restrictions contained certain exemptions for "adult publications," the court explained that the overall "consequence of this restriction is that tobacco advertisers may 'use only black text on a white background' to advertise cigarettes or smokeless tobacco products in most formats in which they currently advertise." <u>Id.</u> at 545 (citation omitted). Noting that almost every product can be marketed through colorful advertising and the creation of positive associations, the Sixth Circuit held that such a broad prophylactic rule was not justified. <u>Id.</u> at 547; <u>see also id.</u> (citing <u>Zauderer</u>, 471 U.S. at 629) ("Given the possibility of policing the use of illustrations in advertisements on a case-by-case basis, the prophylactic approach taken by [the State] cannot stand."). The court described how "all use of color and imagery in tobacco advertising, of course, is not deceptive or manipulative" and listed several uses containing expressive value, such as ads that are largely informational, marketing that "simply shows the package" of the product, colorful imagery that is "simply attention grabbing in a crowded marketplace," and color ads that have no appeal to the youth market. <u>Id.</u>

The Sixth Circuit explained that "[a]s the district court correctly stated, instead of instituting such a sweeping and complete ban, 'Congress could have exempted large categories of innocuous images and colors—<i>e.g.</i>, images that teach adult consumers how to use novel tobacco products, images that merely identify products and producers, and colors that communicate information about the nature of a product, at least where such colors and images have no special appeal to youth.' " <u>Id.</u> at 548 (citation omitted). "There is no doubt that identifying and targeting certain advertising practices will be more arduous than banning all color and graphics in tobacco advertising," the court concluded. "But this is the exact work required by the First Amendment." <u>Id.</u> at 548.

Here, by enacting AB 2571, the Legislature intended to restrict the illegal marketing and advertising of firearm products to minors. To ensure constitutionally appropriate tailoring, the law expressly delineates a totality of the circumstances approach aimed at prohibiting only advertising designed to appeal to minors, with several enumerated factors

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|-------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

provided.  Indeed, some of these factors are similar to the types of restrictions upheld in the cases described above.  <u>Compare</u> Cal. Bus. & Prof. Code § 22949.80(a)(2)(F) ("Is placed in a publication created for the purpose of reaching an audience that is predominantly composed of minors and not intended for a more general audience composed of adults") <u>with</u> <u>Educ. Media Co. at Virginia Tech, Inc. v. Sweck</u>, 602 F.3d at 587 (upholding Virginia regulation that "prohibits various types of advertisements for alcohol in any 'college student publication' . . . define[d] as any college or university publication that is: (1) prepared, edited, or published primarily by its students; (2) sanctioned as a curricular or extracurricular activity; and (3) 'distributed or intended to be distributed primarily to persons under 21 years of age.' "); <u>compare also</u> Cal. Bus. & Prof. Code § 22949.80(a)(2)(B) ("Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm-industry member or firearm-related product") <u>with</u> 21 C.F.R. § 1140.34 ("No manufacturer and no distributor of imported cigarettes or smokeless tobacco may market, license, distribute, sell, or cause to be marketed, licensed, distributed, or sold any item (other than cigarettes or smokeless tobacco or roll-your-own paper) or service, which bears the brand name (alone or in conjunction with any other word), logo, symbol, motto, selling message, recognizable color or pattern of colors, or any other indicia of product identification identical or similar to, or identifiable with, those used for any brand of cigarettes or smokeless tobacco."), <u>cited in</u> <u>Discount Tobacco</u>, 674 F.3d at 542 (upholding regulation).

Moreover, some of the other factors listed are explicitly more narrowly tailored than the blanket bans struck down in the above cases.  In <u>Discount Tobacco City,</u> the court invalidated restrictions banning "all color and graphics in tobacco advertising," 674 F.3d at 548.  Here, by contrast, AB 2571 lists as one factor determining whether the prohibited "[ads] offer firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to minors," Cal. Bus. & Prof. Code § 222949.80(a)(2)(C).  In doing so, AB 2571 is "identifying and targeting certain advertising practices," which is "is the exact work required by the First Amendment."  674 F.3d at 548; <u>see also Lorillard</u>, 533 at 563 ("To the extent that studies have identified particular advertising and promotion practices that appeal to youth, tailoring would involve targeting those practices while permitting others.").  And these factors are not by themselves outcome determinative— they are to be considered under a "totality of the circumstances" test to determine whether "marketing or advertising of a firearm-related product is attractive to minors."  Cal. Bus. & Prof. Code § 222949(a)(2).  Finally, the Court notes that the text and scope of the statute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

are similar to youth advertising prohibitions on tobacco and alcohol.[12] Consequently, plaintiffs appear unlikely to prove that AB 2571 is unconstitutionally overbroad in its scope and application in light of the tailoring test in Central Hudson.

