Case No. 22-56090

In the United States Court of Appeals
for the Ninth Circuit

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants*,

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

**APPELLANTS' EXCERPTS OF RECORD
VOLUME II OF V**

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com

Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, Idaho 83607
(408) 264-8489
don@dklawoffice.com

*Attorneys for Plaintiffs-Appellants*

December 19, 2022

0054

1  C.D. Michel-SBN 144258
   Anna M. Barvir-SBN 268728
2  Tiffany D. Cheuvront-SBN 317144
   MICHEL & ASSOCIATES, P.C.
3  180 East Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Fax: (562) 216-4445
5  Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
   Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
7  Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
   Foundation, and Gun Owners of California, Inc.

8
   Donald Kilmer-SBN 179986
9  Law Offices of Donald Kilmer, APC
   14085 Silver Ridge Road
10 Caldwell, Idaho 83607
   Telephone: (408) 264-8489
11 Email: Don@DKLawOffice.com

12 Attorney for Plaintiff Second Amendment Foundation

13              IN THE UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 JUNIOR SPORTS MAGAZINES          CASE NO: 2:22-cv-04663-CAS (JCx)
   INC., RAYMOND BROWN,
16 CALIFORNIA YOUTH SHOOTING        **PLAINTIFFS' NOTICE OF APPEAL**
   SPORTS ASSOCIATION, INC.,        **AND REPRESENTATION**
17 REDLANDS CALIFORNIA              **STATEMENT**
   YOUTH CLAY SHOOTING
18 SPORTS, INC., CALIFORNIA         **PRELIMINARY INJUNCTION**
   RIFLE & PISTOL ASSOCIATION,      **APPEAL**
19 INCORPORATED, THE CRPA
   FOUNDATION, AND GUN
20 OWNERS OF CALIFORNIA, INC.;
   and SECOND AMENDMENT
21 FOUNDATION,                      Date Action Filed: July 8, 2022

22              Plaintiffs,

23         v.

24 ROB BONTA, in his official capacity
   as Attorney General of the State of
25 California; and DOES 1-10,

26              Defendant.

27

28

PLAINTIFFS' NOTICE OF PRELIMINARY INJUNCTION APPEAL

1    NOTICE IS HEREBY GIVEN that all Plaintiffs Junior Sports Magazines

2   Inc., Raymond Brown, California Youth Shooting Sports Association, Inc.,

3   Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol

4   Association, Incorporated, The CRPA Foundation, Gun Owners of California, Inc.,

5   and Second Amendment Foundation, hereby appeal to the United States Court of

6   Appeals for the Ninth Circuit from the Order Denying Plaintiffs' Motion for

7   Preliminary Injunction entered in this action October 24, 2022 (ECF No. 35).

8    There has been one previous appeal in this case. The number assigned to the

9   earlier appeal was No. 22-70185. In that matter, Appellants' requested writ was

10   denied.

11    Plaintiffs' Representation Statement is attached to this Notice as required by

12   Ninth Circuit Rule 3-2(b).

13

14   Dated:  November 21, 2022          **MICHEL & ASSOCIATES, P.C.**

15                                      *s/ Anna M. Barvir*
                                        Anna M. Barvir
16                                      Counsel for Plaintiffs Junior Sports Magazines,
                                        Inc., Raymond Brown, California Youth
17                                      Shooting Sports Association, Inc., Redlands
                                        California Youth Clay Shooting Sports, Inc.,
18                                      California Rifle & Pistol Association,
                                        Incorporated, The CRPA Foundation, and Gun
19                                      Owners of California, Inc.

20

21   Dated:  November 21, 2022          **LAW OFFICES OF DONALD KILMER, APC**

22                                      *s/ Donald Kilmer*
                                        Donald Kilmer
23                                      Counsel for Plaintiff Second Amendment
                                        Foundation

24

25

26

27

28

PLAINTIFFS' NOTICE OF PRELIMINARY INJUNCTION APPEAL          0056

**ATTESTATION OF E-FILED SIGNATURES**

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this **PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT**. In compliance with Central District Local Rule 5-4.3.4 (a)(2)(i), I attest that counsel for Plaintiff Second Amendment Foundation, Donald Kilmer, has concurred in this filing.

Dated: November 21, 2022          *s/ Anna M. Barvir*
                                  Anna M. Barvir

# REPRESENTATION STATEMENT

The undersigned represents Plaintiffs-Appellants, Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, Gun Owners of California, Inc., and Second Amendment Foundation, and no other party. Pursuant to Rule 12(b) of the Federal Rules of Appellate Procedure and Circuit Rule 3-2(b), Plaintiffs-Appellants submit this Representation Statement. The following list identifies all parties to the action, and it identifies their respective counsel by name, firm, address, telephone number, and e-mail, where appropriate.

| PARTIES | COUNSEL OF RECORD |
|---|---|
| Plaintiffs-Appellants Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, Gun Owners of California, Inc., | C.D. Michel – SBN 144258<br>Email: cmichel@michellawyers.com<br>Anna M. Barvir – SBN 268728<br>Email: abarvir@michellawyers.com<br>MICHEL & ASSOCIATES, P.C.<br>180 East Ocean Blvd., Suite 200<br>Long Beach, CA 90802<br>Telephone: (562) 216-4444<br>Facsimile: (562) 216-4445<br>Counsel is registered for Electronic Filing in the 9th Circuit |
| Plaintiff-Appellant Second Amendment Foundation | Donald Kilmer – SBN 179986<br>Email: don@dklawoffice.com<br>Law Offices of Donald Kilmer, APC<br>14085 Silver Ridge Road<br>Caldwell, Idaho 83607<br>Telephone: (408) 264-8489<br>Counsel is registered for Electronic Filing in the 9th Circuit |
| Defendant-Appellee Rob Bonta, in his official capacity as Attorney General of the State of California | Mark R. Beckington<br>Supervising Deputy Attorney General<br>Kevin J. Kelly – SBN 337425<br>Deputy Attorney General<br>Email: kevin.kelly@doj.ca.gov<br>300 S. Spring Street, Suite 9012<br>Los Angeles, CA 90013<br>Telephone: (213) 266-6615 |

3

0058

| | Facsimile: (213) 731-2124 |
|---|---|

Dated: November 21, 2022    **MICHEL & ASSOCIATES, P.C.**

*s/ Anna M. Barvir*
Anna M. Barvir
Plaintiffs Junior Sports Magazines, Inc.,
Raymond Brown, California Youth Shooting
Sports Association, Inc., Redlands California
Youth Clay Shooting Sports, Inc., California
Rifle & Pistol Association, Incorporated, The
CRPA Foundation, and Gun Owners of
California, Inc.

Dated:  November 21, 2022    **LAW OFFICES OF DONALD KILMER, APC**

*s/ Donald Kilmer*
Donald Kilmer
Counsel for Plaintiff Second Amendment
Foundation

PLAINTIFFS' NOTICE OF PRELIMINARY INJUNCTION APPEAL

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

     I declare under penalty of perjury that the foregoing is true and correct.

Executed November 21, 2022.

Laura Palmerin

0060

1

1                   UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE

4

5   JUNIOR SPORTS MAGAZINE, INC.,      )
     RAYMOND BROWN, CALIFORNIA YOUTH     )

6   SHOOTING SPORTS ASSOCIATION, INC.,   ) CASE NO.
     REDLANDS CALIFORNIA YOUTH CLAY     ) 22-CV-04663-CAS

7   SHOOTING SPORTS, INC., CALIFORNIA    )
     RIFLE & PISTOL ASSOCIATION,        )

8   INCORPORATED, THE CRPA FOUNDATION,   )
     AND GUN OWNERS OF CALIFORNIA, INC.;  )

9   AND SECOND AMENDMENT FOUNDATION,     )
                                    )

10                 Plaintiffs,      )
                                    )

11        vs.                        )
                                    )

12  ROB BONTA, in his official capacity   )
     as Attorney General of the State of   )

13  California; and DOES 1-10,        )
                                    )

14                 Defendants.      )
     _____)

15

16

17        REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM

18                MONDAY, OCTOBER 17, 2022

19                      11:14 A.M.

20                 LOS ANGELES, CALIFORNIA

21

22  _____

23             MAREA WOOLRICH, CSR 12698, CCRR
             FEDERAL OFFICIAL COURT REPORTER

24          350 WEST FIRST STREET, SUITE 4311
         LOS ANGELES, CALIFORNIA 90012

25                mareawoolrich@aol.com

2

```
1                          APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFFS:

4        Michel and Associates PC
         By:  Anna M. Barvir
5        180 East Ocean Boulevard, Suite 200
         Long Beach, CA 90802
6        Telephone:  (562) 216-4444

7        Law Offices of Donald Kilmer
         By:  Donald E. J. Kilmer, Jr.
8        14085 Silver Ridge Road
         Caldwell, ID 83607
9        Telephone:  (408) 264-8489

10

11   FOR DEFENDANTS:

12       California Department of Justice
         By:  Kevin James Kelly
13       300 South Spring Street, Suite 9012
         Los Angeles, CA 90013
14       Telephone:  (213) 269-6615

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 17, 2022

 2                          11:14 A.M.

 3                            -oOo-

 4

 5              THE COURTROOM DEPUTY:  Calling Calendar Item 4,

 6    Case No. CV 22-4663, Junior Sports Magazine Incorporated,

 7    et al. versus Rob Bonta.

 8              Counsel, please state your appearances.

 9              MS. BARVIR:  Good morning.  Anna Barvir for

10    Plaintiff Junior Sports Magazine, Brown, California Youth

11    Shooting Sports Association, Redlands California Youth Clay

12    Shootings Sports Inc., CRPA, CRPA Foundation, and Gun Owners of

13    California.

14              THE COURT:  Good morning.

15              Mr. Kilmer, we can't hear you.

16              MR. KILMER:  (Muted.)

17              THE COURT:  Your mute is still on.

18              MR. KILMER:  There we go.  I apologize for that.

19              THE COURT:  No problem.

20              MR. KILMER:  Donald Kilmer for the Second Amendment

21    Foundation, Your Honor.  Ms. Barvir will be speaking this

22    morning.

23              THE COURT:  All right.  Very well.

24              MR. KELLY:  Good morning, Your Honor.  Kevin Kelly,

25    Deputy Attorney General, for Defendant Rob Bonta.
```

4

1          THE COURT:  Okay.  Good morning, everyone.  My
2     apologies that we are starting so late.  We tried to finish up
3     everything on the 11:00 calendar.  So the remaining time will
4     be yours.
5          I know you have the tentative.  I realize it's
6     lengthy, to put it mildly.  But I imagine that the plaintiffs
7     will want to be heard.
8          So, Ms. Barvir, if you wish to proceed.
9          MS. BARVIR:  Thank you, Your Honor, for your time
10    this morning.
11         THE COURTROOM DEPUTY:  Before you start, Counsel, if
12    you can make sure all other electronic devices are moved away
13    just to make sure that there's no feedback or whatnot.  And
14    once there is some feedback, if anybody is not speaking, please
15    mute yourselves, and we'll help you through it.
16         THE COURT:  I'm here.  I'm trying to open the
17    window.
18         THE COURTROOM DEPUTY:  Thank you.  I'm sorry,
19    Ms. Barvir.
20         THE COURT:  I'm back.
21         MS. BARVIR:  Thank you.  Is that better?  No.
22         Is that better?  Okay.  Thank you.
23         California has chosen to ban all firearm industry
24    members from engaging in any speech promoting a firearm-related
25    product if that speech constitutes advertising or marketing

```
1    that might reasonably appear to be attractive to minors.

2              In doing so, California has adopted a broad ban on

3    speech about items that are not only entirely lawful to use and

4    possess by both adults and minors even in California but are

5    constitutionally protected under the Second Amendment.

6              In service of California's supported interest in

7    preventing the unlawful use of firearms by minors and in

8    protecting its citizens, especially children, from gun

9    violence, the speech ban is at once both overinclusive and

10   underinclusive.

11             This, plaintiff posits, is fatal to the state's case

12   no matter what level of scrutiny applies if the Court is

13   looking at this as a pure speech restriction subject to strict

14   scrutiny or whether the Court adopts the traditional Commercial

15   Speech Doctrine analysis as the tentative did.

16             As the judi- -- district Court held in *Tracy Rifle*

17   *v. Pistol versus* -- excuse me.  As the district Court held

18   in --

19             THE REPORTER:  Counsel --

20             MS. BARVIR:  -- *Tracy Rifle and Pistol v. Harris* --

21             THE REPORTER:  Counsel --

22             MS. BARVIR:  -- California has an array of policies

23   at its disposal to combat the perceived problem of unlawful

24   possession and unlawful use of firearms by minors in

25   California.
```

6

1          None of this policy choices involve restricting

2   speech in any way, and because such options are available to

3   the state, it must resort to them.  What it cannot do is to ban

4   speech to both minors and adults about products that are not

5   only lawful for minors to use, though under adult supervision

6   or with parental consent, but more importantly, again, are

7   constitutionally protected.

8          In light of the concerns in the Court's detailed

9   tentative, plaintiffs wish to request one point of

10  clarification --

11         THE REPORTER:  Counsel --

12         MS. BARVIR:  -- and address --

13         THE REPORTER:  Counsel --

14         MS. BARVIR:  -- two potential misunderstandings that

15  plaintiffs --

16         THE COURT:  Okay.

17         MS. BARVIR:  Thank you.  To clarify, I would like to

18  ask whether the -- whether my clients print or display

19  disclaimers in all of their publications and advertisements say

20  something like no information about firearms-related product in

21  this publication are intended to promote a commercial

22  transaction.  If they did, would they be facing prosecution or

23  civil penalty under AB 2571, the challenged law?

24         As the law is written, plaintiff cannot be sure

25  which, I think, goes a bit -- excuse me -- to the vagueness and

1    overbreadth we've mentioned throughout our briefing.

2              THE COURT:  Well, I think it's always been --

3              MS. BARVIR:  Thank you.

4              As to my next point, holding that AB 2571 only

5    restricts commercial speech, the tentative focuses only on the

6    direct ban on traditional advertisement and marketing of

7    firearms-related products.

8              But in our supplemental briefing and supplemental

9    declarations, however, plaintiffs have laid out in quite

10   explicit detail about how the law indirectly but just as

11   intentionally as is evident throughout the legislative history

12   of AB 2571, especially in documents that show contempt for

13   named Plaintiff Junior Sports Magazine's Magazine Junior

14   Shooters bans all pure speech engaged in when Youth Shooting

15   magazines cannot be distributed or events cannot be held in

16   California because those magazines and events necessarily rely

17   on the banned commercial speech for their very existence.

18             California's ban on firearm-related speech does not

19   only directly bars Junior Sporting magazines -- Junior Sports

20   magazines and other plaintiffs from -- from publishing their

21   traditional ads about firearms-related products and articles

22   endorsing those products.  It also indirectly bars all the

23   speech found at -- within the pages of Junior Shooters magazine

24   and other similar magazines for youth.

25             That is, the law forces Plaintiff Junior Sports

8

1    magazine to choose between either barring all ads for

2    firearm-related products, a substantial source of funding for

3    the magazine to say the least, risking the magazine's closure,

4    again, then banning all speech or B, keeping those ads and

5    ceasing all distributed -- distribution of its speech to use in

6    California as it should do.

7          In the declaration -- the supplemental declaration

8    of Andrew Fink, he has declared that Junior Sports magazine had

9    to choose the latter, ceasing publishing and distributing of

10   Junior Shooters magazine in California because 2571 passed in

11   June, and it has not because it could not resume that conduct

12   since the ad- -- adoption of AB 160.

13         The California speech ban clearly does not only

14   restrict commercial -- commercial speech, but it also bars a

15   not insignificant amount of pure firearm specific speech that

16   is inextricably linked to that commercial speech.

17         The inability to effectively parse out speech that

18   merely proposes a commercial transaction and the pure speech

19   that encourages the exercise of Second Amendment productive

20   conduct illustrates why -- well why reasons recent Supreme

21   Court cases have begun to nullify or diminish the distinction

22   between so-called commercial speech and other types of speech:

23   Ideological, educational, et cetera.

24         Now, granting all protected speech the full

25   protection of the First Amendment in lieu of judging commercial

9

1    speech under a separate rubric that looks at whether the

2    advertising is false or misleading and apply something like

3    intermediate scrutiny.

4            Plaintiff argued that the Court should grant

5    plaintiff's speech that same respect.  That said, even if a

6    rational distinction could exist -- could be said to exist

7    between commercial speech and pure speech, the Commercial

8    Speech Doctrine is not a license for governments to create

9    banned subject matters from its publication -- from

10   publication.

11           So moving to the Court's commercial speech analysis,

12   plaintiff recognized that the Court's tentative repeats a line

13   from California's brief that -- and I'm quoting, "California

14   Penal Code 29610" -- and that's the section from -- excuse me.

15   That's a new law that has been introduced in a recent bill.

16   Generally -- I mean, that's a -- that has recently been

17   amended, I'm sorry, by a recent bill.

18           Back to the quote -- "generally prohibits a minor

19   from possessing a handgun and semiautomatic centerfire rifle

20   and as of July 1st, 2023, any firearm."

21           Respectfully, that is not, in fact, the state of the

22   law today nor will it be the state of the law after July 1st,

23   2023.  Minors may, in fact, still possess firearms for lawful

24   purposes, subject not to just narrow exceptions but a common

25   sense exception that requires minors to have adult supervision

**UNITED STATES DISTRICT COURT**

10

 1   or consent to engage in firearm conduct.

 2            For clarity and for the record on appeal, plaintiffs

 3   want to be sure the Court understands that the minors'

 4   possession of firearms under adult supervision and consent are

 5   the same today as they will be come July 2023.

 6            Plaintiffs also want to clarify in case the Court

 7   isn't aware that no commercial transaction firearm take place

 8   to anyone, let alone minors -- well, legal ones, that is, legal

 9   commercial transactions that is -- in California unless a

10   commercial transaction takes place through an FFL.  An FFL is

11   for purposes of firearm sales considered an agent of the

12   Federal Government.  They also must go through a California

13   firearms licensed firearm dealer which is an agent of the

14   California government for the purposes of firearm sales.

15            That means we offer for sale the acceptance,

16   consideration, and delivery of firearms products -- not

17   firearms.  Not other related products that this law also

18   affects -- must take place through a government agent.  And

19   they may only take place after a significant background check

20   and ten-day waiting period.

21            Guns that sold at 7-Eleven or Toys "R" Us, they are

22   not readily available for unlawful purchase by minors as, say,

23   tobacco or alcohol.  But the Court's tentative relies very

24   heavily on case law analyzing restrictions on commercial speech

25   pertaining to such substances.  And I can see -- and plaintiff

**UNITED STATES DISTRICT COURT**

11

1    can see the temptation to do that.

2            But when it's clear that California law does not

3    (inaudible) minors from lawfully possessing and using firearms,

4    it also becomes clear that these cases make for a very poor

5    analogy.

6            Both the state and the Court's tentative rely on

7    cases whereby the courts have permitted advertising

8    restrictions to dampen the demand for products and services to

9    establish that the state may ban -- ban speech to dampen the

10   demand of youth to engage in a shooting sporch -- sport.

11           Respectfully, plaintiffs argue that that reliance is

12   misplaced.  These cases generally deal with restrictions on

13   advertising of products or services like alcohol and tobacco.

14   Other similar restrictions -- other similar cases deal with

15   restrictions on advertising of brothels and gambling and such

16   conduct.

17           They do not speak to restrictions on truthful speech

18   about products that are not only illegal to only use but

19   Constitutionally protected as is the speech that California

20   bars under 2571.

21           Respectfully, plaintiff's posit that the more apt

22   analysis would be -- excuse me -- found under *Carey v.*

23   *Population Services*.  Like the unconstitutional ban on

24   advertising contraceptives to children and adults, in theory,

25   AB 2571 seeks to suppress information about the availability of

1   and price of constitutionally protected products.

2           It cannot be said, as the Court's tentative

3   acknowledges, to prohibit only misleading ads or only ads

4   proposing illegal transactions.  Nor can it be characterized as

5   directed to inciting or producing imminent lawless action.

6           To the contrary, the speech that plaintiffs engage

7   in and which is, in fact, banned by AB 2571 does not propose

8   that minors engage in lawful sales -- unlawful sales or the

9   unlawful use of firearms.  It pertains to lawful and

10  constitutionally-protected conduct, and it targets speech to

11  both adults and minors as long as that could be considered

12  reasonably attractive to minors who might seek market

13  information about lawful firearms for lawful use.  And so, as

14  in *Carey*, the state cannot ban plaintiff's speech.

15          Unless the Court has in anything else or thinks

16  additional briefing could assist the Court in understanding the

17  issues with regard to the state of the law regarding transfer

18  of firearms, plaintiffs would rest.

19          THE COURT:  All right.  I appreciate that.  You had

20  a lot to say.  A lot of that is in your moving papers.

21          I guess I'd like to hear from Mr. Kelly first.  I

22  must say that I think you assume things about the statute that

23  I just think doesn't cover it.  It doesn't purport to ban sales

24  and limit advertising.  And I think it limits commercial

25  speech.  I know you disagree.

1          But let's hear from Mr. Kelly and see what he has to

2     say.

3          MR. KELLY:  Thank you, Your Honor.  You know,

4     obviously we agree with the vast majority of the Court's

5     tentative ruling.  It was our position that the statute was

6     always Constitutional, and I think the amendment to the law,

7     the recent amendment, makes it clear that it regulates

8     commercial speech and nothing beyond that.

9          I think the plaintiff often bring up examples

10    existing at the margins, and I think they often point to

11    communications regarding the use of firearms-related products

12    by minors, but that is not what the statute is regulating.

13         It's regulating, as you said, marketing and

14    advertising communication of firearm-related products only.

15         So it's difficult to respond to a lot of those

16    arguments about rehashing the Court's reasoning and tentative

17    ruling --

18         THE COURT:  Let me just ask you this.  I think --

19    and I don't mean to interrupt, but that's exactly what I'm

20    doing.  For example, I think you and I agree that several

21    injunction factors are implicated because of the nature of the

22    regulation.

23         I believe that what Miss Barvir is saying is that I

24    have the wrong analogy, that I shouldn't be looking at alcohol

25    cases or cigarette cases and things of that nature.  And I

14

1    think it's because she believes that the Second Amendment

2    protects gun ownership, and so therefore, a different standard

3    has to apply.

4         And, I guess, what do you say about that?

5         MR. KELLY:  So, Your Honor, I think the analogy is

6    appropriate in this case because I think, as Your Honor pointed

7    out in the tentative decision, the concern here is the

8    prevention of illegal and unsafe firearm use by minors.  That's

9    what the law is addressing here.  That's the purpose of the

10   law, and that's what the law does address here.

11        So I think the constitutionality of minor possession

12   of firearms is not really at issue in this case, and I think

13   it's something the Court really doesn't need to go into here.

14        But I think the Court was absolutely correct in

15   addressing and discussing how the interest deemed further here

16   is the illegal use of firearms by minors.  We put forth data

17   and numbers showing that there is a very real problem with what

18   that the legislation recognized, and it's material submitted

19   along with the bill.  And so in that way, I think the analogy

20   is actually appropriate in the situation.

21        THE COURT:  Okay.  I interrupted you.  Do you want

22   to proceed?

23        MR. KELLY:  Oh, one moment, Your Honor.  I'm sorry.

24        Yes, Your Honor.  So I'll just respond with a couple

25   more of the plaintiff's points.  So they've continually argued

**UNITED STATES DISTRICT COURT**

15

```
 1    that this statute is both overinclusive and underinclusive and
 2    that there are other means possible to prevent gun violence
 3    involving minors.
 4             But I think they are really applying a strict
 5    scrutiny standard here.  Intermediate scrutiny is all that's
 6    required.  And just because this is not the only solution to
 7    the problem does not mean it's a permissible way to address the
 8    problem of youth gun violence.
 9             I think to the extent that they argue that the
10    definition of being reasonably attractive to minors is too
11    overbroad, it's belied by the statute itself.  It lists very
12    specific factors for a Court to consider.  And, again, it does
13    not -- it is limited to commercial solicitation rather than
14    communications regarding the youth of firearms --
15             THE COURT:  Well, what do you say in response to the
16    argument that the statute effectively requires publishers
17    either to not distribute in California or basically close down?
18             MR. KELLY:  I think that's a conclusory statement.
19    I don't think there's been any evidence other than just a mere
20    statement saying, well, since we can't -- well, first of all,
21    that the advertisements that they purport to want to carry
22    actually run afoul of the law.
23             And secondly, that -- that not being able to carry
24    those advertisements would actually doom their publication.
25    And they are perfectly able to seek sponsorships and financial
```

**UNITED STATES DISTRICT COURT**

1  compensation in other ways.  But again, I don't think they've

2  established significant facts that that would actually be a

3  problem.

4          THE COURT:  Okay.  Anything else you want to cover

5  before I go back to Ms. Barvir?

6          MR. KELLY:  No, nothing else, Your Honor.

7          THE COURT:  Okay.  Ms. Barvir.

8          MS. BARVIR:  Thank you, Your Honor.  I don't have

9  anything to add.  Though I would like to just quickly respond

10  to a few points that I heard my friend speaking to.

11          First, the state -- the --

12          (Audio feedback.)

13          THE COURTROOM DEPUTY:  Try to back up just a little

14  bit.  You might be too close to the microphone.

15          MS. BARVIR:  Thank you.  Is that better?

16          THE COURT:  Yes.

17          MS. BARVIR:  First, the state and the Court's

18  tentative argue that the issue and what is being barred here is

19  illegal use and possession, and that isn't it.  The law does

20  address that, but it's much, much broader than that.  If the

21  law focused only on, perhaps, barring speech for -- excuse me.

22          You know, they literally, I think, targeting and

23  telling minors, hey, buy guns here, perhaps that might be --

24  that might be something that is referencing just illegal

25  contracts or just -- this though is all types of speech

**UNITED STATES DISTRICT COURT**

1  including speech regarding and promoting lawful use and

2  possession as long as that speech is attractive to minors.

3          And again, that is speech that might equally be

4  attractive to adults.  So we are not just talking about speech

5  targeting children.  We are talking about speech between

6  adults.  Okay?

7          Second, I believe -- excuse me.  The state is --

8  misunderstands or -- misunderstands plaintiff's argument with

9  regarding -- with regard to the overinclusive and

10  underinclusivity of AB 2571 and points made about having to

11  resort to laws and policies that restrict conduct and not

12  speech.

13          We are not talking about a strict scrutiny standard

14  here.  This argument, taking the lead from *Tracy Rifle v.*

15  *Harris* which was specifically and only about commercial

16  transaction speech -- and that court did, in fact, find that

17  bans on this type of -- I believe it was being able to view

18  images of handguns from outside the store -- excuse me --

19  found that that commercial speech was violative of the First

20  Amendment even under the Commercial Speech Doctrine because

21  there were all of these other things that the state could have

22  done that did not in any way restrict the speech -- the rights

23  of the speech -- the plaintiffs to speak in that case.  That

24  was under a commercial speech analysis, not a strict scrutiny

25  analysis.

18

```
 1              And finally, the point about whether or not
 2    plaintiff had made enough -- shown enough evidence that they'd
 3    be put out of business if they couldn't advertise their --
 4    advertise as they currently do, I think there's a few things to
 5    say about that.
 6              A, when the law was passed in June -- excuse me --
 7    and took effect immediately, it did not have any of those
 8    restrictions.  So they had to -- they weren't clear about
 9    what -- exactly what -- that it was not as clear as it perhaps
10    is now.  Though I still think it's not entirely clear even
11    after AB 160.
12              So I think the relevant time period to look at is
13    the end of September when AB 160 took effect.  It is not enough
14    time for them to have even shown that there was an impact on
15    their business.  So the signed affidavit of the owner of that
16    business I think should be sufficient to show that he thinks
17    what they have to do in order to stay afloat is to not
18    distribute to California, and that's a ban on speech to
19    California.
20              Additionally, requiring that they first then go
21    ahead and take all that speech out, this is a nationwide --
22    actually, worldwide distributed publication.  So what
23    California is trying to do in suggesting it's inappropriate is
24    ban speech in other states that do not restrict such speech,
25    and California can't do that either.
```

19

1           With that, plaintiffs would rest.

2           THE COURT:  Mr. Kilmer?

3           MR. KILMER:  Your Honor, I didn't hear an answer to

4    Ms. Barvir's question proposed to Mr. Kelly that she made

5    initially.  And that is, is the disclaimer going to fix all of

6    this?  If these publications or websites merely print a

7    disclaimer that no information about firearm-related products

8    in this publication are intended to promote a commercial

9    transaction, are we -- are we safe?  Are we immune from 2571?

10          THE COURT:  Well, I'll leave that to Mr. Kelly

11   because I suspect that the answer is -- that the disclaimer in

12   a general sense may be okay, but then it may not.

13          Mr. Kelly?

14          MR. KELLY:  Yeah, I think that's correct.  I think,

15   again, the statute lays out the totality of circumstances

16   analysis here.  I'm hesitant to say whether -- there are a lot

17   of factors that go into this; right?

18          I think -- and, you know, I'm hesitant to speak on

19   behalf of my office and take a position here on behalf of

20   everyone at my office.

21          But again, I think I would point to the statute.

22   Does it fall under the -- do the communications that the

23   publication is offering fall under the definition of marketing

24   or advertising under the law, and do they constitute being

25   attractive to minors as defined by the law.

20

1          So I don't think that there's one clear-cut answer

2     there.  And I think, again, you would have to look at the

3     statute for the answer to that and apply it all with different

4     factors that the statute provides for.

5          THE COURT:  I think -- here's the problem, folks.

6     Obviously this is a significant issue for both sides.  We are

7     speaking now in terms of what the statute says and what I and

8     you think is a reasonable conclusion under the statute.

9          There may be instances that are brought forth where

10    as applied, the statute may fail or as applied, it may succeed.

11    But the problem is we don't have a lot before it.

12         But I certainly don't see anything in this

13    legislation that would require the magazine to cease publishing

14    in California.  I think the statute is clear regarding what

15    types of advertising is prohibited; and namely, that is the

16    advertising which is -- that encourages minors to possess and

17    own firearms illegally.

18         I believe it's commercial speech.  It is a much

19    broader prohibition.  But at the end of the day, I do believe

20    the statute, particularly after the amendment, makes clear what

21    the state's intention is, and that is to regulate commercial

22    speech, not other speech, and it is directed toward speech that

23    is intended to encourage or entice people who are ineligible to

24    own guns to want to possess or buy guns.

25         I think on that basis, I think it withstands

21

1    scrutiny.  But obviously I know the plaintiff vehemently

2    disagrees.

3          So I am going to take another look at the ruling in

4    light of the comments.  But I would not expect me to change

5    anything dramatically after today's hearing.  So I suppose you

6    should all plan accordingly.

7          Okay.  I appreciate your indulgence and your

8    briefing and all that you have done.  I will try to have

9    something for you in the next few days.

10          MS. BARVIR:  Thank you, Your Honor.

11          MR. KELLY:  Thank you, Your Honor.

12          MR. KILMER:  Thank you, Your Honor.

13          THE COURTROOM DEPUTY:  Thank you, Counsel.  This

14    Court is adjourned.

15          (At 11:40 a.m. the proceedings adjourned.)

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1 **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5      I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6 COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7 FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8 THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9 THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10 STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11 ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12 IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13 CONFERENCE OF THE UNITED STATES.

14

15

16      DATED THIS  28TH  DAY OF NOVEMBER, 2022.

17

18

19      /S/ MAREA WOOLRICH

20      _____
        MAREA WOOLRICH, CSR NO. 12698, CCRR
21      FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

**UNITED STATES DISTRICT COURT**

1  C.D. Michel-SBN 144258
   Anna M. Barvir-SBN 268728
2  Tiffany D. Cheuvront-SBN 317144
   MICHEL & ASSOCIATES, P.C.
3  180 East Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Fax: (562) 216-4445
5  Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
   Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
7  Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
   Foundation, and Gun Owners of California, Inc.
8
9  Donald Kilmer-SBN 179986
   Law Offices of Donald Kilmer, APC
10 14085 Silver Ridge Road
   Caldwell, Idaho 83607
11 Telephone: (408) 264-8489
   Email: Don@DKLawOffice.com

12 Attorney for Plaintiff Second Amendment Foundation

13                IN THE UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15 JUNIOR SPORTS MAGAZINES          CASE NO: 2:22-cv-04663-CAS (JCx)
   INC., RAYMOND BROWN,
16 CALIFORNIA YOUTH SHOOTING        **REQUEST FOR JUDICIAL NOTICE IN**
   SPORTS ASSOCIATION, INC.,        **SUPPORT OF PLAINTIFFS'**
17 REDLANDS CALIFORNIA              **SUPPLEMENTAL BRIEF IN SUPPORT**
   YOUTH CLAY SHOOTING              **OF MOTION FOR PRELIMINARY**
18 SPORTS, INC., CALIFORNIA         **INJUNCTION**
   RIFLE & PISTOL ASSOCIATION,
19 INCORPORATED, THE CRPA           Hearing Date:    October 17, 2022
   FOUNDATION, AND GUN              Hearing Time:    10:00 a.m.
20 OWNERS OF CALIFORNIA, INC.;      Courtroom:       8D
   and SECOND AMENDMENT             Judge:           Christina A. Snyder
21 FOUNDATION,

22              Plaintiffs,

23          v.

24 ROB BONTA, in his official capacity
   as Attorney General of the State of
25 California; and DOES 1-10,

26              Defendant.

27

28

                                   1

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

Under Federal Rule of Evidence 201, Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, Gun Owners of California, Inc., and Second Amendment Foundation (collectively, "Plaintiffs") respectfully request that the Court take judicial notice of the following documents in support of Plaintiffs' motion for preliminary injunction:

1. **Assembly Bill 160, 2021-2022 Reg. Sess. (Cal. 2022).** A true and correct copy of this document is attached as **Exhibit 33.** Exhibit 33 is a public record of the California State Legislature that I accessed on or about September 28, 2022, from https://leginfo.legislature.ca.gov/faces/billSearchClient.xhtml, the official California Legislative Information website, which publishes official legal history and government documents saved in a fully searchable, image-based format.

A court shall take judicial notice of such a fact if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). Judicial notice of Exhibit 33 is proper because the document is "capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, "[a] trial court may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (taking judicial notice of agency report).

