No. 22-56090

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

JUNIOR SPORTS MAGAZINES INC. ET AL.,
*Plaintiffs-Appellants*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA ET AL.,
*Defendants-Appellees*.

_____

**On Appeal from the United States District Court
for the Central District of California**
No. 2:22-cv-04663-CAS-JCx
Hon. Christina A. Snyder, Judge

_____

**DEFENDANT-APPELLEE'S ANSWERING BRIEF**

_____

ROB BONTA
 *Attorney General of California*
THOMAS S. PATTERSON
 *Senior Assistant Attorney General*
MARK R. BECKINGTON
 *Supervising Deputy Attorney General*
KEVIN J. KELLY
 *Deputy Attorney General*
300 South Spring Street
Los Angeles, CA 90013-1230
(213) 269-6615
Kevin.Kelly@doj.ca.gov
*Attorneys for Defendant-Appellee*
*Rob Bonta, in His Official Capacity as*
*Attorney General of the State of*
*California*

January 27, 2023

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................... 1

Jurisdictional Statement ................................................................. 2

Statement of Issues ......................................................................... 2

Circuit Rule 28.2.7 Statement ......................................................... 3

Statement of the Case ..................................................................... 3

    I.    Legal Background ................................................................. 3

        A.    California's Restrictions on the Transfer to and Possession of Firearms by Minors .................................. 3

        B.    Assembly Bill 2571 ......................................... 4

    II.    Procedural Background ...................................................... 7

Standard of Review .......................................................................... 12

Summary of the Argument ............................................................... 13

Argument ........................................................................................ 14

I.    The District Court Correctly Held that Plaintiffs Are Unlikely to Succeed on Their First Amendment Speech Claims. ..................... 14

    A.    AB 2571 Is a Regulation of Commercial Speech Subject to Scrutiny under the Supreme Court's Test in *Central Hudson*. .................................................................. 14

    B.    AB 2571 Satisfies Each Element of the *Central Hudson* Test. ........................................................................ 21

II.    The District Court Correctly Held that Plaintiffs Are Unlikely to Succeed on their First Amendment Association Claims. .............. 37

III.    The District Court Correctly Held that Plaintiffs are Unlikely to Succeed on their Equal Protection Claim. ........................................ 38

IV.    The District Court Correctly Held that Plaintiffs Cannot Establish Irreparable Harm in the Absence of Injunctive Relief. ..... 39

i

**TABLE OF CONTENTS**
**(continued)**

**Page**

V.   The District Court Correctly Found that the Balance of Equities
     and the Public Interest Do Not Favor an Injunction.......................... 40

Conclusion .................................................................................................... 44

# TABLE OF AUTHORITIES

**Page**

CASES

*All. for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011) .................................................. 12

*Bd. of Trustees of State Univ. of N.Y. v. Fox*
   492 U.S. 469 (1989)........................................................... 33, 35

*Board of Education, Island Trees Union Free School District
No. 26. v. Pico*
   457 U.S. 853 (1982)............................................................... 36

*Bolger v. Youngs Drug Prods. Corp.*
   463 U.S. 60 (1983)................................................................. 15

*Brown v. Entertainment Merchants Association*
   564 U.S. 786 (2011)........................................................... 32, 33

*Carey v. Population Services International*
   431 U.S. 678 (1977)............................................................... 32

*Central Hudson Gas & Electric Corp. v. Public Service
Commission*
   447 U.S. 557 (1980)........................................................ *passim*

*City of Austin, Texas v. Reagan Nat'l Advertising of Austin,
LLC*
   __ U.S. __; 142 S. Ct. 1464 (2022) .................................. 14, 19

*City of Renton v. Playtime Theatres, Inc.*
   475 U.S. 41 (1986)................................................................. 20

*Contest Promotions, LLC v. City and Cnty. of San Francisco*
   874 F.3d 597 (9th Cir. 2017) .................................................. 18

*Discount Tobacco City & Lottery, Inc. v. United States*
   674 F.3d 509 (6th Cir. 2012) ............................................. 29, 34

iii

## TABLE OF AUTHORITIES
### (continued)

Page

*Edenfield v. Fane*
   507 U.S. 761 (1993)............................................................................ 26, 29

*Educational Media Company at Virginia Tech, Incorporated v.*
*Swecker*
   602 F.3d 583 (4th Cir. 2010) ...................................................... 28, 29, 34

*Erznozik v. City of Jacksonville*
   422 U.S. 205 (1975)..................................................................................... 36

*Fla. Bar v. Went For It, Inc.*
   515 U.S. 618 (1995)..................................................................................... 26

*FTC. v. Affordable Media*
   179 F.3d 1228 (9th Cir. 1999) ................................................................... 41

*Fyock v. City of Sunnyvale*
   25 F. Supp. 3d 1267 (N.D. Cal. 2014)...................................................... 42

*Greater New Orleans Broad. Ass'n, Inc. v. U.S.*
   527 U.S. 173 (1999)..................................................................................... 33

*Hennessy-Waller v. Snyder*
   529 F. Supp. 3d 1031 (D. Ariz. 2021) ...................................................... 43

*Hunt v. City of Los Angeles*
   638 F.3d 703 (9th Cir. 2011) ............................................................. 15, 16

*International Dairy Foods Association v. Boggs*
   622 F.3d 628 (6th Cir. 2010) ..................................................................... 23

*Johnson v. Brown*
   567 F. Supp. 3d 1230 (D. Or. 2021)......................................................... 40

*Lorillard Tobacco Co. v. Reilly*
   533 U.S. 525 (2001)...................................................................... 20, 31, 35

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Metromedia, Inc. v. San Diego*
  453 U.S. 490 (1981)................................................................. 19

*New York State Rifle & Pistol Association v. Bruen*
  __ U.S. __ (2022).................................................................... 21

*Nunez by Nunez v. City of San Diego*
  114 F.3d 935 (9th Cir. 1997) ................................................. 24

*OSU Student All. v. Ray*
  699 F.3d 1053 (9th Cir. 2012) ............................................... 39

*Peel v. Attorney Registration & Disciplinary Commission*
  496 U.S. 91 (1990)................................................................. 23

*Plyler v. Doe*
  457 U.S. 202 (1982)............................................................... 38

*Progressive Democrats for Soc. Just. v. Bonta*
  No. 21-CV-03875-HSG, 2021 WL 6496784 (N.D. Cal. July
  16, 2021) ............................................................................... 42

*Reed v. Town of Gilbert*
  576 U.S. 155 (2015)............................................................... 18

*Retail Digital Network, LLC v. Prieto*
  861 F.3d 839 (9th Cir. 2017) (en banc) ................................. 18

*Rupp v. Becerra*
  2018 WL 2138452 (C.D. Cal. May 9, 2018).......................... 42

*Sable Commc'ns of Cal., Inc. v. F.C.C.*
  492 U.S. 115 (1989)............................................................... 24

*Sorrell v. IMS Health, Inc.*
  564 U.S. 552 (2011).................................................... 18, 31, 32

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Tracy Rifle & Pistol LLC v. Harris*
118 F. Supp. 3d 1182 (E.D. Cal. 2015) .................................................. 41

*Tracy Rifle & Pistol LLC v. Harris*
637 Fed.App'x 401 (9th Cir. 2016) ........................................................ 40

*United States v. Edge Broad. Co.*
509 U.S. 418 (1993).......................................................................... 26, 27

*United States v. O'Brien*
391 U.S. 367 (1968)................................................................................ 20

*United States v. Stevens*
559 U.S. 460 (2010)................................................................................ 12

*Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*
371 F.3d 1046 (9th Cir. 2004) ................................................................ 38

*Wiese v. Becerra*
263 F. Supp. 3d 986 (E.D. Cal. June 29, 2017)...................................... 42

*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7 (2008)..................................................................................... 12