Given all the foregoing reasons, and—as previously stated—the speculative and disfavored nature of facial attacks on an entire statute, the Court cannot conclude at the time of this motion that plaintiffs are likely to succeed on the merits of their commercial speech claim.

3.  First Amendment Right to Association Claim

In their third claim for relief, plaintiffs assert that AB 2571 violates their First Amendment right to freedom of association. The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." Americans for Prosperity Found. v. Bonta, 141 S. Ct. 2373, 2382 (2021) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984)).

Plaintiffs cite the Supreme Court's opinion in NAACP v. Patterson that when "governmental action which may have the effect of curtailing [the right to associate] is subject to the closest scrutiny." Mot. at 21–22 (quoting NAACP v. Patterson, 357 U.S. 449, 462 (1958)). Here, plaintiffs argue that AB 2571 violates their right to associate

---

[12] See, e.g., Cal. Bus. & Prof. Code § 25600(b)(2)(D) ("Coin banks, toys, balloons, magic tricks, miniature bottles or cans, confections, dolls, or other items that appeal to minors or underage drinkers may not be used in connection with the merchandising of beer."); N.H. Rev. Stat. Ann. § 179:31(VII) ("Advertising of liquor or beverages shall not contain . . . [a]ny subject matter or illustrations that the commission determines is reasonably likely to induce minors to drink."); 3 Va. Admin. Code 5-20-10(D) ("No advertising shall contain any statement, symbol, depiction or reference that . . . [w]ould tend to induce minors to drink. . ."); and Ala. Code § 28-11-16 (forbidding manufacturers of tobacco and electronic nicotine products from sponsoring scholarships and most public events using the product brand name, from advertising tobacco and electronic nicotine products in mixed-audience publications, and from using in product labeling or design depiction of "characters or symbols that are known to appeal primarily to minors"). None of these laws were struck down.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|--------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

because it "casts such a wide net that it prohibits Plaintiffs from advertising, marketing, or arranging for the placement of advertising or marketing concerning their various firearm-related programs and services, where Plaintiffs peacefully and lawfully assemble and associate with each other and members of the public, including youth, to engage in expressive activities related to 'gun culture,' the lawful use of firearms, and preservation of the Second Amendment." Mot. at 22. Accordingly, plaintiffs contend based on their above free speech arguments that the State's interest is not compelling, not narrowly tailored, and not the least restrictive means.

In opposition, defendant claims that—similar to its free speech arguments—AB 2571 does not in fact restrict plaintiffs' right to associate. Opp. at 10. Defendant contends that "nothing in the extensive legislative history evinces an intent to restrict promotion of educational, recreational, or competitive events, much less solicitation of membership in any organization or political speech of any kind." Id. Instead, the "only activity of [plaintiffs] prohibited by AB 2571 is the advertising of firearms-related products to minors 'in exchange for monetary compensation'—that is, if they proposed a commercial transaction for the product." Id.

The Court concludes that plaintiffs are unlikely to succeed on the merits of their freedom of association claim for the same reasons addressed with respect to plaintiffs' political and ideological free speech claims. See, e.g., DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 484 & n.9 (E.D.N.Y. 2009), aff'd, 623 F.3d 71 (2d Cir. 2010) (rejecting free association claim where plaintiff "only briefly mention[s] the right of association in conjunction with the free speech claim," and the free association claim is "duplicative" of an unsuccessful free speech claim). As stated above, AB 2571's restrictions on the advertising and marketing of firearm-related products do not "restrict promotion of educational, recreational, or competitive events, much less solicitation of membership in any organization or political speech of any kind." Opp. at 10. Accordingly, plaintiffs' right to freely associate is not implicated here.