What's more, "[l]egislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (discussing legislative history of California statute). Further, "a federal court must take judicial notice of state statutes 'without plea or proof.'" *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 323 (1st Cir. 2004) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885)).

/ / /

REQUEST FOR JUDICIAL NOTICE

Here, the accuracy of all the public records subject to Plaintiffs' Request for Judicial Notice, consisting of publicly available legislative history, cannot reasonably be questioned. Judicial notice of this record is therefore appropriate.

Dated:  September 28, 2022        **MICHEL & ASSOCIATES, P.C.**

                                  *s/ Anna M. Barvir*
                                  Anna M. Barvir
                                  Counsel for Plaintiffs Junior Sports
                                  Magazines, Inc., Raymond Brown, California
                                  Youth Shooting Sports Association, Inc.,
                                  Redlands California Youth Clay Shooting
                                  Sports, Inc., California Rifle & Pistol
                                  Association, Incorporated, The CRPA
                                  Foundation, and Gun Owners of California,
                                  Inc.

Dated:  September 28, 2022        **LAW OFFICES OF DONALD KILMER, APC**

                                  *s/ Donald Kilmer*
                                  Donald Kilmer
                                  Counsel for Plaintiff Second Amendment
                                  Foundation

REQUEST FOR JUDICIAL NOTICE

# EXHIBIT 33

**Assembly Bill No. 160**

———

Passed the Assembly  August 31, 2022

_____

Chief Clerk of the Assembly

———

Passed the Senate  August 30, 2022

_____

Secretary of the Senate

———

This  bill  was  received  by  the  Governor  this  _____  day
of  _____, 2022, at  _____  o'clock  ____M.

_____

Private Secretary of the Governor

**AB 160** — 2 —

CHAPTER _____

An act to amend Section 22949.80 of the Business and Professions Code, to amend Section 68085.1 of, and to amend, repeal, and add Sections 13956, 13957, 13957.5, 13959, and 13962 of the Government Code, to amend Sections 290.008, 457.1, 1203.4b, and 1463.001 of, to amend, repeal, and add Sections 4900 and 4904 of, and to add Section 679.027 to, the Penal Code, and to amend Section 1732.10 of the Welfare and Institutions Code, relating to public safety, and making an appropriation therefor, to take effect immediately, bill related to the budget.

LEGISLATIVE COUNSEL'S DIGEST

AB 160, Committee on Budget. Public safety trailer bill.

(1) Existing law prohibits a firearm industry member, as defined, from engaging in advertising or marketing related to firearms that is intended for minors or reasonably appears to be attractive to minors, as specified.

This bill would exempt from this prohibition any advertising that is offering or promoting classes or events related to firearm safety, hunting, or sport shooting, as specified, or promoting membership in any organization.

(2) Existing law generally provides for the compensation of victims and derivative victims of specified types of crimes by the California Victim Compensation Board from the Restitution Fund, which is continuously appropriated to the board. Existing law prohibits the board from granting compensation to a person who is convicted of a violent felony, as prescribed, until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime.

This bill would instead prohibit compensation from being granted to a person in the above circumstances until after that person has been released from a correctional institution.

(3) Existing law authorizes the board to compensate for pecuniary loss, including compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs

94

as a direct result of the victim's or derivative victim's injury or the victim's death, as specified. Existing law also provides limits on the compensation a victim and derivative victim may receive.

This bill would authorize the board, in authorizing compensation for loss of income and support, to base the loss of income on the actual loss the victim sustains or the wages that an employee would earn, as specified, during the period that the victim is unable to work or seek work as a result of the injury for adult victims, and upon the loss the victim actually sustains for victims who are under 18 years of age at the time of the crime, as specified. The bill would also specify that an adult derivative victim and a derivative victim who was legally dependent on the victim at the time of the crime are also similarly eligible for compensation for loss of income, as specified. The bill would specify that if a victim is a minor at the time of the crime, the victim is eligible for future loss of income, calculated as specified.

This bill would specify that if an adult victim or derivative victim was not employed or receiving earned income benefits at the time of the crime, the victim or derivative victim, as applicable, shall be eligible for loss of income if they were fully or partially employed or receiving income benefits for a total of at least 2 weeks in the 12 months preceding the qualifying crime, or had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime, as specified. The bill would specify that if a derivative victim who is otherwise eligible for loss of support is eligible for loss of support if the deceased victim was not employed or receiving earned income benefits at the time of the crime, but the deceased victim was fully or partially employed or receiving earned income benefits for a total of at least 2 weeks in the 12 months preceding the qualifying crime, if the victim had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

This bill would require the board, by July 1, 2025, to adopt new guidelines to rely on a range of evidence in considering and approving claims for loss of income, as specified.

The bill would also remove or raise various limits on the compensation a victim and derivative victim may receive, as specified. By expanding the eligibility for, and by increasing or removing limits on, compensation from a continuously appropriated fund, this bill would make an appropriation.

(4)  Existing law requires the board to publicize the existence of the victim compensation program, and requires a local law enforcement agency to inform crime victims of these provisions, as specified.

This bill would require the board to provide every general acute care hospital in the state that operates an emergency department with specified information, and require the hospital to display the information, as specified. The bill would also require every local law enforcement agency to inform crime victims of the existence of specified trauma recovery centers. By requiring local law enforcement agencies to provide additional information to crime victims, this bill would impose a state-mandated local program.

(5)  Existing law, as added by Proposition 9, the Victims' Bill of Rights Act of 2008: Marsy's Law, at the November 4, 2008, statewide general election, requires a law enforcement agency investigating a criminal act and an agency prosecuting a criminal act to, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate, provide or make available to the victim a "Marsy Rights" card that contains the constitutional rights of crime victims without charge or cost to the victim.

This bill would require every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act to, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, provide or make available to each victim of the criminal act without charge or cost a "Victim Protections and Resources" card and to provide other information, as specified. The bill would also require the Attorney General to design and make available in PDF or other imaging format to these agencies a "Victim Protections and Resources" card containing specified information. The bill would authorize the "Victim Protections and Resources" card to be designed as part of and included with the "Marsy Rights" card described above. By requiring these agencies to provide additional information to crime victims, this bill would impose a state-mandated local program.

(6)  Existing law allows a person who was erroneously convicted of a felony and imprisoned in the state prison or a county jail to present a claim to the board for the injury sustained by the person

94

through the erroneous conviction and imprisonment or incarceration. Existing law requires the board to provide a recommendation to the Legislature that an appropriation be made for the purpose of indemnifying the claimant for the erroneous conviction injury. Existing law requires that the amount of the appropriation recommended by the board be equivalent to $140 per day of incarceration served, as specified.

This bill would require that the compensation recommendation for a claimant be equivalent to $70 per day served on parole or supervised release, as specified. The bill would require that these amounts be updated annually to account for changes in the United States Bureau of Labor Statistics Consumer Price Index, West Region.

(7)  Existing law creates the Division of Juvenile Justice within the Department of Corrections and Rehabilitation to operate facilities to house specified juvenile offenders. Existing law requires the Division of Juvenile Justice to close on June 30, 2023, and provides for the transition of youth who are currently housed within a Division of Juvenile Justice facility to the care and custody of counties.

Existing law requires a person convicted of specified sex offenses, including a person who is discharged or paroled from the Department of Corrections and Rehabilitation after having been adjudicated a ward of the juvenile court because of the commission of a sex offense, to register with local law enforcement agencies while residing in the state or while attending school or working in the state. Existing law requires a person convicted of arson, or a person who is discharged or paroled from the Department of Corrections and Rehabilitation, Division of Juvenile Justice after being adjudicated a ward for having committed arson, to register with certain local officials in the area in which they reside.

This bill would define a discharged person for purposes of these sex offender and arson registration requirements to include specified persons who transition out of the division due to its statutorily required closure. The bill would require the court of jurisdiction to establish the point at which the ward is required to register and notify the Department of Justice of its decision.

(8) Existing law allows a defendant who successfully participated in the California Conservation Camp program as an

94

**AB 160** — 6 —

incarcerated individual hand crew member, or successfully participated as a member of a county incarcerated individual hand crew, except as specified, to petition the court to have the pleading dismissed, as described, thus releasing the person of any penalties and disabilities of conviction, except as otherwise provided.

This bill would also grant this relief to a defendant who has successfully participated at an institutional firehouse, as specified.

(9) Existing law prescribes the distribution of funds collected from specified fines, forfeitures, and civil assessments imposed for crimes.

This bill would correct erroneous cross-references in existing law.

(10) Existing law, within the Department of Corrections and Rehabilitation, creates the Division of Juvenile Justice, headed by a director, to operate facilities to house specified juvenile offenders. Existing law requires the division to close on June 30, 2023, and provides for the transition of youth who are currently housed within a Division of Juvenile Justice facility to the care and custody of counties. Existing law requires the State Department of State Hospitals, upon closure of the division, to continue to provide evaluation, care, and treatment of state hospital patients referred to the division.

This bill would correct an erroneous cross-reference in existing law.

(11) This bill provides that certain of its provisions shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions.

(12) This bill would incorporate additional changes to Sections 13956 and 13957 of the Government Code proposed by SB 299 and SB 877, respectively, and Sections 4900 and 4904 of the Penal Code proposed by SB 1468, to be operative only if this bill and the other specified bills are enacted and this bill is enacted last.

(13) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated

94

by the state, reimbursement for those costs shall be made pursuant
to the statutory provisions noted above.

(14) This bill would declare that it is to take effect immediately
as a bill providing for appropriations related to the Budget Bill.

Appropriation: yes.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 22949.80 of the Business and Professions
Code is amended to read:

22949.80.   (a) (1) A firearm industry member shall not
advertise, market, or arrange for placement of an advertising or
marketing communication offering or promoting any
firearm-related product in a manner that is designed, intended, or
reasonably appears to be attractive to minors.

(2) In determining whether marketing or advertising of a
firearm-related product is attractive to minors, as described in
paragraph (1), a court shall consider the totality of the
circumstances, including, but not limited to, whether the marketing
or advertising:

(A) Uses caricatures that reasonably appear to be minors or
cartoon characters to promote firearm-related products.

(B) Offers brand name merchandise for minors, including, but
not limited to, hats, t-shirts, or other clothing, or toys, games, or
stuffed animals, that promotes a firearm industry member or
firearm-related product.

(C) Offers firearm-related products in sizes, colors, or designs
that are specifically designed to be used by, or appeal to, minors.

(D) Is part of a marketing or advertising campaign designed
with the intent to appeal to minors.

(E) Uses images or depictions of minors in advertising and
marketing materials to depict the use of firearm-related products.

(F) Is placed in a publication created for the purpose of reaching
an audience that is predominately composed of minors and not
intended for a more general audience composed of adults.

(3) This subdivision does not apply to a communication offering
or promoting any firearm safety program, hunting safety or
promotional program, firearm instructional course, sport shooting
event or competition, or any similar program, course, or event, nor
does it apply to a communication offering or promoting

94

**AB 160** — 8 —

membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

(b) A firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

(c) As used in this chapter:

(1) "Ammunition" has the same meaning as provided in subdivision (b) of Section 16150 of the Penal Code.

(2) "Firearm" has the same meaning as provided in subdivisions (a) and (b) of Section 16520 of the Penal Code.

(3) "Firearm accessory" means an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm.

(4) "Firearm industry member" means any of the following:

(A) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i) Advertises firearm-related products.

(ii) Advertises events where firearm-related products are sold or used.

(iii) Endorses specific firearm-related products.

(iv) Sponsors or otherwise promotes events at which firearm-related products are sold or used.

(5) "Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm

component, or a firearm accessory that meets any of the following conditions:

(A)  The item is sold, made, or distributed in California.

(B)  The item is intended to be sold or distributed in California.

(C)  It is reasonably foreseeable that the item would be sold or possessed in California.

(D)  Marketing or advertising for the item is directed to residents of California.

(6)  "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction.

(7)  "Minor" means a natural person under 18 years of age who resides in this state.

(d)  This section shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered.

(e)  (1)  Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

(2)  The court shall impose a civil penalty under paragraph (1) for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(3)  A person harmed by a violation of this section may commence a civil action to recover their actual damages.

(4)  The court shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as

**AB 160** — 10 —

the court deems necessary to prevent the harm described in this section.

(5) Upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in an action brought pursuant to this section.

(6) Each copy or republication of marketing or advertising prohibited by this section shall be deemed a separate violation.

(f) The provisions of this section are severable. If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter. The Legislature hereby declares that it would have adopted this section and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this section or application thereof would be subsequently declared invalid.

SEC. 2. Section 13956 of the Government Code is amended to read:

13956. Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a) An application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1) Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A) The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as

94

0096

a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim of domestic violence shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim of sexual assault,

domestic violence, or human trafficking delayed reporting the qualifying crime.

(2) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(3) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(4) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A Law Enforcement Agency Endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(5) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not

be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section

667.5 of the Penal Code shall not be granted compensation until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(d) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 2.5. Section 13956 of the Government Code is amended to read:

13956. Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a) Except as otherwise provided in this subdivision and in subdivision (c), an application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1) Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A) The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

94

0100

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 262, or 273.5 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(3) Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (2) of subdivision (c), for a claim based on a victim's death as a result of a crime, the board shall not deny the application, in whole or in part, based on the deceased victim's involvement in the crime that gave rise to the claim.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers,

**AB 160** — 16 —

any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim of domestic violence shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim of sexual assault, domestic violence, or human trafficking delayed reporting the qualifying crime.

(2) Notwithstanding paragraph (1), for a claim based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's failure to cooperate.

(3) Notwithstanding paragraph (1), for a claim based on a victim's death as a result of a crime, the board shall not deny the application based on a victim's or derivative victim's failure to cooperate.

(4) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(5) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations

94

of sexual assault, mental health records, or that the victim received a sexual assault examination.

(6) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A law enforcement agency endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(7) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C)  For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D)  For purposes of this subdivision, the sexual assault may have been committed off base.

(E)  For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i)  An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii)  A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii)  A contractor or agent of a private military or private security company.

(iv)  A member of the California National Guard.

(F)  For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c)  Notwithstanding any provision of statute, administrative rule, local ordinance, or other law, for applications based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, if the board receives a form of documentation that describes or demonstrates that a person suffered serious bodily injury or death as a result of a law enforcement officer's use of force, the board shall accept this as sufficient evidence to establish that such use of force constitutes a crime and that the person who suffered serious bodily injury or death as a result of a law enforcement officer's use of force is a victim, solely for the purposes of eligibility for compensation under this chapter. Such a form of documentation may include, but is not limited to, medical records documenting the victim's injury, mental health records, a written statement from a victim services provider, a death certificate, or evidence that the qualifying crime was reported under Section 12525.2 to the Department of Justice as an incident in which the use of force by a law enforcement officer against a civilian resulted in serious bodily injury or death.

(1)  For a claim based on a victim's serious bodily injury that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless the victim is convicted of a violent crime as

94

defined in Section 667.5 of the Penal Code, or of a crime that resulted in serious bodily injury, as defined in Section 243 of the Penal Code, to or death of another person, and the crime occurred at the time and location of the incident on which the claim is based. The board shall not consider a claim for compensation while charges are pending alleging that a victim subject to this paragraph committed such a crime. A victim or applicant subject to this paragraph may apply for compensation pursuant to this chapter at any time for any expense, but the award of that compensation shall not be granted until the charges are no longer pending against the victim. If the victim is deceased, charges shall not be considered pending against the victim for the purposes of this paragraph.

(2) For a claim based on a victim's death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless there is clear and convincing evidence that the deceased victim committed a crime during which the deceased victim personally inflicted serious bodily injury, as defined in Section 243 of the Penal Code, on another person or personally killed another person at the time and location of the incident on which the claim is based.

(d) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(e) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 3.   Section 13956 is added to the Government Code, to read:

13956.   Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a) An application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1) Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A) The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim delayed reporting the qualifying crime.

(2) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental

94

**AB 160** — 22 —

health records, or that the victim has obtained a permanent restraining order.

(3) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(4) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A Law Enforcement Agency Endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(5) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

94

(iv)  A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v)  A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi)  A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii)  Other behavior by the victim consistent with sexual assault.

(C)  For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D)  For purposes of this subdivision, the sexual assault may have been committed off base.

(E)  For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i)  An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii)  A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii)  A contractor or agent of a private military or private security company.

(iv)  A member of the California National Guard.

(F)  For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c)  (1)  Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been released from a correctional institution. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2)  A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

94

(d)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 3.5.  Section 13956 is added to the Government Code, to read:

13956.  Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a)  Except as otherwise provided in this subdivision and in subdivision (c), an application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1)  Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A)  The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B)  The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C)  The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2)  If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A)  The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B)  A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(3) Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (2) of subdivision (c), for a claim based on a victim's death as a result of a crime, the board shall not deny the application, in whole or in part, based on the deceased victim's involvement in the crime that gave rise to the claim.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim delayed reporting the qualifying crime.

(2) Notwithstanding paragraph (1), for a claim based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's failure to cooperate.

(3) Notwithstanding paragraph (1), for a claim based on a victim's death as a result of a crime, the board shall not deny the application based on a victim's or derivative victim's failure to cooperate.

94

0111

(4)  An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(5)  An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(6)  An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A)  A law enforcement agency endorsement issued pursuant to Section 236.5 of the Penal Code.

(B)  A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(7)  (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

94

**AB 160**

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) Notwithstanding any provision of statute, administrative rule, local ordinance, or other law, for applications based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, if the board receives a form of

94

documentation that describes or demonstrates that a person suffered serious bodily injury or death as a result of a law enforcement officer's use of force, the board shall accept this as sufficient evidence to establish that such use of force constitutes a crime and that the person who suffered serious bodily injury or death as a result of a law enforcement officer's use of force is a victim, solely for the purposes of eligibility for compensation under this chapter. Such a form of documentation may include, but is not limited to, medical records documenting the victim's injury, mental health records, a written statement from a victim services provider, a death certificate, or evidence that the qualifying crime was reported under Section 12525.2 to the Department of Justice as an incident in which the use of force by a law enforcement officer against a civilian resulted in serious bodily injury or death.

(1) For a claim based on a victim's serious bodily injury that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless the victim is convicted of a violent crime as defined in Section 667.5 of the Penal Code, or of a crime that resulted in serious bodily injury, as defined in Section 243 of the Penal Code, to or death of another person, and the crime occurred at the time and location of the incident on which the claim is based. The board shall not consider a claim for compensation while charges are pending alleging that a victim subject to this paragraph committed such a crime. A victim or applicant subject to this paragraph may apply for compensation pursuant to this chapter at any time for any expense, but the award of that compensation shall not be granted until the charges are no longer pending against the victim. If the victim is deceased, charges shall not be considered pending against the victim for the purposes of this paragraph.

(2) For a claim based on a victim's death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless there is clear and convincing evidence that the deceased victim committed a crime during which the deceased victim personally inflicted serious bodily injury, as defined in Section 243 of the Penal Code, on another person or personally killed

94

**AB 160**

another person at the time and location of the incident on which the claim is based.

(d) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been released from a correctional institution. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(e) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 4. Section 13957 of the Government Code is amended to read:

13957. (a) The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1) Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2) Subject to the limitations set forth in Section 13957.2, reimburse the amount of outpatient psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the

94

**AB 160** — 30 —

victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A) The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed ten thousand dollars ($10,000):

(i) A victim.

(ii) A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii) A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 in a total amount not to exceed ten thousand dollars ($10,000) for not more than two derivative victims.

(B) The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed five thousand dollars ($5,000):

(i) A derivative victim not eligible for reimbursement pursuant to subparagraph (A), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(ii) A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(C) The board may reimburse a victim or derivative victim for outpatient mental health counseling in excess of that authorized by subparagraph (A) or (B) or for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(D) Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

94

0116

(i) A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii) A person who is licensed in California to provide those services, or who is properly supervised by a person who is licensed in California to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed three thousand four hundred and eighteen dollars ($3,418) to a victim for expenses incurred in relocating, if the expenses are

94

**AB 160** — 32 —

determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed three thousand four hundred and eighteen dollars ($3,418). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than three thousand four hundred and eighteen dollars ($3,418) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

94

0118

(F)  If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8)  When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twelve thousand eight hundred and eighteen dollars ($12,818). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twelve thousand eight hundred and eighteen dollars ($12,818).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b) The total award to or on behalf of each victim or derivative victim may not exceed thirty-five thousand dollars ($35,000), except that this award may be increased to an amount not exceeding seventy thousand dollars ($70,000) if federal funds for that increase are available.

(c) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 4.5. Section 13957 of the Government Code is amended to read:

13957. (a) The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1) Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2) Subject to the limitations set forth in Section 13957.2, reimburse the amount of outpatient psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A) The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed ten thousand dollars ($10,000):

94

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 in a total amount not to exceed ten thousand dollars ($10,000) for not more than two derivative victims.

(B)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed five thousand dollars ($5,000):

(i)  A derivative victim not eligible for reimbursement pursuant to subparagraph (A), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(ii)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(C)  The board may reimburse a victim or derivative victim for outpatient mental health counseling in excess of that authorized by subparagraph (A) or (B) or for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(D)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in the state in which the victim lives to provide those services, or who is properly supervised by a person who is licensed in the state in which the victim lives to

**AB 160** — 36 —

provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed three thousand four hundred and eighteen dollars ($3,418) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

94

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed three thousand four hundred and eighteen dollars ($3,418). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than three thousand four hundred and eighteen dollars ($3,418) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

94

**AB 160** — 38 —

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twelve thousand eight hundred and eighteen dollars ($12,818). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twelve thousand eight hundred and eighteen dollars ($12,818).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b)  The total award to or on behalf of each victim or derivative victim may not exceed thirty-five thousand dollars ($35,000), except that this award may be increased to an amount not exceeding seventy thousand dollars ($70,000) if federal funds for that increase are available.

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support

94

ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 5. Section 13957 is added to the Government Code, to read:

13957. (a) The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1) Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2) Subject to the limitations set forth in Section 13957.2, reimburse the amount of psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A) The following persons may be reimbursed for the expense of their outpatient mental health counseling:

(i) A victim.

(ii) A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii) A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 for not more than two derivative victims.

(iv) A derivative victim not eligible for reimbursement pursuant to clause (iii), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(v) A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(B) The board may reimburse a victim or derivative victim for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(C) Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i) A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii) A person who is licensed in California to provide those services, or who is properly supervised by a person who is licensed in California to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment

94

**AB 160**

of these expenses will not decrease the funds available for payment of loss of income or support.

(4)  Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5)  Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A)  Home security device or system.

(B)  Replacing or increasing the number of locks.

(6)  Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7)  (A)  Authorize a cash payment or reimbursement not to exceed seven thousand five hundred dollars ($7,500) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B)  The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed seven thousand five hundred dollars ($7,500). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C)  The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

94

**AB 160** — 42 —

(i)  The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii)  The crime does not involve the same offender.

(D)  When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E)  Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than seven thousand five hundred dollars ($7,500) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F)  If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8)  When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twenty thousand dollars ($20,000). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twenty thousand dollars ($20,000).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and

94

nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b)  The total award to or on behalf of each victim or derivative victim shall not exceed one hundred thousand dollars ($100,000).

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 5.5.  Section 13957 is added to the Government Code, to read:

13957.  (a)  The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by

**AB 160**                              — 44 —

a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling:

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 for not more than two derivative victims.

(iv)  A derivative victim not eligible for reimbursement pursuant to clause (iii), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(v)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(B)  The board may reimburse a victim or derivative victim for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(C)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

94

(ii) A person who is licensed in the state in which the victim lives to provide those services, or who is properly supervised by a person who is licensed in the state in which the victim lives to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed seven thousand five hundred dollars ($7,500) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this

94

paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed seven thousand five hundred dollars ($7,500). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than seven thousand five hundred dollars ($7,500) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation

of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A) The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B) The funeral and burial expenses incurred as a direct result of the crime, not to exceed twenty thousand dollars ($20,000). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twenty thousand dollars ($20,000).

(9) When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10) When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11) An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b) The total award to or on behalf of each victim or derivative victim shall not exceed one hundred thousand dollars ($100,000).

(c) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

**AB 160** — 48 —

SEC. 6.  Section 13957.5 of the Government Code is amended to read:

13957.5.  (a)  In authorizing compensation for loss of income and support pursuant to paragraph (3) of subdivision (a) of Section 13957, the board may take any of the following actions:

(1)  Compensate the victim for loss of income directly resulting from the injury, except that loss of income may not be paid by the board for more than five years following the crime, unless the victim is disabled as defined in Section 416(i) of Title 42 of the United States Code, as a direct result of the injury.

(2)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The derivative victim is the parent or legal guardian of a victim, who at the time of the crime was under 18 years of age and is hospitalized as a direct result of the crime.

(B)  The minor victim's treating physician certifies in writing that the presence of the victim's parent or legal guardian at the hospital is necessary for the treatment of the victim.

(C)  Reimbursement for loss of income under this paragraph may not exceed the total value of the income that would have been earned by the adult derivative victim during a 30-day period.

(3)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The derivative victim is the parent or legal guardian of a victim who at the time of the crime was under 18 years of age.

(B)  The victim died as a direct result of the crime.

(C)  The board shall pay for loss of income under this paragraph for not more than 30 calendar days from the date of the victim's death.

(4)  Compensate a derivative victim who was legally dependent on the victim at the time of the crime for the loss of support incurred by that person as a direct result of the crime, subject to both of the following:

(A)  Loss of support shall be paid by the board for income lost by an adult for a period up to, but not more than, five years following the date of the crime.

(B)  Loss of support shall not be paid by the board on behalf of a minor for a period beyond the child's attaining 18 years of age.

(5)  (A)  If the qualifying crime is a violation of Section 236.1 of the Penal Code, and the victim has not been and will not be

compensated from any other source, compensate the victim for loss of income or support directly resulting from the deprivation of liberty during the crime based upon the value of the victim's labor as guaranteed under California law at the time that the services were performed for the number of hours that the services were performed, for up to 40 hours per week.

(B)  On or before July 1, 2020, the board shall adopt guidelines that allow it to rely on evidence other than official employment documentation in considering and approving an application for that compensation. The evidence may include any reliable corroborating information approved by the board, including, but not limited to, a statement under penalty of perjury from the applicant, a human trafficking caseworker as defined in Section 1038.2 of the Evidence Code, a licensed attorney, or a witness to the circumstances of the crime.

(C)  Compensation for loss of income paid by the board pursuant to this paragraph shall not exceed ten thousand dollars ($10,000) per year that the services were performed, for a maximum of two years.

(D)  If the victim is a minor at the time of application, the board shall distribute payment under this paragraph when the minor reaches 18 years of age.

(b)  The total amount payable to all derivative victims pursuant to this section as the result of one crime shall not exceed seventy thousand dollars ($70,000).

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 7.  Section 13957.5 is added to the Government Code, to read:

13957.5.  (a)  In authorizing compensation for loss of income and support pursuant to paragraph (3) of subdivision (a) of Section 13957, the board may take any of the following actions:

**AB 160** — 50 —

(1) Subject to paragraph (7), and calculated as provided in paragraph (8), compensate the victim for loss of income directly resulting from the injury, except that loss of income shall not be paid by the board for more than five years following the crime, unless the victim is disabled as defined in Section 416(i) of Title 42 of the United States Code, as a direct result of the injury.

(2) Compensate an adult derivative victim for loss of income, subject to all of the following:

(A) The derivative victim is the parent, legal guardian, or spouse of the victim, or if no parent, legal guardian, or spouse of the victim is present at the hospital, is another derivative victim, who is present at the hospital during the period the victim is hospitalized as a direct result of the crime.

(B) The victim's treating physician certifies in writing that the presence of the derivative victim at the hospital is reasonably necessary for the treatment of the victim, or is reasonably necessary for the victim's psychological well-being.

(C) Reimbursement for loss of income under this paragraph shall not exceed the total value of the income that would have been earned, calculated as described in paragraph (8), by the adult derivative victim during a 30-day period.

(3) Compensate an adult derivative victim for loss of income, subject to all of the following:

(A) The victim died as a direct result of the crime.

(B) (i) If the derivative victim is the spouse of the victim, is the parent of the victim, was living in the household of the victim at the time of the crime, was the legal guardian of the victim at the time of the crime, or was the legal guardian of the victim when the victim was under 18 years of age, the board shall pay for loss of income under this paragraph, calculated as provided by paragraph (8), for not more than 30 calendar days occurring within 90 calendar days of the victim's death.

(ii) For a derivative victim not included in clause (i), the board shall pay for loss of income under this paragraph, calculated as provided by paragraph (8), for not more than seven calendar days occurring within 90 calendar days of the victim's death.

(4) Compensate a derivative victim who was legally dependent on the victim at the time of the crime for the loss of support incurred by that person as a direct result of the crime, calculated as provided in paragraph (8), subject to both of the following:

94

**0136**

(A)  Loss of support shall be paid by the board for income lost by an adult for a period up to, but not more than, five years following the date of the crime.

(B)  Loss of support shall not be paid by the board on behalf of a minor for a period beyond the child's attaining 18 years of age.

(5)  (A)   If the qualifying crime is a violation of Section 236.1 of the Penal Code, and the victim has not been and will not be compensated from any other source, compensate the victim for loss of income or support directly resulting from the deprivation of liberty during the crime based upon the value of the victim's labor as guaranteed under California law at the time that the services were performed for the number of hours that the services were performed, for up to 40 hours per week.

(B)  On or before July 1, 2020, the board shall adopt guidelines that allow it to rely on evidence other than official employment documentation in considering and approving an application for that compensation. The evidence may include any reliable corroborating information approved by the board, including, but not limited to, a statement under penalty of perjury from the applicant, a human trafficking caseworker as defined in Section 1038.2 of the Evidence Code, a licensed attorney, or a witness to the circumstances of the crime.

(C)  Compensation for loss of income paid by the board pursuant to this paragraph shall not exceed ten thousand dollars ($10,000) per year that the services were performed, for a maximum of two years.

(D)  If the victim is a minor at the time of application, the board shall distribute payment under this paragraph when the minor reaches 18 years of age.

(6)  If the victim is a minor at the time of the crime, the victim shall be eligible for future loss of income due to disability from future employment directly resulting from the injury at a rate an employee would earn if employed for 35 hours per week at the minimum wage required at the time of the crime by Section 1182.12 of the Labor Code for a maximum of one year.

(7)  (A)   A victim or derivative victim who is otherwise eligible for loss of income under paragraph (1), (2), or (3) shall be eligible for loss of income if they were employed or receiving earned income benefits at the time of the crime. If an otherwise eligible adult victim or derivative victim was not employed or receiving

0137

earned income benefits at the time of the crime, they shall be eligible for loss of income under paragraph (1), (2), or (3) if the victim or derivative victim was fully or partially employed or receiving income benefits for a total of at least two weeks in the 12 months preceding the qualifying crime, or had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

(B) A derivative victim who is otherwise eligible for loss of support under paragraph (4) shall be eligible for loss of support if the victim was employed or receiving earned income benefits at the time of the crime. If the victim was not employed or receiving earned income benefits at the time of the crime, the derivative victim shall be eligible if the victim was fully or partially employed or receiving earned income benefits for a total of at least two weeks in the 12 months preceding the qualifying crime, or if the victim had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

(8) (A) Except as provided by subparagraph (B), loss of income or support under paragraph (1), (2), (3), or (4) shall be based on the actual loss the victim or derivative victim, as applicable, sustains or the wages the victim or derivative victim, as applicable, would have earned if employed for 35 hours per week at the minimum wage required by Section 1182.12 of the Labor Code during the applicable period, whichever is greater.

(B) For victims who are under 18 years of age at the time of the crime, loss of income under paragraph (1) shall be based upon the actual loss the victim sustains.

(b) By July 1, 2025, the board shall adopt new guidelines for accepting evidence that may be available to the victim or derivative victim in considering and approving a claim for loss of income or support under this section, which shall require the board to accept any form of reliable corroborating information approved by the board regarding the victim or derivative victim's income, including, but not limited to, all of the following:

(1) A statement from the employer.

(2) A pattern of deposits into a bank or credit union account of the victim or derivative victim.

(3) Pay stubs or copies of checks received as payment.

(4) A copy of a job offer letter from an employer.

(5) Income tax records.

(6)  Verification through a vendor, if the employer contracts with a vendor for employment verification.

(7)  Information related to eligibility or enrollment from any of the following:

(A)  The CalFresh program pursuant to Chapter 10 (commencing with Section 18900) of Part 6 of Division 9 of the Welfare and Institution Code.

(B)  The CalWORKs program.

(C)  The state's children's health insurance program under Title XXI of the federal Social Security Act (42 U.S.C. Sec. 1397aa et seq.).

(D)  The California Health Benefit Exchange established pursuant to Title 22 (commencing with Section 100500) of the Government Code.

(E)  The electronic service established in accordance with Section 435.949 of Title 42 of the Code of Federal Regulations.

(F)  Records from the Employment Development Department.

(c)  The total amount payable to all derivative victims pursuant to this section as the result of one crime shall not exceed one hundred thousand dollars ($100,000).

(d)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 8.   Section 13959 of the Government Code is amended to read:

13959.  (a)  The board shall grant a hearing to an applicant who contests a staff recommendation to deny compensation in whole or in part.

(b)  The board shall notify the applicant not less than 10 days prior to the date of the hearing. Notwithstanding Section 11123, if the appeal that the board is considering involves either a crime against a minor, a crime of sexual assault, or a crime of domestic violence, the board may exclude from the hearing all persons other than board members and members of its staff, the applicant for benefits, a minor applicant's parents or guardians, the applicant's representative, witnesses, and other persons of the applicant's choice to provide assistance to the applicant during the hearing. However, the board shall not exclude persons from the hearing if

the applicant or applicant's representative requests that the hearing be open to the public.

(c) At the hearing, the person seeking compensation shall have the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Section 13955.

(d) Except as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, the board shall apply the law in effect as of the date an application was submitted.

(e) (1) The hearing shall be informal and need not be conducted according to the technical rules relating to evidence and witnesses. The board may rely on any relevant evidence if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule that might make improper the admission of the evidence over objection in a civil action. The board may rely on written reports prepared for the board, or other information received, from public agencies responsible for investigating the crime. If the applicant or the applicant's representative chooses not to appear at the hearing, the board may act solely upon the application for compensation, the staff's report, and other evidence that appears in the record.