*Wright v. Service Employees Int'l Union Local 503*
48 F.4th 1112 (9th Cir. 2022) ................................................................. 17

*Zaitzeff v. City of Seattle*
No. C17-0184JLR, 2017 WL 2169941 (W.D. Wash. May 16, 2017) ............................................................................................. 42

**STATUTES**

28 U.S.C. § 1292(a)(1)............................................................................. 2

28 U.S.C. § 1331...................................................................................... 2

vi

## TABLE OF AUTHORITIES
### (continued)

Page

Cal. Bus. & Prof. Code § 22949.80 ...................................................... *passim*

Cal. Bus. & Prof. Code § 25664 ................................................................ 26

Cal. Pen. Code § 16520 ........................................................................3

Cal. Pen. Code § 27505 ................................................................. 3, 4, 21, 22

Cal. Pen. Code § 27510 ................................................................... 3, 21

Cal. Pen. Code § 29610 ................................................................. 3, 22, 23

Cal. Pen. Code § 29615 ..................................................................... 4, 21

Penal Code § 27505 ....................................................................... 22

**CONSTITUTIONAL PROVISIONS**

First Amendment ................................................................................ *passim*

Second Amendment ............................................................................... 21

Fourteenth Amendment ........................................................................ 3, 8

**COURT RULES**

Fed. R. App. P. 4(a)(1)(B)(i) .................................................................2

Fed. R. App. P. 10(e) ...................................................................... 35

**OTHER AUTHORITIES**

Assembly Bill 2571 ......................................................................... 1, 4

Black's Law Dictionary (11th ed. 2019) ............................................... 15, 16

Matthew A. Lapierre, Ph.D. et al., *The Effect of Advertising on Children and Adolescents*, 140 PEDIATRICS S152, S153 (2017)........................................................................................6

vii

# INTRODUCTION

Assembly Bill 2571 prohibits a "firearm industry member" from advertising, marketing, or arranging for placement of an advertising or marketing communication offering or promoting any firearm-related product "in a manner that is designed, intended, or reasonably appears to be attractive to minors." The state Legislature adopted this provision to address serious concerns about gun-related injuries and fatalities among children. The Legislature considered evidence that gun violence is now the third leading cause of death for children and teens in California and that in 2020, for the first time, firearm-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide among children and adolescents. The Legislature also recognized that children are especially susceptible to advertising and are less able to control impulsive and dangerous behavior.

AB 2571, as later amended by AB 160 (collectively AB 2571), addresses these concerns by restricting marketing and advertising directed at minors. The law does not limit communications offering or promoting firearm safety programs, sport shooting events and competitions, organizational memberships, or similar activities, but addresses only marketing and advertising firearms and related products to children.

1

The district court properly held that Plaintiffs are not entitled to an order blocking enforcement of the law while litigation in this case continues. The law addresses advertising of commercial sales of guns and related accessories. It addresses communications that are unlawful and misleading—namely, advertisements that propose illegal sales of firearms to children. The district court also properly concluded that AB 2571 directly advances the State's compelling interest in protecting children from gun violence and is well tailored to achieving that interest. AB 2571 is a focused and constitutional response to a significant problem. The district court's denial of a preliminary injunction should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331. The district court entered an order denying Plaintiffs' motion for a preliminary injunction. 1-ER-2-52. This Court has jurisdiction of the appeal from that order under 28 U.S.C. § 1292(a)(1). The order was entered on October 24, 2022. 1-ER-2. Plaintiffs timely filed their notice of appeal on November 21, 2022. 2-ER-55-57; see Fed. R. App. P. 4(a)(1)(B)(i).

## STATEMENT OF ISSUES

1.    Whether Plaintiffs are likely to succeed on their claim that AB 2571 facially violates their First Amendment free speech and association rights.

2.     Whether Plaintiffs are likely to succeed on their claim that AB 2571

facially violates their Fourteenth Amendment Equal Protection rights.

3.     Whether enjoining enforcement of AB 2571 during the pendency of this

litigation is equitable and in the public interest.

## CIRCUIT RULE 28.2.7 STATEMENT

All applicable constitutional provisions and statutes are contained in the

addendum to Plaintiffs' Opening Brief.

## STATEMENT OF THE CASE

**I.    LEGAL BACKGROUND**

**A.    California's Restrictions on the Transfer to and Possession of
         Firearms by Minors**

California law generally prohibits the loan or transfer of any firearm to a

person under 21 years of age, and it is illegal in California to sell a firearm to a

minor under any circumstances. *See* Cal. Pen. Code §§ 27505 & 27510.

Furthermore, minors—those under the age of 18—are generally prohibited from

possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any

firearm. *See* Cal. Pen. Code § 29610.[1] There are very limited exceptions to these

prohibitions, all of which require the possession to be for a specific recreational,

---

[1] For purposes of Penal Code § 29610, a "firearm" is generally "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion," and includes "the frame or receiver of the weapon, including both a completed frame or receiver, or a firearm precursor part." Cal. Pen. Code § 16520.

agricultural, or artistic purpose and all of which require the supervision and/or permission of a parent, legal guardian, and/or a responsible adult, depending on the purpose for which the item is used and, in some cases, the age of the minor. *See* Cal. Pen. Code §§ 27505 & 29615.

### B.    Assembly Bill 2571

AB 2571, which added section 22949.80 to the California Business and Professions Code, prohibits members of the firearm industry, as defined, from advertising, marketing, or arranging for placement of an advertising or marketing communication offering or promoting any firearm-related products in a way that is designed, intended, or reasonably appears to be attractive to minors.[2] Cal. Bus. & Prof. Code § 22949.80(a)(1). For purposes of the statute, "marketing or advertising" means, "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." *Id.* § 22949.80(c)(6).

In determining whether a marketing or advertising communication is "attractive to minors," courts are directed to look to the "totality of the

---

[2] AB 2571 went into effect on June 30, 2022 and was amended on September 29, 2022. This section discusses the language of the statute in the current amended form.

4

circumstances," and the statute provides a non-exclusive list of characteristics to assist courts in making that determination. *Id.* § 22949.80(2). Violators of the prohibition are subject to a maximum $25,000 penalty (*see id.* § 22949.80(e)(1)), and a person harmed by a violation may commence a civil action to recover damages (*see id.* § 22949.80(e)(3)).

The law does not apply to communications offering or promoting firearm safety and hunting safety programs, firearm instructional courses, sport shooting events and competitions, and other similar programs, courses, and events. *Id.* § 22949.80(a)(3). It also does not apply to communications offering or promoting organizational memberships and lawful hunting activities, such as fundraising events, youth hunting programs, and outdoor camps. *Id.*

The Legislature adopted AB 2571 after considering evidence about gun-related injuries and fatalities among children. For example, the Legislature noted that "[i]n 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries." 3-ER-500. According to the Centers for Disease Control, in 2014, guns accounted for 40% of all suicides, and 59% of all homicides, for children ages 1 to 17. 3-ER-417.

The Legislature also took note of the fact that since 2014, gun violence among children has only worsened. Indeed, AB 2571's author observed that gun violence is now the third leading cause of death for children and teens in

5

California. 3-ER-517. And the CDC recently reported that in 2020, for the first time, firearm-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide among children and adolescents. 3-ER-509; 3-ER-434. Further, according to an analysis of FBI data, nearly half of all active shooting incidents at educational facilities in the United States from 2000 to 2019 were perpetrated by someone under the age of 18. 3-ER-509.

AB 2571 is supported by academic research indicating that "[f]or decades, researchers have recognized children as a vulnerable consumer group because of their budding developmental abilities." Matthew A. Lapierre, Ph.D. et al., *The Effect of Advertising on Children and Adolescents*, 140 PEDIATRICS S152, S153 (2017) (3-ER-438). For example, research has linked the marketing of certain products, including unhealthy food, alcohol, and tobacco, to an increased likelihood that adolescents will use these products. *See id.* Moreover, while "there have been calls to invest in the development of educational interventions to empower children by increasing their advertising knowledge," "research indicates that possessing advertising knowledge does not necessarily enable children to cope with advertising in a conscious and critical manner." *Id.* at S154 (3-ER-439).