### 4.    Fourteenth Amendment Equal Protection Claim

Finally, plaintiffs bring a claim for relief under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

(internal quotation marks and citation omitted).  To establish a violation of equal protection, a plaintiff generally must show both that they were similarly situated to others who received preferential treatment, id. at 439, and that there was a discriminatory motive or intent behind that different treatment.  McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999); Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir. 1998).  A mere demonstration of inequality is not enough: "[t]here must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable [equal protection] claim arises."  McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).  Moreover, unless the alleged discrimination involves a suspect class of persons or a fundamental right, a challenged statute satisfies equal protection if it bears a rational relation to a legitimate governmental interest.  See United States v. Klein, 860 F.2d 1489 (9th Cir. 1988), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000)); City of New Orleans v. Dukes, 427 U.S. 297 (1976) (explaining that federal courts employ a presumption that governmental classifications do not violate the Equal Protection Clause unless they burden a suspect class or a fundamental interest).

Plaintiffs argue that AB 2571 is "undeniably infused with the State's desire to harm [the] politically unpopular" groups associated with promotion of the Second Amendment and so-called "gun culture."  Mot. at 22–23.  As such, plaintiffs contend that AB 2571, its underlying legislative history, and viewpoints of sponsored and authoring politicians, evince "animus" towards Second Amendment supporters and the "firearm industry members" defined in the statute.  Id.  Accordingly, plaintiffs suggest that Court should apply "heightened scrutiny" towards AB 2571's "unequal treatment."  Id. at 22 (citing Police Dep't of Chic. v. Mosley, 408 U.S. 92, 96 (1972); Loving v. Virginia, 388 U.S. 1, 11 (1967)).

In opposition, defendant argues that "conclusory allegations that the government is treating plaintiffs differently from other similarly-situated individuals are insufficient to allege a valid Equal Protection claim," and that plaintiffs' claims here that the government officials created the law "solely out of animus" is also conclusory.  Opp. at 19.  Moreover, defendant contends that plaintiffs "fail[] to identify any protected class" and that their Equal Protection claim is "duplicative of and subsumed by their flawed First Amendment claim."  Id.  In such circumstances, the claim "rise[s] and fall[s] with the First Amendment claims."  OSU Student All. v. Ray, 699 F.3d 1053, 1067 (9th Cir. 2012).

In reply, plaintiffs cite the Supreme Court's holding in Mosley that "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

tailored to their legitimate objectives." <u>Mosley</u>, 408 U.S. at 101. As such, plaintiffs argue that "if the Court finds that Plaintiffs are likely to succeed on their claim that AB 2571 is an impermissible content-based and viewpoint-discriminatory restriction on their core speech, it naturally follows that the law also violates their right to equal protection under the law." Reply at 20.

Because the Court has concluded above that AB 2571 does not restrict political and ideological speech, plaintiffs' equal protection claim is unlikely to succeed on the merits for the same reasons relating to their right to associate claim. Therefore, to the extent plaintiffs' equal protection claim is "essentially the same" as their First Amendment claim, Reply at 20, that claim "fall[s] with the First Amendment Claim." <u>OSU Student All.</u>, 699 F.3d at 1067.[13]

### B.    Remaining Preliminary Injunction Factors

The remaining preliminary injunction factors are whether plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief, whether the balance of equities tips in their favor, and whether an injunction is in the public interest.

#### 1.    <u>Irreparable injury</u>

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)).

Plaintiffs contend that "[i]f this Court concludes that Plaintiffs are likely to succeed on any one of their alleged constitutional violations, the remaining preliminary injunction factors follow readily." Mot. at 23. Plaintiffs cite the Supreme Court's holding that "the loss of First Amendment freedoms," such as those alleged in this case, "for even minimal

---

[13] And here, plaintiffs' Equal Protection claim must be "essentially the same" as their First Amendment claim because they do not assert a sufficient and independent alternative basis for an Equal Protection claim. That is, plaintiffs do not identify any protected class (*e.g.*, race, gender) and have not satisfactorily shown animus directed at that class which would evince a "bare . . . desire to harm a politically unpopular group" such as through "[d]iscriminations of an unusual character." <u>United States v. Windsor</u>, 570 U.S. 744, 770 (2013) (citing <u>U.S. Dep't of Agric. v. Moreno</u>, 413 U.S. 528, 534–35 (1973)).