(2) The board shall allow a service animal to accompany and support a witness while testifying at a hearing.

(f) Hearings shall be held in various locations with the frequency necessary to provide for the speedy adjudication of the appeals. If the applicant's presence is required at the hearing, the board shall schedule the applicant's hearing in as convenient a location as possible or conduct the hearing by telephone.

(g) The board may delegate the hearing of appeals to hearing officers.

(h) The decisions of the board shall be in writing within six months of the date the board received the appeal unless the board determines that there was insufficient information to make a decision. If the board determines that there was insufficient information to make a decision, the board shall notify the applicant in writing within six months of the date the board received the appeal. Copies of the decisions shall be delivered to the applicant or to the applicant's representative personally or sent to them by mail.

(i) The board may order a reconsideration of all or part of a decision on written request of the applicant. The board shall not grant more than one request for reconsideration with respect to any one decision on an appeal for compensation. The board shall not consider any request for reconsideration filed with the board more than 30 calendar days after the personal delivery or 60 calendar days after the mailing of the original decision.

(j) The board may order a reconsideration of all or part of a decision on its own motion, at its discretion, at any time.

(k) Evidence submitted after the board has denied a request for reconsideration shall not be considered unless the board chooses to reconsider its decision on its own motion.

(*l*) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 9.   Section 13959 is added to the Government Code, to read:

13959.   (a) The board shall grant a hearing to an applicant who contests a staff recommendation to deny compensation in whole or in part.

(b) The board shall notify the applicant not less than 10 days prior to the date of the hearing. Notwithstanding Section 11123, if the appeal that the board is considering involves either a crime against a minor, a crime of sexual assault, or a crime of domestic violence, the board may exclude from the hearing all persons other than board members and members of its staff, the applicant for benefits, a minor applicant's parents or guardians, the applicant's representative, witnesses, and other persons of the applicant's choice to provide assistance to the applicant during the hearing. However, the board shall not exclude persons from the hearing if the applicant or applicant's representative requests that the hearing be open to the public.

94

(c)  At the hearing, the person seeking compensation shall have the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Section 13955.

(d) Except as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, the board shall apply the law in effect as of the date an application was submitted.

(e)  (1)  The hearing shall be informal and need not be conducted according to the technical rules relating to evidence and witnesses. The board may rely on any relevant evidence if it is the sort of evidence on which responsible persons are accustomed to rely on the conduct of serious affairs, regardless of the existence of a common law or statutory rule that might make improper the admission of the evidence over objection in a civil action. The board may rely on written reports prepared for the board, or other information received, from public agencies responsible for investigating the crime. If the applicant or the applicant's representative chooses not to appear at the hearing, the board may act solely upon the application for compensation, the staff's report, and other evidence that appears in the record.

(2)  The board shall allow a service animal to accompany and support a witness while testifying at a hearing.

(f)  Hearings shall be held in various locations with the frequency necessary to provide for the speedy adjudication of the appeals. If the applicant's presence is required at the hearing, the board shall schedule the applicant's hearing in as convenient a location as possible or conduct the hearing by telephone.

(g)  The board may delegate the hearing of appeals to hearing officers.

(h)  The decisions of the board shall be in writing within four months of the date the board received the appeal unless the board determines that there was insufficient information to make a decision. If the board determines that there was insufficient information to make a decision, the board shall notify the applicant in writing within four months of the date the board received the appeal. Copies of the decisions shall be delivered to the applicant or to the applicant's representative personally or sent to them by mail.

(i)  The board may order a reconsideration of all or part of a decision on written request of the applicant. The board shall not

grant more than one request for reconsideration with respect to any one decision on an appeal for compensation. The board shall not consider any request for reconsideration filed with the board more than 365 calendar days after the personal delivery or the mailing of the original decision.

(j) The board may order a reconsideration of all or part of a decision on its own motion, at its discretion, at any time.

(k) Evidence submitted after the board has denied a request for reconsideration shall not be considered unless the board chooses to reconsider its decision on its own motion.

(*l*) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 10.  Section 13962 of the Government Code is amended to read:

13962.  (a)  The board shall publicize through the board, law enforcement agencies, victim centers, hospitals, medical, mental health or other counseling service providers, and other public or private agencies, the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(b)  It shall be the duty of every local law enforcement agency to inform crime victims of the provisions of this chapter, of the existence of victim centers, and in counties where no victim center exists, to provide application forms to victims who desire to seek compensation pursuant to this chapter. The board shall provide application forms and all other documents that local law enforcement agencies and victim centers may require to comply with this section. The board, in cooperation with victim centers, shall set standards to be followed by local law enforcement agencies for this purpose and may require them to file with the board a description of the procedures adopted by each agency to comply with the standards. The board shall conduct outreach to local law enforcement agencies about their duties under this section.

(c)  Every local law enforcement agency shall annually provide to the board contact information for the Victims of Crime Liaison

94

0143

Officer designated pursuant to Section 649.36 of Title 2 of the California Code of Regulations.

(d) The board shall annually make available to the Victims of Crime Liaison Officer at every local law enforcement agency one hour of training on victim compensation in California and materials to educate the officers and staff in their law enforcement agencies and publicize the program within their jurisdictions.

(e) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's membership in, association with, or affiliation with, a gang, or on the basis of the victim's or derivative victim's designation as a suspected gang member, associate, or affiliate in a shared gang database, as defined in Section 186.34 of the Penal Code.

(f) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's documentation or immigration status.

(g) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 11. Section 13962 is added to the Government Code, to read:

13962. (a) The board shall publicize through the board, law enforcement agencies, victim centers, hospitals, medical, mental health or other counseling service providers, and other public or private agencies, the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(b) It shall be the duty of every local law enforcement agency to inform crime victims of the provisions of this chapter, of the

existence of victim centers, and of the existence of trauma recovery centers as described under Section 13963.1, and to provide application forms to victims who desire to seek compensation pursuant to this chapter. The board shall provide application forms and all other documents that local law enforcement agencies and victim centers may require to comply with this section. The board, in cooperation with victim centers, shall set standards to be followed by local law enforcement agencies for this purpose and may require them to file with the board a description of the procedures adopted by each agency to comply with the standards. The board shall conduct outreach to local law enforcement agencies about their duties under this section.

(c)  Every local law enforcement agency shall annually provide to the board contact information for the Victims of Crime Liaison Officer designated pursuant to Section 649.36 of Title 2 of the California Code of Regulations.

(d)  The board shall annually make available to the Victims of Crime Liaison Officer at every local law enforcement agency one hour of training on victim compensation in California and materials to educate the officers and staff in their law enforcement agencies and publicize the program within their jurisdictions.

(e)  The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's membership in, association with, or affiliation with, a gang, or on the basis of the victim's or derivative victim's designation as a suspected gang member, associate, or affiliate in a shared gang database, as defined in Section 186.34 of the Penal Code.

(f)  The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's documentation or immigration status.

(g)  (1)  The board shall provide every general acute care hospital in the state that operates an emergency department with both of the following:

(A)  A poster developed by the board describing the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(B)  Application forms to distribute to victims, derivative victims, and their family members who desire to seek compensation pursuant to this chapter.

(2)  It shall be the duty of every general acute care hospital to display a poster provided to the hospital pursuant to subparagraph (A) of paragraph (1) prominently in the lobby or waiting area of its emergency department.

(3)  At the request of the hospital, the board shall provide the documents described in paragraph (1) in any of the languages listed in paragraph (4) of subdivision (d) of Section 13952.

(h)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 12.  Section 68085.1 of the Government Code is amended to read:

68085.1.  (a)  This section applies to all fees and fines that are collected on or after January 1, 2006, under all of the following:

(1)  Sections 177.5, 209, 403.060, 491.150, 631.3, 683.150, 704.750, 708.160, 724.100, 1161.2, 1218, and 1993.2 of, subdivision (g) of Section 411.20 and subdivisions (c) and (g) of Section 411.21 of, subdivision (b) of Section 631 of, and Chapter 5.5 (commencing with Section 116.110) of Title 1 of Part 1 of, the Code of Civil Procedure.

(2)  Section 3112 of the Family Code.

(3)  Section 31622 of the Food and Agricultural Code.

(4)  Subdivision (d) of Section 6103.5, Sections 68086 and 68086.1, Sections 68926.1 and 69953.5, and Chapter 5.8 (commencing with Section 70600).

(5)  Section 103470 of the Health and Safety Code.

(6)  Subdivisions (b) and (c) of Section 166 of the Penal Code.

(7)  Sections 1835, 1851.5, 7660, and 13201 of the Probate Code.

(8)  Sections 14607.6 and 16373 of the Vehicle Code.

(9)  Section 71386 of this code, Sections 304, 7851.5, and 9002 of the Family Code, and Section 1513.1 of the Probate Code, if the reimbursement is for expenses incurred by the court.

(10)  Section 3153 of the Family Code, if the amount is paid to the court for the cost of counsel appointed by the court to represent a child.

(b)  On and after January 1, 2006, each superior court shall deposit all fees and fines listed in subdivision (a), as soon as practicable after collection and on a regular basis, into a bank account established for this purpose by the Administrative Office of the Courts. Upon direction of the Administrative Office of the Courts, the county shall deposit any money it collects under the sections listed in subdivision (a) as soon as practicable after collection and on a regular basis into the bank account established for this purpose and specified by the Administrative Office of the Courts. The deposits shall be made as required by rules adopted by, and financial policies and procedures authorized by, the Judicial Council under subdivision (a) of Section 77206. Within 15 days after the end of the month in which the fees and fines are collected, each court, and each county that collects any fines or fees under subdivision (a), shall provide the Administrative Office of the Courts with a report of the fees by categories as specified by the Administrative Office of the Courts. The Administrative Office of the Courts and any court may agree upon a time period greater than 15 days, but in no case more than 30 days after the end of the month in which the fees and fines are collected. The fees and fines listed in subdivision (a) shall be distributed as provided in this section.

(c)  (1)  Within 45 calendar days after the end of the month in which the fees and fines listed in subdivision (a) are collected, the Administrative Office of the Courts shall make the following distributions:

(A)  To the small claims advisory services, as described in subdivision (f) of Section 116.230 of the Code of Civil Procedure.

(B)  To dispute resolution programs, as described in subdivision (b) of Section 68085.3 and subdivision (b) of Section 68085.4.

(C)  To the county law library funds, as described in Sections 116.230 and 116.760 of the Code of Civil Procedure, subdivision (b) of Section 68085.3, subdivision (b) of Section 68085.4, and Section 70621 of this code, and Section 14607.6 of the Vehicle Code.

94

(D) To the courthouse construction funds in the Counties of Riverside, San Bernardino, and San Francisco, as described in Sections 70622, 70624, and 70625.

(E) Commencing July 1, 2011, to the Trial Court Trust Fund, as described in subdivision (e) of Section 70626, to be used by the Judicial Council to implement and administer the civil representation pilot program under Section 68651.

(2) If any distribution under this subdivision is delinquent, the Administrative Office of the Courts shall add a penalty to the distribution as specified in subdivision (i).

(d) Within 45 calendar days after the end of the month in which the fees and fines listed in subdivision (a) are collected, the amounts remaining after the distributions in subdivision (c) shall be transmitted to the State Treasury for deposit in the Trial Court Trust Fund and other funds as required by law. This remittance shall be accompanied by a remittance advice identifying the collection month and the appropriate account in the Trial Court Trust Fund or other fund to which it is to be deposited. Upon the receipt of any delinquent payment required under this subdivision, the Controller shall calculate a penalty as provided under subdivision (i).

(e) From the money transmitted to the State Treasury under subdivision (d), the Controller shall make deposits as follows:

(1) Into the Judges' Retirement Fund and the Equal Access Fund, as described in subdivision (c) of Section 68085.3 and subdivision (c) of Section 68085.4.

(2) Into the Health Statistics Special Fund, as described in subdivision (b) of Section 70670 of this code and Section 103730 of the Health and Safety Code.

(3) Into the Family Law Trust Fund, as described in Section 70674.

(4) Into the State Court Facilities Construction Fund, as described in subdivision (c) of Section 68085.3, subdivision (c) of Section 68085.4, subdivision (b) of Section 70657.5, and subdivision (e) of Section 70617.

(5) The remainder of the money shall be deposited into the Trial Court Trust Fund.

(f) The amounts collected by each superior court under Section 116.232, subdivision (g) of Section 411.20, and subdivision (g) of Section 411.21 of the Code of Civil Procedure, Sections 304, 3112,

**AB 160**

3153, 7851.5, and 9002 of the Family Code, subdivision (d) of Section 6103.5, and Sections 68926.1, 69953.5, 70627, 70631, 70640, 70661, 70678, and 71386 of this code, and Sections 1513.1, 1835, and 1851.5 of the Probate Code shall be added to the monthly apportionment for that court under subdivision (a) of Section 68085.

(g) If any of the fees provided in subdivision (a) are partially waived by court order or otherwise reduced, and the fee is to be divided between the Trial Court Trust Fund and any other fund or account, the amount of the reduction shall be deducted from the amount to be distributed to each fund in the same proportion as the amount of each distribution bears to the total amount of the fee. If the fee is paid by installment payments, the amount distributed to each fund or account from each installment shall bear the same proportion to the installment payment as the full distribution to that fund or account does to the full fee. If a court collects a fee that was incurred before January 1, 2006, under a provision that was the predecessor to one of the paragraphs contained in subdivision (a), the fee may be deposited as if it were collected under the paragraph of subdivision (a) that corresponds to the predecessor of that paragraph and distributed in prorated amounts to each fund or account to which the fee in subdivision (a) must be distributed.

(h) Except as provided in Sections 470.5 and 6322.1 of the Business and Professions Code, and Sections 70622, 70624, and 70625 of this code, an agency shall not take action to change the amounts allocated to any of the funds described in subdivision (c), (d), or (e).

(i) The amount of the penalty on any delinquent payment under subdivision (c) or (d) shall be calculated by multiplying the amount of the delinquent payment at a daily rate equivalent to $1\frac{1}{2}$ percent per month for the number of days the payment is delinquent. The penalty shall be paid from the Trial Court Trust Fund. Penalties on delinquent payments under subdivision (d) shall be calculated only on the amounts to be distributed to the Trial Court Trust Fund and the State Court Facilities Construction Fund, and each penalty shall be distributed proportionately to the funds to which the delinquent payment was to be distributed.

(j) If a delinquent payment under subdivision (c) or (d) results from a delinquency by a superior court under subdivision (b), the

94

court shall reimburse the Trial Court Trust Fund for the amount of the penalty. Notwithstanding Section 77009, any penalty on a delinquent payment that a court is required to reimburse pursuant to this section shall be paid from the court operations fund for that court. The penalty shall be paid by the court to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated. If the penalty is not paid within the specified time, the Administrative Office of the Courts may reduce the amount of a subsequent monthly allocation to the court by the amount of the penalty on the delinquent payment.

(k)  If a delinquent payment under subdivision (c) or (d) results from a delinquency by a county in transmitting fees and fines listed in subdivision (a) to the bank account established for this purpose, as described in subdivision (b), the county shall reimburse the Trial Court Trust Fund for the amount of the penalty. The penalty shall be paid by the county to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated.

SEC. 13.   Section 290.008 of the Penal Code is amended to read:

290.008.   (a)  Any person who, on or after January 1, 1986, is discharged or paroled from the Department of Corrections and Rehabilitation to the custody of which they were committed after having been adjudicated a ward of the juvenile court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of any offense described in subdivision (c) shall register in accordance with the Act unless the duty to register is terminated pursuant to Section 290.5 or as otherwise provided by law.

(b)  Any person who is discharged or paroled from a facility in another state that is equivalent to the Division of Juvenile Justice, to the custody of which they were committed because of an offense which, if committed or attempted in this state, would have been punishable as one or more of the offenses described in subdivision (c) shall register in accordance with the Act.

(c)  Any person described in this section who committed an offense in violation of any of the following provisions shall be required to register pursuant to the Act:

(1)  Assault with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 under Section 220.

(2) Any offense defined in paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, Section 264.1, 266c, or 267, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 286, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 287, Section 288 or 288.5, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, former Section 288a, subdivision (a) of Section 289, or Section 647.6.

(3) A violation of Section 207 or 209 committed with the intent to violate Section 261, 286, 287, 288, or 289, or former Section 288a.

(d) (1) A tier one juvenile offender is subject to registration for a minimum of five years. A person is a tier one juvenile offender if the person is required to register after being adjudicated as a ward of the court and discharged or paroled from the Department of Corrections and Rehabilitation for an offense listed in subdivision (c) that is not a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

(2) A tier two juvenile offender is subject to registration for a minimum of 10 years. A person is a tier two juvenile offender if the person is required to register after being adjudicated as a ward of the court and discharged or paroled from the Department of Corrections and Rehabilitation for an offense listed in subdivision (c) that is a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

(3) A person who is required to register as a sex offender pursuant to this section may file a petition for termination from the sex offender registry in the juvenile court in the county in which they are registered at the expiration of their mandated minimum registration period, pursuant to Section 290.5.

(e) Prior to discharge or parole from the Department of Corrections and Rehabilitation, any person who is subject to registration under this section shall be informed of the duty to register under the procedures set forth in the Act. Department officials shall transmit the required forms and information to the Department of Justice.

(f) All records specifically relating to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person who is required to register has their records sealed under

94

the procedures set forth in Section 781 of the Welfare and Institutions Code. This section shall not be construed as requiring the destruction of other criminal offender or juvenile records relating to the case that are maintained by the Department of Justice, law enforcement agencies, the juvenile court, or other agencies and public officials unless ordered by a court under Section 781 of the Welfare and Institutions Code.

(g) This section shall become operative on January 1, 2021.

(h) For purposes of this section, a discharged person shall include all of the following:

(1) A ward in the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Justice on or after July 1, 2022, who, prior to discharge, is returned by the division or the chief probation officer of the county to the court of jurisdiction for alternative disposition, specifically due to the statutorily required closure of the division. The division shall inform the ward of the duty to register prior to the ward being returned to the court.

(2) A patient described in Section 1732.10 of the Welfare and Institutions Code. The division shall inform the patient of the duty to register immediately prior to closure of the division.

(3) A person described in Section 1732.9 of the Welfare and Institutions Code. The Department of Corrections and Rehabilitation shall inform the person of the duty to register immediately prior to the person being returned to the court of jurisdiction.

(i) The court of jurisdiction shall establish the point at which the ward described in subdivision (h) is required to register and notify the Department of Justice of its decision.

SEC. 14. Section 457.1 of the Penal Code is amended to read:

457.1. (a) As used in this section, "arson" means a violation of Section 451, 451.5, or 453, and attempted arson, which includes, but is not limited to, a violation of Section 455.

(b) (1) Every person described in paragraph (2), (3), and (4), for the periods specified therein, shall, while residing in, or if the person has no residence, while located in California, be required to, within 14 days of coming into, or changing the person's residence or location within any city, county, city and county, or campus wherein the person temporarily resides, or if the person has no residence, is located:

(A)  Register with the chief of police of the city where the person is residing, or if the person has no residence, where the person is located.

(B)  Register with the sheriff of the county where the person is residing, or if the person has no residence, where the person is located in an unincorporated area or city that has no police department.

(C)  In addition to (A) or (B) above, register with the chief of police of a campus of the University of California, the California State University, or community college where the person is residing, or if the person has no residence, where the person is located upon the campus or any of its facilities.

(2) Any person who, on or after November 30, 1994, is convicted in any court in this state of arson or attempted arson shall be required to register, in accordance with the provisions of this section, for the rest of their life.

(3)  Any person who, having committed the offense of arson or attempted arson, and after having been adjudicated a ward of the juvenile court on or after January 1, 1993, is discharged or paroled from the Division of Juvenile Justice shall be required to register, in accordance with the provisions of this section, until that person attains 25 years of age, or until the person has their records sealed pursuant to Section 781 of the Welfare and Institutions Code, whichever comes first.

(4)  Any person convicted of the offense of arson or attempted arson on or after January 1, 1985, through November 29, 1994, inclusive, in any court of this state, shall be required to register, in accordance with the provisions of this section, for a period of five years commencing, in the case where the person was confined for the offense, from the date of their release from confinement, or in the case where the person was not confined for the offense, from the date of sentencing or discharge, if that person was ordered by the court at the time that person was sentenced to register as an arson offender. The law enforcement agencies shall make registration information available to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person resides.

(c)  Any person required to register pursuant to this section who is discharged or paroled from a jail, prison, school, road camp, or other penal institution, or from the Division of Juvenile Justice

94

**AB 160** — 68 —

where they were confined because of the commission or attempted commission of arson, shall, prior to the discharge, parole, or release, be informed of their duty to register under this section by the official in charge of the place of confinement. The official shall require the person to read and sign the form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to them. The official in charge of the place of confinement shall obtain the address where the person expects to reside upon their discharge, parole, or release and shall report the address to the Department of Justice. The official in charge of the place of confinement shall give one copy of the form to the person, and shall, not later than 45 days prior to the scheduled release of the person, send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon their discharge, parole, or release; one copy to the prosecuting agency that prosecuted the person; one copy to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person expects to reside upon their discharge, parole, or release; and one copy to the Department of Justice. The official in charge of the place of confinement shall retain one copy. All forms shall be transmitted in time so as to be received by the local law enforcement agency and prosecuting agency 30 days prior to the discharge, parole, or release of the person.

(d) All records relating specifically to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person required to register under this subdivision for offenses adjudicated by a juvenile court attains 25 years of age or has their records sealed under the procedures set forth in Section 781 of the Welfare and Institutions Code, whichever event occurs first. This subdivision shall not be construed to require the destruction of other criminal offender or juvenile records relating to the case that are maintained by the Department of Justice, law enforcement agencies, the juvenile court, or other agencies and public officials unless ordered by the court under Section 781 of the Welfare and Institutions Code.

(e) Any person who is required to register pursuant to this section who is released on probation or discharged upon payment of a fine shall, prior to the release or discharge, be informed of

their duty to register under this section by the probation department of the county in which they have been convicted, and the probation officer shall require the person to read and sign the form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to them. The probation officer shall obtain the address where the person expects to reside upon their release or discharge and shall report within three days the address to the Department of Justice. The probation officer shall give one copy of the form to the person, and shall send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon their discharge or release, one copy to the prosecuting agency that prosecuted the person, one copy to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person expects to reside upon their discharge or release, and one copy to the Department of Justice. The probation officer shall also retain one copy.

(f) The registration shall consist of (1) a statement in writing signed by the person, giving the information as may be required by the Department of Justice, and (2) the fingerprints and photograph of the person. Within three days thereafter, the registering law enforcement agency shall electronically forward the statement, fingerprints, and photograph to the Department of Justice.

(g) If any person required to register by this section changes their residence address, they shall inform, in writing within 10 days, the law enforcement agency with whom they last registered of their new address. The law enforcement agency shall, within three days after receipt of the information, electronically forward it to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency having local jurisdiction of the new place of residence.

(h) Any person required to register under this section who violates any of the provisions thereof is guilty of a misdemeanor. Any person who has been convicted of arson or attempted arson and who is required to register under this section who willfully violates any of the provisions thereof is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in a county jail. In no event does the court have the power to absolve a person who willfully violates this section

94

**AB 160** — 70 —

from the obligation of spending at least 90 days of confinement in a county jail and of completing probation of at least one year.

(i) Whenever any person is released on parole or probation and is required to register under this section but fails to do so within the time prescribed, the Board of Prison Terms, the Division of Juvenile Justice, or the court, as the case may be, shall order the parole or probation of that person revoked.

(j) The statements, photographs, and fingerprints required by this section shall not be open to inspection by the public or by any person other than a regularly employed peace officer or other law enforcement officer.

(k) In any case in which a person who would be required to register pursuant to this section is to be temporarily sent outside the institution where they are confined on any assignment within a city or county, including, but not limited to, firefighting or disaster control, the local law enforcement agency having jurisdiction over the place or places where that assignment shall occur shall be notified within a reasonable time prior to removal from the institution. This subdivision shall not apply to any person temporarily released under guard from the institution where they are confined.

(*l*) Nothing in this section shall be construed to conflict with Section 1203.4 concerning termination of probation and release from penalties and disabilities of probation.

A person required to register under this section may initiate a proceeding under Chapter 3.5 (commencing with Section 4852.01) of Title 6 of Part 3 and, upon obtaining a certificate of rehabilitation, shall be relieved of any further duty to register under this section. This certificate shall not relieve the petitioner of the duty to register under this section for any offense subject to this section of which they are convicted in the future.

Any person who is required to register under this section due to a misdemeanor conviction shall be relieved of the requirement to register if that person is granted relief pursuant to Section 1203.4.

(m) For purposes of this section, a discharged person shall include all of the following:

(1) A ward in the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Justice on or after July 1, 2022, who, prior to discharge, is returned by the division or the chief probation officer of the county to the court of jurisdiction for

alternative disposition, specifically due to the statutorily required closure of the division. The division shall inform the ward of the duty to register prior to the ward being returned to the court.

(2) A patient described in Section 1732.10 of the Welfare and Institutions Code. The division shall inform the patient of the duty to register immediately prior to closure of the division.

(3) A person described in Section 1732.9 of the Welfare and Institutions Code. The Department of Corrections and Rehabilitation shall inform the person of the duty to register immediately prior to the person being returned to the court of jurisdiction.

(n) The court of jurisdiction shall establish the point at which the ward described in subdivision (m) is required to register and notify the Department of Justice of its decision.

SEC. 15. Section 679.027 is added to the Penal Code, to read:

679.027. (a) Every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act shall, as provided herein, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, inform each victim, or the victim's next of kin if the victim is deceased, of the rights they may have under applicable law relating to the victimization, including rights relating to housing, employment, compensation, and immigration relief.

(b) (1) Every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act shall, as provided herein, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, provide or make available to each victim of the criminal act without charge or cost a "Victim Protections and Resources" card described in paragraph (3).

(2) The Victim Protections and Resources card may be designed as part of and included with the "Marsy Rights" card described by Section 679.026.

(3) By June 1, 2025, the Attorney General shall design and make available in PDF or other imaging format to every agency listed in paragraph (1) a "Victim Protections and Resources" card, which shall contain information in lay terms about victim rights and resources, including, but not limited to, the following:

94

(A)  Information about the rights provided by Sections 230 and 230.1 of the Labor Code.

(B)  Information about the rights provided by Section 1946.7 of the Civil Code.

(C)  Information about the rights provided by Section 1161.3 of the Civil Code, including information in lay terms about which crimes and tenants are eligible and under what circumstances.

(D)  Information about federal immigration relief available to certain victims of crime.

(E)  Information about the program established by Chapter 5 (commencing with Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code, including information about the types of expenses the program may reimburse, eligibility, and how to apply.

(F)  Information about the program established by Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code.

(G)  Information about eligibility for filing a restraining or protective order.

(H)  Contact information for the Victims' Legal Resource Center established by Chapter 11 (commencing with Section 13897) of Title 6 of Part 4.

(I)  A list of trauma recovery centers funded by the state pursuant to Section 13963.1 of the Government Code, with their contact information, which shall be updated annually.

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

 SEC. 16.  Section 1203.4b of the Penal Code is amended to read:

 1203.4b.  (a) (1) If a defendant successfully participated in the California Conservation Camp program as an incarcerated individual hand crew member, as determined by the Secretary of the Department of Corrections and Rehabilitation, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, or participated at an institutional firehouse, as determined by the Secretary of the Department of Corrections and Rehabilitation,

**AB 160**

and has been released from custody, the defendant is eligible for relief pursuant to this section, except that incarcerated individuals who have been convicted of any of the following crimes are automatically ineligible for relief pursuant to this section:

(A)  Murder.

(B)  Kidnapping.

(C)  Rape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262.

(D)  Lewd acts on a child under 14 years of age, as defined in Section 288.

(E)  Any felony punishable by death or imprisonment in the state prison for life.

(F)  Any sex offense requiring registration pursuant to Section 290.

(G)  Escape from a secure perimeter within the previous 10 years.

(H)  Arson.

(2)  Any denial of relief pursuant to this section shall be without prejudice.

(3)  For purposes of this subdivision, successful participation in a conservation camp program or a program at an institutional firehouse and successful participation as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, means the incarcerated individual adequately performed their duties without any conduct that warranted removal from the program.

(b)  (1)  The defendant may file a petition for relief with the court in the county where the defendant was sentenced. The court shall provide a copy of the petition to the secretary, or, in the case of a county incarcerated individual hand crew member, the appropriate county authority.

(2)  If the secretary or appropriate county authority certifies to the court that the defendant successfully participated in the incarcerated individual conservation camp program, or institutional firehouse, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, as specified in subdivision (a), and has been released from custody, the court, in its discretion and in the interests of justice, may issue an order pursuant to subdivision (c).

94

(3)  To be eligible for relief pursuant to this section, the defendant is not required to complete the term of their probation, parole, or supervised release. Notwithstanding any other law, the court, in providing relief pursuant to this section, shall order early termination of probation, parole, or supervised release if the court determines that the defendant has not violated any terms or conditions of probation, parole, or supervised release prior to, and during the pendency of, the petition for relief pursuant to this section.

(4)  All convictions for which the defendant is serving a sentence at the time the defendant successfully participates in a program as specified in subdivision (a) are subject to relief pursuant to this section.

(5)  (A)  A defendant who is granted an order pursuant to this section shall not be required to disclose the conviction on an application for licensure by any state or local agency.

(B)  This paragraph does not apply to an application for licensure by the Commission on Teacher Credentialing, a position as a peace officer, public office, or for contracting with the California State Lottery Commission.

(c)  (1)  If the requirements of this section are met, the court, in its discretion and in the interest of justice, may permit the defendant to withdraw the plea of guilty or plea of nolo contendere and enter a plea of not guilty, or, if the defendant has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty, and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which the defendant has been convicted, except as provided in Section 13555 of the Vehicle Code.

(2)  The relief available pursuant to this section shall not be granted if the defendant is currently charged with the commission of any other offense.

(3)  The defendant may make the application and change of plea in person or by attorney.

(d)  Relief granted pursuant to this section is subject to the following conditions:

(1)  In any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall

94

have the same effect as if the accusation or information had not been dismissed.

(2)  The order shall state, and the defendant shall be informed, that the order does not relieve the defendant of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for licensure by the Commission on Teacher Credentialing, a peace officer, public office, or for contracting with the California State Lottery Commission.

(3)  Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in the person's custody or control any firearm or prevent their conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6.

(4)  Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office.

(5)  Dismissal of an accusation or information pursuant to this section does not release the defendant from the terms and conditions of any unexpired criminal protective order that has been issued by the court pursuant to paragraph (1) of subdivision (i) of Section 136.2, subdivision (j) of Section 273.5, subdivision (*l*) of Section 368, or subdivision (k) of Section 646.9. These protective orders shall remain in full effect until expiration or until any further order by the court modifying or terminating the order, despite the dismissal of the underlying accusation or information.

(e)  (1)  Relief shall not be granted under this section unless the prosecuting attorney has been given 15 days' notice of the petition for relief.

(2)  It shall be presumed that the prosecuting attorney has received notice if proof of service is filed with the court.

(f)  If, after receiving notice pursuant to subdivision (e), the prosecuting attorney fails to appear and object to a petition for dismissal, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that petition.

 SEC. 17.  Section 1463.001 of the Penal Code is amended to read:

 1463.001.  Except as otherwise provided in this section, all fines and forfeitures imposed and collected for crimes other than parking offenses resulting from a filing in a court, including civil

assessments imposed under Section 1214.1, shall as soon as practicable after receipt thereof, be deposited with the county treasurer, and each month the total fines and forfeitures which have accumulated within the past month shall be distributed, as follows:

(a) The state penalties, county penalties, special penalties, service charges, penalty allocations, and civil assessments imposed under Section 1214.1, shall be transferred to the proper funds as required by law.

(b) The base fines shall be distributed, as follows:

(1) Any base fines which are subject to specific distribution under any other section shall be distributed to the specified funds of the state or local agency.

(2) Base fines resulting from county arrest not included in paragraph (1), shall be transferred into the proper funds of the county.

(3) Base fines resulting from city arrests not included in paragraph (1), an amount equal to the applicable county percentages set forth in Section 1463.002, as modified by Section 1463.28, shall be transferred into the proper funds of the county. Until July 1, 1998, the remainder of base fines resulting from city arrests shall be divided between each city and county, with 50 percent deposited to the county's general fund, and 50 percent deposited to the treasury of the appropriate city, and thereafter the remainder of base fines resulting from city arrests shall be deposited to the treasury of the appropriate city.

(4) In a county that had an agreement as of March 22, 1977, that provides for city fines and forfeitures to accrue to the county in exchange for sales tax receipts, base fines resulting from city arrests not included in paragraph (1) shall be deposited into the proper funds of the county.

(c) Each county shall keep a record of its deposits to its treasury and its transmittal to each city treasury pursuant to this section.

(d) The distribution specified in subdivision (b) applies to all funds subject thereto distributed on or after July 1, 1992, regardless of whether the court has elected to allocate and distribute funds pursuant to Section 1464.8.

(e) Any amounts remitted to the county from amounts collected by the Franchise Tax Board upon referral by a county pursuant to Article 6 (commencing with Section 19280) of Chapter 5 of Part

10.2 of Division 2 of the Revenue and Taxation Code shall be allocated pursuant to this section.

SEC. 18.  Section 4900 of the Penal Code is amended to read:

4900.  (a)  Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, shall have served the term or any part thereof for which they were imprisoned in state prison or incarcerated in county jail, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, unless the Attorney General establishes pursuant to subdivision (d) of Section 4902, that the claimant is not entitled to compensation.

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 18.5.  Section 4900 of the Penal Code is amended to read:

4900.  (a)  Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state

94

0163

prison or incarcerated in county jail pursuant to subdivision (h) of
Section 1170 for that conviction, is granted a pardon by the
Governor for the reason that the crime with which they were
charged was either not committed at all or, if committed, was not
committed by the person, or who, being innocent of the crime with
which they were charged for either of those reasons, shall have
served the term or any part thereof for which they were imprisoned
in state prison or incarcerated in county jail, may, under the
conditions provided under this chapter, present a claim against the
state to the California Victim Compensation Board for the injury
sustained by the person through the erroneous conviction and
imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus
or if a state court has granted a motion to vacate pursuant to Section
1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and
the charges were subsequently dismissed, or the person was
acquitted of the charges on a retrial, the California Victim
Compensation Board shall, upon application by the person, and
without a hearing, find that the crime with which the claimant was
charged was either not committed at all, or, if committed, was not
committed by the claimant, and approve payment to the claimant
if sufficient funds are available, upon appropriation by the
Legislature, pursuant to Section 4904, and the petitioner shall be
provided with the relief available pursuant to subdivision (c) of
Section 11117, unless the Attorney General establishes pursuant
to subdivision (e) of Section 4902, that the claimant is not entitled
to compensation.