It was with these concerns in mind that the Legislature enacted AB 2571. The Legislature found that California "has a compelling interest in ensuring that minors do not possess these dangerous weapons and in protecting its citizens, especially

minors, from gun violence and from intimidation by persons brandishing these weapons." 3-ER-453; AB 2571, § 1(a). "The proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." 3-ER-452; AB 2571, § 1(a).

The Legislature further determined that "[t]hese weapons are especially dangerous in the hands of minors because current research and scientific evidence shows that minors are more impulsive, more likely to engage in risky and reckless behavior, unduly influenced by peer pressure, motivated more by rewards than costs or negative consequences, less likely to consider the future consequences of their actions and decisions, and less able to control themselves in emotionally arousing situations." 3-ER-452-53; AB 2571, § 1(a). Despite these risks, and the fact that "children are especially susceptible to marketing appeals, as well as more prone to impulsive, risky, thrill-seeking, and violent behavior than other age groups," "firearms manufacturers and retailers continue to market firearms to minors." 3-ER-453; AB 2571, § 1(a).

## II.  PROCEDURAL BACKGROUND

Plaintiffs are a magazine publisher and a youth firearms instructor as well as organizations that promote shooting sports, organize related events, advocate for firearms ownership rights, and/or promote firearms education and outreach. 5-ER-981-85. In July 2022, they filed suit against the Attorney General alleging that AB

2571 impermissibly regulates political or ideological speech in violation of the First Amendment. 5-ER-1007-09. Their complaint also alleged that the law reflects an unconstitutional regulation of commercial speech. 5-ER-1009-10. It also asserted that the law violates their rights to association and assembly under the First Amendment (5-ER-1011-12) and offends the Equal Protection Clause of the Fourteenth Amendment (ER-1012-13).

After the complaint was filed, Plaintiffs filed a motion for preliminary injunction seeking enjoinment of AB 2571 in its entirety. *See* 1-SER-1. The district court postponed consideration of the motion because the Legislature was in the process of considering amendments to the law. *See* 1-ER-3. The parties submitted additional briefing to address the effects of those amendments on Plaintiffs' motion, which were signed into law on September 29, 2022.

The district court denied Plaintiffs' motion for preliminary injunction. *See* 1-ER-2-52. First, the district court examined the scope of AB 2571 and determined that the law is properly read as applying only to commercial speech. 1-ER-19-20. The court reasoned that the law is a restriction on "the marketing and advertising of firearms, ammunition, and firearm components and accessories to minors to encourage the purchase by them of these products, and not [] a blanket restriction on communications relating to firearms more broadly." *Id.* The district court recognized Plaintiffs' argument that AB 2571 sweeps in protected non-commercial

8

speech. 1-ER-22. But it concluded that "the absence of a full factual record makes these questions too speculative to resolve" such that "they are better considered on an as-applied basis." *Id.*

The court then applied the analysis governing challenges to regulations of commercial speech set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). First, the district court found that "[t]o the extent that AB 2571 restricts advertising encouraging minors to purchase firearms, it regulates speech that is misleading and that invites unlawful activity because it is illegal to sell a firearm to a minor in California." 1-ER-26. In that respect, the law restricts speech that does not enjoy First Amendment protection. *See id.* The district court further concluded that AB 2571 also regulates speech that is not inherently misleading and that does not concern unlawful activity because, "[f]or example, an advertisement marketing a firearm for sale that displays a minor using the firearm in a recreational setting does not necessarily promote illegal activity since minors may use firearms with adult supervision and permission under [California's] statutory exceptions" and because the restricted communications "may also reach adults who can legally purchase firearms[.]" *See id.*

Turning to the additional elements of the *Central Hudson* analysis, the district court found that California "has a substantial interest in promoting public safety

broadly, along with the more specific goals to reduce gun violence and crime, especially those affecting and committed by minors. And because it already outright forbids firearm sales to minors, it has likewise an interest in taking measures designed to effectuate that restriction." 1-ER-27-28.

In determining whether AB 2571 directly and materially advances those interests, the district court looked to relevant Supreme Court case law in addition to case law in other Circuits analyzing restrictions on tobacco and alcohol advertising. *See* 1-ER-31-35. The district court concluded that AB 2571 "directly and materially advances California's compelling interest in protecting minors." 1-ER-35-36. It found that "the State has shown that it is reasonable to conclude that restricting advertising of firearm-related products 'designed, intended, or reasonably appearing to be attractive to minors' would reduce the unlawful purchase and possession of firearms by minors." 1-ER-39 (alterations omitted).

In determining whether AB 2571 is no more extensive than necessary to serve California's interests, the district court again examined relevant case law from the Supreme Court and various Circuits. 3-ER-40-47. It observed that AB 2571 "expressly delineates a totality of the circumstances approach aimed at prohibiting only advertising designed to appeal to minors, with several enumerated factors provided. Indeed some of these factors are similar to the types of restrictions upheld in the cases [cited]. . . . Moreover, some of the other factors listed are

explicitly more narrowly tailored than the blanket bans struck down in the [cited] cases. . . . Finally, the [district court] notes that the text and scope of the statute are similar to youth advertising prohibitions on tobacco and alcohol." 3-ER-45-46-47. It concluded that therefore, the law is likely not unconstitutionally overbroad in scope or application. 3-ER-47. For essentially all of the same reasons, the district court held that Plaintiffs were not likely to succeed on their claims that the law violated their right to association or the Equal Protection Clause (*see* 3-ER-47-50), nor had they demonstrated they would likely suffer irreparable harm in the absence of preliminary relief (*see* 3-ER-50-51).

Lastly, the district court found that Plaintiffs had not demonstrated that the balance of equities tipped in their favor or that the public interest favored granting a preliminary injunction, because their arguments to the contrary "more or less mirror[ed] the logic of their irreparable harm argument." *See* 3-ER-52. Moreover, the district court found that the Legislature's findings in support of AB 2571 and "the case law recognizing the public interest in curbing gun violence" constituted "strong countervailing factors weighing against issuance of an injunction enjoining AB 2571." 3-ER-52 (internal citations omitted). Accordingly, the district court denied Plaintiffs' motion.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. In a "typical" facial challenge, a plaintiff must show that "no set of circumstances exists under which [the challenged statute] would be valid, or that the statute lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal citations omitted). In the First Amendment context, a plaintiff may sustain a facial challenge premised on "overbreadth" by showing "a substantial number of [the challenged statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, n.6 (2008)). An order denying a preliminary injunction is reviewed for abuse of discretion. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A district court's conclusions of law are reviewed de novo. *See id.*

## SUMMARY OF THE ARGUMENT

The district court properly declined to enjoin AB 2571 while this litigation continues. As the district court concluded, AB 2571 is a regulation of commercial speech. It applies to marketing and advertising communications offering or promoting the sale of firearms; its reach does not extend to political, educational, or other non-commercial speech.

Under the established standard for evaluating restrictions on commercial speech, AB 2571 is constitutional. To begin with, AB 2571 regulates unprotected speech that is misleading and relates to unlawful activity: the sale to and possession of firearms by minors, which are acts prohibited in most circumstances. To the extent the law applies to non-misleading, protected commercial speech, it satisfies intermediate scrutiny. The law directly advances the State's vital interest in protecting children from injuries and fatalities caused by guns; it reflects courts' longstanding recognition, supported by research and the legislative record, that restrictions on advertising reduce demand for those products. And the law is properly tailored to achieving the State's interests: it applies only to communications that relate to the sale of firearm-related products and that are designed, intended, or reasonably appear to be attractive to minors and does not extend to any non-commercial protected speech or activity.