0050

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             **'O'**

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|----------|-------------------------|------|------------------|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

periods of time, unquestionably constitutes irreparable injury." Id. (quoting Elrod, 427 U.S. at 373).

In opposition, defendant agrees with the relevant legal standard—that the deprivation of constitutional rights constitutes irreparable injury—but argues that "[p]laintiffs are not likely to succeed on the merits because AB 2571 does not unconstitutionally burden any of their constitutional rights." Opp. at 20. "For the same reason," defendant argues, "they cannot show they will suffer irreparable harm if their motion is denied." Id.

As set forth above, the Court concludes that plaintiffs are unlikely to succeed on the merits of their claims. On that basis, plaintiffs accordingly have not demonstrated irreparable harm if the requested injunction is not issued.

         2.         Balance of equities and the public interest in an injunction

The last two factors weigh the "balance of hardships between the parties" and measure a public interest in issuing the injunction. Cottrell, 632 F.3d at 1137. As a threshold matter, "[w]hen the government is a party, these last two factors merge." Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). On the one hand, "it is always in the public interest to prevent the violation of party's constitutional rights." Index Newspapers LLC v. United States Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) (citation omitted). At the same time, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Maryland v. King, 567 U.S. 1301, 1303 (2012).

Plaintiffs cite to Ninth Circuit precedent holding that there is a " 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional [law] . . . would infringe not only the free expression interests of plaintiffs, but also the interests of other people' subjected to the same restrictions." Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009), cited in Mot. at 24; see also Reply at 23 ("The Ninth Circuit has 'consistently recognized the significant public interest in upholding First Amendment principles.' ") (quoting Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014). Additionally, plaintiffs argue that the State will suffer no injury because the State "cannot suffer harm from an injunction that merely ends an unlawful practice. . . ." Reply at 21 (quoting Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-04663-CAS (JCx) | Date | October 24, 2022 |
|---|---|---|---|
| Title | JUNIOR SPORTS MAGAZINES INC. v. ROB BONTA | | |

In opposition, defendant argues that the "significant of the harm that could result from the improper issuance of an injunction would be substantial." Opp. at 21; see also id. (" 'The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave,' and those costs which would impact both 'members of the public' and 'the Government which is tasked with managing handgun violence.' ") (quoting Tracy Rifle & Pistol LLC v. Harris, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), aff'd, 637 F. App'x 401 (9th Cir. 2016)).

Plaintiffs' arguments are ultimately inapplicable to the instant motion. Plaintiffs' contention that the balance of the equities tips in their favor, and that there exists a public interest in granting the injunction, more or less mirrors the logic of their irreparable harm argument. In contrast to the instant motion, the courts in the cases cited by plaintiffs, such as Klein and Doe v. Harris, found the respective plaintiffs likely to succeed on the merits of their First Amendment claims.

Here, because the Court does not find plaintiffs likely to succeed on the merits of their claims, the Court accordingly concludes that the balance of equities does not tip in plaintiffs' favor and that the public interest does not weigh in favor of issuing the injunction.

Moreover, the State, both in the Legislature's findings made in enacting AB 2571, see generally supra, Part V.A.2.b.1–2, and the case law recognizing the public interest in curbing gun violence, Opp. at 20–21, identifies strong countervailing factors weighing against issuance of an injunction enjoining AB 2571. See also Wiese v. Becerra, 263 F. Supp. 3d 986, 994 (E.D. Cal. 2017) ("The State has a substantial interest in preventing and limiting gun violence, as well as in enforcing validly enacted statutes.") (citing Maryland v. King, 567 U.S. at 1303).

## VI.  CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiffs' motion for a preliminary injunction.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2022, an electronic PDF of

APPELLANTS' EXCERPTS OF RECORD, VOLUME I OF V was uploaded to the

Court's CM/ECF system, which will automatically generate and send by electronic

mail a Notice of Docket Activity to all registered attorneys participating in the case.

Such notice constitutes service on those registered attorneys.


Dated: December 19, 2022                    Respectfully submitted,

                                            MICHEL & ASSOCIATES, P.C.

                                            s/ Anna M. Barvir
                                            Anna M. Barvir
                                            *Attorneys for Plaintiffs-Appellants*