(c)  (1)  This section shall become inoperative on July 1, 2024,
only if General Fund moneys over the multiyear forecasts
beginning in the 2024–25 fiscal year are available to support
ongoing augmentations and actions, and an appropriation is made
to backfill the Restitution Fund to support the actions in this
section. If those conditions are met, this section is repealed January
1, 2025.

(2)  The amendments made by the act adding this subdivision
shall become operative on January 1, 2023.

SEC. 19.  Section 4900 is added to the Penal Code, to read:

4900.  (a)  Any person who, having been convicted of any crime
against the state amounting to a felony, and imprisoned in the state
prison or incarcerated in county jail pursuant to subdivision (h) of

Section 1170 for that conviction, is granted a pardon by the
Governor for the reason that the crime with which they were
charged was either not committed at all or, if committed, was not
committed by the person, or who, being innocent of the crime with
which they were charged for either of those reasons, has served
the term or any part thereof for which they were imprisoned in
state prison, incarcerated in county jail, on parole, or under
supervised release, may, under the conditions provided under this
chapter, present a claim against the state to the California Victim
Compensation Board for the injury sustained by the person through
the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus
or if a state court has granted a motion to vacate pursuant to Section
1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and
the charges were subsequently dismissed, or the person was
acquitted of the charges on a retrial, the California Victim
Compensation Board shall, upon application by the person, and
without a hearing, approve payment to the claimant if sufficient
funds are available, upon appropriation by the Legislature, pursuant
to Section 4904, unless the Attorney General establishes pursuant
to subdivision (d) of Section 4902, that the claimant is not entitled
to compensation.

(c)  This section shall become operative on July 1, 2024, only
if General Fund moneys over the multiyear forecasts beginning in
the 2024–25 fiscal year are available to support ongoing
augmentations and actions, and if an appropriation is made to
backfill the Restitution Fund to support the actions in this section.

SEC. 19.5.  Section 4900 is added to the Penal Code, to read:

4900.  (a)  Any person who, having been convicted of any crime
against the state amounting to a felony, and imprisoned in the state
prison or incarcerated in county jail pursuant to subdivision (h) of
Section 1170 for that conviction, is granted a pardon by the
Governor for the reason that the crime with which they were
charged was either not committed at all or, if committed, was not
committed by the person, or who, being innocent of the crime with
which they were charged for either of those reasons, has served
the term or any part thereof for which they were imprisoned in
state prison, incarcerated in county jail, on parole, or under
supervised release, may, under the conditions provided under this
chapter, present a claim against the state to the California Victim

94

**AB 160** — 80 —

Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, find that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, and approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, and the petitioner shall be provided with the relief available pursuant to subdivision (c) of Section 11117, unless the Attorney General establishes pursuant to subdivision (e) of Section 4902, that the claimant is not entitled to compensation.

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 20.  Section 4904 of the Penal Code is amended to read:

4904.  (a)  If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall be a sum equivalent to one hundred forty dollars ($140) per day of incarceration served, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration. That payment shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

94

0166

(b) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 20.5.  Section 4904 of the Penal Code is amended to read:

4904.  (a)  If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall be a sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration. That payment shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(b)  Any person granted relief pursuant to this section or Section 851.86 prior to January 1, 2023, or pursuant to subdivision (a), (c), or (e) of Section 1485.55, is entitled, upon application and submission of proof by the claimant to the board, to a determination of the number of days that the individual was incarcerated solely as a result of the former conviction, and the number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(c) When the California Victim Compensation Board makes a determination under subdivision (b), or a finding of innocence under Section 4900, 4902, or 4904, the board shall report all of

94

the following to the Department of Justice, in a manner prescribed by the Department of Justice:

(1)  A description of the proceedings.

(2)  The finding of innocence.

(3)  The number of days that the individual was incarcerated solely as a result of the former conviction.

(4)  The number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(d)  When a court orders a finding of innocence under Section 851.86 or 1485.55, the court shall report the proceedings and the finding of innocence to the Department of Justice, in a manner pursuant to subdivision (a) of Section 11117. The report shall include the number of days that the defendant was incarcerated, including in pretrial detention, solely as a result of the former conviction, the number of days that the individual was on parole or community supervision solely as a result of the former conviction, and the number of days that the defendant was required to register as a sex offender solely as a result of the former conviction.

(e)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 21.  Section 4904 is added to the Penal Code, to read:

4904.  (a)  If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon

94

0168

appropriation by the Legislature. The amount of the payment shall include the following:

(1) A sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration.

(2) A sum equivalent to seventy dollars ($70) per day served on parole pursuant to Section 3000 or 3000.1 or on supervised release solely as a result of the former conviction.

(b) The amounts provided in paragraphs (1) and (2) of subdivision (a) shall be updated annually to reflect changes in the Bureau of Labor Statistics Consumer Price Index, West Region, commencing one year after this section becomes effective.

(c) Funds received by the claimant under this section shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(d) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 21.5. Section 4904 is added to the Penal Code, to read:

4904. (a) If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall include the following:

(1) A sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including

94

0169

**AB 160** — 84 —

in a county jail, that is considered to be part of the term of incarceration.

(2) A sum equivalent to seventy dollars ($70) per day served on parole pursuant to Section 3000 or 3000.1 or on supervised release solely as a result of the former conviction.

(b) The amounts provided in paragraphs (1) and (2) of subdivision (a) shall be updated annually to reflect changes in the Bureau of Labor Statistics Consumer Price Index, West Region, commencing one year after this section becomes effective.

(c) Funds received by the claimant under this section shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(d) Any person granted relief pursuant to this section or Section 851.86 prior to January 1, 2023, or pursuant to subdivision (a), (c), or (e) of Section 1485.55, is entitled, upon application and submission of proof by the claimant to the board, to a determination of the number of days that the individual was incarcerated solely as a result of the former conviction, and the number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(e) When the California Victim Compensation Board makes a determination under subdivision (d), or a finding of innocence under Section 4900, 4902, or 4904, the board shall report all of the following to the Department of Justice, in a manner prescribed by the Department of Justice:

(1) A description of the proceedings.

(2) The finding of innocence.

(3) The number of days that the individual was incarcerated solely as a result of the former conviction.

(4) The number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(f) When a court orders a finding of innocence under Section 851.86 or 1485.55, the court shall report the proceedings and the finding of innocence to the Department of Justice, in a manner pursuant to subdivision (a) of Section 11117. The report shall include the number of days that the defendant was incarcerated, including in pretrial detention, solely as a result of the former conviction, the number of days that the individual was on parole

94

**0170**

or community supervision solely as a result of the former conviction, and the number of days the defendant was required to register as a sex offender solely as a result of the former conviction.

(g) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 22. Section 1732.10 of the Welfare and Institutions Code is amended to read:

1732.10. (a) Notwithstanding any other law, unless the committing court orders an alternative placement, upon closure of the Division of Juvenile Justice, the State Department of State Hospitals shall continue to provide evaluation, care, and treatment of state hospital patients referred by the division pursuant to Section 1756 and Interagency Agreement 21-00189, or a predecessor agreement, until clinical discharge, as defined in paragraph (9) of subdivision (b) is recommended by the State Department of State Hospitals, or until the patient referred by the division reaches the hospitalization release date in subdivision (e). When discharge is clinically indicated, the State Department of State Hospitals shall notify the juvenile court of commitment, juvenile counsel of record, the probation department, and the behavioral health department. The State Department of State Hospitals shall collaborate with county probation and behavioral health to ensure continuity of care. The division shall provide contact information for the committing court, juvenile counsel of record, and related probation department for all patients in the custody of the State Department of State Hospitals upon enactment of this section and any youth placed at the State Department of State Hospitals prior to closure of the division.

(b) Notwithstanding the confidentiality provision for information and records set forth under Section 5328, for any youth referred by the division who remains a patient after closure of the division, the State Department of State Hospitals shall do the following:

(1) Collaborate with the county probation department and behavioral health department prior to the expected discharge from the state hospital to assist the county in determining the least restrictive legal alternative placement for the youth.

**AB 160** — 86 —

(2) Provide the court, juvenile counsel of record, and county probation department, upon closure of the division and annually thereafter, a copy of the finalized treatment plan specifying the youth's goals of hospitalization, assessed needs, and how the staff will assist the youth to achieve the goals and objectives.

(3) Notify the juvenile court of commitment, juvenile counsel of record, and county probation as soon as safely possible, but no later than 24 hours following any of the following:

(A) A suicide or serious attempted suicide.

(B) A serious injury or battery, with or without a weapon.

(C) An alleged sexual assault.

(D) An escape or attempted escape.

(4) Provide county probation, biannually, a synopsis of behavioral incidences, including, but not limited to, self-harm, assault, contraband, and property damage.

(5) Notify the committing court, juvenile counsel of record, and the county probation department if a youth refuses to consent to clinically necessary medication treatment and provide the court with the clinical records and testimony necessary for the court to consider an order for involuntary medication administration. Notwithstanding any other law, the State Department of State Hospitals shall utilize the process outlined in Section 4210 of Title 9 of the California Code of Regulations and In re Qawi (2004) 32.Cal.4th.1 to obtain involuntary medication orders.

(6) Notify individuals covered by a youth's medical release of information, the juvenile counsel of record, the juvenile committing court, and the county probation department within 24 hours of the youth being hospitalized for a serious medical condition.

(7) Notify the youth's next of kin on record, juvenile counsel of record, the juvenile committing court, and the county probation department of the county of commitment within 24 hours, and the local county coroner and local law enforcement agencies within two hours, of the discovery of death when a youth dies during hospitalization at a state hospital, or if the death occurred immediately following transfer from a state hospital to a community medical facility.

(8) Notify the juvenile committing court, the juvenile counsel of record, and probation department if it believes the youth requires conservatorship upon discharge. For continuity of care, the State Department of State Hospitals shall accommodate any necessary

94

access to the youth or medical records as needed for arranging conservatorship.

(9)  Notify the juvenile court of commitment, juvenile counsel of record, and the county probation department when the youth is ready to discharge to the county based on the following:

(A)  When the youth has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which hospitalization was required is in substantial remission, and the remaining symptoms are those of a disorder for which hospitalization in a state hospital is not clinically necessary.

(B)  When further hospitalization is unnecessary, not clinically appropriate, and will provide no further benefit.

(C)  When a court has ordered an alternative placement.

(D)  When the youth has reached the hospitalization release date described in subdivision (e).

(10)  Provide a written discharge summary and all other pertinent medical and mental health data to the receiving juvenile court of commitment, juvenile counsel of record, and county probation department.

(c)  For a youth remaining a patient in a state hospital pursuant to this section, the probation department shall do all of the following:

(1)  Upon notification of discharge criteria having been met from the State Department of State Hospitals, find a placement for the patient within 45 days.

(2)  Provide transportation to court appearances and from the state hospital to the county designated placement within 7 calendar days of the discharge date.

(3)  Reimburse the State Department of State Hospitals for any off-site medical or surgical health care expense, if services could not be provided by the State Department of State Hospitals and prior approval was received from the county, except in cases of emergency.

(d)  The county of commitment shall not be charged by the state for a person placed in a state hospital by the division prior to closure pursuant to Section 1756 or Interagency Agreement 21-00189 or a predecessor agreement, during this placement.

(e)  A person in a state hospital under the provisions of Section 1756 or this section shall be released and discharged to the county of commitment no later than the person's maximum juvenile

94

confinement time, as determined by Section 607 and all other provisions of law.

(f)  Immediately prior to closure, the division shall notify the juvenile court of commitment and the juvenile counsel of record of the youth's most recent projected board hearing date for court consideration.

(g)  This section shall only apply to the youth referred by the division prior to closure who remain a patient in a state hospital after closure of the division. Additional youth shall not be subject to this section.

(h)  This section shall remain in effect only until January 1, 2031, and as of that date is repealed.

SEC. 23.  If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

SEC. 24.  This act is a bill providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution, has been identified as related to the budget in the Budget Bill, and shall take effect immediately.

SEC. 25.  (a)  Sections 2.5 and 3.5 of this bill incorporate amendments to Section 13956 of the Government Code proposed by both this bill and Senate Bill 299. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 13956 of the Government Code, and (3) this bill is enacted after Senate Bill 299, in which case Section 13956 of the Government Code, as amended by Section 2 of this bill, shall remain operative only until the operative date of Senate Bill 299, at which time Section 2.5 of this bill shall become operative.

(b)  Sections 4.5 and 5.5 of this bill incorporate amendments to Section 13957 of the Government Code proposed by both this bill and Senate Bill 877. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 13957 of the Government Code, and (3) this bill is enacted after Senate Bill 877, in which case Section

13957 of the Government Code, as amended by Section 4 of this bill, shall remain operative only until the operative date of Senate Bill 877, at which time Section 4.5 of this bill shall become operative.

(c)  Sections 18.5 and 19.5 of this bill incorporate amendments to Section 4900 of the Penal Code proposed by both this bill and Senate Bill 1468. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 4900 of the Penal Code, and (3) this bill is enacted after Senate Bill 1468, in which case Section 4900 of the Penal Code, as amended by Section 18 of this bill, shall remain operative only until the operative date of Senate Bill 1468, at which time Section 18.5 of this bill shall become operative.

(d)  Sections 20.5 and 21.5 of this bill incorporate amendments to Section 4904 of the Penal Code proposed by both this bill and Senate Bill 1468. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 4904 of the Penal Code, and (3) this bill is enacted after Senate Bill 1468, in which case Section 4904 of the Penal Code, as amended by Section 20 of this bill, shall remain operative only until the operative date of Senate Bill 1468, at which time Section 20.5 of this bill shall become operative.

SEC. 26.  Section 12 of this bill shall only become operative if Senate Bill 688 of the 2021–22 Regular Session is enacted and becomes effective on or before January 1, 2023.

Approved _____, 2022




_____
                                        *Governor*

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS'
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

_____
Laura Palmerin

0179

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx) <br><br> **SUPPLEMENTAL DECLARATION OF ANDY FINK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SUPPLEMENTAL BRIEFING REQUESTED** <br><br> Hearing Date: October 17, 2022 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Christina A. Snyder |

1

SUPPLEMENTAL DECLARATION OF ANDY FINK

**SUPPLEMENTAL DECLARATION OF ANDY FINK**

1. I, Andy Fink, am the Publisher and Editor-in Chief of Junior Sports Magazines, Inc. ("Junior Sports Magazines"), a plaintiff in the above-entitled action. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. AB 2571, as adopted on June 30, 2022, and as currently enforced bars Junior Sports Magazines from publishing and distributing its quarterly online and print magazine *Junior Shooters*—a magazine dedicated to promoting youth in the shooting sports—to minors under 18 in California. While adults may enjoy the magazine, it is a magazine for youth that promotes the use and possession of firearm-related products and is not specifically intended for a broader audience of adults. *Junior Shooters* thus involves advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products directly to minors and in ways that might be considered attractive to minors.

3. Before the adoption of AB 2571, Junior Sports Magazines distributed its *Junior Shooters* magazine to tens of thousands of subscribers and youth shooters throughout the country, including California. To prevent substantial civil liability under AB 2571, Junior Sports Magazines was forced to end all distribution of *Junior Shooters* in California. The home page of our website informs visitors to the site that, due to AB 2571, we have suspended distribution of the magazine in California. We have placed warnings on our website and our magazine covers to deter youth in California from entering the site and consuming advertising, marketing, and other communications promoting the use and possession of firearm-related products. And we have posted warnings to California minors on our social media platforms. Though, due to the nature of the internet, it is impossible to prevent all access to our website and social media by youth in California unless we entirely shut down our online presence.

0181

4.      But for the adoption and enforcement of AB 2571, Junior Sports Magazines would continue to produce its *Junior Shooters* magazine and distribute it to young readers in California, celebrating youth in the shooting sports and advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products among minors as it has for years. And if the law is enjoined, Junior Sports Magazines will in fact resume these activities.

5.      But for the adoption and enforcement of AB 2571, Junior Sports Magazines would remove content warnings from our website and social media pages to allow visitors under the 18 from California to view our content. And if the law is enjoined, *Junior Shooters* will in fact remove content warnings from our website and social media pages to allow visitors under the 18 from California to view our content.

6.      Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the law still bars Junior Sports Magazines from distributing issues of *Junior Shooters* magazine in California that include articles and images in its *Junior Shooters* magazine that endorse or recommend firearm-related products that are designed for use by minors or come in colors or sizes that might be "appealing to minors." For instance, Junior Sports Magazines could not publish articles written by youth shooters endorsing specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters.

7.      Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law does not exempt the sorts of traditional advertising promoting firearm-related products found in the pages of Junior Sports Magazines' *Junior Shooters* magazine. To the contrary, the law expressly bans communications promoting or offering firearm-related products if some third party might think they are attractive to minors. As

1  such, to prevent substantial liability under AB 2571 (and the AB 160 amendments),

2  Junior Sports Magazines must either remove all advertisements for firearm-related

3  products (even though such advertisements are truthful and lawful in the 49 other

4  states where *Junior Shooters* maintains circulation) or continue to bar distribution

5  and subscriptions of *Junior Shooters* magazine in California. Of course, traditional

6  advertising of firearm-related products makes publication and distribution of *Junior*

7  *Shooters* magazine economically possible, so ending such advertising is not a

8  feasible option.

9      8.      But for the adoption and enforcement of AB 2571 (and the AB 160

10 amendments), Junior Sports Magazines would continue including traditional

11 (truthful and otherwise lawful) advertisements promoting firearm-related products

12 in *Junior Shooters* magazine. And if the law is enjoined, Junior Shooters Magazines

13 will in fact continue publishing traditional (truthful and otherwise lawful)

14 advertisements promoting firearm-related products in its *Junior Shooters* magazine

15 and distributing the magazine to young readers in California.

16     9.      What's more, the AB 160 amendments to AB 271 do very little to

17 address the vagueness and overbreadth concerns that plaintiffs identified in their

18 complaint and moving papers. In fact, by adding *even more* unclear language rather

19 than taking it away, the amendments make the law in many ways *more vague and*

20 *more overbroad*. Junior Sports Magazines thus remains unsure exactly what speech

21 is prohibited or permitted in our publications should we elect to resume distribution

22 in California in the future. This confusion chills our speech.

23     I declare under penalty of perjury that the foregoing is true and correct.

24 Executed within the United States on September 28, 2022.

25

26

27 Andy Fink
   Declarant

28

4

SUPPLEMENTAL DECLARATION OF ANDY FINK

# CERTIFICATE OF SERVICE
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:     2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF ANDY FINK IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
*Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin

CERTIFICATE OF SERVICE

0184

1  C.D. Michel-SBN 144258
   Anna M. Barvir-SBN 268728
2  Tiffany D. Cheuvront-SBN 317144
   MICHEL & ASSOCIATES, P.C.
3  180 East Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Fax: (562) 216-4445
5  Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
   Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
7  Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
   Foundation, and Gun Owners of California, Inc.
8
   Donald Kilmer-SBN 179986
9  Law Offices of Donald Kilmer, APC
   14085 Silver Ridge Road
10 Caldwell, Idaho 83607
   Telephone: (408) 264-8489
11 Email: Don@DKLawOffice.com

12 Attorney for Plaintiff Second Amendment Foundation

13              IN THE UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 JUNIOR SPORTS MAGAZINES              CASE NO: 2:22-cv-04663-CAS (JCx)
   INC., RAYMOND BROWN,
16 CALIFORNIA YOUTH SHOOTING            **SUPPLEMENTAL DECLARATION OF**
   SPORTS ASSOCIATION, INC.,            **RICHARD MINNICH IN SUPPORT OF**
17 REDLANDS CALIFORNIA                  **PLAINTIFFS' MOTION FOR**
   YOUTH CLAY SHOOTING                  **PRELIMINARY INJUNCTION**
18 SPORTS, INC., CALIFORNIA
   RIFLE & PISTOL ASSOCIATION,          Hearing Date:    October 17, 2022
19 INCORPORATED, THE CRPA              Hearing Time:    10:00 a.m.
   FOUNDATION, AND GUN                  Courtroom:       8D
20 OWNERS OF CALIFORNIA, INC.;          Judge:           Christina A. Snyder
   and SECOND AMENDMENT
21 FOUNDATION,

22                   Plaintiffs,

23           v.

24 ROB BONTA, in his official capacity
   as Attorney General of the State of
25 California; and DOES 1-10,

26                   Defendant.

27

28

                                1
        SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

# SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

1.     I, Richard Minnich, am an officer and the Treasurer of Plaintiff California Rifle & Pistol Association, Incorporated (CRPA). I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.     AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from supporting and sponsoring junior shooting teams by helping them secure sponsorships from firearms industry members and by providing for travel costs, shooting jerseys with sponsor logos (similar to those in other sports like cycling, running, kayaking, and fishing), ammunition, and entry fees because doing so necessarily involves advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to minors. To prevent substantial civil liability under the new law, CRPA has withdrawn its important support of competitive junior shooting teams. *See* Minnich Decl., ¶ 7.

3.     But for the adoption and enforcement of AB 2571, CRPA would continue to sponsor and support youth shooting teams as it has done for years. If the law is enjoined, CRPA will in fact resume sponsoring and supporting youth shooting teams and programs by helping them secure sponsorships from firearm industry members and providing donations for travel costs, shooting jerseys, ammunition, and entry fees.

4.     Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the law still limits CRPA's ability to support junior shooting teams. For instance, CRPA could not provide shooting jerseys with sponsor logos or assist them with sponsorships from firearm industry members unless those sponsors would be willing to support without getting the benefit of also promoting their products.

5.     But for the adoption and enforcement of AB 2571 (and the AB 160

1 amendments), CRPA would continue to sponsor and support youth shooting teams
2 as it has done for years. And if the law is enjoined, CRPA will in fact resume
3 sponsoring and supporting youth shooting teams by helping them secure
4 sponsorships from firearm industry members and providing donations for travel
5 costs, shooting jerseys, ammunition, and entry fees.

6      6.     AB 2571, as passed on June 30, 2022, and currently enforced, bars
7 CRPA from continuing to offer its stellar firearms training and safety programs and
8 hunter's education courses to anyone under the 18 because such courses
9 necessarily involve speech concerning firearm-related products, including
10 recommendations about specific products and discussions and instruction
11 promoting the possession and use of firearms. Indeed, to prevent substantial civil
12 liability under the new law, CRPA has canceled multiple hunter's education courses
13 over the past two months because many of the registered participants were under
14 18. *See* Minnich Decl., ¶ 8.

15      7.     But for the adoption and enforcement of AB 2571, CRPA would
16 continue offering firearms training and safety programs and hunter's education
17 courses to all people legally permitted to engage in such activities, including those
18 under 18, as it has done for years. And if the law is enjoined, CRPA will in fact
19 resume offering such courses to minors under 18.

20      8.     Even if AB 160 goes into effect, and some limited exemptions are
21 made to California's ban on firearm-related speech, the amended law expressly
22 exempts only speech that offers or promotes firearms training and safety programs
23 and hunter's education course, it does not exempt the speech that takes place during
24 those programs. As such, CRPA and its firearm instructors must consider whether
25 they wish to offer such courses to youth under 18 at all and, if they do so, must
26 carefully censor their speech since such courses inherently include speech
27 promoting firearm-related products, including recommendations about specific
28 products. For instance, California's own Hunter Safety Course Study Guide (a

3

1     resource that every hunter education course in the state must use) incorporates

2     several endorsements for "firearm-related products," including but not limited to

3     firearm cleaning kits, gun safes, hunting ammunition, eye and ear protection,

4     adjustable shooting tripods, spotting scopes, and shotgun chokes, as well as the pros

5     and cons of various gun cases for transport.

6         9.      But for the adoption and enforcement of AB 2571 (and the AB 160

7     amendments), CRPA would continue offering firearm safety, handling, and hunting

8     courses to all people legally permitted to engage in such activities, including those

9     under 18 as it has done for years—and it could do so without substantially

10    censoring its trainers' speech. If the law is enjoined, CRPA will in fact resume

11    offering such courses to minors under 18.

12        10.     AB 2571, as passed on June 30, 2022, and currently enforced, restricts

13    what CRPA can publish in its *California Firing Line* magazine. For instance, a

14    large portion of each issue of the bi-monthly magazine has been traditionally

15    devoted to the celebration and promotion of youth shooting programs and

16    competitive shooting—speech that necessarily involves advertising, marketing, or

17    arranging for the placement of communications promoting the use of firearm-

18    related products in ways that might be considered attractive to minors. Since the

19    passage of AB 2571, CRPA has thus been forced to remove this truthful and

20    otherwise lawful content from the pages of its *California Firing Line* magazine.

21    Indeed, to prevent substantial civil liability under the new law, CRPA has had to

22    sacrifice (among other things) stories celebrating youth shooting team successes,

23    articles penned by youth about their love of the shooting sports, and images of

24    young people engaged in these activities. *See* Minnich Decl., ¶ 9 & Ex. 22. Indeed,

25    CRPA had to replace the entire shooting sports section with other articles for fear of

26    running an article that may be in violation of the law because the section primarily

27    features the accomplishments and competitions of youth shooters and shooting

28    teams across the state.

SUPPLEMENTAL DECLARATION OF RICHARD MINNICH     **0188**

11.     But for the adoption and enforcement of AB 2571, CRPA would continue to produce its *California Firing Line* magazine, celebrating all facets of the gun culture, including youth in the shooting sports, as it has for years. And if the law is enjoined, CRPA will in fact resume publishing content in the *California Firing Line* (and other publications) that promotes and celebrates youth in the shooting sports.

12.     Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the law will still bar CRPA from publishing articles and images in its *California Firing Line* magazine that endorse or recommend firearm-related products that are designed for use by minors or come in colors or sizes that might be appealing to minors. For instance, CRPA could not publish articles written by youth shooters endorsing specific firearms or ammunition appropriate for competitive shooting applications by youth and smaller shooters.

13.     But for the adoption and enforcement of AB 2571(and the AB 160 amendments), CRPA would continue to produce its *California Firing Line* magazine, celebrating all facets of the gun culture, including youth in the shooting sports, as it has for years. And if the law is enjoined, CRPA will in fact resume publishing content in the *California Firing Line* (and other publications) that promotes and celebrates youth in the shooting sports.

14.     The *California Firing Line* magazine also includes traditional advertisements promoting firearms-related products—advertisements that are intended for an audience of adults and firearms-savvy minors who may want to ask their parents to lawfully purchase firearms and related products for the minor's lawful use. Since the passage of AB 2571, CRPA has had to stop accepting ads for fear that they may be attractive to minors.

15.     But for the adoption and enforcement of AB 2571, CRPA would continue including traditional (truthful and otherwise lawful) advertisements

SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

0189

promoting firearm-related products in *California Firing Line* magazine regardless of whether some third person might think the communications are attractive to minors. And if the law is enjoined, CRPA will in fact resume accepting traditional (truthful and otherwise lawful) advertisements promoting firearm-related products regardless of whether some third person might think the communications are attractive to minors. *See* Minnich Decl., ¶¶ 10 & 11.

16. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law does not exempt the sorts of traditional advertising promoting firearm-related products found in the pages of CRPA's *California Firing Line* magazine. To the contrary, the law expressly bans communications promoting or offering firearm-related products if some third party might think they are attractive to minors. As such, even in AB 160 goes into effect, CRPA must continue to limit the advertisements to those that are determined not attractive to minors (to the extent that is even possible) or end advertising firearm-related products in our publications altogether.

17. But for the adoption and enforcement of AB 2571 (and the AB 160 amendments), CRPA would continue including traditional (truthful and otherwise lawful) advertisements promoting firearm-related products in *California Firing Line* magazine regardless of whether some third person might think the communications are attractive to minors. And if the law is enjoined, CRPA will in fact resume accepting traditional (truthful and otherwise lawful) advertisements promoting firearm-related products regardless of whether some third person might think the communications are attractive to minors.

18. AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational events and shooting competitions specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related

products. Because these programs regularly involve print and online advertising, signage, flyers, discussions, branded merchandise and giveaways, and other communications depicting minors enjoying or otherwise encouraging minors to possess and use lawful firearms for lawful purposes, they necessarily involve advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to them. *See* Minnich Decl., ¶ 12 & Ex. 23. I

19.     But for the adoption and enforcement of AB 2571, CRPA would continue planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational events and shooting competitions specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. And if the law is enjoined, CRPA will in fact resume planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating such programs. *See* Minnich Decl., ¶ 12.

20.     Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law expressly exempts only speech that offers or promotes lawful shooting programs and activities, it does not exempt the speech that takes place at those events. Such events often involve signage, flyers, discussions, branded merchandise and giveaways, and other communications that promote or offer firearm-related products. CRPA learned recently that the California Department of Fish and Wildlife is considering not hosting youth hunts this fall because, even with the AB 160 amendments, there are still concerns that discussions about hunting firearms and related products violate the law. What's more, the cost of hosting shooting opportunities for youth is often offset by sponsors, including businesses that sell or manufacture firearm-related products. Sponsors are often offered booth space, banners, signage, logo placement, or other forms advertising at these events in

7

SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

exchange for their financial support. It is also customary, just like in other sports, to place sponsor logos not just on signage or vendor booths, but on the shirts or uniforms competitors receive. This apparel is not only commemorative to the youth shooters, but advertising for sponsors. Because AB 2571 provides no exception for sponsors of lawful youth shooting events or for the speech that takes place at such events, both as originally adopted and as recently amended, the law restricts CRPA's ability to host and sponsor shooting events for youth.

21. But for the adoption and enforcement of AB 2571 (including the AB 160 amendments), CRPAF would continue planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational or competitive shooting events specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. And if the law is enjoined, CRPAF will in fact resume planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating such programs.

22. What's more, the AB 160 amendments to AB 2571 do not expressly include advertisements, marketing, or communications promoting youth recreational shooting activities (i.e., not competitive shooting or hunting activities) where youth are likely to be in attendance and where they lawfully use, handle, observe, or otherwise possess firearm-related products. It is unclear whether these activities—and all the speech that takes place attendant to such activities—are permissible under the new language of the law.

23. AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from distributing CRPA-branded merchandise and giveaways (or "swag"), including but not limited to hats, t-shirts, stuffed animals, coloring and activity books, stickers, pins, and buttons, to promote the organization and solicit memberships and/or financial support, as well as to spread pro-gun messages and slogans.

SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

24. But for the adoption and enforcement of AB 2571, CRPA would continue distributing CRPA-branded merchandise and giveaways (or "swag"), including but not limited to hats, t-shirts, stuffed animals, coloring and activity books, stickers, pins, and buttons, to promote the organization and solicit memberships and/or financial support, as well as to spread pro-gun messages and slogans. And if the law is enjoined, CRPA would in fact resume engaging in these activities.

25. AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from offering and promoting is junior membership to youth under the age of 18, which was previously expected to be made available in September 2022. Because the planned CRPA youth membership program involves pro-Second Amendment communications directly to and intended for youth, it necessarily involves advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to them. *See* Minnich Decl., ¶ 15. To prevent substantial civil liability under the new law, CRPA has halted plans to roll out its junior membership program.

26. But for the adoption and enforcement of AB 2571, CRPA would continue with the promotion of its junior membership program and roll out this fall. If the law is enjoined, CRPA would in fact immediately resume these activities.

27. Finally, the AB 160 amendments to AB 271 do very little to address the vagueness and overbreadth concerns that plaintiffs identified in their complaint and moving papers. In fact, by adding *even more* unclear language rather than taking it away, the amendments make the law in many ways *more vague and more overbroad*. We thus remain unsure exactly what speech is prohibited or permitted going forward. And each time we host an event open to youth, publish a magazine, offer merchandise for sale, collaborate with industry-member sponsors, or communicate with minors, we must weigh the risks of engaging in this otherwise

SUPPLEMENTAL DECLARATION OF RICHARD MINNICH

1  lawful and truthful speech against the very real and very substantial risk of civil

2  liability.

3       I declare under penalty of perjury that the foregoing is true and correct.

4  Executed within the United States on September 28, 2022.

5

6

7                                      Richard Minnich

8                                      Declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

0194

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:      2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF RICHARD MINNICH IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

     I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

                              Laura Palmerin

0195

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>               Plaintiffs,<br><br>          v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>               Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx)<br><br>**SUPPLEMENTAL DECLARATION OF JONATHAN L. COLEMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:    October 17, 2022<br>Hearing Time:   10:00 a.m.<br>Courtroom:      8D<br>Judge:          Christina A. Snyder |

1

0196

## SUPPLEMENTAL DECLARATION OF JONATHAN COLEMAN

1.     I, Jonathan L. Coleman, am the Vice President of Plaintiff California Youth Shooting Sports Association, Inc. ("CYSSA"), a plaintiff in the above-entitled action and make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.     AB 2571, as adopted on June 30, 2022, and as currently enforced, restricts CYSSA from offering its youth clay shooting program in California because it necessarily involves, among other things: recruiting minors under 18 to participate in the clay shooting sports; coaching, training, and practicing with youth in the clay shooting sports; speaking with youth about and endorsing firearm-related products necessary to participate in the clay shooting sports; advertising, promoting, offering, hosting, facilitating, and registering youth for competitive shooting events and practices; working with youth shooters and recruiters for college clay shooting teams; and other communications promoting and celebrating youth in the competitive shooting sports. These activities necessarily involve advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products *directly to minors* and in ways that are likely to be attractive to minors.

3.     To prevent substantial liability under the new law, CYSSA has stopped advertising, marketing, and other communications promoting youth competitive shooting events and practices where firearms, ammunition, and related products are lawfully possessed, handled, and used by youth. And we added content warnings to our website and social media pages to deter youth under 18 residing in California from viewing our content. Barring removing our online content altogether, this was our only option. We must still weigh every communication that goes out against the substantial risk of violating this law.