13

Moreover—and no less crucially for purposes of their injunction request—Plaintiffs have failed to show that enjoining AB 2571 during the pendency of this litigation would be equitable or in the public interest. AB 2571 directly addresses the serious problem of youth gun violence, and thus the significance of the harm that could result from the improper issuance of an injunction would be substantial. And the relief sought by Plaintiffs here is the same relief that Plaintiffs would obtain after summary judgment or a trial, weighing heavily against issuance of an injunction during the pendency of this litigation.

## ARGUMENT

## I.  THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR FIRST AMENDMENT SPEECH CLAIMS.

### A.  AB 2571 Is a Regulation of Commercial Speech Subject to Scrutiny under the Supreme Court's Test in *Central Hudson*.

The Supreme Court has long distinguished between "commercial speech"—that is, "speech proposing a commercial transaction"—and other types of speech that enjoy greater First Amendment protection. *See Cent. Hudson*, 447 U.S. at 562; *see also City of Austin, Texas v. Reagan Nat'l Advertising of Austin, LLC*, __ U.S. __, 142 S. Ct. 1464, 1480 (2022) (Alito, J., concurring) (recognizing that "under our precedents, regulations of commercial speech are analyzed differently" from other forms of speech (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 571-72 (2011)). Factors to be considered in deciding whether speech constitutes

"commercial speech" include whether (1) the speech is an advertisement; (2) the speech refers to a particular product; and (3) the speaker has an economic motivation. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-68 (1983)). These factors are not dispositive and not all of them "must necessarily be present in order for speech to be commercial." *Bolger*, 463 U.S. at 67, n.14.

As the district court correctly held, AB 2571 is properly understood as a regulation of commercial speech, not core political speech, as Plaintiffs contend. In its amended form, AB 2571 ("Marketing or advertising attractive to minors; publishing material; definitions") prohibits a "firearm industry member" from "advertising," "marketing," or "arranging for placement" of an advertising or marketing communication "offering or promoting" any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors (Cal. Bus. & Prof. Code § 22949.80(a)(1)), so long as the "primary purpose" of the communication is to "encourage recipients to engage in a commercial transaction" (*id.* § 22949.80(c)(6)).[3] Thus, it regulates speech with an obvious economic or

---

[3] As the district court observed, Black's Law Dictionary defines "product" as "[s]omething that is *distributed commercially* for use or consumption and that is usu. (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption." *See* 1-ER-20 (quoting Black's Law Dictionary (11th ed. 2019) (emphasis added)).

15

commercial motivation. *See Hunt*, 638 F.3d at 715. By its own terms, the statute regulates "advertising or marketing," and it also defines "marketing or advertising" with reference to commercial transactions, *i.e.*, those involving a proposed "exchange for monetary compensation." Cal. Bus. & Prof. Code § 22949.80(c)(6). Thus, AB 2571 regulates speech constituting an "advertisement" (*see Hunt*, 638 F.3d at 715) or "marketing" (*see* Black's Law Dictionary (11th ed. 2019) (defining "marketing" as including "[t]he act or process of promoting and selling, leasing, or licensing products or services"). AB 2571 also explicitly regulates advertising and marketing in connection with a "particular product" (*see Hunt*, 638 F.3d at 715), that is, "firearm-related products" (Cal. Bus. & Prof. Code § 22949.80(c)(6)). The text of AB 2571 thus makes clear that the law applies to speech that proposes a commercial transaction, and is therefore reviewed under the *Central Hudson* test.

Plaintiffs argue that AB 2571 also regulates political, ideological, and other non-commercial speech (OB 29-30), but their arguments are not correct. As just explained, AB 2571 solely prohibits "marketing and advertising" communications. Cal. Bus. & Prof. Code § 22949.80(c)(6). The law expressly disclaims any application to communications offering or promoting educational or sporting programs or speech concerning membership in any educational, advocacy, or other organization. *Id.* § 22949.80(a)(3).

Plaintiffs speculate that the law restricts certain articles or images, including those that discuss the possession or use of firearms, as well as statements made at training, safety, and sporting programs. OB 6-7, 29-30. As the district court correctly found, issues like this are too speculative to resolve at this preliminary stage, and they are better considered on an as-applied basis. 1-ER-22. But even if the record was sufficient to support these allegations, Plaintiffs fail to appreciate that AB 2571 does not prohibit speech related solely to the mere lawful "use" of a firearm-related product by a minor or speech whose "primary purpose" is other than to "encourage recipients of the communication[s] to engage in a commercial transaction." *See* Cal. Bus. & Prof. Code § 22949.80(c)(6). Similarly, while Plaintiffs claim that AB 2571 restricts their ability to host and sponsor competitive shooting and hunting programs for youth because these events "regularly involve signage, flyers, discussions, branded merchandise, giveaways, and other communications that promote or offer firearm-related products" and are financially supported by firearm vendors that advertise in these spaces (*see* OB 7-8), AB 2571 itself does not restrict them from holding any of these events.[4] *See Wright v.*

---

[4] In any event, Plaintiffs have not alleged that any vendors intend to withdraw their support of these events altogether, that they could not appear at them in a way that would comply with the new law, or that Plaintiffs would be unable to hold these events without support from vendors marketing firearms-related products to children. Simply because vendors may not include advertising or marketing communications "designed, intended, or reasonably appearing to be

*Service Employees Int'l Union Local 503*, 48 F.4th 1112, 1118 (9th Cir. 2022) (observing that "[w]hile a plaintiff's alleged chilling of her First Amendment rights 'can constitute a cognizable injury," a plaintiff "has standing to sue only 'if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, (2014)).

Plaintiffs' other arguments urging the application of strict scrutiny are also incorrect. *See* OB 26-32. Citing the Supreme Court's decisions in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), Plaintiffs appear to argue that AB 2571 is a content-based restriction subject to strict scrutiny. OB 26-27, 31-32. But this Court has already rejected the argument that those decisions altered the *Central Hudson* test. *See Contest Promotions, LLC v. City and Cnty. of San Francisco*, 874 F.3d 597, 601 (9th Cir. 2017) ("We have likewise rejected the notion that *Reed* altered *Central Hudson*'s longstanding intermediate scrutiny framework.") (citing *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016)); *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 846 (9th Cir. 2017) (en banc) (concluding that "*Sorrell* did not mark a fundamental departure from *Central Hudson*'s four-factor

---

attractive to minors" at these events does not preclude them from otherwise sponsoring or advertising at them, so long as they do so in a way that does not run afoul of AB 2571.

test [for content- or speaker-based regulations of commercial speech], and *Central Hudson* continues to apply"); *see also Cent. Hudson*, 447 U.S. at 563 n.6 (distinguishing between regulation of commercial speech and content-based restrictions of non-commercial speech). Plaintiffs' reliance on the Supreme Court's recent decision in *City of Austin v. Reagan National Advertising of Austin, LLC*, __ U.S. __, 142 S. Ct. 1464 (2022) (*see* OB 26-27) is also inapposite. In that case, the Supreme Court addressed the proper scrutiny for a regulation of *both* commercial and non-commercial speech (*see Reagan*, 142 S. Ct. at 1471 n.3), which is not the situation here.[5]

Plaintiffs are also wrong in claiming that AB 2571 is subject to strict scrutiny as a law that discriminates on the basis of viewpoint. *See* OB 4-5 (citing § 22949.80(c)(4)). As explained above, AB 2571 applies to communications about products made for the primary purpose of encouraging recipients to engage in a commercial transaction. It does not address any political point of view or ideological message. The fact that the law addresses advertising related only to commercial sales of a specific product (firearm-related products) does not mean that it discriminates on the basis of a point of view or is subject to strict scrutiny.