4.     But for the adoption and enforcement of AB 2571, CYSSA would

1   continue our truthful and otherwise lawful advertising, marketing, and other
2   communications about competitive shooting programs to youth in California. We
3   would be publishing and distributing communications promoting participation in
4   the 2022 – 2023 shooting season and events, encouraging new youth shooter
5   participation, registering youth for the upcoming season, working with youth and
6   recruiters, holding matches, raising sponsor dollars and promoting our sponsors'
7   businesses, and posting general information about participation in youth shooting
8   sports. As it stands now, our program and website are frozen in time. *See* Coleman
9   Decl., ¶ 9. If the law is enjoined, CYSSA will immediately resume these activities.

10      5.      Many of our youth work for years developing their skills in the hopes
11  of being recruited for college shooting teams and scholarships. But AB 2571, as
12  adopted and as currently enforced, has led college shooting teams to end youth
13  recruiting in California. Indeed, since the passage of this law, recruiters have
14  refused to engage with youth in California around any shooting sport activity. But
15  for the adoption and enforcement of AB 2571, CYSSA would continue to work
16  with youth and recruiters to pursue college shooting opportunities and scholarships.

17      6.      Even if AB 160 goes into effect, and some limited exemptions are
18  made to California's ban on firearm-related speech that would allow CYSSA to
19  recruit members and advertise lawful competitive shooting events, the amended law
20  expressly exempts only speech that offers or promotes such programs, it does not
21  exempt the speech that takes place at those events. For instance, companies that
22  manufacture youth firearms and gear for the sport would no longer be able to place
23  their logo on shooting jerseys or promote their products to youth shooters. These
24  companies sponsor many of our teams, matches, coaches, and individual youth
25  athletes, just like any other sport with sponsors involved in the promotion of the
26  sport and their products. These sponsors are necessary to the success of our
27  program and barring their full participation in CYSSA youth shooting programs
28  will be detrimental to it.

SUPPLEMENTAL DECLARATION OF JONATHAN L. COLEMAN

7.    But for the enactment and enforcement of AB 2571 (and the AB 160 amendments), CYSSA would continue to partner with, accept sponsorships from, and promote the products of businesses that manufacture youth firearms and shooting gear for the sport. And if the law is enjoined, CYSSA would immediately resume these activities.

8.    Similarly, even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, CYSSA volunteers and affiliated coaches and trainers will still be prohibited from endorsing, promoting, or suggesting their young athletes obtain firearm-related products necessary for their success in the shooting sports. Nor could they promote a specific brand of ammunition or a particular firearm that works best for young and smaller athletes without violating the law.

9.    But for the enactment and enforcement of AB 2571 (and the AB 160 amendments), CYSSA volunteers and its affiliated coaches and trainers would resume endorsing, promoting, and suggesting their young athletes obtain firearm-related products necessary for their success in the shooting sports. And if the law is enjoined, CYSSA volunteers and its affiliated coaches and trainers would in fact resume these activities.

10.    What's more, the AB 160 amendments to AB 271 do very little to address the vagueness and overbreadth concerns that plaintiffs identified in their complaint and moving papers. In fact, by adding *even more* unclear language rather than taking it away, the amendments make the law in many ways *more vague and more overbroad*. We thus remain unsure exactly what speech is prohibited or permitted going forward, and each time we attempt to engage the public, we have to weigh the risks of speaking to and about youth shooting programs and activities against the very real and very substantial risk of civil liability. This chills the speech of CYSSA and its members across the state because we are unsure what can be said without fear of violating the law and being subject to substantial liability.

SUPPLEMENTAL DECLARATION OF JONATHAN L. COLEMAN

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed within the United States on September 27, 2022.

3

4

5    *Jonathan L. Coleman*
     Jonathan L. Coleman

6    Declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

SUPPLEMENTAL DECLARATION OF JONATHAN L. COLEMAN

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF JONATHAN L. COLEMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
    *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin

CERTIFICATE OF SERVICE

1  C.D. Michel-SBN 144258
   Anna M. Barvir-SBN 268728
2  Tiffany D. Cheuvront-SBN 317144
   MICHEL & ASSOCIATES, P.C.
3  180 East Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Fax: (562) 216-4445
5  Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
   Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
7  Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
   Foundation, and Gun Owners of California, Inc.
8
   Donald Kilmer-SBN 179986
9  Law Offices of Donald Kilmer, APC
   14085 Silver Ridge Road
10 Caldwell, Idaho 83607
   Telephone: (408) 264-8489
11 Email: Don@DKLawOffice.com

12 Attorney for Plaintiff Second Amendment Foundation

13              IN THE UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 JUNIOR SPORTS MAGAZINES          CASE NO: 2:22-cv-04663-CAS (JCx)
   INC., RAYMOND BROWN,
16 CALIFORNIA YOUTH SHOOTING        **SUPPLEMENTAL DECLARATION OF**
   SPORTS ASSOCIATION, INC.,        **ALAN GOTTLIEB IN SUPPORT OF**
17 REDLANDS CALIFORNIA              **PLAINTIFFS' MOTION FOR**
   YOUTH CLAY SHOOTING              **PRELIMINARY INJUNCTION**
18 SPORTS, INC., CALIFORNIA
   RIFLE & PISTOL ASSOCIATION,      Hearing Date:    October 17, 2022
19 INCORPORATED, THE CRPA           Hearing Time:    10:00 a.m.
   FOUNDATION, AND GUN              Courtroom:       8D
20 OWNERS OF CALIFORNIA, INC.;      Judge:           Christina A. Snyder
   and SECOND AMENDMENT
21 FOUNDATION,

22              Plaintiffs,

23        v.

24 ROB BONTA, in his official capacity
   as Attorney General of the State of
25 California; and DOES 1-10,

26              Defendant.

27

28

                              1
        SUPPLEMENTAL DECLARATION OF ALAN GOTTLIEB

## SUPPLEMENTAL DECLARATION OF ALAN GOTTLIEB

1.     I, Alan Gottlieb, am the Executive Vice President and a founder of Plaintiff Second Amendment Foundation ("SAF"), a plaintiff in the above-entitled action. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.     AB 2571, as adopted on June 30, 2022, and as currently enforced bars SAF from publishing and distributing any communications that may promote the use of firearm-related products directly to minors or in ways that are likely to be attractive to them. This prohibits SAF from actively advertising to and recruiting youth members into the organization, publishing Second Amendment materials depicting youth engaged in activities where they are using firearm-related products, promoting recreational and competitive shooting events that may be sponsored by SAF, and otherwise promoting youth shooting activities in California. It also restricts SAF's 2AGaming initiative, which seeks to grow the Second Amendment community by reaching out to people who play video games, especially minors and young adults who play games that focus on guns.

3.     To prevent substantial civil liability under the new law, SAF has been forced to stop these communications to anyone under the age of 18 in California, thus limiting lawful speech to many young Californians who desire to learn more about live fire experience and membership in SAF. But for the adoption and enforcement of AB 2571, SAF would continue to sponsor these outreach communications to people of all ages as it has done for years. And if the law is enjoined, SAF will in fact resume these activities.

4.     AB 2571, as passed on June 30, 2022, and currently enforced, bars SAF from distributing SAF-branded merchandise and giveaways (or "swag"), including but not limited to t-shirts, hats, other clothing, toys, games, pins, stickers, buttons, to promote the organization and solicit memberships and/or financial

support, as well as to spread pro-gun messages and slogans.

5. But for the adoption and enforcement of AB 2571, SAF would continue distributing SAF-branded merchandise and giveaways (or "swag"), including but not limited to t-shirts, hats, other clothing, toys, games, pins, stickers, buttons, to promote the organization and solicit memberships and/or financial support, as well as to spread pro-gun messages and slogans. And if the law is enjoined, CRPA would in fact resume engaging in these activities.

6. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the AB 160 amendments to AB 271 do very little to address the vagueness and overbreadth concerns that plaintiffs identified in their complaint and moving papers. In fact, by adding *even more* unclear language rather than taking it away, the amendments make the law in many ways *more vague and more overbroad*. We thus remain unsure exactly what speech is prohibited or permitted going forward. That confusion chills SAF's speech.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on September 28, 2022.

*/s/ Alan Gottlieb*
Alan Gottlieb
Declarant

SUPPLEMENTAL DECLARATION OF ALAN GOTTLIEB

# CERTIFICATE OF SERVICE
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:     2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF ALAN GOTTLIEB IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin

CERTIFICATE OF SERVICE

0205

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx)<br><br>**SUPPLEMENTAL DECLARATION OF SAM PAREDES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: October 17, 2022<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Christina A. Snyder |

1

SUPPLEMENTAL DECLARATION OF SAM PAREDES

1 **SUPPLEMENTAL DECLARATION OF SAM PAREDES**

2     1.    I, Sam Paredes, am the Executive Director of Gun Owners of

3 California, Inc. ("GOC"), a plaintiff in the above-entitled action. I make this

4 declaration of my own personal knowledge and, if called as a witness, I could and

5 would testify competently to the truth of the matters set forth herein.

6     2.    AB 2571, as passed on June 30, 2022, and currently enforced, bars

7 GOC from supporting youth shooting teams by raising and contributing financial

8 resources to their programs and sponsoring individual young shooters through their

9 careers as juniors looking to earn scholarships at major universities. Because these

10 activities require GOC to encourage minors to use firearm-related products, these

11 activities necessarily involves advertising, marketing, or arranging for the

12 placement of communications promoting the use of firearm-related products—

13 *directly to minors* and in ways likely to be attractive to them. To prevent substantial

14 civil liability under the new law, GOC has withdrawn this important support of

15 youth shooting teams.

16     3.    But for the adoption and enforcement of AB 2571, GOC would

17 continue to sponsor and support youth shooting teams, offer scholarship programs

18 to youth shooters, and communicate with minors as it has done for years. And if the

19 law is enjoined, GOC will in fact resume these activities.

20     4.    AB 2571, as passed on June 30, 2022, and currently enforced, also

21 restricts GOC's ability to engage in pro-gun speech concerning the use of firearm-

22 related products directly with minors or in ways that are designed, intended, or

23 reasonably appear to be attractive to them. To prevent substantial civil liability

24 under the new law, GOC has had to halt or drastically limit the distribution of

25 advertisements, mentions, recruitment information, and other content so that those

26 under 18 years of age are not likely to receive it.

27     5.    But for the adoption and enforcement of AB 2571, GOC would

28 continue to engage in pro-gun speech concerning the use of firearm-related

1    products directly with minors or in ways that are designed, intended, or reasonably
2    appear to be attractive to them. And if the law is enjoined, GOC will in fact resume
3    these activities.

4         6.    What's more, the AB 160 amendments to AB 271 do very little to
5    address the vagueness and overbreadth concerns that plaintiffs identified in their
6    complaint and moving papers. In fact, by adding *even more* unclear language rather
7    than taking it away, the amendments make the law in many ways *more vague and*
8    *more overbroad*. We thus remain unsure exactly what speech is prohibited or
9    permitted going forward, and each time we attempt to engage the public, we have to
10   weigh the risks of speaking to and about youth shooting programs and activities
11   against the very real and very substantial risk of civil liability. This chills the speech
12   of GOC and its thousands of members across the state because we are unsure what
13   can be said without fear of violating the law and being subject to substantial
14   liability.

15        I declare under penalty of perjury that the foregoing is true and correct.
16   Executed within the United States on September 27, 2022.

17
18
19                                          Sam Paredes
20                                          Declarant
21
22
23
24
25
26
27
28

                                  3
             SUPPLEMENTAL DECLARATION OF SAM PAREDES

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF SAM PAREDES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin

0209

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx) <br><br> **SUPPLEMENTAL DECLARATION OF STEVE GOMEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: October 17, 2022 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Christina A. Snyder |

1

SUPPLEMENTAL DECLARATION OF STEVE GOMEZ

## SUPPLEMENTAL DECLARATION OF STEVE GOMEZ

1.      I, Steve Gomez, am the President of The CRPA Foundation (CRPAF), a plaintiff in the above-entitled action. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.      AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPAF from planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational events where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. Because these programs involve print and online advertising, signage, flyers, discussions, branded merchandise and giveaways, and other communications depicting minors enjoying or otherwise encouraging minors to possess and use lawful firearms for lawful purposes, they necessarily involve advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and an in ways likely to be attractive to minors. *See* Gomez Decl., ¶7.

3.      But for the adoption and enforcement of AB 2571, CRPAF would continue planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational or competitive shooting events specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. And if the law is enjoined, CRPAF will in fact resume planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating such programs.

4.      Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law expressly exempts only speech that offers or promotes lawful shooting programs and activities, it does not exempt the speech that takes place at those events. Such events often involve

signage, flyers, discussions, branded merchandise and giveaways, and other communications that promote or offer firearm-related products. What's more, the cost of hosting shooting opportunities for youth is often offset by sponsors, including businesses that sell or manufacture firearm-related products. Sponsors are often offered booth space, banners, signage, logo placement, or other forms advertising at these events in exchange for their financial support. It is also customary, just like in other sports, to place sponsor logos not just on signage or vendor booths, but on the shirts or uniforms competitors receive. This apparel is not only commemorative to the youth shooters, but advertising for sponsors. Because AB 2571 provides no exception for sponsors of lawful youth shooting events or for the speech that takes place at such events, both as originally adopted and as recently amended, the restricts CRPAF's ability to host and sponsor shooting events for youth.

5.      But for the adoption and enforcement of AB 2571 (including the AB 160 amendments), CRPAF would continue planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating in recreational or competitive shooting events specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, or otherwise possess firearm-related products. And if the law is enjoined, CRPAF will in fact resume planning, advertising, marketing, promoting, sponsoring, hosting, facilitating and/or participating such programs.

6.      AB 2571, as passed on June 30, 2022, and currently enforced, bars CRPA from publishing and distributing the full variety of its informational bulletins, brochures, and articles, including a youth activity booth that teaches children about their Second Amendment rights and the heritage of shooting and hunting. Because these publications are meant to bring awareness to issues, laws, and general information that gun owners and shooters *of all ages* should be aware of it necessarily includes communications promoting the use of firearm-related products

SUPPLEMENTAL DECLARATION OF STEVE GOMEZ

*directly to minors* or in ways likely to be attractive to minors. Gomez Decl. ¶ 8. Because of the enactment and enforcement of AB 2571, CRPAF has had to pull some of its publications, "clean" the CRPAF webpage, and will be unable to promote our kid-friendly activity book. If we continue these activities unabated, I reasonably believe that the organization will be subject to substantial civil liability under AB 2571. *See* Gomez Decl. ¶ 10.

7. But for the enactment and enforcement AB 2571, CRPAF would continue to offer this and other dynamic content concerning and promoting the possession and use of firearms throughout California regardless of the age of the participant. And if the law is enjoined, CRPAF will in fact resume offering this and other dynamic content concerning and promoting the possession and use of firearms throughout California regardless of the age of the participant.

8. AB 2571, as adopted on June 30, 2022, and as currently enforced bars CRPAF from offering and promoting its grants to youth shooting teams, CRPAF Youth Scholarship Program, and Youth Ambassador Program—all programs that seek to engage youth in the shooting sports and encourage youth to exercise their Second Amendment rights. These programs necessarily involve advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors*.

9. But for the adoption and enforcement of AB 2571, CRPAF would continue to promote and offer its grants to youth shooting teams, CRPAF Scholarship Programs, and Youth Ambassador Program, as it has done for years. And if the law is enjoined, CRPAF will in fact resume offering its grants to youth shooting teams, CRPAF Scholarship Programs, and Youth Ambassador Program.

10. Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech, the amended law still limits what speech CRPAF and its supporters may safely engage in—through CRPAF's various family-friendly pro-gun publications and its Youth Ambassador Program. The AB

160 amendments to AB 271 do very little to address the vagueness and overbreadth concerns that plaintiffs identified in their complaint and moving papers. In fact, by adding *even more* unclear language rather than taking it away, the amendments make the law in many ways *more vague and more overbroad*. CRPAF fears that even under the amended language of the law, CRPAF must continue to weigh the substantial risk of running afoul of the law against the benefit of educating youth in California about our core mission of promoting and advocating for the lawful purchase, use, and ownership of firearms and firearm-related products.

     I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on September 28, 2022.

Steve Gomez
Declarant

SUPPLEMENTAL DECLARATION OF STEVE GOMEZ
0214

## CERTIFICATE OF SERVICE
### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:     2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF STEVE GOMEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
   *Attorney for Defendant*

     I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin

0215

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx) <br><br> **SUPPLEMENTAL DECLARATION OF RAYMOND BROWN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: October 17, 2022 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Christina A. Snyder |

## SUPPLEMENTAL DECLARATION OF RAYMOND BROWN

1.     I, Raymond Brown, am a plaintiff in the above-entitled action and make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.     AB 2571, as adopted on June 30, 2022, and as currently enforced bars me from actively coaching youth in the shooting sports in California because, during my training and coaching sessions with young shooters, minors lawfully use, handle, observe, and otherwise possess firearm-related products. Depending on the student's needs, I might also engage in discussions with or provide recommendations to youth shooters concerning firearm-related products that are most suitable for young and/or beginner shooters. These activities necessarily involve advertising, marketing, or arranging for the placement of communications promoting the use of firearm-related products—*directly to minors* and in ways likely to be attractive to minors.

3.     To prevent substantial liability under the new law, I have stopped offering courses in California specifically for youth and have barred youth under 18 from participating my general classes. I have also been forced to remove all mention of youth shooting from my website for fear of violating AB 2571.

4.     But for the adoption and enforcement of AB 2571, I would continue to coach youth in shooting and hunting and would continue to suggest firearm-related products to my minor students throughout California. I would also continue making mention of youth shooting on my website. If the law is enjoined, I would in fact immediate resume these activities.

5.     Even if AB 160 goes into effect, and some limited exemptions are made to California's ban on firearm-related speech that would allow me to offer or promote firearm training and hunting courses, the amended law expressly exempts only speech that offers or promotes these programs, it does not exempt the speech that takes place during those programs. As such, if I choose to resume offering such

courses to youth under 18 after the AB 160 amendments take effect, I must still carefully censor my speech since such courses inherently include speech promoting firearm-related products, including recommendations about specific products. Because of the enactment and enforcement of AB 2571 (even as amended by AB 160), I no longer feel comfortable speaking to youth about what equipment, firearms, and ammunition they should use for their sport or recreational shooting. All equipment I promote to youth would be "attractive to minors" because those particular minors are involved in a sport where they use firearms and firearm-related equipment. It is natural that I would tell them about the best products to use just like any other coach in other sports would tell their youth about.

6.     But for the adoption and enforcement of AB 2571 (and the AB 160 amendments), I would continue to coach youth in shooting and hunting and would continue to suggest firearm-related products to my minor students throughout California. I would also continue making mention of youth shooting on my website. If the law is enjoined, I would in fact immediate resume these activities.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on September 28, 2022.

Raymond Brown
Declarant

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SUPPLEMENTAL DECLARATION OF RAYMOND BROWN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
    *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed September 28, 2022.

Laura Palmerin

4
CERTIFICATE OF SERVICE

0219

1           UNITED STATES OF AMERICA
             UNITED STATES DISTRICT COURT
2           CENTRAL DISTRICT OF CALIFORNIA
                WESTERN DIVISION
3
                    - - -
4           HONORABLE CHRISTINA A. SNYDER
       UNITED STATES DISTRICT JUDGE PRESIDING
5                   - - -

6

JUNIOR SPORTS MAGAZINE, INC.,     )
7    ET AL.,                         )
                                     )
8            PLAINTIFF,              )
                                     )    CASE NO.
9    VS.                             )    CV 22-4663-CAS
                                     )
10   ROB BONTA, ET AL.,              )
                                     )
11           DEFENDANT.              )
     _____)
12

13

14
              REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                MONDAY, SEPTEMBER 12, 2022
16
                 LOS ANGELES, CALIFORNIA
17

18

19

20

21

22              LAURA MILLER ELIAS, CSR 10019
             FEDERAL OFFICIAL COURT REPORTER
23           350 WEST FIRST STREET, ROOM 4455
              LOS ANGELES, CALIFORNIA 90012
24               PH:  (213)894-0374

25

APPEARANCES OF COUNSEL:


ON BEHALF OF PLAINTIFF:


          MICHEL AND ASSOCIATES PC

          BY:  ANNA BARVIR, ESQ.

          180 EAST OCEAN BOULEVARD

          SUITE 200

          LONG BEACH, CA 90802


          LAW OFFICES OF DONALD KILMER

          BY:  DONALD KILMER, ESQ.

          14085 SILVER RIDGE ROAD

          CALDWELL, ID 83607


ON BEHALF OF DEFENDANT:


          CALIFORNIA DEPARTMENT OF JUSTICE

          BY:  KEVIN KELLY

          DEPUTY ATTORNEY GENERAL

          300 SOUTH SPRING STREET

          SUITE 9012

          LOS ANGELES, CA 90013




                UNITED STATES DISTRICT COURT

3

INDEX

PROCEEDINGS                                          PAGE


STATUS CONFERENCE                                      4

UNITED STATES DISTRICT COURT

4

1    LOS ANGELES, CALIFORNIA; MONDAY, SEPT. 12, 2022; 11:08 A.M.

2                              - - -

3              THE CLERK:  Item No. 5.

4              Case No. CV 22-4663.

5              Junior Sports Magazine versus Rob Bonta.

6              Counsel, please state your appearances.

7              MS. BARVIR:  Good morning.  Anna Barvir for

8    plaintiffs Junior Sports Magazines, Ray Brown, The California

9    Youth Sports Association, Redlands California Clay Shooting

10   Sports, Inc., CPRA, CPRA Foundation and Gun Owners of

11   California.

12             My co-counsel is Don Kilmer and he is representing

13   plaintiff Second Amendment Foundation.

14             THE COURT:  All right.  Good morning.

15             MR. KELLY:  Good morning, Your Honor.  Kevin Kelly

16   Deputy Attorney General for defendant Attorney General Rob

17   Bonta.

18             THE COURT:  All right.  Good morning.

19             So as I understand the status, and I appreciate the

20   defendant's status conference statement, we have legislation

21   that has been passed by both the state assembly and the state

22   senate, but it is yet to be signed by the Governor.  I am not

23   a betting person, but I think the likelihood of his not

24   signing it is between slim and none, maybe less than that.

25             So I think we ought to proceed accordingly, uh,

5

```
1    because I know that the plaintiffs are anxious to have the
2    matter adjudicated.  And, uh, it's not as if I have been
3    sitting.  I could have issued an order previously, but I
4    really think that the order will have -- will make more sense
5    if, uh, it considers what the state legislature has done.
6         So I guess we need a supplemental briefing schedule
7    and a new hearing, um, but if anyone disagrees, let me know.
8         MS. BARVIR:  Your Honor, I thank you for your, um,
9    advice here.  Of course plaintiffs are very anxious to have
10   this motion for preliminary injunction that's pending ruled
11   on.  You know, we have our plaintiff, especially our named
12   plaintiff, is sitting and waiting on Your Honor's ruling in
13   this matter to let its final, um, its September/October issue
14   of its magazine go to print.
15        So we would like, um, your consideration and if
16   it's possible, ruling.  I understand that Your Honor has
17   indicated that.  You know, it recognizes that the Court could
18   have ruled especially we think on the commercial speech
19   aspects even regardless of what happens with the amended
20   bill, um, but we understand the need for the Court's interest
21   in supplemental briefing.  We just would ask that anything
22   like that would be as quick as we could possibly make it.
23        THE COURT:  I couldn't agree more.
24        MS. BARVIR:  Thank you.
25        THE COURT:  But look, here's the problem.  The only
```

6

1    reason I want to have supplemental briefing.  From what

2    little I've seen, the plaintiffs have raised the fact that

3    this new legislation is essentially an admission against

4    interest.  And they further contend that even with the new

5    legislation -- sorry.  Even if this legislation were enacted,

6    you would still object and say that the statute is overly

7    broad and that it interferes with both commercial and

8    noncommercial speech rights.

9         But I think it would be helpful for me in light of

10   the new provisions to understand the contentions of the

11   parties regarding those provisions because at minimum, um, it

12   seems to me that even if this were never signed by the

13   Governor, as I say I expect it will be, someone is going to

14   argue the amended statute sets forth the outer limits for

15   enforcement of this provision and you can't go back to the

16   earlier statute, uh, in determining what to do.

17        And I think any order I write ought to take into

18   account the, you know, changes that have been made so that I

19   can fairly consider their effect and that's one of the things

20   I would want to do in any order, uh, because of the peculiar

21   procedural posture in this case.  I think we have to have a

22   final order whatever it says, uh, which addresses the changes

23   that have been made by legislature whether they become law or

24   not.

25        MS. BARVIR:  I think that's fair, Your Honor.

UNITED STATES DISTRICT COURT

7

1          THE COURT:  So that is the question.  I think we

2     need a supplemental brief obviously from the plaintiffs and

3     from the defendants, and I will work as quickly as possible.

4     Just so you know my scheduling difficulties, I think I am

5     here October 17th.  I'll be quite honest, after the 17th, my

6     schedule becomes quite difficult because I've made some

7     travel plans.

8          The very last day that I could really address this

9     matter based on my current schedule would either be the 17th

10    or the 31st.  But I'm supposed to leave the country after the

11    31st and obviously, if I had to make changes to any tentative

12    order, I could do it while in transit, but given the desire

13    of the parties to have a speedy decision, if there's any way

14    we can have a hearing on the 17th, it seems to me that would

15    be the prudent thing to do.

16          MS. BARVIR:  Thank you, Your Honor.

17          October 31st I'm actually out of the country at

18    that time so I wouldn't be available and 10-17 would be the

19    absolute latest.  Plaintiffs would actually be, um,

20    interested in even faster if something like that is do-able.

21    I understand the 10th is a holiday.  If there's anything

22    available before that, we would like Your Honor's

23    consideration.

24          THE COURT:  We could do October 3rd.  Um, what that

25    means is you would have to get a brief in probably within a

8

1    week to ten days and that puts a fair amount of pressure on

2    the State.  I think the 17th is the better day, um, and I

3    understand why you guys think this is important that people

4    are waiting at the printing presses deciding what to do and

5    so on and I appreciate that.

6            But on the other hand, I think everyone ought to

7    have a fair chance to brief this thing and I ought to have a

8    fair chance to consider your arguments because they're very

9    important to the plaintiff and they're very important to the

10   defendant.

11           So what I'm really wondering would be -- I'd like

12   to be in a position if we're gonna have a hearing on the

13   17th, I would like to have the week of the 10th even though

14   we aren't in court on the 10th to have all the briefs before

15   me.  So I'm thinking maybe if the State's brief came in on

16   October 7th, then the plaintiff's briefs maybe could come in

17   what, the week of the 26th unless you wanted to send them in

18   earlier?

19           THE CLERK:  Judge, just the week prior it would be

20   on September 30th.

21           THE COURT:  You mean for the briefing.

22           THE CLERK:  Yes, for the briefing, for plaintiff's

23   brief.

24           THE COURT:  Okay.  Although we could have it come

25   in earlier in that week; correct?  If you can get it in, uh,

1    let me ask you, Ms. Barvir, can you get the brief in let's

2    say maybe the 28th?

3            MS. BARVIR:  I can do that, Your Honor, earlier if

4    necessary to give us an earlier hearing or perhaps submit on

5    the briefs.  Obviously, we want to be heard as soon as we can

6    so we will work as hard as we can to get Your Honor briefing

7    as soon as we can.

8            THE COURT:  Let's say that you have to get it to me

9    by September 28th.  If you want to get it to me earlier,

10   fine.  And then, Mr. Kelly, I guess we're saying we'd like to

11   have your brief no later than the 7th of October.

12           MR. KELLY:  That's fine with us, Your Honor.

13           THE COURT:  You know, I really do not intend to

14   just consider this and take it under submission and decide it

15   on the papers because I would like to have a sensible

16   tentative order for you to argue about rather than just

17   surprise you with something.  So from my point of view, I'd

18   rather do it in my traditional way with a hearing date, a

19   tentative order and a chance for everyone to come in.

20           We will try to get that tentative order to you

21   earlier rather than later, although it's in part gonna depend

22   just on the arguments you guys make.

23           Okay.  Does that solve the problem for now until we

24   get to the next round?

25           MR. KELLY:  I think so, Your Honor.  I don't have

1   anything further.

2           THE COURT:  Ms. Barvir?

3           MS. BARVIR:  Oh, I'm sorry.  I don't have anything

4   to add.

5           THE COURT:  Unartfully, I asked each of you whether

6   you had any further comments.

7           MS. BARVIR:  Thank you.  I have no further

8   comments.  I think plaintiffs are on the record and

9   Your Honor understands how imperative it is that we get a

10  ruling soon.

11          THE COURT:  I do.

12          MS. BARVIR:  Thank you.

13          THE COURT:  Yes, Mr. Kilmer?

14          MR. KILMER:  When we conduct this hearing, will it

15  be by zoom or live in the courtroom?

16          THE COURT:  One never knows.  Um, most probably by

17  zoom, but we'll figure it out as we get closer.  I'm gonna be

18  in trial the next couple of weeks.  If I am in trial, it may

19  well be I'll be in the courtroom.