---

[5] Indeed, in discussing *Metromedia, Inc. v. San Diego*, 453 U.S. 490 (1981), which upheld a regulation of commercial advertising, the Court noted that it did not need to determine whether the regulation was content-based "as it regulated only commercial speech and so was subject to intermediate scrutiny in any event." *See Reagan*, 142 S. Ct. at 1474 (citing *Metromedia, Inc.*, 453 U.S. at 507-12).

*See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554-65 (2001) (applying *Central Hudson* test to regulation of commercial speech related to tobacco products).

Plaintiffs' arguments suggesting that the law singles out political or ideological viewpoints (OB 27-28) are also not correct. AB 2571's definition of a "firearm-industry member" includes "[a] person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association *engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products*." *See* § 22949.80(4)(A) (emphasis added). Consequently, no individual, company, or organization is exempt from the prohibition on marketing firearm-related products to minors because, by doing so, they become a "firearm industry member" subject to the law. The tweet from the California Governor that Plaintiffs reprint (OB 27-28) reflects concerns about the safety of minors and commercial gun sales—not disagreement with any political or ideological point of view. And in any event, allegations about the personal feelings or motivations of individual government officials are irrelevant. *See United States v. O'Brien*, 391 U.S. 367, 384 (1968); *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986).

20

**B.      AB 2571 Satisfies Each Element of the *Central Hudson* Test.**

Because AB 2571 regulates only commercial speech, it is subject to the test

that the U.S. Supreme Court set forth in *Central Hudson*. Under that test, if the

commercial speech at issue concerns a lawful activity and is not misleading, then

government regulation of the speech will be upheld so long as the government

asserts a substantial interest, the regulation directly advances the government's

asserted interest, and the regulation is no more restrictive than necessary to serve

that interest. *See Cent. Hudson*, 447 U.S. at 566.[6]

**1.      AB 2571 regulates unprotected commercial speech that is misleading and concerns unlawful activity.**

As established above, AB 2571—in light of both the operative language and

the Legislature's express statements of purpose—regulates commercial speech.

And for commercial speech to enjoy First Amendment protection, "it at least must

concern lawful activity and not be misleading." *See id.*

It is illegal in California to sell a firearm to a minor under any circumstances,

and illegal to loan or transfer any firearm to a person under 21 years of age, subject

to narrow exceptions. *See* Cal. Pen. Code §§ 27505, 27510, & 29615. To market or

---

[6] Plaintiffs disagree with *Central Hudson* (OB 31-32) and question whether "it ever was valid" (OB 12). But of course, that decision is binding precedent, and it sets the controlling standard in this case. Similarly, they suggest that the Supreme Court's Second Amendment analysis in *New York State Rifle & Pistol Association v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022), is relevant here (OB 22), but they have not pleaded any Second Amendment claim in this matter.

advertise a firearm in a way that is attractive to minors thus concerns illegal activity. Moreover, California law also generally prohibits a minor from possessing a handgun, a semiautomatic centerfire rifle, and, as of July 1, 2023, any firearm. *See id.* § 29610. As Plaintiffs point out, there are exceptions to these prohibitions (*see* OB 5-6), but they are quite narrow and carefully circumscribed. Furthermore, as the Legislature recognized, "lawful possession of a firearm by a minor is clearly the exception, rather than the rule under California law" (3-ER-475), and in each and every circumstance in which a minor is permitted to possess a firearm, adult supervision or permission in some form is required for obvious safety reasons. It is thus misleading to advertise the sale of a product to an audience that is legally barred from possessing the product being advertised, subject to limited exceptions.

Plaintiffs argue that AB 2571 extends too broadly (*see* OB 34)[7] and argue that the district court "wrongly held that AB 2571 is merely a 'restriction on the

---

[7] The district court held that "[t]o the extent that AB 2571 restricts advertising encouraging minors to purchase firearms, it regulates speech that is misleading and that invites unlawful activity because it is illegal to sell a firearm to a minor in California under Penal Code Section 27505." *See* 1-ER-26 (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973)). However, the district court also held that AB 2571 "encompasses commercial speech that may not be misleading or concern unlawful conduct," and as such it is subject to the remainder of the *Central Hudson* test. *See* 1-ER-26-27. Nevertheless, to the extent Plaintiffs continue to argue otherwise, Defendant's position continues to be that AB 2571 regulates commercial speech that is inherently misleading and concerns illegal activity and is thus constitutional on those grounds. And since Defendant raised the argument below, it is an appropriate, alternative basis for the Court to affirm the district court's order.

marketing and advertising of firearms, ammunition, and firearms components and accessories to minors *to encourage the purchase by them* of these products." *Id.* (citing 1-ER-20 (emphasis in original)). But there is nothing incorrect about the district court's holding, and it does not disturb that AB 2571 operates to prohibit advertising encouraging minors to purchase items whose sale is illegal.

Plaintiffs also point to *Peel v. Attorney Registration & Disciplinary Commission*, 496 U.S. 91 (1990), and *International Dairy Foods Association v. Boggs*, 622 F.3d 628 (6th Cir. 2010), in arguing that the district court should have inquired into whether the potential to mislead could be cured by a "simple disclaimer" (OB 34-35); but those cases involved potentially misleading speech related to otherwise lawful activity. *See Peel*, 496 U.S. at 110 (examining regulation of lawyers' claims of being "certified" or a "specialist"); *Boggs*, 622 F.3d at 636 (examining regulation of commercial statements related to the marketing of milk products). In contrast, it is inherently misleading to advertise a product that its intended audience may not legally purchase because it inherently implies that they may do so.

> **2.** **AB 2571 serves significant government interests in protecting minors and the general public from firearm-related injuries and deaths.**

As the Supreme Court has recognized, a state has "a compelling interest in protecting the physical and psychological well-being of minors." *Sable Commc'ns*

*of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). Furthermore, "the government may have a compelling interest in protecting minors from certain things that it does not for adults." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 945 (9th Cir. 1997). Consistent with these basic principles, AB 2571 declares that the State has "a compelling interest in ensuring minors do not possess these dangerous weapons [*i.e.*, firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." *See* 3-ER-453. These are undeniably compelling interests.

The Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." *See* 3-ER-452. This finding is borne out by the facts: "[i]n 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries." *See* 3-ER-500. Furthermore, as of the date on which Defendant's opposition to Plaintiffs' preliminary injunction motion was submitted, there had been at least 169 unintentional shootings by children in 2022, resulting in 74 deaths and 104 injuries nationally. *See* 3-ER-443-45. And in 2020, for the first time, firearms-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide for children and adolescents. *See* 3-ER-434, 3-ER-509.

Plaintiffs admit, "[t]o be sure, the State may have a general public safety interest in preventing 'gun violence' or even a specific interest in stopping minors

from illegally obtaining firearms." OB 48. And as the district court noted, Plaintiffs claimed in their initial motion briefing that "the State generally 'has a substantial interest in preventing violence against its citizens,' and they do not now argue that the State's 'interest in protecting the physical and psychological well-being of minors' is not compelling." 1-CR-28. Notwithstanding this concession, Plaintiffs now attempt to cast doubt on whether these interests are "substantial." They claim that "a general interest in protecting Californians from gun violence is far too abstract to be taken seriously—even under a commercial speech analysis." *See* OB 35. This claim oversimplifies the State's detailed basis for its interests, as described above.

Moreover, as explained above, the prohibition on firearm possession by minors is the rule, not the exception. Therefore, as the district court correctly concluded, "because [California] already outright forbids firearm sales to minors, it has likewise an interest in taking measures designed to effectuate that restriction." *See* 1-ER-28. In any event, as evidenced by the bill itself, the State's interest arises from safety concerns regarding the *illegal* possession and use of firearms by minors. *See* 3-ER-453 ("In recognition of these facts, the Legislature has already prohibited minors from possessing firearms, except in certain limited circumstances.").

The government interests explicitly stated by the Legislature in AB 2571 easily satisfy the "substantial state interest" prong of the analysis.