20          MR. KILMER:  I would have to make travel plans,

21  Your Honor because I'm located in another state.

22          THE COURT:  Right, I know you are.

23          Well, is it an imposition to do it by zoom?

24          MR. KILMER:  No, I would prefer.

25          THE COURT:  Okay.  Anyone else object to zoom?

```
1              MR. KELLY:  No, Your Honor.

2              MS. BARVIR:  No, Your Honor.

3              THE COURT:  Let's all agree it will be by zoom.

4              MR. KILMER:  Thank you, Your Honor.

5              MS. BARVIR:  Thank you, Your Honor.

6              THE COURT:  Thank you, everybody.

7                (Proceedings were concluded 11:21 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1

2                    CERTIFICATE OF REPORTER

3

4    COUNTY OF LOS ANGELES        )

5                                 )  SS.

6    STATE OF CALIFORNIA          )

7

8    I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

9    STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

15   OF MY STENOGRAPHIC NOTES.

16

17

18   DATE:  NOVEMBER 1, 2022

19

20       /s/  LAURA MILLER ELIAS

21   LAURA MILLER ELIAS, CSR 10019

22   FEDERAL OFFICIAL COURT REPORTER

23

24

25

1   ROB BONTA
    Attorney General of California
2   MARK R. BECKINGTON
    Supervising Deputy Attorney General
3   KEVIN J. KELLY
    Deputy Attorney General
4   State Bar No. 337425
     300 S. Spring St., Ste. 9012
5    Los Angeles, CA 90013
     Telephone: (213) 266-6615
6    Fax: (916) 731-2124
     E-mail: Kevin.Kelly@doj.ca.gov
7   *Attorneys for Defendant Rob Bonta,*
    *In his official capacity as Attorney*
8   *General of the State of California*

9           IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13
    | **JUNIOR SPORTS MAGAZINES** | |
14  | **INC. ET AL.,** | **DEFENDANT'S STATUS** |
15  | | **CONFERENCE STATEMENT** |
16  | **v.** | Date:        September 12, 2022 |
17  | **ROB BONTA, IN HIS OFFICIAL** | Time:        11:00 a.m. |
    | **CAPACITY AS ATTORNEY** | Courtroom:   8D |
18  | **GENERAL OF THE STATE OF** | Judge:       Christina A. Snyder |
    | **CALIFORNIA ET AL.,** | Action Filed: July 8, 2022 |
19

20

21

22

23

24

25

26

27

28

## DEFENDANT'S STATUS CONFERENCE STATEMENT

1.    In anticipation of the status conference in the instant action scheduled for September 12, 2022, Defendant respectfully submits this statement to update the Court and the parties on developments regarding the adoption of legislative amendments to AB 2571, the challenged statute in this case.

2.    As the Court and the parties are aware, in August 2022, the California Legislature considered the adoption of certain clarifying amendments to AB 2571. *See* ECF No. 24. In its order dated August 19, 2022, the Court noted that these amendments, if adopted, might clarify claimed ambiguities in AB 2571 and may be material to Plaintiffs' pending motion for a preliminary injunction. *See id.*

3.    Later in the month, AB 160, "Public safety trailer bill," was introduced in the Legislature. *See* AB 160, annexed hereto as Exhibit A; Bill History, annexed hereto as Exhibit B (*available at* https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=202120220 AB160) (last accessed September 9, 2022). The bill contains amendments to AB 2571 in the same form that had earlier been presented to the Court. *See id.* at 7-10.

4.    On August 31, 2022, the Legislature voted to approve AB 160. *See* Exhibit B. The bill was presented to the Governor on the same day. *See id.*

5.    As of this filing, the Governor has not signed AB 160 into law. *See* Exhibit B. AB 160 will become law if signed by the Governor or if the Governor does not act on the bill on or before September 30, 2022, at which point it will become a statute by operation of law. *See* Cal. Const. Art. 4, §10(b)(2).

6.    Should further developments regarding AB 160 hereafter arise, Defendant will update the Court and parties promptly, including at the status conference on September 12, 2022, if possible.

-1-

Dated: September 9, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

/s/ Kevin J. Kelly
KEVIN J. KELLY
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his Official Capacity as Attorney General of the State of California*

SA2022301332
JSM v Bonta - Status Conference Statement 9.9.22.docx

# EXHIBIT A

**Assembly Bill No. 160**

———

Passed the Assembly  August 31, 2022

_____

*Chief Clerk of the Assembly*

———

Passed the Senate  August 30, 2022

_____

*Secretary of the Senate*

———

This bill was received by the Governor this _____ day of _____, 2022, at _____ o'clock ___M.

_____

*Private Secretary of the Governor*

0236

**AB 160** — 2 —

## CHAPTER _____

An act to amend Section 22949.80 of the Business and Professions Code, to amend Section 68085.1 of, and to amend, repeal, and add Sections 13956, 13957, 13957.5, 13959, and 13962 of the Government Code, to amend Sections 290.008, 457.1, 1203.4b, and 1463.001 of, to amend, repeal, and add Sections 4900 and 4904 of, and to add Section 679.027 to, the Penal Code, and to amend Section 1732.10 of the Welfare and Institutions Code, relating to public safety, and making an appropriation therefor, to take effect immediately, bill related to the budget.

LEGISLATIVE COUNSEL'S DIGEST

AB 160, Committee on Budget. Public safety trailer bill.

(1) Existing law prohibits a firearm industry member, as defined, from engaging in advertising or marketing related to firearms that is intended for minors or reasonably appears to be attractive to minors, as specified.

This bill would exempt from this prohibition any advertising that is offering or promoting classes or events related to firearm safety, hunting, or sport shooting, as specified, or promoting membership in any organization.

(2) Existing law generally provides for the compensation of victims and derivative victims of specified types of crimes by the California Victim Compensation Board from the Restitution Fund, which is continuously appropriated to the board. Existing law prohibits the board from granting compensation to a person who is convicted of a violent felony, as prescribed, until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime.

This bill would instead prohibit compensation from being granted to a person in the above circumstances until after that person has been released from a correctional institution.

(3) Existing law authorizes the board to compensate for pecuniary loss, including compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs

94

**AB 160**

as a direct result of the victim's or derivative victim's injury or the victim's death, as specified. Existing law also provides limits on the compensation a victim and derivative victim may receive.

This bill would authorize the board, in authorizing compensation for loss of income and support, to base the loss of income on the actual loss the victim sustains or the wages that an employee would earn, as specified, during the period that the victim is unable to work or seek work as a result of the injury for adult victims, and upon the loss the victim actually sustains for victims who are under 18 years of age at the time of the crime, as specified. The bill would also specify that an adult derivative victim and a derivative victim who was legally dependent on the victim at the time of the crime are also similarly eligible for compensation for loss of income, as specified. The bill would specify that if a victim is a minor at the time of the crime, the victim is eligible for future loss of income, calculated as specified.

This bill would specify that if an adult victim or derivative victim was not employed or receiving earned income benefits at the time of the crime, the victim or derivative victim, as applicable, shall be eligible for loss of income if they were fully or partially employed or receiving income benefits for a total of at least 2 weeks in the 12 months preceding the qualifying crime, or had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime, as specified. The bill would specify that if a derivative victim who is otherwise eligible for loss of support is eligible for loss of support if the deceased victim was not employed or receiving earned income benefits at the time of the crime, but the deceased victim was fully or partially employed or receiving earned income benefits for a total of at least 2 weeks in the 12 months preceding the qualifying crime, if the victim had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

This bill would require the board, by July 1, 2025, to adopt new guidelines to rely on a range of evidence in considering and approving claims for loss of income, as specified.

The bill would also remove or raise various limits on the compensation a victim and derivative victim may receive, as specified. By expanding the eligibility for, and by increasing or removing limits on, compensation from a continuously appropriated fund, this bill would make an appropriation.

94

(4) Existing law requires the board to publicize the existence of the victim compensation program, and requires a local law enforcement agency to inform crime victims of these provisions, as specified.

This bill would require the board to provide every general acute care hospital in the state that operates an emergency department with specified information, and require the hospital to display the information, as specified. The bill would also require every local law enforcement agency to inform crime victims of the existence of specified trauma recovery centers. By requiring local law enforcement agencies to provide additional information to crime victims, this bill would impose a state-mandated local program.

(5) Existing law, as added by Proposition 9, the Victims' Bill of Rights Act of 2008: Marsy's Law, at the November 4, 2008, statewide general election, requires a law enforcement agency investigating a criminal act and an agency prosecuting a criminal act to, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate, provide or make available to the victim a "Marsy Rights" card that contains the constitutional rights of crime victims without charge or cost to the victim.

This bill would require every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act to, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, provide or make available to each victim of the criminal act without charge or cost a "Victim Protections and Resources" card and to provide other information, as specified. The bill would also require the Attorney General to design and make available in PDF or other imaging format to these agencies a "Victim Protections and Resources" card containing specified information. The bill would authorize the "Victim Protections and Resources" card to be designed as part of and included with the "Marsy Rights" card described above. By requiring these agencies to provide additional information to crime victims, this bill would impose a state-mandated local program.

(6) Existing law allows a person who was erroneously convicted of a felony and imprisoned in the state prison or a county jail to present a claim to the board for the injury sustained by the person

94

through the erroneous conviction and imprisonment or incarceration. Existing law requires the board to provide a recommendation to the Legislature that an appropriation be made for the purpose of indemnifying the claimant for the erroneous conviction injury. Existing law requires that the amount of the appropriation recommended by the board be equivalent to $140 per day of incarceration served, as specified.

This bill would require that the compensation recommendation for a claimant be equivalent to $70 per day served on parole or supervised release, as specified. The bill would require that these amounts be updated annually to account for changes in the United States Bureau of Labor Statistics Consumer Price Index, West Region.

(7)  Existing law creates the Division of Juvenile Justice within the Department of Corrections and Rehabilitation to operate facilities to house specified juvenile offenders. Existing law requires the Division of Juvenile Justice to close on June 30, 2023, and provides for the transition of youth who are currently housed within a Division of Juvenile Justice facility to the care and custody of counties.

Existing law requires a person convicted of specified sex offenses, including a person who is discharged or paroled from the Department of Corrections and Rehabilitation after having been adjudicated a ward of the juvenile court because of the commission of a sex offense, to register with local law enforcement agencies while residing in the state or while attending school or working in the state. Existing law requires a person convicted of arson, or a person who is discharged or paroled from the Department of Corrections and Rehabilitation, Division of Juvenile Justice after being adjudicated a ward for having committed arson, to register with certain local officials in the area in which they reside.

This bill would define a discharged person for purposes of these sex offender and arson registration requirements to include specified persons who transition out of the division due to its statutorily required closure. The bill would require the court of jurisdiction to establish the point at which the ward is required to register and notify the Department of Justice of its decision.

(8) Existing law allows a defendant who successfully participated in the California Conservation Camp program as an

94

incarcerated individual hand crew member, or successfully participated as a member of a county incarcerated individual hand crew, except as specified, to petition the court to have the pleading dismissed, as described, thus releasing the person of any penalties and disabilities of conviction, except as otherwise provided.

This bill would also grant this relief to a defendant who has successfully participated at an institutional firehouse, as specified.

(9) Existing law prescribes the distribution of funds collected from specified fines, forfeitures, and civil assessments imposed for crimes.

This bill would correct erroneous cross-references in existing law.

(10) Existing law, within the Department of Corrections and Rehabilitation, creates the Division of Juvenile Justice, headed by a director, to operate facilities to house specified juvenile offenders. Existing law requires the division to close on June 30, 2023, and provides for the transition of youth who are currently housed within a Division of Juvenile Justice facility to the care and custody of counties. Existing law requires the State Department of State Hospitals, upon closure of the division, to continue to provide evaluation, care, and treatment of state hospital patients referred to the division.

This bill would correct an erroneous cross-reference in existing law.

(11) This bill provides that certain of its provisions shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions.

(12) This bill would incorporate additional changes to Sections 13956 and 13957 of the Government Code proposed by SB 299 and SB 877, respectively, and Sections 4900 and 4904 of the Penal Code proposed by SB 1468, to be operative only if this bill and the other specified bills are enacted and this bill is enacted last.

(13) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated

94

by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

(14) This bill would declare that it is to take effect immediately as a bill providing for appropriations related to the Budget Bill.

Appropriation: yes.

*The people of the State of California do enact as follows:*

SECTION 1. Section 22949.80 of the Business and Professions Code is amended to read:

22949.80. (a) (1) A firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors.

(2) In determining whether marketing or advertising of a firearm-related product is attractive to minors, as described in paragraph (1), a court shall consider the totality of the circumstances, including, but not limited to, whether the marketing or advertising:

(A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.

(F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

(3) This subdivision does not apply to a communication offering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting

94

**AB 160** — 8 —

membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

(b)  A firearm industry member publishing material directed to minors in this state or who has actual knowledge that a minor in this state is using or receiving its material, shall not knowingly use, disclose, compile, or allow a third party to use, disclose, or compile, the personal information of that minor with actual knowledge that the use, disclosure, or compilation is for the purpose of marketing or advertising to that minor any firearm-related product.

(c)  As used in this chapter:

(1)  "Ammunition" has the same meaning as provided in subdivision (b) of Section 16150 of the Penal Code.

(2)  "Firearm" has the same meaning as provided in subdivisions (a) and (b) of Section 16520 of the Penal Code.

(3)  "Firearm accessory" means an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm.

(4)  "Firearm industry member" means any of the following:

(A)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B)  A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i)  Advertises firearm-related products.

(ii)  Advertises events where firearm-related products are sold or used.

(iii)  Endorses specific firearm-related products.

(iv)  Sponsors or otherwise promotes events at which firearm-related products are sold or used.

(5)  "Firearm-related product" means a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm

94

component, or a firearm accessory that meets any of the following conditions:

(A)  The item is sold, made, or distributed in California.

(B)  The item is intended to be sold or distributed in California.

(C)  It is reasonably foreseeable that the item would be sold or possessed in California.

(D)  Marketing or advertising for the item is directed to residents of California.

(6)  "Marketing or advertising" means, in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction.

(7)  "Minor" means a natural person under 18 years of age who resides in this state.

(d)  This section shall not be construed to require or authorize a firearm industry member to collect or retain age information about users or subscribers of products or services offered.

(e)  (1)  Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction.

(2)  The court shall impose a civil penalty under paragraph (1) for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

(3)  A person harmed by a violation of this section may commence a civil action to recover their actual damages.

(4)  The court shall also order injunctive relief, including a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as

the court deems necessary to prevent the harm described in this section.

(5) Upon a motion, a court shall award reasonable attorney's fees and costs, including expert witness fees and other litigation expenses, to a plaintiff who is a prevailing party in an action brought pursuant to this section.

(6) Each copy or republication of marketing or advertising prohibited by this section shall be deemed a separate violation.

(f) The provisions of this section are severable. If any portion, subdivision, paragraph, clause, sentence, phrase, word, or application of this section is for any reason held to be invalid by any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this chapter. The Legislature hereby declares that it would have adopted this section and each and every portion, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any other portion of this section or application thereof would be subsequently declared invalid.

SEC. 2. Section 13956 of the Government Code is amended to read:

13956. Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a) An application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1) Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A) The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as

a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim of domestic violence shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim of sexual assault,

domestic violence, or human trafficking delayed reporting the qualifying crime.

(2) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(3) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(4) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A Law Enforcement Agency Endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(5) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not

be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section

667.5 of the Penal Code shall not be granted compensation until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(d) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 2.5. Section 13956 of the Government Code is amended to read:

13956. Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a) Except as otherwise provided in this subdivision and in subdivision (c), an application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1) Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A) The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 262, or 273.5 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(3) Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (2) of subdivision (c), for a claim based on a victim's death as a result of a crime, the board shall not deny the application, in whole or in part, based on the deceased victim's involvement in the crime that gave rise to the claim.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers,

**AB 160** — 16 —

any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim of domestic violence shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim of sexual assault, domestic violence, or human trafficking delayed reporting the qualifying crime.

(2) Notwithstanding paragraph (1), for a claim based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's failure to cooperate.

(3) Notwithstanding paragraph (1), for a claim based on a victim's death as a result of a crime, the board shall not deny the application based on a victim's or derivative victim's failure to cooperate.

(4) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(5) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations

**AB 160**

of sexual assault, mental health records, or that the victim received a sexual assault examination.

(6) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A law enforcement agency endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(7) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

94

**AB 160** — 18 —

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) Notwithstanding any provision of statute, administrative rule, local ordinance, or other law, for applications based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, if the board receives a form of documentation that describes or demonstrates that a person suffered serious bodily injury or death as a result of a law enforcement officer's use of force, the board shall accept this as sufficient evidence to establish that such use of force constitutes a crime and that the person who suffered serious bodily injury or death as a result of a law enforcement officer's use of force is a victim, solely for the purposes of eligibility for compensation under this chapter. Such a form of documentation may include, but is not limited to, medical records documenting the victim's injury, mental health records, a written statement from a victim services provider, a death certificate, or evidence that the qualifying crime was reported under Section 12525.2 to the Department of Justice as an incident in which the use of force by a law enforcement officer against a civilian resulted in serious bodily injury or death.

(1) For a claim based on a victim's serious bodily injury that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless the victim is convicted of a violent crime as

94

defined in Section 667.5 of the Penal Code, or of a crime that resulted in serious bodily injury, as defined in Section 243 of the Penal Code, to or death of another person, and the crime occurred at the time and location of the incident on which the claim is based. The board shall not consider a claim for compensation while charges are pending alleging that a victim subject to this paragraph committed such a crime. A victim or applicant subject to this paragraph may apply for compensation pursuant to this chapter at any time for any expense, but the award of that compensation shall not be granted until the charges are no longer pending against the victim. If the victim is deceased, charges shall not be considered pending against the victim for the purposes of this paragraph.

(2) For a claim based on a victim's death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless there is clear and convincing evidence that the deceased victim committed a crime during which the deceased victim personally inflicted serious bodily injury, as defined in Section 243 of the Penal Code, on another person or personally killed another person at the time and location of the incident on which the claim is based.

(d) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, or has been discharged from postrelease community supervision or mandatory supervision, if any, for that violent crime. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

94

**AB 160** — 20 —

(e) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 3. Section 13956 is added to the Government Code, to read:

13956. Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a) An application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1) Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A) The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B) The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C) The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2) If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

**AB 160**

(A) The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B) A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim delayed reporting the qualifying crime.

(2) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental

health records, or that the victim has obtained a permanent restraining order.

(3) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(4) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A Law Enforcement Agency Endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(5) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv)  A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v)  A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi)  A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii)  Other behavior by the victim consistent with sexual assault.

(C)  For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D)  For purposes of this subdivision, the sexual assault may have been committed off base.

(E)  For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i)  An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii)  A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii)  A contractor or agent of a private military or private security company.

(iv)  A member of the California National Guard.

(F)  For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c)  (1)  Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been released from a correctional institution. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2)  A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

94

**AB 160**                    — 24 —

(d)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

 SEC. 3.5.  Section 13956 is added to the Government Code, to read:

 13956.  Notwithstanding Section 13955, a person shall not be eligible for compensation under the following conditions:

(a)  Except as otherwise provided in this subdivision and in subdivision (c), an application may be denied, in whole or in part, if the board finds that denial is appropriate because of the nature of the victim's or other applicant's involvement in the events leading to the crime, or the involvement of the person whose injury or death gives rise to the application.

(1)  Factors that may be considered in determining whether the victim or derivative victim was involved in the events leading to the qualifying crime include, but are not limited to:

(A)  The victim or derivative victim initiated the qualifying crime, or provoked or aggravated the suspect into initiating the qualifying crime.

(B)  The qualifying crime was a reasonably foreseeable consequence of the conduct of the victim or derivative victim.

(C)  The victim or derivative victim was committing a crime that could be charged as a felony and reasonably lead to the victim being victimized. However, committing a crime shall not be considered involvement if the victim's injury or death occurred as a direct result of a crime committed in violation of Section 261, 273.5, or former Section 262 of, or for a crime of unlawful sexual intercourse with a minor in violation of subdivision (d) of Section 261.5 of, the Penal Code.

(2)  If the victim is determined to have been involved in the events leading to the qualifying crime, factors that may be considered to mitigate or overcome involvement include, but are not limited to:

(A)  The victim's injuries were significantly more serious than reasonably could have been expected based on the victim's level of involvement.

(B)  A third party interfered in a manner not reasonably foreseeable by the victim or derivative victim.

94

　　　　　　　　**AB 160**

(C) The board shall consider the victim's age, physical condition, and psychological state, as well as any compelling health and safety concerns, in determining whether the application should be denied pursuant to this section. The application of a derivative victim of domestic violence under 18 years of age or derivative victim of trafficking under 18 years of age shall not be denied on the basis of the denial of the victim's application under this subdivision.

(3) Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (2) of subdivision (c), for a claim based on a victim's death as a result of a crime, the board shall not deny the application, in whole or in part, based on the deceased victim's involvement in the crime that gave rise to the claim.

(b) (1) An application shall be denied if the board finds that the victim or, if compensation is sought by, or on behalf of, a derivative victim, either the victim or derivative victim failed to cooperate reasonably with a law enforcement agency in the apprehension and conviction of a criminal committing the crime. In determining whether cooperation has been reasonable, the board shall consider the victim's or derivative victim's age, physical condition, and psychological state, cultural or linguistic barriers, any compelling health and safety concerns, including, but not limited to, a reasonable fear of retaliation or harm that would jeopardize the well-being of the victim or the victim's family or the derivative victim or the derivative victim's family, and giving due consideration to the degree of cooperation of which the victim or derivative victim is capable in light of the presence of any of these factors. A victim shall not be determined to have failed to cooperate based on the victim's conduct with law enforcement at the scene of the crime. Lack of cooperation shall also not be found solely because a victim delayed reporting the qualifying crime.

(2) Notwithstanding paragraph (1), for a claim based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's failure to cooperate.

(3) Notwithstanding paragraph (1), for a claim based on a victim's death as a result of a crime, the board shall not deny the application based on a victim's or derivative victim's failure to cooperate.

94

(4) An application for a claim based on domestic violence shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on domestic violence relying upon evidence other than a police report to establish that a domestic violence crime has occurred. Factors evidencing that a domestic violence crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of domestic violence, mental health records, or that the victim has obtained a permanent restraining order.

(5) An application for a claim based on a sexual assault shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow it to consider and approve applications for assistance based on a sexual assault relying upon evidence other than a police report to establish that a sexual assault crime has occurred. Factors evidencing that a sexual assault crime has occurred may include, but are not limited to, medical records documenting injuries consistent with allegations of sexual assault, mental health records, or that the victim received a sexual assault examination.

(6) An application for a claim based on human trafficking as defined in Section 236.1 of the Penal Code shall not be denied solely because a police report was not made by the victim. The board shall adopt guidelines that allow the board to consider and approve applications for assistance based on human trafficking relying upon evidence other than a police report to establish that a human trafficking crime has occurred. That evidence may include any reliable corroborating information approved by the board, including, but not limited to, the following:

(A) A law enforcement agency endorsement issued pursuant to Section 236.5 of the Penal Code.

(B) A human trafficking caseworker, as identified in Section 1038.2 of the Evidence Code, has attested by affidavit that the individual was a victim of human trafficking.

(7) (A) An application for a claim by a military personnel victim based on a sexual assault by another military personnel shall not be denied solely because it was not reported to a superior officer or law enforcement at the time of the crime.

(B) Factors that the board shall consider for purposes of determining if a claim qualifies for compensation include, but are not limited to, the evidence of the following:

(i) Restricted or unrestricted reports to a military victim advocate, sexual assault response coordinator, chaplain, attorney, or other military personnel.

(ii) Medical or physical evidence consistent with sexual assault.

(iii) A written or oral report from military law enforcement or a civilian law enforcement agency concluding that a sexual assault crime was committed against the victim.

(iv) A letter or other written statement from a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, licensed therapist, or mental health counselor, stating that the victim is seeking services related to the allegation of sexual assault.

(v) A credible witness to whom the victim disclosed the details that a sexual assault crime occurred.

(vi) A restraining order from a military or civilian court against the perpetrator of the sexual assault.

(vii) Other behavior by the victim consistent with sexual assault.

(C) For purposes of this subdivision, the sexual assault at issue shall have occurred during military service, including deployment.

(D) For purposes of this subdivision, the sexual assault may have been committed off base.

(E) For purposes of this subdivision, a "perpetrator" means an individual who is any of the following at the time of the sexual assault:

(i) An active duty military personnel from the United States Army, Navy, Marine Corps, Air Force, or Coast Guard.

(ii) A civilian employee of any military branch specified in clause (i), military base, or military deployment.

(iii) A contractor or agent of a private military or private security company.

(iv) A member of the California National Guard.

(F) For purposes of this subdivision, "sexual assault" means an offense included in Section 261, 264.1, 286, 287, formerly 288a, or Section 289 of the Penal Code, as of January 1, 2015.

(c) Notwithstanding any provision of statute, administrative rule, local ordinance, or other law, for applications based on a victim's serious bodily injury or death that resulted from a law enforcement officer's use of force, if the board receives a form of

documentation that describes or demonstrates that a person suffered serious bodily injury or death as a result of a law enforcement officer's use of force, the board shall accept this as sufficient evidence to establish that such use of force constitutes a crime and that the person who suffered serious bodily injury or death as a result of a law enforcement officer's use of force is a victim, solely for the purposes of eligibility for compensation under this chapter. Such a form of documentation may include, but is not limited to, medical records documenting the victim's injury, mental health records, a written statement from a victim services provider, a death certificate, or evidence that the qualifying crime was reported under Section 12525.2 to the Department of Justice as an incident in which the use of force by a law enforcement officer against a civilian resulted in serious bodily injury or death.

(1) For a claim based on a victim's serious bodily injury that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless the victim is convicted of a violent crime as defined in Section 667.5 of the Penal Code, or of a crime that resulted in serious bodily injury, as defined in Section 243 of the Penal Code, to or death of another person, and the crime occurred at the time and location of the incident on which the claim is based. The board shall not consider a claim for compensation while charges are pending alleging that a victim subject to this paragraph committed such a crime. A victim or applicant subject to this paragraph may apply for compensation pursuant to this chapter at any time for any expense, but the award of that compensation shall not be granted until the charges are no longer pending against the victim. If the victim is deceased, charges shall not be considered pending against the victim for the purposes of this paragraph.

(2) For a claim based on a victim's death that resulted from a law enforcement officer's use of force, the board shall not deny the application based on the victim's or other applicant's involvement in the qualifying crime that gave rise to the claim unless there is clear and convincing evidence that the deceased victim committed a crime during which the deceased victim personally inflicted serious bodily injury, as defined in Section 243 of the Penal Code, on another person or personally killed

94

**AB 160**

another person at the time and location of the incident on which the claim is based.

(d) (1) Notwithstanding Section 13955, a person who is convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code shall not be granted compensation until that person has been released from a correctional institution. Compensation shall not be granted to an applicant pursuant to this chapter during any period of time the applicant is held in a correctional institution or while an applicant is required to register as a sex offender pursuant to Section 290 of the Penal Code.

(2) A person who has been convicted of a violent felony listed in subdivision (c) of Section 667.5 of the Penal Code may apply for compensation pursuant to this chapter at any time, but the award of that compensation may not be considered until the applicant meets the requirements for compensation set forth in paragraph (1).

(e) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 4. Section 13957 of the Government Code is amended to read:

13957. (a) The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1) Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2) Subject to the limitations set forth in Section 13957.2, reimburse the amount of outpatient psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the

94

**AB 160** — 30 —

victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed ten thousand dollars ($10,000):

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 in a total amount not to exceed ten thousand dollars ($10,000) for not more than two derivative victims.

(B)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed five thousand dollars ($5,000):

(i)  A derivative victim not eligible for reimbursement pursuant to subparagraph (A), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(ii)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(C)  The board may reimburse a victim or derivative victim for outpatient mental health counseling in excess of that authorized by subparagraph (A) or (B) or for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(D) Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

94

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in California to provide those services, or who is properly supervised by a person who is licensed in California to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3)  Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4)  Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5)  Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A)  Home security device or system.

(B)  Replacing or increasing the number of locks.

(6)  Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed three thousand four hundred and eighteen dollars ($3,418) to a victim for expenses incurred in relocating, if the expenses are

determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed three thousand four hundred and eighteen dollars ($3,418). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than three thousand four hundred and eighteen dollars ($3,418) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

94

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A) The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B) The funeral and burial expenses incurred as a direct result of the crime, not to exceed twelve thousand eight hundred and eighteen dollars ($12,818). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twelve thousand eight hundred and eighteen dollars ($12,818).

(9) When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10) When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11) An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

**AB 160** — 34 —

(b)  The total award to or on behalf of each victim or derivative victim may not exceed thirty-five thousand dollars ($35,000), except that this award may be increased to an amount not exceeding seventy thousand dollars ($70,000) if federal funds for that increase are available.

(c)  (1)  This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)  The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 4.5.  Section 13957 of the Government Code is amended to read:

13957.  (a)  The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of outpatient psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed ten thousand dollars ($10,000):

94

(i)  A victim.

(ii)  A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii)  A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 in a total amount not to exceed ten thousand dollars ($10,000) for not more than two derivative victims.

(B)  The following persons may be reimbursed for the expense of their outpatient mental health counseling in an amount not to exceed five thousand dollars ($5,000):

(i)  A derivative victim not eligible for reimbursement pursuant to subparagraph (A), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(ii)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(C)  The board may reimburse a victim or derivative victim for outpatient mental health counseling in excess of that authorized by subparagraph (A) or (B) or for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(D)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in the state in which the victim lives to provide those services, or who is properly supervised by a person who is licensed in the state in which the victim lives to

provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed three thousand four hundred and eighteen dollars ($3,418) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed three thousand four hundred and eighteen dollars ($3,418). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than three thousand four hundred and eighteen dollars ($3,418) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A) The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B) The funeral and burial expenses incurred as a direct result of the crime, not to exceed twelve thousand eight hundred and eighteen dollars ($12,818). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twelve thousand eight hundred and eighteen dollars ($12,818).

(9) When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10) When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11) An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b) The total award to or on behalf of each victim or derivative victim may not exceed thirty-five thousand dollars ($35,000), except that this award may be increased to an amount not exceeding seventy thousand dollars ($70,000) if federal funds for that increase are available.

(c) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support

94

ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 5. Section 13957 is added to the Government Code, to read:

13957. (a) The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1) Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2) Subject to the limitations set forth in Section 13957.2, reimburse the amount of psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A) The following persons may be reimbursed for the expense of their outpatient mental health counseling:

(i) A victim.

(ii) A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii) A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 for not more than two derivative victims.

(iv)  A derivative victim not eligible for reimbursement pursuant to clause (iii), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(v)  A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(B)  The board may reimburse a victim or derivative victim for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(C)  Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i)  A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

(ii)  A person who is licensed in California to provide those services, or who is properly supervised by a person who is licensed in California to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3)  Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment

94

of these expenses will not decrease the funds available for payment of loss of income or support.

(4)  Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5)  Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A)  Home security device or system.

(B)  Replacing or increasing the number of locks.

(6)  Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7)  (A) Authorize a cash payment or reimbursement not to exceed seven thousand five hundred dollars ($7,500) to a victim for expenses incurred in relocating, if expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B)  The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed seven thousand five hundred dollars ($7,500). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C)  The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i)  The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii)  The crime does not involve the same offender.

(D)  When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E)  Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than seven thousand five hundred dollars ($7,500) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F)  If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8)  When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twenty thousand dollars ($20,000). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twenty thousand dollars ($20,000).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and

nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b)  The total award to or on behalf of each victim or derivative victim shall not exceed one hundred thousand dollars ($100,000).

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 5.5.  Section 13957 is added to the Government Code, to read:

13957.  (a)  The board may grant for pecuniary loss, when the board determines it will best aid the person seeking compensation, as follows:

(1)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of medical or medical-related expenses incurred by the victim for services that were provided by a licensed medical provider, including, but not limited to, eyeglasses, hearing aids, dentures, or any prosthetic device taken, lost, or destroyed during the commission of the crime, or the use of which became necessary as a direct result of the crime.

(2)  Subject to the limitations set forth in Section 13957.2, reimburse the amount of psychiatric, psychological, or other mental health counseling-related expenses incurred by the victim or derivative victim, including peer counseling services provided by

a rape crisis center as defined by Section 13837 of the Penal Code, and including family psychiatric, psychological, or mental health counseling for the successful treatment of the victim provided to family members of the victim in the presence of the victim, whether or not the family member relationship existed at the time of the crime, that became necessary as a direct result of the crime, subject to the following conditions:

(A) The following persons may be reimbursed for the expense of their outpatient mental health counseling:

(i) A victim.

(ii) A derivative victim who is the surviving parent, grandparent, sibling, child, grandchild, spouse, or fiance of a victim of a crime that directly resulted in the death of the victim.

(iii) A derivative victim, as described in paragraphs (1) to (4), inclusive, of subdivision (c) of Section 13955, who is the primary caretaker of a minor victim whose claim is not denied or reduced pursuant to Section 13956 for not more than two derivative victims.

(iv) A derivative victim not eligible for reimbursement pursuant to clause (iii), provided that mental health counseling of a derivative victim described in paragraph (5) of subdivision (c) of Section 13955, shall be reimbursed only if that counseling is necessary for the treatment of the victim.

(v) A minor who suffers emotional injury as a direct result of witnessing a violent crime and who is not eligible for reimbursement of the costs of outpatient mental health counseling under any other provision of this chapter. To be eligible for reimbursement under this clause, the minor must have been in close proximity to the victim when the minor witnessed the crime.