### 3. AB 2571 directly advances the State's significant government interests.

Next, under the *Central Hudson* test, "a government body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 762 (1993). "[E]mpirical data [need not] come . . . accompanied by a surfeit of background information," and such restrictions may be "based solely on history, consensus, and 'simple common sense.'" *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (quotation marks omitted).

The Supreme Court has long held that the government may restrict advertising in order to dampen demand, and thereby advance a substantial government interest. *See, e.g.*, *United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993).[8] As described above, the Legislature found—and the factual record it relied on demonstrates—that the illegal possession of firearms by minors constitutes a serious health and safety risk to children and other residents of this

---

[8] The State has used a similar policy approach in regulating alcohol advertising directed at minors. *See* Cal. Bus. & Prof. Code § 25664 (prohibiting "[t]he use, in any advertisement of alcoholic beverages, of any subject matter, language, or slogan addressed to and intended to encourage minors to drink the alcoholic beverages").

state. Further, as the Legislature noted, studies have linked the influence of advertising to the use of certain products by youth. *See* 3-ER-476 ("Research on the effects of advertising has shown that they may be responsible for up to 30% of underage tobacco and alcohol use.") (citing John P. Pierce, Ph.D. et al., *Tobacco Industry Promotion of Cigarettes and Adolescent Smoking*, 279 J. OF AM. MED. ASS'N 511, 511-15 (1998)). Conversely, studies have shown that *restrictions* on advertising are associated with the *decreased* use of certain products by youth. *See id.* ("On the other hand, restrictions on alcohol advertising are associated with both (1) lower prevalence and frequency of adolescent alcohol consumption; and (2) older age of first alcohol use.") (citing Mallie J. Paschall, Ph.D. et al., *Alcohol Control Policies and Alcohol Consumption by Youth: A Multi-National Study*, 104 ADDICTION 1849-55).

As the Legislature recognized at the time of the bill's passage, members of the firearm industry have been directly advertising and marketing firearms to children. *See* 3-ER-422; 3-ER-453 (observing that "firearms manufacturers and retailers continue to market firearms to minors"). By restricting such advertising and marketing, and thereby reducing demand for firearm-related products among minors, a population that is particularly susceptible to marketing appeals, AB 2571

27

directly advances the State's goals of reducing gun violence perpetrated by and against minors and others, both intentional and unintentional.[9]

As the district court observed, other Circuit Courts of Appeals have held that similar restrictions on alcohol and tobacco advertising directly advanced several states' interests in decreasing demand for those products among college students and minors, respectively (*see* 1-ER-33-35), which Plaintiffs do not address in their briefing. For example, in *Educational Media Company at Virginia Tech, Incorporated v. Swecker*, 602 F.3d 583 (4th Cir. 2010), the Fourth Circuit examined a restriction on alcohol advertising communications in college or university publications that were "(1) prepared, edited, or published primarily by its students; (2) sanctioned as a curricular or extracurricular activity; and (3) distributed or intended to be distributed primarily to persons under 21 years of age." *Swecker*, 602 F.3d at 587. The Fourth Circuit held that "[t]hough the correlation between advertising and demand alone is insufficient to justify advertising bans in every situation," the regulated publications "primarily

---

[9] Plaintiffs mischaracterize the State's justification for AB 2571 as based on a "bare assertion—without proof—that it will somehow deter the (already illegal) sale of firearms to minors." *See* OB 12. As Defendant has demonstrated, there are additional justifications at play, including that AB 2571 is meant to reduce the overall likelihood that minors will *illegally use* firearm-related products, not just purchase them. Indeed, once demand for a product is created by advertising, consumers may seek to obtain the product through means other than direct purchase.

target[ed] college students and play an inimitable role on campus," and it was counterintuitive to think that advertisers would not choose to promote alcohol products in those publications if they did not believe those advertisements would be effective. *Id.* at 590. And in *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012), the Sixth Circuit upheld bans on distributing free tobacco samples, tobacco branding of non-tobacco merchandise, and tobacco-branded sponsorships of events, observing that a claim "that there is no causal connection between product advertising and the consumer behavior of children . . . stretches the bounds of credulity, even in the absence of the extensive record submitted by the government, which indicates the contrary." *Discount Tobacco*, 674 F.3d at 539-40.

Plaintiffs' claims that Defendant has failed to satisfy this *Central Hudson* prong are unavailing. First, Plaintiffs are wrong in claiming that the district court shifted the burden of showing that AB 2571 advances the State's interests to them. *See* OB 11, 16. "It is well established that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Edenfield v. Fane*, 507 U.S. 761, 770-71 (quoting *Bolger*, 463 U.S. at 71, n.20). Plaintiffs do not cite to any specific assertion of the district court's order in support of their proposition. And that order provides ample evidence that it correctly analyzed the clams in accordance with the appropriate burden allocation. *See, e.g.*, 1-ER-38

29

("Here, the State has shown that the 'harms of [gun violence] it recites are real and that its restriction [on advertising unlawful firearm transactions to minors] will in fact alleviate them to a material degree." (emphasis added)); 1-ER-39 ("Given the foregoing, it follows that the State has shown that it is reasonable to conclude that restricting advertising of firearm-related products 'designed, intended, or reasonably appear[ing] to be attractive to minors' would reduce the unlawful purchase and possession of firearms by minors. Accordingly, the Court concludes that plaintiffs are unlikely to successfully prove that AB 2571 fails to materially and directly advance the State's substantial interests." (internal citation omitted)).

Plaintiffs also argue that AB 2571 "builds on the deceptive claim that minors may not lawfully possess firearms in California" and "subtly morphs the State's pretextual interest in protecting minors from physical harm into an illegitimate interest in limiting the exposure of minors to certain speech the Legislature finds too harmful for them to hear." *See* OB 37; *see also id.* at 24. Again, this argument fails to appropriately acknowledge the prohibition on possession of firearms by minors except in very limited circumstances. And it conflates a minor's limited ability to use or possess a firearm under supervision with a minor's ability to obtain and use a firearm on their own, which they may not do.

Plaintiffs' reliance on *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) (*see* OB 18-20) for the proposition that "speech about lawful products available to

adults" may not be regulated "just because minors might be exposed to the message" (*see* OB 18) is unavailing in this context. The Supreme Court in that case invalidated Massachusetts' effort to discourage tobacco use by minors by instituting a much broader ban on "any oral, written, graphic, or pictorial statement or representation . . . the purpose or effect of which is to promote the use or sale of the product"—that is, without regard to any attractiveness to minors—outdoors and within 1,000 feet of a school or playground. *See Lorillard*, 533 U.S. at 536. Further, a statute prohibiting the advertising or marketing of firearms in a way that is reasonably attractive to minors does not regulate speech in the same way as the challenged regulations in *Lorillard* and *Sorrell* if the narrow audience of the speech cannot legally purchase firearms themselves, and especially if the statute explicitly permits other avenues of communication promoting lawful firearm-related activities. *See* § 22949.80(a)(3); *cf. Lorillard*, 533 U.S. at 562 (noting the regulations at issue "would constitute *nearly a complete ban* on the communication of truthful information about smokeless tobacco and cigars to *adult* consumers") (emphasis added); *Sorrell*, 564 U.S. at 576 (noting regulated speech at issue was "more benign and, many would say, beneficial" because "[i]f pharmaceutical marketing affects treatment decisions, it does so because doctors find it persuasive").