(B) The board may reimburse a victim or derivative victim for inpatient psychiatric, psychological, or other mental health counseling if the claim is based on dire or exceptional circumstances that require more extensive treatment, as approved by the board.

(C) Expenses for psychiatric, psychological, or other mental health counseling-related services may be reimbursed only if the services were provided by either of the following individuals:

(i) A person who would have been authorized to provide those services pursuant to former Article 1 (commencing with Section 13959) as it read on January 1, 2002.

94

**AB 160**

(ii) A person who is licensed in the state in which the victim lives to provide those services, or who is properly supervised by a person who is licensed in the state in which the victim lives to provide those services, subject to the board's approval and subject to the limitations and restrictions the board may impose.

(3) Subject to the limitations set forth in Section 13957.5, authorize compensation equal to the loss of income or loss of support, or both, that a victim or derivative victim incurs as a direct result of the victim's or derivative victim's injury or the victim's death. If the qualifying crime is a violation of Section 236.1 of the Penal Code, the board may authorize compensation equal to loss of income or support that a victim incurs as a direct result of the victim's deprivation of liberty during the crime, not to exceed the amount set forth in Section 13957.5. If the victim or derivative victim requests that the board give priority to reimbursement of loss of income or support, the board may not pay medical expenses, or mental health counseling expenses, except upon the request of the victim or derivative victim or after determining that payment of these expenses will not decrease the funds available for payment of loss of income or support.

(4) Authorize a cash payment to or on behalf of the victim for job retraining or similar employment-oriented services.

(5) Reimburse the expense of installing or increasing residential security, not to exceed one thousand dollars ($1,000). Installing or increasing residential security may include, but need not be limited to, both of the following:

(A) Home security device or system.

(B) Replacing or increasing the number of locks.

(6) Reimburse the expense of renovating or retrofitting a victim's residence, or the expense of modifying or purchasing a vehicle, to make the residence or the vehicle accessible or operational by a victim upon verification that the expense is medically necessary for a victim who is permanently disabled as a direct result of the crime, whether the disability is partial or total.

(7) (A) Authorize a cash payment or reimbursement not to exceed seven thousand five hundred dollars ($7,500) to a victim for expenses incurred in relocating, if the expenses are determined by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim. For purposes of this

paragraph, "expenses incurred in relocating" may include the costs of temporary housing for any pets belonging to the victim upon immediate relocation.

(B) The cash payment or reimbursement made under this paragraph shall only be awarded to one claimant per crime giving rise to the relocation. The board may authorize more than one relocation per crime if necessary for the personal safety or emotional well-being of the claimant. However, the total cash payment or reimbursement for all relocations due to the same crime shall not exceed seven thousand five hundred dollars ($7,500). For purposes of this paragraph, a claimant is the crime victim, or, if the victim is deceased, a person who resided with the deceased at the time of the crime.

(C) The board may, under compelling circumstances, award a second cash payment or reimbursement to a victim for another crime if both of the following conditions are met:

(i) The crime occurs more than three years from the date of the crime giving rise to the initial relocation cash payment or reimbursement.

(ii) The crime does not involve the same offender.

(D) When a relocation payment or reimbursement is provided to a victim of sexual assault or domestic violence and the identity of the offender is known to the victim, the victim shall agree not to inform the offender of the location of the victim's new residence and not to allow the offender on the premises at any time, or shall agree to seek a restraining order against the offender. A victim may be required to repay the relocation payment or reimbursement to the board if the victim violates the terms set forth in this paragraph.

(E) Notwithstanding subparagraphs (A) and (B), the board may increase the cash payment or reimbursement for expenses incurred in relocating to an amount greater than seven thousand five hundred dollars ($7,500) if the board finds this amount is appropriate due to the unusual, dire, or exceptional circumstances of a particular claim.

(F) If a security deposit, pet deposit, or both is required for relocation, the board shall be named as the recipient and receive the funds upon expiration of the victim's rental agreement.

(8) When a victim dies as a result of a crime, the board may reimburse any individual who voluntarily, and without anticipation

of personal gain, pays or assumes the obligation to pay any of the following expenses:

(A)  The medical expenses incurred as a direct result of the crime in an amount not to exceed the rates or limitations established by the board.

(B)  The funeral and burial expenses incurred as a direct result of the crime, not to exceed twenty thousand dollars ($20,000). The board shall not create or comply with a regulation or policy that mandates a lower maximum potential amount of an award pursuant to this subparagraph for less than twenty thousand dollars ($20,000).

(9)  When the crime occurs in a residence or inside a vehicle, the board may reimburse any individual who voluntarily, and without anticipation of personal gain, pays or assumes the obligation to pay the reasonable costs to clean the scene of the crime in an amount not to exceed one thousand seven hundred and nine dollars ($1,709). Services reimbursed pursuant to this subdivision shall be performed by persons registered with the State Department of Public Health as trauma scene waste practitioners in accordance with Chapter 9.5 (commencing with Section 118321) of Part 14 of Division 104 of the Health and Safety Code.

(10)  When the crime is a violation of Section 600.2 or 600.5 of the Penal Code, the board may reimburse the expense of veterinary services, replacement costs, or other reasonable expenses, as ordered by the court pursuant to Section 600.2 or 600.5 of the Penal Code, in an amount not to exceed ten thousand dollars ($10,000).

(11)  An award of compensation pursuant to paragraph (5) of subdivision (f) of Section 13955 shall be limited to compensation to provide mental health counseling and shall not limit the eligibility of a victim for an award that the victim may be otherwise entitled to receive under this part. A derivative victim shall not be eligible for compensation under this provision.

(b)  The total award to or on behalf of each victim or derivative victim shall not exceed one hundred thousand dollars ($100,000).

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 6.   Section 13957.5 of the Government Code is amended to read:

13957.5.   (a)  In authorizing compensation for loss of income and support pursuant to paragraph (3) of subdivision (a) of Section 13957, the board may take any of the following actions:

(1)  Compensate the victim for loss of income directly resulting from the injury, except that loss of income may not be paid by the board for more than five years following the crime, unless the victim is disabled as defined in Section 416(i) of Title 42 of the United States Code, as a direct result of the injury.

(2)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The derivative victim is the parent or legal guardian of a victim, who at the time of the crime was under 18 years of age and is hospitalized as a direct result of the crime.

(B)  The minor victim's treating physician certifies in writing that the presence of the victim's parent or legal guardian at the hospital is necessary for the treatment of the victim.

(C)  Reimbursement for loss of income under this paragraph may not exceed the total value of the income that would have been earned by the adult derivative victim during a 30-day period.

(3)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The derivative victim is the parent or legal guardian of a victim who at the time of the crime was under 18 years of age.

(B)  The victim died as a direct result of the crime.

(C)  The board shall pay for loss of income under this paragraph for not more than 30 calendar days from the date of the victim's death.

(4)  Compensate a derivative victim who was legally dependent on the victim at the time of the crime for the loss of support incurred by that person as a direct result of the crime, subject to both of the following:

(A)  Loss of support shall be paid by the board for income lost by an adult for a period up to, but not more than, five years following the date of the crime.

(B)  Loss of support shall not be paid by the board on behalf of a minor for a period beyond the child's attaining 18 years of age.

(5)  (A)  If the qualifying crime is a violation of Section 236.1 of the Penal Code, and the victim has not been and will not be

94

compensated from any other source, compensate the victim for loss of income or support directly resulting from the deprivation of liberty during the crime based upon the value of the victim's labor as guaranteed under California law at the time that the services were performed for the number of hours that the services were performed, for up to 40 hours per week.

(B) On or before July 1, 2020, the board shall adopt guidelines that allow it to rely on evidence other than official employment documentation in considering and approving an application for that compensation. The evidence may include any reliable corroborating information approved by the board, including, but not limited to, a statement under penalty of perjury from the applicant, a human trafficking caseworker as defined in Section 1038.2 of the Evidence Code, a licensed attorney, or a witness to the circumstances of the crime.

(C) Compensation for loss of income paid by the board pursuant to this paragraph shall not exceed ten thousand dollars ($10,000) per year that the services were performed, for a maximum of two years.

(D) If the victim is a minor at the time of application, the board shall distribute payment under this paragraph when the minor reaches 18 years of age.

(b) The total amount payable to all derivative victims pursuant to this section as the result of one crime shall not exceed seventy thousand dollars ($70,000).

(c) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 7. Section 13957.5 is added to the Government Code, to read:

13957.5. (a) In authorizing compensation for loss of income and support pursuant to paragraph (3) of subdivision (a) of Section 13957, the board may take any of the following actions:

(1)  Subject to paragraph (7), and calculated as provided in paragraph (8), compensate the victim for loss of income directly resulting from the injury, except that loss of income shall not be paid by the board for more than five years following the crime, unless the victim is disabled as defined in Section 416(i) of Title 42 of the United States Code, as a direct result of the injury.

(2)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The derivative victim is the parent, legal guardian, or spouse of the victim, or if no parent, legal guardian, or spouse of the victim is present at the hospital, is another derivative victim, who is present at the hospital during the period the victim is hospitalized as a direct result of the crime.

(B)  The victim's treating physician certifies in writing that the presence of the derivative victim at the hospital is reasonably necessary for the treatment of the victim, or is reasonably necessary for the victim's psychological well-being.

(C)  Reimbursement for loss of income under this paragraph shall not exceed the total value of the income that would have been earned, calculated as described in paragraph (8), by the adult derivative victim during a 30-day period.

(3)  Compensate an adult derivative victim for loss of income, subject to all of the following:

(A)  The victim died as a direct result of the crime.

(B)  (i)  If the derivative victim is the spouse of the victim, is the parent of the victim, was living in the household of the victim at the time of the crime, was the legal guardian of the victim at the time of the crime, or was the legal guardian of the victim when the victim was under 18 years of age, the board shall pay for loss of income under this paragraph, calculated as provided by paragraph (8), for not more than 30 calendar days occurring within 90 calendar days of the victim's death.

(ii)  For a derivative victim not included in clause (i), the board shall pay for loss of income under this paragraph, calculated as provided by paragraph (8), for not more than seven calendar days occurring within 90 calendar days of the victim's death.

(4)  Compensate a derivative victim who was legally dependent on the victim at the time of the crime for the loss of support incurred by that person as a direct result of the crime, calculated as provided in paragraph (8), subject to both of the following:

94

(A)  Loss of support shall be paid by the board for income lost by an adult for a period up to, but not more than, five years following the date of the crime.

(B)  Loss of support shall not be paid by the board on behalf of a minor for a period beyond the child's attaining 18 years of age.

(5)  (A)   If the qualifying crime is a violation of Section 236.1 of the Penal Code, and the victim has not been and will not be compensated from any other source, compensate the victim for loss of income or support directly resulting from the deprivation of liberty during the crime based upon the value of the victim's labor as guaranteed under California law at the time that the services were performed for the number of hours that the services were performed, for up to 40 hours per week.

(B)  On or before July 1, 2020, the board shall adopt guidelines that allow it to rely on evidence other than official employment documentation in considering and approving an application for that compensation. The evidence may include any reliable corroborating information approved by the board, including, but not limited to, a statement under penalty of perjury from the applicant, a human trafficking caseworker as defined in Section 1038.2 of the Evidence Code, a licensed attorney, or a witness to the circumstances of the crime.

(C)  Compensation for loss of income paid by the board pursuant to this paragraph shall not exceed ten thousand dollars ($10,000) per year that the services were performed, for a maximum of two years.

(D)  If the victim is a minor at the time of application, the board shall distribute payment under this paragraph when the minor reaches 18 years of age.

(6)  If the victim is a minor at the time of the crime, the victim shall be eligible for future loss of income due to disability from future employment directly resulting from the injury at a rate an employee would earn if employed for 35 hours per week at the minimum wage required at the time of the crime by Section 1182.12 of the Labor Code for a maximum of one year.

(7)  (A)  A victim or derivative victim who is otherwise eligible for loss of income under paragraph (1), (2), or (3) shall be eligible for loss of income if they were employed or receiving earned income benefits at the time of the crime. If an otherwise eligible adult victim or derivative victim was not employed or receiving

**AB 160** — 52 —

earned income benefits at the time of the crime, they shall be eligible for loss of income under paragraph (1), (2), or (3) if the victim or derivative victim was fully or partially employed or receiving income benefits for a total of at least two weeks in the 12 months preceding the qualifying crime, or had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

(B) A derivative victim who is otherwise eligible for loss of support under paragraph (4) shall be eligible for loss of support if the victim was employed or receiving earned income benefits at the time of the crime. If the victim was not employed or receiving earned income benefits at the time of the crime, the derivative victim shall be eligible if the victim was fully or partially employed or receiving earned income benefits for a total of at least two weeks in the 12 months preceding the qualifying crime, or if the victim had an offer of employment at the time of the crime and was unable to begin employment as a result of the crime.

(8) (A) Except as provided by subparagraph (B), loss of income or support under paragraph (1), (2), (3), or (4) shall be based on the actual loss the victim or derivative victim, as applicable, sustains or the wages the victim or derivative victim, as applicable, would have earned if employed for 35 hours per week at the minimum wage required by Section 1182.12 of the Labor Code during the applicable period, whichever is greater.

(B) For victims who are under 18 years of age at the time of the crime, loss of income under paragraph (1) shall be based upon the actual loss the victim sustains.

(b) By July 1, 2025, the board shall adopt new guidelines for accepting evidence that may be available to the victim or derivative victim in considering and approving a claim for loss of income or support under this section, which shall require the board to accept any form of reliable corroborating information approved by the board regarding the victim or derivative victim's income, including, but not limited to, all of the following:

(1) A statement from the employer.

(2) A pattern of deposits into a bank or credit union account of the victim or derivative victim.

(3) Pay stubs or copies of checks received as payment.

(4) A copy of a job offer letter from an employer.

(5) Income tax records.

94

(6)  Verification through a vendor, if the employer contracts with a vendor for employment verification.

(7)  Information related to eligibility or enrollment from any of the following:

(A)  The CalFresh program pursuant to Chapter 10 (commencing with Section 18900) of Part 6 of Division 9 of the Welfare and Institution Code.

(B)  The CalWORKs program.

(C)  The state's children's health insurance program under Title XXI of the federal Social Security Act (42 U.S.C. Sec. 1397aa et seq.).

(D)  The California Health Benefit Exchange established pursuant to Title 22 (commencing with Section 100500) of the Government Code.

(E)  The electronic service established in accordance with Section 435.949 of Title 42 of the Code of Federal Regulations.

(F)  Records from the Employment Development Department.

(c)  The total amount payable to all derivative victims pursuant to this section as the result of one crime shall not exceed one hundred thousand dollars ($100,000).

(d)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 8.   Section 13959 of the Government Code is amended to read:

13959.  (a)  The board shall grant a hearing to an applicant who contests a staff recommendation to deny compensation in whole or in part.

(b)  The board shall notify the applicant not less than 10 days prior to the date of the hearing. Notwithstanding Section 11123, if the appeal that the board is considering involves either a crime against a minor, a crime of sexual assault, or a crime of domestic violence, the board may exclude from the hearing all persons other than board members and members of its staff, the applicant for benefits, a minor applicant's parents or guardians, the applicant's representative, witnesses, and other persons of the applicant's choice to provide assistance to the applicant during the hearing. However, the board shall not exclude persons from the hearing if

94

the applicant or applicant's representative requests that the hearing be open to the public.

(c)  At the hearing, the person seeking compensation shall have the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Section 13955.

(d) Except as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, the board shall apply the law in effect as of the date an application was submitted.

(e)  (1)  The hearing shall be informal and need not be conducted according to the technical rules relating to evidence and witnesses. The board may rely on any relevant evidence if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule that might make improper the admission of the evidence over objection in a civil action. The board may rely on written reports prepared for the board, or other information received, from public agencies responsible for investigating the crime. If the applicant or the applicant's representative chooses not to appear at the hearing, the board may act solely upon the application for compensation, the staff's report, and other evidence that appears in the record.

(2)  The board shall allow a service animal to accompany and support a witness while testifying at a hearing.

(f)  Hearings shall be held in various locations with the frequency necessary to provide for the speedy adjudication of the appeals. If the applicant's presence is required at the hearing, the board shall schedule the applicant's hearing in as convenient a location as possible or conduct the hearing by telephone.

(g)  The board may delegate the hearing of appeals to hearing officers.

(h)  The decisions of the board shall be in writing within six months of the date the board received the appeal unless the board determines that there was insufficient information to make a decision. If the board determines that there was insufficient information to make a decision, the board shall notify the applicant in writing within six months of the date the board received the appeal. Copies of the decisions shall be delivered to the applicant or to the applicant's representative personally or sent to them by mail.

**AB 160**

(i) The board may order a reconsideration of all or part of a decision on written request of the applicant. The board shall not grant more than one request for reconsideration with respect to any one decision on an appeal for compensation. The board shall not consider any request for reconsideration filed with the board more than 30 calendar days after the personal delivery or 60 calendar days after the mailing of the original decision.

(j) The board may order a reconsideration of all or part of a decision on its own motion, at its discretion, at any time.

(k) Evidence submitted after the board has denied a request for reconsideration shall not be considered unless the board chooses to reconsider its decision on its own motion.

(*l*) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 9. Section 13959 is added to the Government Code, to read:

13959. (a) The board shall grant a hearing to an applicant who contests a staff recommendation to deny compensation in whole or in part.

(b) The board shall notify the applicant not less than 10 days prior to the date of the hearing. Notwithstanding Section 11123, if the appeal that the board is considering involves either a crime against a minor, a crime of sexual assault, or a crime of domestic violence, the board may exclude from the hearing all persons other than board members and members of its staff, the applicant for benefits, a minor applicant's parents or guardians, the applicant's representative, witnesses, and other persons of the applicant's choice to provide assistance to the applicant during the hearing. However, the board shall not exclude persons from the hearing if the applicant or applicant's representative requests that the hearing be open to the public.

(c)  At the hearing, the person seeking compensation shall have the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Section 13955.

(d) Except as otherwise provided by law, in making determinations of eligibility for compensation and in deciding upon the amount of compensation, the board shall apply the law in effect as of the date an application was submitted.

(e)  (1)  The hearing shall be informal and need not be conducted according to the technical rules relating to evidence and witnesses. The board may rely on any relevant evidence if it is the sort of evidence on which responsible persons are accustomed to rely on the conduct of serious affairs, regardless of the existence of a common law or statutory rule that might make improper the admission of the evidence over objection in a civil action. The board may rely on written reports prepared for the board, or other information received, from public agencies responsible for investigating the crime. If the applicant or the applicant's representative chooses not to appear at the hearing, the board may act solely upon the application for compensation, the staff's report, and other evidence that appears in the record.

(2)  The board shall allow a service animal to accompany and support a witness while testifying at a hearing.

(f)  Hearings shall be held in various locations with the frequency necessary to provide for the speedy adjudication of the appeals. If the applicant's presence is required at the hearing, the board shall schedule the applicant's hearing in as convenient a location as possible or conduct the hearing by telephone.

(g)  The board may delegate the hearing of appeals to hearing officers.

(h)  The decisions of the board shall be in writing within four months of the date the board received the appeal unless the board determines that there was insufficient information to make a decision. If the board determines that there was insufficient information to make a decision, the board shall notify the applicant in writing within four months of the date the board received the appeal. Copies of the decisions shall be delivered to the applicant or to the applicant's representative personally or sent to them by mail.

(i)  The board may order a reconsideration of all or part of a decision on written request of the applicant. The board shall not

　　　　　　　　**AB 160**

grant more than one request for reconsideration with respect to any one decision on an appeal for compensation. The board shall not consider any request for reconsideration filed with the board more than 365 calendar days after the personal delivery or the mailing of the original decision.

(j) The board may order a reconsideration of all or part of a decision on its own motion, at its discretion, at any time.

(k) Evidence submitted after the board has denied a request for reconsideration shall not be considered unless the board chooses to reconsider its decision on its own motion.

(*l*) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 10. Section 13962 of the Government Code is amended to read:

13962. (a) The board shall publicize through the board, law enforcement agencies, victim centers, hospitals, medical, mental health or other counseling service providers, and other public or private agencies, the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(b) It shall be the duty of every local law enforcement agency to inform crime victims of the provisions of this chapter, of the existence of victim centers, and in counties where no victim center exists, to provide application forms to victims who desire to seek compensation pursuant to this chapter. The board shall provide application forms and all other documents that local law enforcement agencies and victim centers may require to comply with this section. The board, in cooperation with victim centers, shall set standards to be followed by local law enforcement agencies for this purpose and may require them to file with the board a description of the procedures adopted by each agency to comply with the standards. The board shall conduct outreach to local law enforcement agencies about their duties under this section.

(c) Every local law enforcement agency shall annually provide to the board contact information for the Victims of Crime Liaison

Officer designated pursuant to Section 649.36 of Title 2 of the California Code of Regulations.

(d) The board shall annually make available to the Victims of Crime Liaison Officer at every local law enforcement agency one hour of training on victim compensation in California and materials to educate the officers and staff in their law enforcement agencies and publicize the program within their jurisdictions.

(e) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's membership in, association with, or affiliation with, a gang, or on the basis of the victim's or derivative victim's designation as a suspected gang member, associate, or affiliate in a shared gang database, as defined in Section 186.34 of the Penal Code.

(f) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's documentation or immigration status.

(g) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 11. Section 13962 is added to the Government Code, to read:

13962. (a) The board shall publicize through the board, law enforcement agencies, victim centers, hospitals, medical, mental health or other counseling service providers, and other public or private agencies, the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(b) It shall be the duty of every local law enforcement agency to inform crime victims of the provisions of this chapter, of the

**AB 160**

existence of victim centers, and of the existence of trauma recovery centers as described under Section 13963.1, and to provide application forms to victims who desire to seek compensation pursuant to this chapter. The board shall provide application forms and all other documents that local law enforcement agencies and victim centers may require to comply with this section. The board, in cooperation with victim centers, shall set standards to be followed by local law enforcement agencies for this purpose and may require them to file with the board a description of the procedures adopted by each agency to comply with the standards. The board shall conduct outreach to local law enforcement agencies about their duties under this section.

(c) Every local law enforcement agency shall annually provide to the board contact information for the Victims of Crime Liaison Officer designated pursuant to Section 649.36 of Title 2 of the California Code of Regulations.

(d) The board shall annually make available to the Victims of Crime Liaison Officer at every local law enforcement agency one hour of training on victim compensation in California and materials to educate the officers and staff in their law enforcement agencies and publicize the program within their jurisdictions.

(e) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's membership in, association with, or affiliation with, a gang, or on the basis of the victim's or derivative victim's designation as a suspected gang member, associate, or affiliate in a shared gang database, as defined in Section 186.34 of the Penal Code.

(f) The board's outreach pursuant to subdivision (a) and training pursuant to subdivision (d) shall affirm that neither access to information about victim compensation, nor an application for compensation, shall be denied on the basis of the victim's or derivative victim's documentation or immigration status.

(g) (1) The board shall provide every general acute care hospital in the state that operates an emergency department with both of the following:

(A) A poster developed by the board describing the existence of the program established pursuant to this chapter, including the procedures for obtaining compensation under the program.

(B) Application forms to distribute to victims, derivative victims, and their family members who desire to seek compensation pursuant to this chapter.

(2) It shall be the duty of every general acute care hospital to display a poster provided to the hospital pursuant to subparagraph (A) of paragraph (1) prominently in the lobby or waiting area of its emergency department.

(3) At the request of the hospital, the board shall provide the documents described in paragraph (1) in any of the languages listed in paragraph (4) of subdivision (d) of Section 13952.

(h) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 12.   Section 68085.1 of the Government Code is amended to read:

68085.1.   (a)  This section applies to all fees and fines that are collected on or after January 1, 2006, under all of the following:

(1) Sections 177.5, 209, 403.060, 491.150, 631.3, 683.150, 704.750, 708.160, 724.100, 1161.2, 1218, and 1993.2 of, subdivision (g) of Section 411.20 and subdivisions (c) and (g) of Section 411.21 of, subdivision (b) of Section 631 of, and Chapter 5.5 (commencing with Section 116.110) of Title 1 of Part 1 of, the Code of Civil Procedure.

(2) Section 3112 of the Family Code.

(3) Section 31622 of the Food and Agricultural Code.

(4) Subdivision (d) of Section 6103.5, Sections 68086 and 68086.1, Sections 68926.1 and 69953.5, and Chapter 5.8 (commencing with Section 70600).

(5) Section 103470 of the Health and Safety Code.

(6) Subdivisions (b) and (c) of Section 166 of the Penal Code.

(7) Sections 1835, 1851.5, 7660, and 13201 of the Probate Code.

(8) Sections 14607.6 and 16373 of the Vehicle Code.

(9) Section 71386 of this code, Sections 304, 7851.5, and 9002 of the Family Code, and Section 1513.1 of the Probate Code, if the reimbursement is for expenses incurred by the court.

94

**AB 160**

(10)  Section 3153 of the Family Code, if the amount is paid to the court for the cost of counsel appointed by the court to represent a child.

(b)  On and after January 1, 2006, each superior court shall deposit all fees and fines listed in subdivision (a), as soon as practicable after collection and on a regular basis, into a bank account established for this purpose by the Administrative Office of the Courts. Upon direction of the Administrative Office of the Courts, the county shall deposit any money it collects under the sections listed in subdivision (a) as soon as practicable after collection and on a regular basis into the bank account established for this purpose and specified by the Administrative Office of the Courts. The deposits shall be made as required by rules adopted by, and financial policies and procedures authorized by, the Judicial Council under subdivision (a) of Section 77206. Within 15 days after the end of the month in which the fees and fines are collected, each court, and each county that collects any fines or fees under subdivision (a), shall provide the Administrative Office of the Courts with a report of the fees by categories as specified by the Administrative Office of the Courts. The Administrative Office of the Courts and any court may agree upon a time period greater than 15 days, but in no case more than 30 days after the end of the month in which the fees and fines are collected. The fees and fines listed in subdivision (a) shall be distributed as provided in this section.

(c)  (1)  Within 45 calendar days after the end of the month in which the fees and fines listed in subdivision (a) are collected, the Administrative Office of the Courts shall make the following distributions:

(A)  To the small claims advisory services, as described in subdivision (f) of Section 116.230 of the Code of Civil Procedure.

(B)  To dispute resolution programs, as described in subdivision (b) of Section 68085.3 and subdivision (b) of Section 68085.4.

(C)  To the county law library funds, as described in Sections 116.230 and 116.760 of the Code of Civil Procedure, subdivision (b) of Section 68085.3, subdivision (b) of Section 68085.4, and Section 70621 of this code, and Section 14607.6 of the Vehicle Code.

94

(D) To the courthouse construction funds in the Counties of Riverside, San Bernardino, and San Francisco, as described in Sections 70622, 70624, and 70625.

(E) Commencing July 1, 2011, to the Trial Court Trust Fund, as described in subdivision (e) of Section 70626, to be used by the Judicial Council to implement and administer the civil representation pilot program under Section 68651.

(2) If any distribution under this subdivision is delinquent, the Administrative Office of the Courts shall add a penalty to the distribution as specified in subdivision (i).

(d) Within 45 calendar days after the end of the month in which the fees and fines listed in subdivision (a) are collected, the amounts remaining after the distributions in subdivision (c) shall be transmitted to the State Treasury for deposit in the Trial Court Trust Fund and other funds as required by law. This remittance shall be accompanied by a remittance advice identifying the collection month and the appropriate account in the Trial Court Trust Fund or other fund to which it is to be deposited. Upon the receipt of any delinquent payment required under this subdivision, the Controller shall calculate a penalty as provided under subdivision (i).

(e) From the money transmitted to the State Treasury under subdivision (d), the Controller shall make deposits as follows:

(1) Into the Judges' Retirement Fund and the Equal Access Fund, as described in subdivision (c) of Section 68085.3 and subdivision (c) of Section 68085.4.

(2) Into the Health Statistics Special Fund, as described in subdivision (b) of Section 70670 of this code and Section 103730 of the Health and Safety Code.

(3) Into the Family Law Trust Fund, as described in Section 70674.

(4) Into the State Court Facilities Construction Fund, as described in subdivision (c) of Section 68085.3, subdivision (c) of Section 68085.4, subdivision (b) of Section 70657.5, and subdivision (e) of Section 70617.

(5) The remainder of the money shall be deposited into the Trial Court Trust Fund.

(f) The amounts collected by each superior court under Section 116.232, subdivision (g) of Section 411.20, and subdivision (g) of Section 411.21 of the Code of Civil Procedure, Sections 304, 3112,

94

**AB 160**

3153, 7851.5, and 9002 of the Family Code, subdivision (d) of Section 6103.5, and Sections 68926.1, 69953.5, 70627, 70631, 70640, 70661, 70678, and 71386 of this code, and Sections 1513.1, 1835, and 1851.5 of the Probate Code shall be added to the monthly apportionment for that court under subdivision (a) of Section 68085.

(g) If any of the fees provided in subdivision (a) are partially waived by court order or otherwise reduced, and the fee is to be divided between the Trial Court Trust Fund and any other fund or account, the amount of the reduction shall be deducted from the amount to be distributed to each fund in the same proportion as the amount of each distribution bears to the total amount of the fee. If the fee is paid by installment payments, the amount distributed to each fund or account from each installment shall bear the same proportion to the installment payment as the full distribution to that fund or account does to the full fee. If a court collects a fee that was incurred before January 1, 2006, under a provision that was the predecessor to one of the paragraphs contained in subdivision (a), the fee may be deposited as if it were collected under the paragraph of subdivision (a) that corresponds to the predecessor of that paragraph and distributed in prorated amounts to each fund or account to which the fee in subdivision (a) must be distributed.

(h) Except as provided in Sections 470.5 and 6322.1 of the Business and Professions Code, and Sections 70622, 70624, and 70625 of this code, an agency shall not take action to change the amounts allocated to any of the funds described in subdivision (c), (d), or (e).

(i) The amount of the penalty on any delinquent payment under subdivision (c) or (d) shall be calculated by multiplying the amount of the delinquent payment at a daily rate equivalent to $1\frac{1}{2}$ percent per month for the number of days the payment is delinquent. The penalty shall be paid from the Trial Court Trust Fund. Penalties on delinquent payments under subdivision (d) shall be calculated only on the amounts to be distributed to the Trial Court Trust Fund and the State Court Facilities Construction Fund, and each penalty shall be distributed proportionately to the funds to which the delinquent payment was to be distributed.

(j) If a delinquent payment under subdivision (c) or (d) results from a delinquency by a superior court under subdivision (b), the

94

court shall reimburse the Trial Court Trust Fund for the amount of the penalty. Notwithstanding Section 77009, any penalty on a delinquent payment that a court is required to reimburse pursuant to this section shall be paid from the court operations fund for that court. The penalty shall be paid by the court to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated. If the penalty is not paid within the specified time, the Administrative Office of the Courts may reduce the amount of a subsequent monthly allocation to the court by the amount of the penalty on the delinquent payment.

(k)  If a delinquent payment under subdivision (c) or (d) results from a delinquency by a county in transmitting fees and fines listed in subdivision (a) to the bank account established for this purpose, as described in subdivision (b), the county shall reimburse the Trial Court Trust Fund for the amount of the penalty. The penalty shall be paid by the county to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated.

SEC. 13.   Section 290.008 of the Penal Code is amended to read:

290.008.   (a)  Any person who, on or after January 1, 1986, is discharged or paroled from the Department of Corrections and Rehabilitation to the custody of which they were committed after having been adjudicated a ward of the juvenile court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of any offense described in subdivision (c) shall register in accordance with the Act unless the duty to register is terminated pursuant to Section 290.5 or as otherwise provided by law.

(b)  Any person who is discharged or paroled from a facility in another state that is equivalent to the Division of Juvenile Justice, to the custody of which they were committed because of an offense which, if committed or attempted in this state, would have been punishable as one or more of the offenses described in subdivision (c) shall register in accordance with the Act.

(c)  Any person described in this section who committed an offense in violation of any of the following provisions shall be required to register pursuant to the Act:

(1)  Assault with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 under Section 220.

94

**AB 160**

(2)  Any offense defined in paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, Section 264.1, 266c, or 267, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 286, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 287, Section 288 or 288.5, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, former Section 288a, subdivision (a) of Section 289, or Section 647.6.

(3)  A violation of Section 207 or 209 committed with the intent to violate Section 261, 286, 287, 288, or 289, or former Section 288a.

(d)  (1)  A tier one juvenile offender is subject to registration for a minimum of five years. A person is a tier one juvenile offender if the person is required to register after being adjudicated as a ward of the court and discharged or paroled from the Department of Corrections and Rehabilitation for an offense listed in subdivision (c) that is not a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

(2)  A tier two juvenile offender is subject to registration for a minimum of 10 years. A person is a tier two juvenile offender if the person is required to register after being adjudicated as a ward of the court and discharged or paroled from the Department of Corrections and Rehabilitation for an offense listed in subdivision (c) that is a serious or violent felony as described in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

(3)  A person who is required to register as a sex offender pursuant to this section may file a petition for termination from the sex offender registry in the juvenile court in the county in which they are registered at the expiration of their mandated minimum registration period, pursuant to Section 290.5.

(e)  Prior to discharge or parole from the Department of Corrections and Rehabilitation, any person who is subject to registration under this section shall be informed of the duty to register under the procedures set forth in the Act. Department officials shall transmit the required forms and information to the Department of Justice.

(f)  All records specifically relating to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person who is required to register has their records sealed under

94

**AB 160** — 66 —

the procedures set forth in Section 781 of the Welfare and Institutions Code. This section shall not be construed as requiring the destruction of other criminal offender or juvenile records relating to the case that are maintained by the Department of Justice, law enforcement agencies, the juvenile court, or other agencies and public officials unless ordered by a court under Section 781 of the Welfare and Institutions Code.

(g) This section shall become operative on January 1, 2021.

(h) For purposes of this section, a discharged person shall include all of the following:

(1) A ward in the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Justice on or after July 1, 2022, who, prior to discharge, is returned by the division or the chief probation officer of the county to the court of jurisdiction for alternative disposition, specifically due to the statutorily required closure of the division. The division shall inform the ward of the duty to register prior to the ward being returned to the court.

(2) A patient described in Section 1732.10 of the Welfare and Institutions Code. The division shall inform the patient of the duty to register immediately prior to closure of the division.

(3) A person described in Section 1732.9 of the Welfare and Institutions Code. The Department of Corrections and Rehabilitation shall inform the person of the duty to register immediately prior to the person being returned to the court of jurisdiction.

(i) The court of jurisdiction shall establish the point at which the ward described in subdivision (h) is required to register and notify the Department of Justice of its decision.

SEC. 14. Section 457.1 of the Penal Code is amended to read:

457.1. (a) As used in this section, "arson" means a violation of Section 451, 451.5, or 453, and attempted arson, which includes, but is not limited to, a violation of Section 455.

(b) (1) Every person described in paragraph (2), (3), and (4), for the periods specified therein, shall, while residing in, or if the person has no residence, while located in California, be required to, within 14 days of coming into, or changing the person's residence or location within any city, county, city and county, or campus wherein the person temporarily resides, or if the person has no residence, is located:

94

0301

(A)  Register with the chief of police of the city where the person is residing, or if the person has no residence, where the person is located.

(B)  Register with the sheriff of the county where the person is residing, or if the person has no residence, where the person is located in an unincorporated area or city that has no police department.

(C)  In addition to (A) or (B) above, register with the chief of police of a campus of the University of California, the California State University, or community college where the person is residing, or if the person has no residence, where the person is located upon the campus or any of its facilities.

(2)  Any person who, on or after November 30, 1994, is convicted in any court in this state of arson or attempted arson shall be required to register, in accordance with the provisions of this section, for the rest of their life.

(3)  Any person who, having committed the offense of arson or attempted arson, and after having been adjudicated a ward of the juvenile court on or after January 1, 1993, is discharged or paroled from the Division of Juvenile Justice shall be required to register, in accordance with the provisions of this section, until that person attains 25 years of age, or until the person has their records sealed pursuant to Section 781 of the Welfare and Institutions Code, whichever comes first.

(4)  Any person convicted of the offense of arson or attempted arson on or after January 1, 1985, through November 29, 1994, inclusive, in any court of this state, shall be required to register, in accordance with the provisions of this section, for a period of five years commencing, in the case where the person was confined for the offense, from the date of their release from confinement, or in the case where the person was not confined for the offense, from the date of sentencing or discharge, if that person was ordered by the court at the time that person was sentenced to register as an arson offender. The law enforcement agencies shall make registration information available to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person resides.

(c)  Any person required to register pursuant to this section who is discharged or paroled from a jail, prison, school, road camp, or other penal institution, or from the Division of Juvenile Justice

94

where they were confined because of the commission or attempted commission of arson, shall, prior to the discharge, parole, or release, be informed of their duty to register under this section by the official in charge of the place of confinement. The official shall require the person to read and sign the form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to them. The official in charge of the place of confinement shall obtain the address where the person expects to reside upon their discharge, parole, or release and shall report the address to the Department of Justice. The official in charge of the place of confinement shall give one copy of the form to the person, and shall, not later than 45 days prior to the scheduled release of the person, send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon their discharge, parole, or release; one copy to the prosecuting agency that prosecuted the person; one copy to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person expects to reside upon their discharge, parole, or release; and one copy to the Department of Justice. The official in charge of the place of confinement shall retain one copy. All forms shall be transmitted in time so as to be received by the local law enforcement agency and prosecuting agency 30 days prior to the discharge, parole, or release of the person.