31

Indeed, Plaintiffs' reliance on *Sorrell* (*see* OB 31-32, 37) is inapposite. In that case, the Supreme Court held that a prohibition on pharmacies selling prescriber-identifying information for use in marketing by pharmaceutical manufacturers only indirectly served the state's interest in protecting physician confidentiality and promoting public health and did not concern "false or misleading speech." Unlike the regulation in that case, AB 2571 does not restrict speech designed, intended, or reasonably appearing attractive to an audience of "sophisticated and experienced" consumers but an audience of relatively unsophisticated minors who may not legally purchase the product in question. Similarly, as the district court observed, the restriction held unconstitutional in *Carey v. Population Services International*, 431 U.S. 678 (1977) (*see* OB 20, 38), restricted the advertising of contraceptives "under any condition whatsoever." *See* 1-ER-37 (citing *Carey*, 431 U.S. at 681 n.1). In contrast, AB 2571 operates much more narrowly to address its concerns.

*Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011) (*see* OB 21-22) invalidated content-based restrictions on *non-commercial* speech concerning "violent video games" that "communicate[d] ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium[.]" *See Brown*, 564 U.S. at 790. Thus, unlike here, the restrictions were subject to the most demanding standard of review—strict scrutiny. And to the extent Plaintiffs argue that *Brown* is

32

relevant because "the State has relied on claims about violence committed by minors to prop up its speech ban" (*see* OB 20), the relevant data and the materials cited to in AB 2571's legislative history demonstrate that the dangers of firearm possession by minors arise not only from intentional "violent" acts, but unintentional acts as well (*see* 3-ER-417; 3-ER-443-45; 3-ER-500).

### 4. AB 2571 sweeps no further than necessary to serve the State's significant interests.

The next prong of the *Central Hudson* test "complements" the previous prong by requiring a restriction on commercial speech to be not "more extensive than necessary to serve the interests that support it." *Greater New Orleans Broad. Ass'n, Inc. v. U.S.*, 527 U.S. 173, 188 (1999). In analyzing this prong, courts must look for a fit between the government's ends and the means chosen to accomplish those ends that are reasonable, representing "not necessarily the single best disposition but one whose scope is in proportion to the interest served . . . ." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (quotation marks omitted). So long as a statute falls within those bounds, courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Id.* Here, as demonstrated above, AB 2571 regulates only a narrow category of commercial speech—that offering firearms, their components, and accessories for sale. Accordingly, it sweeps no further than necessary. *See Swecker*, 602 F.3d at 590 (finding regulation on alcohol advertising in college

newspapers to be narrowly tailored where regulation was "not a complete ban" on such advertising).

Nevertheless, Plaintiffs argue that AB 2571 is overbroad because it "includes communications that are equally attractive to adults who have a right to obtain information about such products to make informed decisions for both themselves and their children." OB 39. In so arguing, they point to the Legislature's statement that the prohibition "applies whether the media is directed to children or a general audience. In other words, it applies to all marketing, regardless of the target audience." *See id.* (quoting 3-ER-462). Plaintiffs ignore that AB 2571 narrowly regulates advertising and marketing communications that are "designed, intended, or reasonably appear[] to be attractive to minors" as demonstrated by a variety of non-exclusive factors. *See* § 22949.80(a)(2). Indeed, these factors may include that they are "part of a marketing or advertising campaign designed with the intent to appeal to minors" (*id.* § 22949.80(a)(2)(D)) and/or "placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults" (*id.* § 22949.80(a)(2)(F)). *See Discount Tobacco*, 674 F.3d at 541 (rejecting plaintiffs' argument that marketing ban on tobacco samples was not narrowly tailored because it "cast[] an unduly broad net that sweeps in vital speech to Plaintiffs' adult tobacco customers" where samples were "easily accessible source of

[tobacco] products to young people"). And even so, an advertising or marketing communication is subject to the prohibition *only* if a court determines that it meets a "totality of the circumstances" test, a legal standard that courts routinely apply in various other contexts.[10]

Plaintiffs also are mistaken in claiming that AB 2571 broadly infringes on minors' right to receive lawful speech about firearms.[11] *See* OB 23-25, 39. In a commercial speech analysis, "the least restrictive means is not the standard" (*Lorillard*, 533 U.S. at 556), but as noted above, AB 2571 does not cover communications offering or promoting activities such as shooting sports or events, training programs, and other similar activities, which are situations in which

---

[10] Plaintiffs additionally argue that the State's existing notice and disclaimer requirements about firearms should be sufficient to address the State's interests and the Court must hold that AB 2571 is "fatally overbroad" because it does not include an express disclaimer provision. *See id.* at 40-43. This argument was not raised in the district court and as such, this Court should disregard it. Regardless, it is entirely within the prerogative of the Legislature to determine that existing notice requirements are insufficient and buttress that mechanism with another to more effectively achieve its goal. *See Fox*, 492 U.S. at 480.

[11] To emphasize this assertion, Plaintiffs embed in their Opening Brief two visual advertisements that are not part of the appellate record, with accompanying argument. *See* OB 17, 23-24. Yet Plaintiffs have not moved this Court to supplement the record under Federal Rule of Appellate Procedure 10(e), or made any formal request to include any of this new evidence. Especially as the district court has not yet had the opportunity to rule on the authentication and admission of the evidence or made any factual determinations based thereon, it should be disregarded by this Court.

minors are permitted to use (but not buy) firearms, so long as the required controls are in place.

The cases Plaintiffs cite are inapposite. In *Board of Education, Island Trees Union Free School District No. 26. v. Pico*, 457 U.S. 853 (1982) (*see* OB 24-25), the Supreme Court invalidated a policy on the removal of books from a high school library based on their "educational suitability," "good taste," "relevance," and "appropriateness to age and grade level" (*see Pico*, 457 U.S. at 857) because "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge" (*id.* at 866 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 482)). In contrast, AB 2571 explicitly does not apply to communications allowing minors to learn about and participate in lawful firearm-related activity. Similarly, the Supreme Court in *Erznozik v. City of Jacksonville*, 422 U.S. 205 (1975) (*see* OB 37) invalidated a restriction whose "effect [was] to deter drive-in theaters from showing movies containing any nudity, *however innocent or even educational*" (*Erznozik*, 422 U.S. at 211 (emphasis added)). AB 2571 does not regulate any core educational or artistic speech of the type regulated in that case, but commercial speech.

Moreover, Plaintiffs reiterate a "question" they raised for the first time at oral argument regarding whether they would run afoul of AB 2571 if they printed or displayed disclaimers in their publications or advertisements. *See* OB 9, 35, 42

(citing 2-ER-79-80). This issue had not been raised in any briefing, and they appeared to pose that question in support of a notion that the law is too vague and overbroad to be understood. *See* 2-ER-66-67. Plaintiffs have not plead any independent Due Process claim on that basis, and in any event, they make no effort to explain how a disclaimer would be sufficient to address the Legislature's concerns in adopting AB 2571. Indeed, the notion that a relatively unsophisticated minor would properly appreciate the effect of a disclaimer or warning within an advertisement that otherwise violates the statute is doubtful if "research indicates that possessing advertising knowledge does not necessarily enable children to cope with advertising in a conscious and critical manner." *See* 3-ER-439.

## II.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR FIRST AMENDMENT ASSOCIATION CLAIMS.

Plaintiffs claim that "for the same reasons AB 2571 offends the First Amendment right to speech, it also offends the right of [Plaintiffs] to associate." OB 44. But they concede that further development of the facts on this claim may be appropriate because AB 2571 was amended while their preliminary injunction motion was pending. *Id.* For that reason, they are not entitled to a preliminary injunction on this claim.

But in any event, as the district court found, Plaintiffs are unlikely to succeed on their freedom of association claim because that claim is duplicative of their

unavailing speech claims. And as the district court found, AB 2571 does not restrict the promotion of any type of educational, recreational, or competitive event, nor does it restrict solicitation of membership of any organization or political speech of any kind, and thus their association rights are not implicated. 1-ER-48.

## III.  THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR EQUAL PROTECTION CLAIM.

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). "But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* (internal quotation marks and brackets omitted) (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)). But mere allegations that the government is treating plaintiffs differently from other similarly-situated individuals are insufficient to sustain an Equal Protection claim. *See Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura,* 371 F.3d 1046, 1055 (9th Cir. 2004) (conclusory allegations of Equal Protection violation, unaccompanied by allegations identifying others similarly situated or alleging how they are treated differently from plaintiff, are insufficient to withstand motion to dismiss).