(d) All records relating specifically to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person required to register under this subdivision for offenses adjudicated by a juvenile court attains 25 years of age or has their records sealed under the procedures set forth in Section 781 of the Welfare and Institutions Code, whichever event occurs first. This subdivision shall not be construed to require the destruction of other criminal offender or juvenile records relating to the case that are maintained by the Department of Justice, law enforcement agencies, the juvenile court, or other agencies and public officials unless ordered by the court under Section 781 of the Welfare and Institutions Code.

(e) Any person who is required to register pursuant to this section who is released on probation or discharged upon payment of a fine shall, prior to the release or discharge, be informed of

**AB 160**

their duty to register under this section by the probation department of the county in which they have been convicted, and the probation officer shall require the person to read and sign the form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to them. The probation officer shall obtain the address where the person expects to reside upon their release or discharge and shall report within three days the address to the Department of Justice. The probation officer shall give one copy of the form to the person, and shall send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon their discharge or release, one copy to the prosecuting agency that prosecuted the person, one copy to the chief fire official of a legally organized fire department or fire protection district having local jurisdiction where the person expects to reside upon their discharge or release, and one copy to the Department of Justice. The probation officer shall also retain one copy.

(f) The registration shall consist of (1) a statement in writing signed by the person, giving the information as may be required by the Department of Justice, and (2) the fingerprints and photograph of the person. Within three days thereafter, the registering law enforcement agency shall electronically forward the statement, fingerprints, and photograph to the Department of Justice.

(g) If any person required to register by this section changes their residence address, they shall inform, in writing within 10 days, the law enforcement agency with whom they last registered of their new address. The law enforcement agency shall, within three days after receipt of the information, electronically forward it to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency having local jurisdiction of the new place of residence.

(h) Any person required to register under this section who violates any of the provisions thereof is guilty of a misdemeanor. Any person who has been convicted of arson or attempted arson and who is required to register under this section who willfully violates any of the provisions thereof is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in a county jail. In no event does the court have the power to absolve a person who willfully violates this section

94

from the obligation of spending at least 90 days of confinement in a county jail and of completing probation of at least one year.

(i)  Whenever any person is released on parole or probation and is required to register under this section but fails to do so within the time prescribed, the Board of Prison Terms, the Division of Juvenile Justice, or the court, as the case may be, shall order the parole or probation of that person revoked.

(j)  The statements, photographs, and fingerprints required by this section shall not be open to inspection by the public or by any person other than a regularly employed peace officer or other law enforcement officer.

(k)  In any case in which a person who would be required to register pursuant to this section is to be temporarily sent outside the institution where they are confined on any assignment within a city or county, including, but not limited to, firefighting or disaster control, the local law enforcement agency having jurisdiction over the place or places where that assignment shall occur shall be notified within a reasonable time prior to removal from the institution. This subdivision shall not apply to any person temporarily released under guard from the institution where they are confined.

(*l*)  Nothing in this section shall be construed to conflict with Section 1203.4 concerning termination of probation and release from penalties and disabilities of probation.

A person required to register under this section may initiate a proceeding under Chapter 3.5 (commencing with Section 4852.01) of Title 6 of Part 3 and, upon obtaining a certificate of rehabilitation, shall be relieved of any further duty to register under this section. This certificate shall not relieve the petitioner of the duty to register under this section for any offense subject to this section of which they are convicted in the future.

Any person who is required to register under this section due to a misdemeanor conviction shall be relieved of the requirement to register if that person is granted relief pursuant to Section 1203.4.

(m)  For purposes of this section, a discharged person shall include all of the following:

(1)  A ward in the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Justice on or after July 1, 2022, who, prior to discharge, is returned by the division or the chief probation officer of the county to the court of jurisdiction for

94

alternative disposition, specifically due to the statutorily required closure of the division. The division shall inform the ward of the duty to register prior to the ward being returned to the court.

(2) A patient described in Section 1732.10 of the Welfare and Institutions Code. The division shall inform the patient of the duty to register immediately prior to closure of the division.

(3) A person described in Section 1732.9 of the Welfare and Institutions Code. The Department of Corrections and Rehabilitation shall inform the person of the duty to register immediately prior to the person being returned to the court of jurisdiction.

(n) The court of jurisdiction shall establish the point at which the ward described in subdivision (m) is required to register and notify the Department of Justice of its decision.

SEC. 15. Section 679.027 is added to the Penal Code, to read:

679.027. (a) Every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act shall, as provided herein, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, inform each victim, or the victim's next of kin if the victim is deceased, of the rights they may have under applicable law relating to the victimization, including rights relating to housing, employment, compensation, and immigration relief.

(b) (1) Every law enforcement agency investigating a criminal act and every agency prosecuting a criminal act shall, as provided herein, at the time of initial contact with a crime victim, during followup investigation, or as soon thereafter as deemed appropriate by investigating officers or prosecuting attorneys, provide or make available to each victim of the criminal act without charge or cost a "Victim Protections and Resources" card described in paragraph (3).

(2) The Victim Protections and Resources card may be designed as part of and included with the "Marsy Rights" card described by Section 679.026.

(3) By June 1, 2025, the Attorney General shall design and make available in PDF or other imaging format to every agency listed in paragraph (1) a "Victim Protections and Resources" card, which shall contain information in lay terms about victim rights and resources, including, but not limited to, the following:

94

(A)  Information about the rights provided by Sections 230 and 230.1 of the Labor Code.

(B)  Information about the rights provided by Section 1946.7 of the Civil Code.

(C)  Information about the rights provided by Section 1161.3 of the Civil Code, including information in lay terms about which crimes and tenants are eligible and under what circumstances.

(D)  Information about federal immigration relief available to certain victims of crime.

(E)  Information about the program established by Chapter 5 (commencing with Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code, including information about the types of expenses the program may reimburse, eligibility, and how to apply.

(F)  Information about the program established by Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code.

(G)  Information about eligibility for filing a restraining or protective order.

(H)  Contact information for the Victims' Legal Resource Center established by Chapter 11 (commencing with Section 13897) of Title 6 of Part 4.

(I)  A list of trauma recovery centers funded by the state pursuant to Section 13963.1 of the Government Code, with their contact information, which shall be updated annually.

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 16.  Section 1203.4b of the Penal Code is amended to read:

1203.4b.  (a) (1) If a defendant successfully participated in the California Conservation Camp program as an incarcerated individual hand crew member, as determined by the Secretary of the Department of Corrections and Rehabilitation, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, or participated at an institutional firehouse, as determined by the Secretary of the Department of Corrections and Rehabilitation,

and has been released from custody, the defendant is eligible for relief pursuant to this section, except that incarcerated individuals who have been convicted of any of the following crimes are automatically ineligible for relief pursuant to this section:

(A)  Murder.

(B)  Kidnapping.

(C)  Rape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262.

(D)  Lewd acts on a child under 14 years of age, as defined in Section 288.

(E)  Any felony punishable by death or imprisonment in the state prison for life.

(F)  Any sex offense requiring registration pursuant to Section 290.

(G)  Escape from a secure perimeter within the previous 10 years.

(H)  Arson.

(2)  Any denial of relief pursuant to this section shall be without prejudice.

(3)  For purposes of this subdivision, successful participation in a conservation camp program or a program at an institutional firehouse and successful participation as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, means the incarcerated individual adequately performed their duties without any conduct that warranted removal from the program.

(b)  (1)  The defendant may file a petition for relief with the court in the county where the defendant was sentenced. The court shall provide a copy of the petition to the secretary, or, in the case of a county incarcerated individual hand crew member, the appropriate county authority.

(2)  If the secretary or appropriate county authority certifies to the court that the defendant successfully participated in the incarcerated individual conservation camp program, or institutional firehouse, or successfully participated as a member of a county incarcerated individual hand crew, as determined by the appropriate county authority, as specified in subdivision (a), and has been released from custody, the court, in its discretion and in the interests of justice, may issue an order pursuant to subdivision (c).

94

(3)  To be eligible for relief pursuant to this section, the defendant is not required to complete the term of their probation, parole, or supervised release. Notwithstanding any other law, the court, in providing relief pursuant to this section, shall order early termination of probation, parole, or supervised release if the court determines that the defendant has not violated any terms or conditions of probation, parole, or supervised release prior to, and during the pendency of, the petition for relief pursuant to this section.

(4)  All convictions for which the defendant is serving a sentence at the time the defendant successfully participates in a program as specified in subdivision (a) are subject to relief pursuant to this section.

(5)  (A)  A defendant who is granted an order pursuant to this section shall not be required to disclose the conviction on an application for licensure by any state or local agency.

(B)  This paragraph does not apply to an application for licensure by the Commission on Teacher Credentialing, a position as a peace officer, public office, or for contracting with the California State Lottery Commission.

(c)  (1)  If the requirements of this section are met, the court, in its discretion and in the interest of justice, may permit the defendant to withdraw the plea of guilty or plea of nolo contendere and enter a plea of not guilty, or, if the defendant has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty, and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which the defendant has been convicted, except as provided in Section 13555 of the Vehicle Code.

(2)  The relief available pursuant to this section shall not be granted if the defendant is currently charged with the commission of any other offense.

(3)  The defendant may make the application and change of plea in person or by attorney.

(d)  Relief granted pursuant to this section is subject to the following conditions:

(1)  In any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall

have the same effect as if the accusation or information had not been dismissed.

(2)  The order shall state, and the defendant shall be informed, that the order does not relieve the defendant of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for licensure by the Commission on Teacher Credentialing, a peace officer, public office, or for contracting with the California State Lottery Commission.

(3)  Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in the person's custody or control any firearm or prevent their conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6.

(4)  Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office.

(5)  Dismissal of an accusation or information pursuant to this section does not release the defendant from the terms and conditions of any unexpired criminal protective order that has been issued by the court pursuant to paragraph (1) of subdivision (i) of Section 136.2, subdivision (j) of Section 273.5, subdivision (*l*) of Section 368, or subdivision (k) of Section 646.9. These protective orders shall remain in full effect until expiration or until any further order by the court modifying or terminating the order, despite the dismissal of the underlying accusation or information.

(e)  (1)  Relief shall not be granted under this section unless the prosecuting attorney has been given 15 days' notice of the petition for relief.

(2)  It shall be presumed that the prosecuting attorney has received notice if proof of service is filed with the court.

(f)  If, after receiving notice pursuant to subdivision (e), the prosecuting attorney fails to appear and object to a petition for dismissal, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that petition.

 SEC. 17.  Section 1463.001 of the Penal Code is amended to read:

 1463.001.  Except as otherwise provided in this section, all fines and forfeitures imposed and collected for crimes other than parking offenses resulting from a filing in a court, including civil

assessments imposed under Section 1214.1, shall as soon as
practicable after receipt thereof, be deposited with the county
treasurer, and each month the total fines and forfeitures which
have accumulated within the past month shall be distributed, as
follows:

(a) The state penalties, county penalties, special penalties,
service charges, penalty allocations, and civil assessments imposed
under Section 1214.1, shall be transferred to the proper funds as
required by law.

(b) The base fines shall be distributed, as follows:

(1) Any base fines which are subject to specific distribution
under any other section shall be distributed to the specified funds
of the state or local agency.

(2) Base fines resulting from county arrest not included in
paragraph (1), shall be transferred into the proper funds of the
county.

(3) Base fines resulting from city arrests not included in
paragraph (1), an amount equal to the applicable county
percentages set forth in Section 1463.002, as modified by Section
1463.28, shall be transferred into the proper funds of the county.
Until July 1, 1998, the remainder of base fines resulting from city
arrests shall be divided between each city and county, with 50
percent deposited to the county's general fund, and 50 percent
deposited to the treasury of the appropriate city, and thereafter the
remainder of base fines resulting from city arrests shall be
deposited to the treasury of the appropriate city.

(4) In a county that had an agreement as of March 22, 1977,
that provides for city fines and forfeitures to accrue to the county
in exchange for sales tax receipts, base fines resulting from city
arrests not included in paragraph (1) shall be deposited into the
proper funds of the county.

(c) Each county shall keep a record of its deposits to its treasury
and its transmittal to each city treasury pursuant to this section.

(d) The distribution specified in subdivision (b) applies to all
funds subject thereto distributed on or after July 1, 1992, regardless
of whether the court has elected to allocate and distribute funds
pursuant to Section 1464.8.

(e) Any amounts remitted to the county from amounts collected
by the Franchise Tax Board upon referral by a county pursuant to
Article 6 (commencing with Section 19280) of Chapter 5 of Part

94

10.2 of Division 2 of the Revenue and Taxation Code shall be allocated pursuant to this section.

SEC. 18.   Section 4900 of the Penal Code is amended to read:

4900.   (a)   Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, shall have served the term or any part thereof for which they were imprisoned in state prison or incarcerated in county jail, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)   If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, unless the Attorney General establishes pursuant to subdivision (d) of Section 4902, that the claimant is not entitled to compensation.

(c)   (1)   This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2)   The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 18.5.   Section 4900 of the Penal Code is amended to read:

4900.   (a)   Any person who, having been convicted of any crime against the state amounting to a felony and imprisoned in the state

94

prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, shall have served the term or any part thereof for which they were imprisoned in state prison or incarcerated in county jail, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b) If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, find that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, and approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, and the petitioner shall be provided with the relief available pursuant to subdivision (c) of Section 11117, unless the Attorney General establishes pursuant to subdivision (e) of Section 4902, that the claimant is not entitled to compensation.

(c) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 19. Section 4900 is added to the Penal Code, to read:

4900. (a) Any person who, having been convicted of any crime against the state amounting to a felony, and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of

Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, has served the term or any part thereof for which they were imprisoned in state prison, incarcerated in county jail, on parole, or under supervised release, may, under the conditions provided under this chapter, present a claim against the state to the California Victim Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, unless the Attorney General establishes pursuant to subdivision (d) of Section 4902, that the claimant is not entitled to compensation.

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 19.5.  Section 4900 is added to the Penal Code, to read:

4900.  (a)  Any person who, having been convicted of any crime against the state amounting to a felony, and imprisoned in the state prison or incarcerated in county jail pursuant to subdivision (h) of Section 1170 for that conviction, is granted a pardon by the Governor for the reason that the crime with which they were charged was either not committed at all or, if committed, was not committed by the person, or who, being innocent of the crime with which they were charged for either of those reasons, has served the term or any part thereof for which they were imprisoned in state prison, incarcerated in county jail, on parole, or under supervised release, may, under the conditions provided under this chapter, present a claim against the state to the California Victim

0314

Compensation Board for the injury sustained by the person through the erroneous conviction and imprisonment or incarceration.

(b)  If a state or federal court has granted a writ of habeas corpus or if a state court has granted a motion to vacate pursuant to Section 1473.6 or paragraph (2) of subdivision (a) of Section 1473.7, and the charges were subsequently dismissed, or the person was acquitted of the charges on a retrial, the California Victim Compensation Board shall, upon application by the person, and without a hearing, find that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, and approve payment to the claimant if sufficient funds are available, upon appropriation by the Legislature, pursuant to Section 4904, and the petitioner shall be provided with the relief available pursuant to subdivision (c) of Section 11117, unless the Attorney General establishes pursuant to subdivision (e) of Section 4902, that the claimant is not entitled to compensation.

(c)  This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 20.  Section 4904 of the Penal Code is amended to read:

4904.  (a)  If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall be a sum equivalent to one hundred forty dollars ($140) per day of incarceration served, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration. That payment shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(b) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 20.5. Section 4904 of the Penal Code is amended to read:

4904. (a) If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall be a sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration. That payment shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(b) Any person granted relief pursuant to this section or Section 851.86 prior to January 1, 2023, or pursuant to subdivision (a), (c), or (e) of Section 1485.55, is entitled, upon application and submission of proof by the claimant to the board, to a determination of the number of days that the individual was incarcerated solely as a result of the former conviction, and the number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(c) When the California Victim Compensation Board makes a determination under subdivision (b), or a finding of innocence under Section 4900, 4902, or 4904, the board shall report all of

94

0316

the following to the Department of Justice, in a manner prescribed by the Department of Justice:

(1) A description of the proceedings.

(2) The finding of innocence.

(3) The number of days that the individual was incarcerated solely as a result of the former conviction.

(4) The number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(d) When a court orders a finding of innocence under Section 851.86 or 1485.55, the court shall report the proceedings and the finding of innocence to the Department of Justice, in a manner pursuant to subdivision (a) of Section 11117. The report shall include the number of days that the defendant was incarcerated, including in pretrial detention, solely as a result of the former conviction, the number of days that the individual was on parole or community supervision solely as a result of the former conviction, and the number of days the defendant was required to register as a sex offender solely as a result of the former conviction.

(e) (1) This section shall become inoperative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section. If those conditions are met, this section is repealed January 1, 2025.

(2) The amendments made by the act adding this subdivision shall become operative on January 1, 2023.

SEC. 21. Section 4904 is added to the Penal Code, to read:

4904. (a) If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon

appropriation by the Legislature. The amount of the payment shall include the following:

(1) A sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including in a county jail, that is considered to be part of the term of incarceration.

(2) A sum equivalent to seventy dollars ($70) per day served on parole pursuant to Section 3000 or 3000.1 or on supervised release solely as a result of the former conviction.

(b) The amounts provided in paragraphs (1) and (2) of subdivision (a) shall be updated annually to reflect changes in the Bureau of Labor Statistics Consumer Price Index, West Region, commencing one year after this section becomes effective.

(c) Funds received by the claimant under this section shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(d) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 21.5.  Section 4904 is added to the Penal Code, to read:

4904.  (a) If the evidence shows that the crime with which the claimant was charged was either not committed at all, or, if committed, was not committed by the claimant, or for claims pursuant to subdivision (b) of Section 4900, the Attorney General's office has not met their burden of proving by clear and convincing evidence that the claimant committed the acts constituting the offense, and the California Victim Compensation Board has found that the claimant has sustained injury through their erroneous conviction and imprisonment, the California Victim Compensation Board shall approve payment for the purpose of indemnifying the claimant for the injury if sufficient funds are available, upon appropriation by the Legislature. The amount of the payment shall include the following:

(1) A sum equivalent to one hundred forty dollars ($140) per day of incarceration served solely as a result of the former conviction, and shall include any time spent in custody, including

in a county jail, that is considered to be part of the term of incarceration.

(2) A sum equivalent to seventy dollars ($70) per day served on parole pursuant to Section 3000 or 3000.1 or on supervised release solely as a result of the former conviction.

(b) The amounts provided in paragraphs (1) and (2) of subdivision (a) shall be updated annually to reflect changes in the Bureau of Labor Statistics Consumer Price Index, West Region, commencing one year after this section becomes effective.

(c) Funds received by the claimant under this section shall not be treated as gross income to the recipient under the Revenue and Taxation Code.

(d) Any person granted relief pursuant to this section or Section 851.86 prior to January 1, 2023, or pursuant to subdivision (a), (c), or (e) of Section 1485.55, is entitled, upon application and submission of proof by the claimant to the board, to a determination of the number of days that the individual was incarcerated solely as a result of the former conviction, and the number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(e) When the California Victim Compensation Board makes a determination under subdivision (d), or a finding of innocence under Section 4900, 4902, or 4904, the board shall report all of the following to the Department of Justice, in a manner prescribed by the Department of Justice:

(1) A description of the proceedings.

(2) The finding of innocence.

(3) The number of days that the individual was incarcerated solely as a result of the former conviction.

(4) The number of days that the individual was on parole, community supervision, or was required to register as a sex offender solely as a result of the former conviction.

(f) When a court orders a finding of innocence under Section 851.86 or 1485.55, the court shall report the proceedings and the finding of innocence to the Department of Justice, in a manner pursuant to subdivision (a) of Section 11117. The report shall include the number of days that the defendant was incarcerated, including in pretrial detention, solely as a result of the former conviction, the number of days that the individual was on parole

94

or community supervision solely as a result of the former conviction, and the number of days the defendant was required to register as a sex offender solely as a result of the former conviction.

(g) This section shall become operative on July 1, 2024, only if General Fund moneys over the multiyear forecasts beginning in the 2024–25 fiscal year are available to support ongoing augmentations and actions, and if an appropriation is made to backfill the Restitution Fund to support the actions in this section.

SEC. 22.  Section 1732.10 of the Welfare and Institutions Code is amended to read:

1732.10.  (a) Notwithstanding any other law, unless the committing court orders an alternative placement, upon closure of the Division of Juvenile Justice, the State Department of State Hospitals shall continue to provide evaluation, care, and treatment of state hospital patients referred by the division pursuant to Section 1756 and Interagency Agreement 21-00189, or a predecessor agreement, until clinical discharge, as defined in paragraph (9) of subdivision (b) is recommended by the State Department of State Hospitals, or until the patient referred by the division reaches the hospitalization release date in subdivision (e). When discharge is clinically indicated, the State Department of State Hospitals shall notify the juvenile court of commitment, juvenile counsel of record, the probation department, and the behavioral health department. The State Department of State Hospitals shall collaborate with county probation and behavioral health to ensure continuity of care. The division shall provide contact information for the committing court, juvenile counsel of record, and related probation department for all patients in the custody of the State Department of State Hospitals upon enactment of this section and any youth placed at the State Department of State Hospitals prior to closure of the division.

(b) Notwithstanding the confidentiality provision for information and records set forth under Section 5328, for any youth referred by the division who remains a patient after closure of the division, the State Department of State Hospitals shall do the following:

(1) Collaborate with the county probation department and behavioral health department prior to the expected discharge from the state hospital to assist the county in determining the least restrictive legal alternative placement for the youth.

(2) Provide the court, juvenile counsel of record, and county probation department, upon closure of the division and annually thereafter, a copy of the finalized treatment plan specifying the youth's goals of hospitalization, assessed needs, and how the staff will assist the youth to achieve the goals and objectives.

(3) Notify the juvenile court of commitment, juvenile counsel of record, and county probation as soon as safely possible, but no later than 24 hours following any of the following:

(A) A suicide or serious attempted suicide.

(B) A serious injury or battery, with or without a weapon.

(C) An alleged sexual assault.

(D) An escape or attempted escape.

(4) Provide county probation, biannually, a synopsis of behavioral incidences, including, but not limited to, self-harm, assault, contraband, and property damage.

(5) Notify the committing court, juvenile counsel of record, and the county probation department if a youth refuses to consent to clinically necessary medication treatment and provide the court with the clinical records and testimony necessary for the court to consider an order for involuntary medication administration. Notwithstanding any other law, the State Department of State Hospitals shall utilize the process outlined in Section 4210 of Title 9 of the California Code of Regulations and In re Qawi (2004) 32.Cal.4th.1 to obtain involuntary medication orders.

(6) Notify individuals covered by a youth's medical release of information, the juvenile counsel of record, the juvenile committing court, and the county probation department within 24 hours of the youth being hospitalized for a serious medical condition.

(7) Notify the youth's next of kin on record, juvenile counsel of record, the juvenile committing court, and the county probation department of the county of commitment within 24 hours, and the local county coroner and local law enforcement agencies within two hours, of the discovery of death when a youth dies during hospitalization at a state hospital, or if the death occurred immediately following transfer from a state hospital to a community medical facility.

(8) Notify the juvenile committing court, the juvenile counsel of record, and probation department if it believes the youth requires conservatorship upon discharge. For continuity of care, the State Department of State Hospitals shall accommodate any necessary

access to the youth or medical records as needed for arranging conservatorship.

(9) Notify the juvenile court of commitment, juvenile counsel of record, and the county probation department when the youth is ready to discharge to the county based on the following:

(A) When the youth has improved to a degree that further hospitalization is unnecessary, or the primary illness or problem for which hospitalization was required is in substantial remission, and the remaining symptoms are those of a disorder for which hospitalization in a state hospital is not clinically necessary.

(B) When further hospitalization is unnecessary, not clinically appropriate, and will provide no further benefit.

(C) When a court has ordered an alternative placement.

(D) When the youth has reached the hospitalization release date described in subdivision (e).

(10) Provide a written discharge summary and all other pertinent medical and mental health data to the receiving juvenile court of commitment, juvenile counsel of record, and county probation department.

(c) For a youth remaining a patient in a state hospital pursuant to this section, the probation department shall do all of the following:

(1) Upon notification of discharge criteria having been met from the State Department of State Hospitals, find a placement for the patient within 45 days.

(2) Provide transportation to court appearances and from the state hospital to the county designated placement within 7 calendar days of the discharge date.

(3) Reimburse the State Department of State Hospitals for any off-site medical or surgical health care expense, if services could not be provided by the State Department of State Hospitals and prior approval was received from the county, except in cases of emergency.

(d) The county of commitment shall not be charged by the state for a person placed in a state hospital by the division prior to closure pursuant to Section 1756 or Interagency Agreement 21-00189 or a predecessor agreement, during this placement.

(e) A person in a state hospital under the provisions of Section 1756 or this section shall be released and discharged to the county of commitment no later than the person's maximum juvenile

confinement time, as determined by Section 607 and all other provisions of law.

(f) Immediately prior to closure, the division shall notify the juvenile court of commitment and the juvenile counsel of record of the youth's most recent projected board hearing date for court consideration.

(g) This section shall only apply to the youth referred by the division prior to closure who remain a patient in a state hospital after closure of the division. Additional youth shall not be subject to this section.

(h) This section shall remain in effect only until January 1, 2031, and as of that date is repealed.

SEC. 23. If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

SEC. 24. This act is a bill providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution, has been identified as related to the budget in the Budget Bill, and shall take effect immediately.

SEC. 25. (a) Sections 2.5 and 3.5 of this bill incorporate amendments to Section 13956 of the Government Code proposed by both this bill and Senate Bill 299. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 13956 of the Government Code, and (3) this bill is enacted after Senate Bill 299, in which case Section 13956 of the Government Code, as amended by Section 2 of this bill, shall remain operative only until the operative date of Senate Bill 299, at which time Section 2.5 of this bill shall become operative.

(b) Sections 4.5 and 5.5 of this bill incorporate amendments to Section 13957 of the Government Code proposed by both this bill and Senate Bill 877. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 13957 of the Government Code, and (3) this bill is enacted after Senate Bill 877, in which case Section

**AB 160**

13957 of the Government Code, as amended by Section 4 of this bill, shall remain operative only until the operative date of Senate Bill 877, at which time Section 4.5 of this bill shall become operative.

(c)  Sections 18.5 and 19.5 of this bill incorporate amendments to Section 4900 of the Penal Code proposed by both this bill and Senate Bill 1468. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 4900 of the Penal Code, and (3) this bill is enacted after Senate Bill 1468, in which case Section 4900 of the Penal Code, as amended by Section 18 of this bill, shall remain operative only until the operative date of Senate Bill 1468, at which time Section 18.5 of this bill shall become operative.

(d)  Sections 20.5 and 21.5 of this bill incorporate amendments to Section 4904 of the Penal Code proposed by both this bill and Senate Bill 1468. Those sections of this bill shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, but this bill becomes operative first, (2) each bill amends Section 4904 of the Penal Code, and (3) this bill is enacted after Senate Bill 1468, in which case Section 4904 of the Penal Code, as amended by Section 20 of this bill, shall remain operative only until the operative date of Senate Bill 1468, at which time Section 20.5 of this bill shall become operative.

SEC. 26.  Section 12 of this bill shall only become operative if Senate Bill 688 of the 2021–22 Regular Session is enacted and becomes effective on or before January 1, 2023.

Approved _____, 2022

_____
                                        *Governor*

# EXHIBIT B



| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

## AB-160 Public safety trailer bill. (2021-2022)

| Date | Action |
|------|--------|
| 08/31/22 | Enrolled and presented to the Governor at 9:30 p.m. |
| 08/31/22 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 69. Noes 0.). |
| 08/30/22 | In Assembly. Concurrence in Senate amendments pending. |
| 08/30/22 | Read third time. Passed. Ordered to the Assembly. (Ayes 31. Noes 0.). |
| 08/30/22 | Senate rules suspended. (Ayes 31. Noes 9.). |
| 08/30/22 | Read second time. Ordered to third reading. |
| 08/29/22 | From committee: Do pass. (Ayes 15. Noes 0.) (August 29.) |
| 08/26/22 | From committee chair, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on B. & F.R. |
| 02/16/22 | From committee chair, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on B. & F.R. |
| 08/16/21 | Re-referred to Com. on B. & F.R. |
| 07/15/21 | Senate Rule 29 suspended. (Ayes 28. Noes 7.) |
| 07/15/21 | Read second time. Ordered to third reading. |
| 07/14/21 | From committee: Do pass. (Ayes 14. Noes 3.) (July 14.) |
| 07/11/21 | From committee chair, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on B. & F.R. |
| 03/11/21 | Referred to Com. on B. & F.R. |
| 02/25/21 | In Senate. Read first time. To Com. on RLS. for assignment. |
| 02/25/21 | Read third time. Passed. Ordered to the Senate. (Ayes 56. Noes 18. Page 491.) |
| 02/23/21 | Read second time. Ordered to third reading. |
| 02/22/21 | Ordered to second reading. |
| 02/22/21 | Withdrawn from committee. |
| 02/22/21 | Assembly Rule 96 suspended. (Ayes 53. Noes 17. Page 432.) |
| 02/22/21 | Re-referred to Com. on BUDGET. |
| 02/18/21 | From committee chair, with author's amendments: Amend, and re-refer to Com. on BUDGET. Read second time and amended. |
| 01/28/21 | Referred to Com. on BUDGET. |
| 01/11/21 | Read first time. |
| 01/09/21 | From printer. May be heard in committee February 9. |
| 01/08/21 | Introduced. To print. |

1  C.D. Michel-SBN 144258
   Anna M. Barvir-SBN 268728
2  Tiffany D. Cheuvront-SBN 317144
   MICHEL & ASSOCIATES, P.C.
3  180 East Ocean Blvd., Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Fax: (562) 216-4445
5  Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California
   Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting
7  Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA
   Foundation, and Gun Owners of California, Inc.
8
   Donald Kilmer-SBN 179986
9  Law Offices of Donald Kilmer, APC
   14085 Silver Ridge Road
10 Caldwell, Idaho 83607
   Telephone: (408) 264-8489
11 Email: Don@DKLawOffice.com

12 Attorney for Plaintiff Second Amendment Foundation

13            IN THE UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15 JUNIOR SPORTS MAGAZINES          CASE NO: 2:22-cv-04663-CAS (JCx)
   INC., RAYMOND BROWN,
16 CALIFORNIA YOUTH SHOOTING        **NOTICE OF ERRATA RE:**
   SPORTS ASSOCIATION, INC.,        **PLAINTIFFS' REPLY TO**
17 REDLANDS CALIFORNIA              **DEFENDANT'S OPPOSITION TO**
   YOUTH CLAY SHOOTING              **MOTION FOR PRELIMINARY**
18 SPORTS, INC., CALIFORNIA         **INJUNCTION**
   RIFLE & PISTOL ASSOCIATION,
19 INCORPORATED, THE CRPA
   FOUNDATION, AND GUN
20 OWNERS OF CALIFORNIA, INC.;
   and SECOND AMENDMENT
21 FOUNDATION,

22            Plaintiffs,

23      v.

24 ROB BONTA, in his official capacity
   as Attorney General of the State of
25 California; and DOES 1-10,

26            Defendant.

27

28

1   TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2   RECORD:

3       PLEASE TAKE NOTICE THAT Plaintiffs inadvertently omitted the

4   Declaration of Raymond Brown in support of Plaintiffs' Motion for Preliminary

5   Injunction when filing their Reply to Defendant's Opposition to the Motion for

6   Preliminary Injunction on August 15, 2022 (ECF No. 21).

7       Attached as "Exhibit A," please find the Declaration of Raymond Brown.

8

9   Dated: August 18, 2022            **MICHEL & ASSOCIATES, P.C.**

10                                    *s/ Anna M. Barvir*
                                      Anna M. Barvir
11                                    Counsel for Plaintiffs Junior Sports Magazines,
                                      Inc., Raymond Brown, California Youth
12                                    Shooting Sports Association, Inc., Redlands
                                      California Youth Clay Shooting Sports, Inc.,
13                                    California Rifle & Pistol Association,
                                      Incorporated, The CRPA Foundation, and Gun
14                                    Owners of California, Inc.

15

16  Dated: August 18, 2022            **LAW OFFICES OF DONALD KILMER, APC**

17                                    *s/ Donald Kilmer*
                                      Donald Kilmer
18                                    Counsel for Plaintiff Second Amendment
                                      Foundation

19

20

21

22

23

24

25

26

27

28

0331

# EXHIBIT A

C.D. Michel-SBN 144258
Anna M. Barvir-SBN 268728
Tiffany D. Cheuvront-SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs Junior Sports Magazines Inc., Raymond Brown, California Youth Shooting Sports Association, Inc., Redlands California Youth Clay Shooting Sports, Inc., California Rifle & Pistol Association, Incorporated, The CRPA Foundation, and Gun Owners of California, Inc.

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff Second Amendment Foundation

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC., RAYMOND BROWN, CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC., REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC., CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, THE CRPA FOUNDATION, AND GUN OWNERS OF CALIFORNIA, INC.; and SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, <br><br> Defendant. | CASE NO: 2:22-cv-04663-CAS (JCx) <br><br> **DECLARATION OF RAYMOND BROWN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date: August 22, 2022 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Christina A. Snyder |

1

DECLARATION OF RAYMOND BROWN

0333

**DECLARATION OF RAYMOND BROWN**

1.　　I, Raymond Brown, am a plaintiff in the above-entitled action and make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2.　　I am a resident of Yucaipa, California.

3.　　I am an experienced shooting instructor, providing training and instruction in the shooting sports to adult and youth shooters all over the country, including throughout Southern California.

4.　　I am a competitive Master Class shooter, a National Sporting Clays Association ("NSCA") Level III instructor. I am one of just 65 three Level III Instructors in the United States and one of just *three* in California.

5.　　I was personally trained by Olympic Medalist Dan Carlisle, and I serve as a Master Shooting Instructor for the Carlisle Academy.

6.　　I have over 20 years and more than 12,000 hours of teaching experience with intermediate and experienced competitive shooters.

7.　　During shooting lessons focus on various aspects of competitive and recreational shooting, including but not limited to:

- Safe gun handling and operation;
- Gun fit and eye dominance;
- Overall review of the basic approach to clay shooting;
- Proper gun mount, stance, and form;
- Focal points, hold points and break points;
- Learning to focus;
- Different "approaches" to shooting targets based on the shooter's level of experience;
- How to "connect" with the target and learning what "feel with the target" is; and
- Understanding the mental game and developing a pre-shot routine.

8. Many of my students are minors under the age of 18, and some are on competitive shooting teams offered by their schools, youth organizations, or other private groups. They come to me, however, for additional instruction to build their shooting skills. I also provide training in hunting.

9. During my training and coaching sessions with young shooters, minors lawfully use, handle, observe, and otherwise possess firearms, ammunition, and related products. Depending on the student's needs, I might also engage in discussions with or provide recommendations to youth shooters concerning "firearm-related products" that are most suitable for young and/or beginner shooters.

10. My website advertises my firearm training and coaching services to shooters of all ages and abilities, including beginner and youth shooters, who are an important part of my client base. Because of AB 2571 I have been forced to remove these services to youth from my website.

11. My website also provides links to the websites of my sponsors that offer firearms, ammunition, and related products for sale to competitive and recreational shooters, as well as videos wherein I endorse R.C. Ammunition and other products useful for competitive shooting sports. At least one of those videos prominently features a teenage student lawfully and safely shooting sporting clays with a shotgun.

12. The enactment and enforcement of AB 2571, however, prevents me from continuing to promote the shooting sports amongst youth in California through my firearm training and coaching services. Indeed, the law has prompted me to cease offering courses in California specifically for youth or opening up my general classes to minors under 18 because communications that advertise, market, or promote such courses and the discussions that happen during those courses necessarily involve the promotion of the possession and use of firearms and related products.

DECLARATION OF RAYMOND BROWN

0335

13. Because of the enactment and enforcement of AB 2571, I no longer feel comfortable speaking to youth about youth shooting, hunting, what equipment they should use, or skills and safety.

14. I reasonably fear that attempt by the organization to engage in these activities exposes the organization to substantial liability under AB 2571.

15. But for the enforcement of AB 2571, I would continue to coach youth in shooting and hunting and would continue to suggest firearm-related products to my minor students throughout California.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on August 15, 2022.

Raymond Brown
Declarant

4

DECLARATION OF RAYMOND BROWN

0336

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Junior Sports Magazines, Inc., et al. v. Bonta*
Case No.:    2:22-cv-04663-CAS (JCx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**NOTICE OF ERRATA RE: PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Kevin J. Kelly, Deputy Attorney General
kevin.kelly@doj.ca.gov
300 South Spring Street, Suite 9012
Los Angeles, CA 90013
    *Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 18, 2022.

Laura Palmerin

0337

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2022, an electronic PDF of

APPELLANTS' EXCERPTS OF RECORD, VOLUME II OF V was uploaded to

the Court's CM/ECF system, which will automatically generate and send by electronic

mail a Notice of Docket Activity to all registered attorneys participating in the case.

Such notice constitutes service on those registered attorneys.


Dated: December 19, 2022        Respectfully submitted,

                            **MICHEL & ASSOCIATES, P.C.**

                            s/ Anna M. Barvir
                            Anna M. Barvir
                            *Attorneys for Plaintiffs-Appellants*