38

Here, Plaintiffs allege in conclusory fashion that AB 2571 "targets only 'firearm industry members,'" a purportedly unpopular group, and that government officials adopted the law solely out of animus toward Plaintiffs. *See* OB 45. This fails to identify any protected class. Indeed, Plaintiffs' claims are duplicative of, and subsumed by, their flawed First Amendment claim. Where, as here, a plaintiff has failed to allege membership in a protected class, and speech is the only fundamental right underpinning the equal protection claim, the claim "rise[s] and fall[s] with the First Amendment claims." *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012).

## IV. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

Even if Plaintiffs had demonstrated a likelihood of success on the merits, they would still need to demonstrate that they would suffer irreparable harm if an injunction were not issued. It is true that, as Plaintiffs point out, a demonstration of even minimal loss of First Amendment freedoms constitutes "irreparable harm" for purposes of seeking injunctive relief. *See* OB 46 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But as demonstrated above and as the district court correctly determined, Plaintiffs are not likely to succeed on the merits because AB 2571 does not unconstitutionally burden any of their constitutional rights. For the same reason, they cannot show they will suffer irreparable harm in the absence of preliminary injunctive relief.

## V. THE DISTRICT COURT CORRECTLY FOUND THAT THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST DO NOT FAVOR AN INJUNCTION.

Finally, there exist independent grounds to uphold the district court's denial of a preliminary injunction—separate and apart from any potential likelihood of success on the merits or showing of irreparable harm. *See, e.g.*, *Tracy Rifle & Pistol LLC v. Harris*, 637 Fed.App'x 401, 402 (9th Cir. 2016) (holding that although district court's finding that a restriction on commercial speech to be likely unconstitutional was not "illogical, implausible, or without support in the record," denial of preliminary injunction was not abuse of discretion where the magnitude of potential harm was minimal and balance of equities did not tip in plaintiffs' favor).

Even if Plaintiffs could show that AB 2571 is likely unconstitutional and they would suffer irreparable harm in the absence of a preliminary injunction, the balance of the equities (which, where the defendant is a government official, includes analysis of the public interest) weighs against a preliminary injunction. *See Johnson v. Brown*, 567 F. Supp. 3d 1230, 1266 (D. Or. 2021) (balancing equities even where plaintiffs asserted that their "fundamental constitutional rights" were implicated). "[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *FTC. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (quoting *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989)).

First, the balance of the equities does not weigh in favor of the issuance of a preliminary injunction because AB 2571 promotes "a compelling interest in ensuring that minors do not possess these dangerous weapons [i.e., firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." *See* 3-ER-453. Indeed, Plaintiffs seek an order barring *any* enforcement of the statute pending trial, yet they do not and cannot contend that it lacks *any* legitimate sweep. Although Plaintiffs have asked for an injunction of AB 2571 on its face, they have conceded that AB 2571 does, in fact, ban at least some speech that is "inherently misleading." *See* 1-SER-16 ("So while AB 2571 *might technically ban misleading speech promoting the unlawful sale of firearms to minors*, it is in no way limited to such speech.") (emphasis added).

Moreover, the significance of the harm that could result from the improper issuance of an injunction would be substantial. "The costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave," and those costs would impact both "members of the public" and "the Government which is tasked with managing handgun violence." *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016). The same cautions apply here.

41

Furthermore, the public interest would not be served by a preliminary injunction because "gun violence threatens the public at large." *See Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1283 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (denying preliminary injunction where the public interest factor weighed against issuance of an injunction); *see also Wiese v. Becerra*, 263 F. Supp. 3d 986, 994 (E.D. Cal. June 29, 2017) (finding that the public interest is furthered "by preventing and minimizing the harm of gun violence"); *Rupp v. Becerra*, 2018 WL 2138452, at *13 (C.D. Cal. May 9, 2018) ("[B]ecause the objective of the [challenged firearms law] is public safety, Plaintiffs fail to show that an injunction would be in the public interest."); *Zaitzeff v. City of Seattle*, No. C17-0184JLR, 2017 WL 2169941, at *3 (W.D. Wash. May 16, 2017) (denying motion for preliminary injunction based in part on a finding that a local ordinance banning certain uses of weapons, including nunchucks and fixed-blade knives, "serves a public safety interest").

Finally, the preliminary relief Plaintiffs seek here should also denied because they effectively seek to litigate the merits of the dispute without a motion for summary judgment or trial. "[C]ourts generally disfavor preliminary injunctive relief that is identical to the ultimate relief sought in the case." *See Progressive Democrats for Soc. Just. v. Bonta*, No. 21-CV-03875-HSG, 2021 WL 6496784, at *11 (N.D. Cal. July 16, 2021) (holding that "it is not usually proper to grant the

moving party the full relief to which he might be entitled if successful at the conclusion of a trial") (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir. 1963); *see also Hennessy-Waller v. Snyder*, 529 F. Supp. 3d 1031, 1046 (D. Ariz. 2021), *aff'd sub nom. Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022) (denying motion "because the preliminary injunctive relief sought is identical to the ultimate relief sought in the underlying complaint" and it would be "premature to grant such relief prior to discovery and summary judgment briefing"). The relief sought by Plaintiffs here is the same relief that Plaintiffs would obtain if they prevailed on their claims after summary judgment or a trial, weighing heavily against issuance of a preliminary injunction.

As the district court correctly recognized, "the State, both in the Legislature's findings made in enacting AB 2571, and the case law recognizing the public interest in curbing gun violence, identifies strong countervailing factors weighing against issuance of an injunction enjoining AB 2571." 1-ER-52 (internal citations omitted). Plaintiffs do not address the district court's finding on that score or explain why it constituted an abuse of discretion, instead merely reiterating their (incorrect) claims that AB 2571 is unconstitutional and that they will suffer irreparable harm if an injunction is not granted. *See* OB 47-48. Thus, even assuming Plaintiffs have satisfied the initial requirements for issuance of a preliminary injunction, Plaintiffs have failed to demonstrate that the district court's

finding that the balance of equities and the public interest did not favor them was so erroneous as to constitute an abuse of discretion. At the very minimum, the district court's denial of a preliminary injunction should be affirmed for that reason.

## CONCLUSION

The district court's denial of Plaintiffs' motion for a preliminary injunction should be affirmed.

Dated: January 27, 2023        Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General


*/s/ Kevin J. Kelly*
KEVIN J. KELLY
Deputy Attorney General
*Attorneys for Defendant-Appellee*
*Rob Bonta, in his Official Capacity as Attorney*
*General of the State of California*

SA2022305162
65708932.docx

44

22-56090

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**JUNIOR SPORTS MAGAZINES INC. ET AL.,**

Plaintiffs-Appellants,

**v.**

**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA ET AL,**

Defendant-Appellee.

## STATEMENT OF RELATED CASES

To the best of our knowledge, there are no related cases pending in this court.

Dated: January 27, 2023            Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Kevin J. Kelly*
KEVIN J. KELLY
Deputy Attorney General
*Attorneys for Defendant-Appellee Rob Bonta*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  22-56090

I am the attorney or self-represented party.

**This brief contains**  10,233  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated _____ .

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/Kevin J. Kelly   **Date**  January 27, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

Case
Name: **Junior Sports Magazines Inc. et al. v. Rob Bonta et al.**

No. **22-56090**

I hereby certify that on January 27, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

Defendant-Appellee's Answering Brief
Form 8. Certificate of Compliance for Briefs
Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on January 27, 2023, at Los Angeles, California.

Kevin J. Kelly
Declarant

*/s/ Kevin J. Kelly*
Signature

SA2022305162
65708416.docx