Case No. 22-56090

In the United States Court of Appeals
for the Ninth Circuit

JUNIOR SPORTS MAGAZINES INC., et al.,
*Plaintiffs-Appellants,*

v.

ROB BONTA,
in his official capacity as Attorney General of the State of California,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:22-cv-04663-CAS-JC

**APPELLANTS' REPLY BRIEF**

C.D. Michel                          Donald Kilmer
Anna M. Barvir                       Law Offices of Donald Kilmer, APC
MICHEL & ASSOCIATES, P.C.            14085 Silver Ridge Rd.
180 E. Ocean Blvd., Suite 200        Caldwell, Idaho 83607
Long Beach, CA 90802                 (408) 264-8489
(562) 216-4444                       don@dklawoffice.com
cmichel@michellawyers.com

*Attorneys for Plaintiffs-Appellants*

February 17, 2023

# TABLE OF CONTENTS

**Page**

Table of Contents................................................................................................. i

Table of Authorities ......................................................................................... iii

Introduction ......................................................................................................... 1

Argument............................................................................................................... 2

I.     Appellants Are Likely to Succeed on the Merits of Their Claims ....................... 2

     A.     AB 2571 Violates the First Amendment Right to Free Speech................ 2

           1.     *Central Hudson* is not the proper standard for analyzing AB 2571 because it restricts both commercial and noncommercial speech. ..................................................... 2

           2.     AB 2571 is an impermissible content- and viewpoint-based speech restriction. ....................................................................... 5

           3.     Even under *Central Hudson*, AB 2571 fails. ....................................... 9

                  a.     AB 2571 restricts truthful speech about lawful activity..... 10

                  b.     The State has not met its burden to prove that AB 2571 serves a substantial government interest. ........................... 11

                  c.     The State has not met its burden to prove that AB 2571 directly advances the governmental interest asserted. ....... 14

                  d.     The State has not met its burden to show that AB 2571 is "narrowly tailored" to its asserted interest. .................... 17

     B.     AB 2571 Violates the Right to Freedom of Association .......................... 20

     C.     AB 2571 Violates the Equal Protection Clause ......................................... 21

II.     The Remaining Factors Support Granting a Preliminary Injunction ................ 21

     A.     Injunctive Relief Is Necessary to Avoid Irreparable Harm...................... 21

     B.     The Balance of the Equities and Public Interest Favor an Injunction ... 22

Conclusion................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Found. v. Bonta,*
__ U.S.__, 141 S. Ct. 2373 (2021) ................................................................. 20

*Ashcroft v. ACLU,*
535 U.S. 564 (2002) ............................................................................. 5, 16

*Baggett v. Bullitt,*
377 U.S. 360 (1964) ................................................................................. 19

*Barr v. Am. Assoc. of Pol. Cons., Inc.,*
__ U.S. __, 140 S. Ct. 2335 (2020) .......................................................... 7

*Broaderick v. Oklahoma,*
413 U.S. 601 (1973) ................................................................................. 16

*Brown v. Entm't Merchants Ass'n,*
564 U.S. 786 (2011) ........................................................................ *passim*

*Carey v. Population Servs. Int'l,*
431 U.S. 678 (1997) ................................................................................. 15

*Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n of Cent. Hudson Gas & Elec. Corp.,*
447 U.S. 557 (1980) ........................................................................ *passim*

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
__ U.S. __, 142 S. Ct. 1464 (2022) ..................................................... 2, 5, 6

*Contest Promotions, LLC v. City & Cnty. of San Francisco,*
874 F.3d 597 (9th Cir. 2017) ..................................................................... 3

*Edenfield v. Fane,*
507 U.S. 761 (1993) ................................................................................. 15

*Elrod v. Burns,*
427 U.S. 347 (1976) ............................................................................. 4, 21

*Gibbons v. Ogden*,
    22 U.S. 1 (1824) ................................................................................ 13

*Greater New Orleans Broad. Ass'n v. U.S.*,
    527 U.S. 173 (1999) ............................................................................ 6

*Greater New Orleans Broad. Ass'n v. U.S.*,
    528 U.S. 173 (1999) .......................................................................... 14

*Index Newsps. LLC v. U.S. Marshalls Serv.*,
    977 F.3d 817 (9th Cir. 2020) ............................................................ 22

*Lorillard Tobacco v. Reilly*,
    533 U.S. 525 (2001) ..................................................................... 3, 17

*Matal v. Tam*,
    __ U.S.__, 137 S. Ct. 1744 (2017) ............................................ 4, 5, 9

*N.Y. Times Co. v. U.S.*,
    403 U.S. 713 (1971) ........................................................................... 4

*NAACP v. Button*,
    371 U.S. 415 (1963) ......................................................................... 19

*NAACP v. Patterson*,
    357 U.S. 449 (1958) ......................................................................... 20

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ................................................................. 3, 5, 6, 7

*Reno v. ACLU*,
    521 U.S. 844 (1997) ................................................................... 19, 20

*Retail Digital Network, LLC v. Prieto*,
    861 F.3d 839 (9th Cir. 2017) ............................................................. 4

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ......................................................................... 20

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ......................................................................... 15

*Silvester v. Harris*,
    843 F.3d 816 (9th Cir. 2016) ........................................................... 15

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ...............................................................*passim*

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (U.S. 2002) ............................................ 15

*Thornhill v. Alabama*,
310 U.S. 88 (1940) ................................................ 19, 20

*Tracy Rifle & Pistol LLC v. Harris*,
339 F. Supp. 3d 1007 (E.D. Cal. 2018) ....................... 15

**Statutes**

Cal. Bus. & Prof. Code § 22949.80.................................*passim*

Cal. Penal Code § 27505 ....................................... 10, 18

Cal. Penal Code § 27510 .............................................. 10

Cal. Penal Code § 29615 ....................................... 10, 18

Cal. Penal Code § 29655 .............................................. 10

**Other Authorities**

Agence France Presse, *US Gunmaker Unveils Semi-automatic Rifle Marketed
to Kids* (Feb. 18, 2022), https://www.barrons.com/news/us-
gunmaker-unveils-semi-automatic-rifle-marketed-to-kids-
01645236607 (last visited Feb. 16, 2023) .................................. 12

Anna North, *Marketing Guns to Children*, N.Y. Times (Feb. 19, 2022),
*available at*
https://archive.nytimes.com/takingnote.blogs.nytimes.com/2016/02
/19/marketing-guns-to-children/ (last visited Feb. 16, 2023)................................. 12

Everytown for Gun Safety,
https://everytownresearch.org/maps/notanaccident/(last visited
Feb. 16, 2023)..................................................................... 13

Everytown for Gun Safety, *Preventable Tragedies: Findings from the
#NotAnAccident Index* (Aug. 30, 2021),
https://everytownresearch.org/report/notanaccident/ (last visited
Feb. 16, 2023)..................................................................... 13

Everytown Research & Policy, *Gun Laws in California: #1 in the Country for Gun Law Strength* (last updated Jan. 12, 2023), *available at* tinyurl.com/2p82sf43 (last visited Feb. 16, 2023) ...................................................... 16

Jaclyn Diaz, *High Gun Sales and More Time at Home Have Led to More Accidental Shootings by Kids* (Aug. 31, 2021), https://www.npr.org/2021/08/31/ 1032725392/guns-death-children (last visited Feb. 16, 2023) ............................................................. 12

Josh Sugarmann, *"Start Them Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children* (Violence Policy Center 2016), *available at* https://www.vpc.org/studies/startthemyoung.pdf (last visited Feb. 16, 2023)...................................................................................... 7

Judy Schaecter, *Guns in the Home: Keeping Kids Safe* (last updated Nov. 11, 2022), https://www.healthychildren.org/ English/safety-prevention/at-home/Pages/Handguns-in-the-Home.aspx ..................................... 13

U.S. Const. amend. I ...............................................................................*passim*

U.S. Const. amend. II............................................................................. 1, 22

U.S. Const. amend. X................................................................................ 13

U.S. Const. amend. XIV ........................................................................... 21

U.S. Const. art. I, § 8 ................................................................................ 13

## INTRODUCTION

Through Assembly Bill 2571, California is engaged in a "bait & switch" scheme—burdening First Amendment speech rights to further its agenda against the Second Amendment. But the State's attempt to weaponize the First Amendment to take down the Second is plainly unconstitutional. Indeed, AB 2571 is a content-based and viewpoint-discriminatory statute that "burdens disfavored speech by disfavored speakers." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011). And although California claims its law is intended to deter the sale of firearms to minors, that conduct is already illegal. Rather than enforce its existing laws, California enacted an overbroad, underinclusive, and hopelessly vague statute aimed at stopping firearm industry members (and only firearm industry members) from communicating about "firearm-related products" in a manner that might be considered "attractive to minors."

The State does not even try to rebut that AB 2571 suffers from these defects. Instead, it retreats to the commercial speech doctrine, insisting that *Central Hudson* allows it to regulate disfavored speech out of existence—even if that speech promotes constitutionally protected products—as long as the State decides the products at issue are "dangerous." But the First Amendment's robust protections do not collapse in the shadow of the Second Amendment. And viewpoint discrimination does not get a free pass just because the government claims to limit its speech regulation to the commercial arena.

In adopting AB 2571, California's goal was, at least in part, to destroy the sport of shooting for young people so that it might counter what the State perceives as the gun industry's promotion of a youth gun culture. This is an order of magnitude

1

greater than simple "commercial speech," and the First Amendment requires the strictest scrutiny of any attempt to engage in this sort of content-based censorship in the marketplace of ideas.

This Court should reverse the decision below, which denied Appellants' preliminary injunction motion, and remand for further proceedings.

## ARGUMENT

### I. APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

#### A. AB 2571 Violates the First Amendment Right to Free Speech

##### 1. *Central Hudson* is not the proper standard for analyzing AB 2571 because it restricts both commercial and noncommercial speech.

Appellants seek to engage in all manner of protected expression—including political, ideological, and educational speech, as well as commercial speech—about the lawful use of "firearm-related products." Laws that impact both commercial and noncommercial speech—like AB 2571—are not subject to a lower tier of scrutiny under *Central Hudson Gas & Electric v. Public Service Commission of Central Hudson Gas & Electric Corp.*, 447 U.S. 557 (1980). This is not controversial. Just this past term, the Supreme Court made clear that the commercial speech doctrine is out of place when a state law "admit[s] of no exception for noncommercial speech" yet covers "commercial and noncommercial speech alike." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, __ U.S. __, 142 S. Ct. 1464, 1471 (2022).

Though the State claims AB 2571 restricts only commercial speech, the law plainly sweeps in—and tries to suppress—a broad range of noncommercial speech as well. In fact, this case demonstrates well why it is doubtful that "that it is even

2

possible to draw a coherent distinction between commercial and noncommercial speech." *Lorillard Tobacco v. Reilly*, 533 U.S. 525, 575 (2001) (Thomas, J., concurring). For example, the statute restricts Appellant Junior Sports Magazines from publishing articles endorsing products designed for *use* by minors—activity expressly protected by both the Constitution and state law—because such articles promote firearm-related products that are appropriate for younger shooters. A.O.B.30; 2-ER-182-83, 189. What's more, Junior Sports has ceased California distribution of *Junior Shooters* magazine altogether because it relies on advertising income that AB 2571 prohibits. 2-ER-182-83. This means that California readers are being denied access not just to traditional advertising, but to the magazine's political and educational articles, as well.

Against that backdrop, the State's resort to *Central Hudson* is misplaced. The State argues that neither *Sorrell* nor *Reed* altered the *Central Hudson* test for commercial speech restrictions. R.B.18-19. But this misses the point. Even if *Central Hudson*'s intermediate scrutiny analysis remains the standard for commercial speech restrictions that *do not* discriminate based on viewpoint, Supreme Court precedent could not be clearer that laws that *do* single out speech for disfavored treatment based on viewpoint cannot be upheld under intermediate scrutiny. *See Sorrell*, 564 U.S. at 571.

The State's cases are thus inapt. The State first relies on *Contest Promotions, LLC v. City & County of San Francisco*, 874 F.3d 597 (9th Cir. 2017), which concerned a regulation banning new billboards but allowing onsite signs related to business activities taking place on the premises. But in that case, "[n]o party dispute[d] that Plaintiff's signs [we]re 'commercial.'" *Id.* at 601. And the court made no determination that the ordinance was either content-based or viewpoint-discriminatory. *Id.* Similarly,

while the State is correct that *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839 (9th Cir. 2017) (en banc), held that *Sorrell* did not displace *Central Hudson* for run-of-the-mill commercial speech restrictions, the court had no occasion to opine on the proper test for restrictions that, like AB 2571, sweep in noncommercial speech and discriminate on the basis of viewpoint.

On the other hand, even when confronted with a close call over whether a restriction targets only commercial speech (thus triggering application of the *Central Hudson* test) or also restricts noncommercial speech (and must survive strict scrutiny), the Supreme Court has acknowledged that "the line between commercial and non-commercial speech is not always clear, as this case illustrates. [But i]f affixing the commercial label permits the suppression of *any* speech that may lead to political or social 'volatility,' free speech would be endangered." *Matal v. Tam*, __ U.S.__, 137 S. Ct. 1744, 1765 (2017) (emphasis added).

While the district court acknowledged that Appellants had argued that AB 2571 sweeps in protected noncommercial speech, it held that "the absence of a full factual record makes these questions too speculative to resolve" so "they are better considered on an as-applied basis." 1-ER-22. But the record shows that AB 2571—even as applied—was already censoring Appellants' noncommercial speech. *See, e.g.*, 2-ER-182-83, 186-87, 189, 190-92, 199, 211-12, 217-18. There was nothing speculative about that fact. Courts should not be reluctant to act, as the district court was below, when "First Amendment interests are either threatened or in fact being impaired at the time relief was sought." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (citing *N.Y. Times Co. v. United States,* 403 U.S. 713 (1971)).

4

In short, AB 2571 restricts both commercial *and* noncommercial speech, so the *Central Hudson* intermediate scrutiny test simply does not apply. And, as explained below, because AB 2571 is both content-based and viewpoint-discriminatory, the law violates the First Amendment under a straightforward application of Supreme Court precedent. *See City of Austin*, 142 S. Ct. at 1471. The district court erred in ruling otherwise, and this Court should correct that error.

> ## 2. AB 2571 is an impermissible content- and viewpoint-based speech restriction.

"As a general matter, government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790-91 (2011) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). That is why, beyond "a few limited exceptions for historically unprotected speech," *id.* at 791, content-based restrictions are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also Matal*, 137 S. Ct. at 1765 (Kennedy, J., concurring) ("Aside from these and a few other narrow exceptions, it is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys.").

AB 2571 is a textbook content-based restriction on speech. The law does not apply to all marketing; it applies only to marketing of "firearm-related product[s]." Cal. Bus. & Prof. Code § 22949.80(a)(1). On its face, then, the law regulates speech based on "the topic discussed." *City of Austin*, 142 S. Ct. at 1471. That is the *definition*

5

of a content-based restriction. Indeed, by singling out a "specific subject matter for differential treatment," AB 2571 regulates "speech [that] is facially content based." *Id.* (quoting *Reed*, 576 U.S. at 169).

AB 2571 is also viewpoint-discriminatory. On its face, the law "select[s] among speakers conveying virtually identical messages." *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 193-94 (1999). It does not apply to all firearms marketing targeting minors; it restricts *only* the speech of "firearm industry member[s]," as defined by the law. Cal. Bus. & Prof. Code § 22949.80(a)(1)-(2). And, in its effort to "fix" AB 2571 in response to this litigation, the legislature enacted a regime under which "firearms industry members" may convey a certain viewpoint but not others. *See id.* § 22949.80(a)(3). That is, they *may* communicate that firearms can be safely used by minors in the context of a hunting program or sport-shooting competition; they may *not* market their products as useful for self-defense if the speech might be attractive to minors. Not by accident, the law fixates on firearm-related speech by firearm-related actors because their speech is uniquely likely to communicate a viewpoint that California disfavors.

Laws that make such distinctions "are in serious tension" with the First Amendment because they often use speaker-based distinctions to smuggle in viewpoint-based distinctions. *Reed*, 576 U.S. at 168. So it is here. Under AB 2571, a gun retailer cannot publish materials containing "images or depictions of minors … to depict the use of firearm-related products," Cal. Bus. & Prof. § 22949.80(a)(2)(E), presumably because such materials promote the use of firearms. But the Giffords Law Center could use the very same images to advocate for laws stripping the rights of

minors to handle firearms. That is the definition of speaker-based discrimination that "reflects a content preference" and is presumptively unconstitutional. *Barr v. Am. Assoc. of Pol. Cons., Inc.*, __ U.S. __, 140 S. Ct. 2335, 2347 (2020) (quoting *Reed*, 576 U.S. at 170).

Still, by holding that Appellants' claim that AB 2571 censors noncommercial speech was "too speculative to resolve," 1-ER-22, and discounting the clear content- and viewpoint-discriminatory impact of AB 2571, the district court jumped right to a commercial speech analysis. It did so in error. For the record plainly shows not only that AB 2571 has the effect of silencing Appellants' noncommercial speech based on its viewpoint, but that was also the law's very intent.

For instance, the centerpiece of AB 2571's legislative record is "*Start Them Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children*, a booklet published by noted gun-control organization Violence Policy Center (VPC).[1] 3-ER-460, 465, 473, 474, 499, 500, 535 (cited with approval by the district court (1-ER-39), and relied on by the State below (3-ER-347, 369, 372)). It is a 45-page polemic that claims that the gun industry is facing a demographic collapse, and that the National Rifle Association, the National Shooting Sports Foundation, and Appellant Junior Sports Magazines are conspiring to create "replacement shooters to purchase its deadly products." 3-ER-380. Indeed, it argues that "the impetus for marketing to children is both 'fiscal and political.' In addition to the hoped-for financial benefits of

---

[1] Josh Sugarmann, *"Start Them Young" How the Firearms Industry and Gun Lobby Are Targeting Your Children* (Violence Policy Center 2016), *available at* https://www.vpc.org/studies/startthemyoung.pdf (last visited Feb. 16, 2023).

marketing guns to youth, a corollary goal is to ensure that such an effort will help maintain a pro-gun base for political action." 3-ER-396.

*Start Them Young* describes crimes and preventable accidents involving the misuse of firearms by minors. *See, e.g.*, 3-ER-384, 390. And, in a stunning leap of logic, it attributes these tragedies to the marketing of firearms to young people for lawful purposes by industry members, including Appellant's magazine, *Junior Shooters*. 3-ER-417. It also quotes young shooters describing their shooting experiences and favorite firearms-related products in *Junior Shooters* and similar publications. 3-ER-392, 395-96, 400-02. *Start Them Young* concludes with recommendations that include removing all guns from any home where children reside. 3-ER-421. And it advocates for criminalizing all possession of firearms by minors, even under adult supervision, thus destroying the youth shooting sports. 3-ER-422.

From the State's repeated reliance on *Start Them Young* in AB 2571's legislative history and (unironically) in this litigation, it is clear that AB 2571's real goal is to end the exposure of children to youth shooting sports today, so they do not become adults who enjoy the shooting sports tomorrow. That is the thesis of *Start Them Young* that the legislature relied on when it adopted AB 2571. And it is content- and viewpoint-based censorship of both commercial and noncommercial speech. Indeed, having already outlawed firearm sales to minors and unsupervised youth shooting activities, California now bars the very speech necessary to educate children (and their parents) about even lawful uses of firearms by minors. For instance, AB 2571 silences Appellants' messages about what types of firearms are available for beginner shooters,

where parents can purchase firearms appropriate for use with their children, and endorsements of firearm-related products necessary for youth shooting competitions.

The district court reviewed this evidence of content- and viewpoint-based censorship embodied by *Start Them Young* and adopted by the legislature. It even cited that publication in its order denying Appellants' motion for preliminary injunction. 1-ER-39. Yet the trial court somehow found that the contest for ideas between *Start Them Young* and *Junior Shooters* was too "speculative to resolve" and was therefore unworthy of judicial scrutiny. That was an error that this Court should correct.

### 3.  Even under *Central Hudson*, AB 2571 fails.

In "the ordinary case," the inquiry ends with the conclusion that a law is content- and viewpoint-based. *Sorrell*, 564 U.S. at 571. That said, if this Court undertakes a commercial-speech inquiry, the conclusion is the same. That is because, even "[u]nder *Central Hudson*, a restriction of speech must serve 'a substantial interest' and be 'narrowly drawn.'" *Matal v. Tam*, __ U.S.__, 137 S. Ct. 1744, 1764 (2017) (quoting *Cent. Hudson*, 447 U.S. at 564-65) ("The dispute between the parties over whether trademarks are commercial speech subject to the relaxed scrutiny outlined in *Central Hudson* … need not be resolved here because the disparagement clause cannot withstand even *Central Hudson* review.") This means, among other things, that "[t]he regulatory technique may extend only as far as the interest it serves." *Cent. Hudson*, 447 U.S. at 565.

Recall, the *Central Hudson* test invokes a four-part analysis. *Id.* at 566. Courts assess whether (1) the expression the state has regulated is lawful and not misleading; (2) the government has a "substantial" interest in regulating the speech; (3) "the

9

regulation directly advances the governmental interest asserted"; and (4) the regulation is not "more extensive than is necessary" to meet that interest. *Id.* The State has not met its burden at any step of the analysis.

          **a.**    ***AB 2571 restricts truthful speech about lawful activity.***

AB 2571 plainly regulates truthful, non-misleading speech about lawful activity. The words "false," "misleading," and "deceptive" appear nowhere in the statute. To the contrary, on its face, AB 2571 imposes liability for speech about lawful products even when that speech is neither false nor misleading. In arguing that AB 2571 fits within the tradition of regulating speech "that is misleading and concerns unlawful activity," however, the State blinks reality. R.B.21-23. In essence, the State's theory is that marketing that promotes youth firearm use misleads the listener into thinking that it is lawful for minors to use firearms. *See id.* But it *is* lawful for minors to use firearms. Indeed, California law *expressly* authorizes minors to possess and use firearms for lawful activities while under adult supervision or with adult permission. Cal. Penal Code §§ 27505, 27510, 29615, 29655.

The State does not dispute this. Nor could it. The record is clear that the legislature amended AB 2571 after this suit was filed in an overt concession that it was trying to regulate activity that was already protected. *See* 2-ER-233. The State is thus simply wrong to claim that "to market or advertise a firearm in a way that is attractive to minors" necessarily "concerns illegal activity" because it is illegal to *sell* a firearm to a minor in California. R.B.21-22. While a minor may not be authorized to *purchase* a gun, speech promoting youth gun *use*—speech that falls within AB 2571's ambit—promotes a presumptively *lawful* activity.

> **b.   The State has not met its burden to prove that AB 2571 serves a substantial government interest.**

The second *Central Hudson* factor requires the State to prove that it has a substantial government interest in restricting the speech covered by AB 2571. The State claims it has "a compelling interest in ensuring minors do not possess these dangerous weapons [firearms] and in protecting its citizens, especially minors, from gun violence and from intimidation by persons brandishing these weapons." R.B.24 (quoting 3-ER-453). To be sure, the State generally has a substantial interest in public safety and preventing violence against its citizens. But here, the State's evidence that minors in *unlawful* possession of firearms pose a significant threat to public safety is misleading, at best. And the State presents no evidence that minors in *lawful* possession threaten public safety at all.

As the district court observed:

> The Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." [Citation.] This finding is borne out by the facts: "[i]n 2021 there were approximately 259 unintentional shootings by children, resulting in 104 deaths and 168 injuries." [Citation.] Furthermore, to date, there have been at least 169 unintentional shootings by children in 2022, resulting in 74 deaths and 104 injuries nationally. [Citation.]

1-ER-38-39 (quoting 3-ER-452, 500; citing 3-ER-436-45, 509).[2] These claims were found in the legislative history of AB 2571, 3-ER-436-45, 452, 500, 509, and Appellants submitted them to the trial court in order to provide the court with a complete pedigree of the law, including its irrational DNA. The State did not object to their admission to the record, and the district court enthusiastically cited them in its

---

[2] These claims were made throughout AB 2571's legislative history (3-ER-500, 517, 536, 539; 4-ER-1030) and twice in the State's answering brief (R.B.2, 24).

order. 1-ER-38-39. That does not make them credible or even relevant to the exacting standards of *Central Hudson*.

In fact, the legislature drew these "statistics" from the publications of nationally recognized gun-control organizations. The claims have not been subjected to rebuttal evidence or the rigors of opinion evidence under the Federal Rules of Evidence— which they likely could not withstand. For example, the State's repeated claim that there were "259 unintentional shootings by children, resulting in 104 deaths and 168 injuries" in 2021 emerged from just four sources: (1) a French article published in English by Barron's online;[3] (2) a New York Times article from February 2022;[4] (3) an NPR article from August 2021;[5] and (4) VPC's biased "*Start Them Young*" publication.

The Barron article cites VPC's *Start Them Young* to criticize the marketing of a single-shot .22 caliber rifle that looks like (but is not) an AR-15. Agence France Press, *supra*, n.3. It makes no claims about unintentional shootings by children. *Id.* The New York Times article refers to the same VPC publication and recites national "statistics" from 2015 and 2016 compiled by Everytown for Gun Safety, yet another national gun-control organization. North, *supra* n.4. The NPR article also cites Everytown's "statistics," and it argues that the best policy for keeping children safe around firearms

---

[3] Agence France Presse, *US Gunmaker Unveils Semi-automatic Rifle Marketed to Kids*, Barrons.com (Feb. 18, 2022), https://www.barrons.com/news/us-gunmaker-unveils-semi-automatic-rifle-marketed-to-kids-01645236607 (last visited Feb. 16, 2023).

[4] Anna North, *Marketing Guns to Children*, N.Y. Times (Feb. 19, 2022), *available at* https://archive.nytimes.com/takingnote.blogs.nytimes.com/2016/02/19/marketing-guns-to-children/ (last visited Feb. 16, 2023).

[5] Jaclyn Diaz, *High Gun Sales and More Time at Home Have Led to More Accidental Shootings by Kids*, NPR.org (Aug. 31, 2021), https://www.npr.org/2021/08/31/1032725392/guns-death-children (last visited Feb. 16, 2023).

is locked storage. Diaz, *supra* n.5.[6] Not one of these articles suggests that their authors performed an independent analysis of VPC's report or Everytown's statistics.

So, as it turns out, the only source for the State's repeated claims that there were "259 unintentional shootings by children" in 2021 and "at least 169 unintentional shootings by children" in 2022 is Everytown's #NotAnAccidentIndex, a website that purports to document unintentional shootings by children.[7] The Index can be downloaded as a spreadsheet that provides details from media reports (not police reports or court cases) about each incident. It provides an aggregate for the entire United States going back to 2015, but it can be filtered by state and year. Which invites the questions, why is California relying on national statistics to justify a state law that necessarily operates within the context of other state laws?[8]

Perhaps because, according to the Index, there were just 11 unintentional shootings by minors in California, causing 3 deaths and 8 injuries in 2021. Everytown, *supra*, n.7. And in 2022, there were just 2 shootings, causing 0 deaths and 2 injuries.

---

[6] Citing Everytown for Gun Safety, *Preventable Tragedies: Findings from the #NotAnAccident Index* (Aug. 30, 2021), https://everytownresearch.org/report/notanaccident/(last visited Feb. 16, 2023)); Judy Schaecter, *Guns in the Home: Keeping Kids Safe* (last updated Nov. 11, 2022), https://www.healthychildren.org/English/safety-prevention/at-home/Pages/Handguns-in-the-Home.aspx).

[7] Everytown for Gun Safety, https://everytownresearch.org/maps/notanaccident/(last visited Feb. 16, 2023).

[8] It is constitutionally axiomatic that states may not legislate conduct outside of their own boundaries without leave of Congress. U.S. Const. art. I, § 8.; U.S. Const. amend. 10; *see generally Gibbons v. Ogden*, 22 U.S. 1 (1824). The lead plaintiff here is an Idaho corporation whose commercial speech is censored by AB 2571 and whose subscribers, including those outside of California, are being impacted by a California law. 5-ER-981-082. Appellants are not (at this preliminary injunction stage) advancing a commerce clause argument, though given California's attempt to reach speech and conduct outside its own jurisdiction, it would not be a frivolous claim.

13

*Id.*[9] And not one of these preventable and tragic incidents is reported to have involved a firearm obtained through an illegal sale by a firearm industry member. *Id.* This is critical because California claims that AB 2571 is merely a regulation of commercial speech designed to deter the (already) illegal sale of firearms to minors. The only relevant data, then, should document the illegal sale of "firearm-related products" by "firearm industry members" to minors. That is the minimum nexus required by *Central Hudson.*

In short, California tries to justify a law subject to heightened scrutiny with third-rate evidence that fails to establish that the State has any interest at all in protecting the public from minors in lawful possession of firearms. What's more, as discussed above, it is clear from the legislative history that the State's real reason for adopting AB 2571 was to address the "problem" of exposing children to the "gun culture," *see, e.g.,* 3-ER-460-61, 464, 472-73, 497-98, 517-18, an interest that is neither substantial nor legitimate.

### c. The State has not met its burden to prove that AB 2571 directly advances the governmental interest asserted.

Under the third *Central Hudson* factor the government must produce persuasive evidence "that the speech restriction *directly and materially* advances the asserted governmental interest[s]." *Greater New Orleans Broad. Ass'n v. United States*, 528 U.S. 173, 188 (1999) (emphasis added). "This burden requires more than 'mere speculation or conjecture; rather, a governmental body seeking to restrain a restriction on

---

[9] In referring to this website and Everytown's figures, Appellants do not concede that the figures are accurate, relevant, or admissible. They are instead showing that even the State's own biased evidence fails to stand for the proposition advanced in its arguments.

commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Tracy Rifle & Pistol LLC v. Harris*, 339 F. Supp. 3d 1007, 1013 (E.D. Cal. 2018) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). This burden is "critical; otherwise, 'a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.'" *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 771).

Here, even assuming the State had shown that AB 2571 serves a real and substantial interest, the law plainly does not directly advance it. At the outset, it cannot be ignored that the State is trying to curb illegal firearm use by minors by regulating speech (including speech promoting *lawful* possession) instead of use. A restriction on otherwise lawful speech cannot be justified, however, on the "fear that people would make bad decisions if given truthful information." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (U.S. 2002); *see* A.O.B.38 (discussing *Carey v. Population Servs. Int'l*, 431 U.S. 678, 700-02 (1997) (rejecting speech restriction)).

What's more, protecting minors from gun violence is already addressed by existing laws that directly restrict *conduct*—including the misuse of firearms by and unlawful sale of firearms to minors—instead of speech. *Brown*, 564 U.S. at 823-26. For instance, California maintains a fairly comprehensive system to track the commercial sales of all firearms. *See Silvester v. Harris*, 843 F.3d 816, 823-26 (9th Cir. 2016) (detailing California's waiting period and background check system). And, to hardly anyone's surprise, gun-control groups regularly praise California for having the strongest gun laws in the country, holding the State out as a model for laws about

firearm-sales recordkeeping, training required to purchase a gun, minimum age to purchase firearms, secure storage, and child access prevention laws.[10]

So why is the State relying on magazine articles, biased think-pieces, and gun-control websites to justify a commercial speech restriction purportedly intended to prevent firearms sales to minors? Why has it not produced evidence of licensed firearm retailers violating state and federal laws restricting sales to minors? And where is the data on instances of firearms sales to minors by firearm industry members from California's own databases? This is the State's burden. It has access to this data. And yet, it has not produced it.

Instead, the State counters that possession of firearms by minors is prohibited "except in very limited circumstances." R.B.30. But that is not at all responsive to this case. Appellants publish magazines with content directed solely at the *lawful* use of firearms by minors. The State fails to explain how prohibiting marketing that promotes the *lawful* use of firearms by minors directly advances its goal of deterring *unlawful* use. Indeed, the State's logic seems to be that promoting *any* use of firearms necessarily promotes criminal use, which is antithetical not just the First Amendment, but to the Second as well. In reality, the fact that the statute directly regulates speech directed at *lawful* use by minors, even if those uses are lawful only in "limited circumstances," simply confirms that it is chilling protected expression, *Ashcroft*, 535 U.S. at 255, and destroying the "breathing space" that "the First Amendment needs." *Broaderick v. Oklahoma*, 413 U.S. 601, 610 (1973).

---

[10] *See, e.g.*, Everytown Research & Policy, *Gun Laws in California: #1 in the Country for Gun Law Strength* (last updated Jan. 12, 2023), *available at* tinyurl.com/2p82sf43 (last visited Feb. 16, 2023).

As explained in Appellants' Opening Brief, *Lorillard* is instructive. The State, however, considers *Lorillard* "unavailing" because the speech restriction in that case used proximity to a school as a proxy for restricting speech that is "reasonably attractive to minors." R.B.31. But, once again, the State misses the point. *Lorillard* concerned a product that minors were *never* authorized to use, whether under parental supervision or on their own. The case against speech restrictions in that context is materially different from this one, where the target audience—minors—may lawfully use the product being advertised. And that says nothing, moreover, of the fact that firearms may be lawfully advertised to adults "without regard to any attractiveness to minors." R.B.31.

> ### d. The State has not met its burden to show that AB 2571 is "narrowly tailored" to its asserted interest.

The final prong of *Central Hudson* requires that the State show that AB 2571 is not "more extensive than necessary" to achieve its interests. 447 U.S. at 569-70. AB 2571 fails here in every direction: It is overbroad, underinclusive, vague, and chilling.

First, AB 2571 is "wildly underinclusive when judged against its asserted justification." *Brown*, 564 U.S. at 802. The law's legislative findings focused on "gun violence" perpetrated by "impulsive" minors. Cal. Bus. & Prof. Code § 22949.80(a). But AB 2571 does not police the conduct of minors (or anyone for that matter) who misuse firearms and endanger public health and safety. Nor does it regulate vast swathes of speech—like action and horror films, video games, direct incitements to violence, and countless other forms of expression not uttered by firearm industry members—that may *actually* encourage using guns to commit violent acts.

AB 2571 "is vastly overinclusive" as well. *Brown*, 564 U.S. at 804. California law explicitly *permits* parents, guardians, and other adults to furnish firearms to minors. Cal. Penal Code § 27505(b)(2). California also allows parents and guardians to loan a firearm to a minor for all manner of "lawful, recreational sport." *Id.* And minors lawfully loaned a firearm can legally possess and use them for all kinds of "lawful, recreational sport[ing activities] … which involve[] the use of a firearm." *Id.* § 29615. Despite all that, AB 2571 prohibits all marketing materials that could "reasonably appear[] to be attractive to minors"—not just marketing *targeted to* minors, or even *viewed by* minors. Cal. Bus. & Prof. § 22949.80(a)(1), (a)(2)(C).

It is hard to overstate just how far the nebulous "attractive to minors" standard sweeps. To take just one example, it is unlawful under AB 2571 for a gun store owner to provide truthful information *to parents* about which firearms are safest for children to use with adult supervision by circulating ads by mail. It would also be unlawful for a sporting-goods store that lawfully sells hunting rifles to advertise store-branded children's t-shirts as part of a fishing promotion for Father's Day. In that case, the store would be considered a "firearm industry member" and its speech would fall under AB 2571's proscriptions simply because the store also "[o]ffers brand name merchandise for minors, including … t-shirts … that promote" the store. *Id.* § 22949.80(a)(2)(B), (c)(4). No reasonable person could think that prohibiting that sort of speech is necessary to accomplish California's apparent objectives. Yet AB 2571 prohibits it in broad brush.

In fact, AB 2571 not only sweeps in far more protected speech than might be necessary to accomplish any permissible state objectives, but also suffers from a fatal

vagueness problem. Vague laws, like AB 2571, risk chilling would-be speakers by forcing them "to steer far wider of the unlawful zone" than they otherwise would "if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). For that reason, laws touching on speech must themselves speak "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). AB 2571 does not come close to meeting that standard.

Under the statute's terms, a firearms industry member may be found liable for marketing firearm-related products "in a manner that is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1). But what do minors find "attractive"? And what *kind* of "minor" does the statute's reasonable-appearance test contemplate? A toddler? A teenager? Both? At the very least California could have taken the time to define the amorphous terms in AB 2571. Instead, the only "constraint" California has imposed arguably *expanded* the inquiry, directing courts to "consider the totality of the circumstances." *Id.* § 22949.80(a)(2). Just like in *Brown*, then, California has opted to rely on "undefined" community standards and lump together an indiscriminate miscellany of all Californians under 18. The First Amendment requires far more.

The profound uncertainty in the statute not only "raises special First Amendment concerns because of its obvious chilling effect on free speech," but creates a "risk of discriminatory enforcement," which make the chilling effect even more acute. *Reno v. ACLU*, 521 U.S. 844, 871 (1997). After all, "[i]t is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Thornhill v. Alabama*,

310 U.S. 88, 97 (1940). That threat is even more pervasive when, as here, a law "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech." *Id.* That inherent vagueness dooms AB 2571 under the First Amendment as well. *See Reno*, 521 U.S. at 871.

### B. AB 2571 Violates the Right to Freedom of Association

AB 2571 offends the First Amendment right to associate for the same reasons it violates the right to free speech: The statute prohibits Appellants from advertising, marketing, or arranging for the placement of advertising or marketing about various firearm-related programs and services. Those programs and services are lawful, constitutionally protected activities through which Appellants gather peacefully and associate with one another and members of the public, including minors, to engage in expressive activities related to firearm use.

The State argues that Appellants' association claim is duplicative of their free speech claim. R.B.37-38. But "implicit in the right to engage in activities" protected under the First Amendment's speech protections is a "corresponding right to associate with others." *Americans for Prosperity Found. v. Bonta*, __ U.S.__, 141 S. Ct. 2373, 2382 (2021) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). Whenever government action curtails those rights, it is "subject to the closest scrutiny." *NAACP v. Patterson*, 357 U.S. 449, 462 (1958). And in any event, as explained in Appellants' Opening Brief, A.O.B.7-9, AB 2571 *does* restrict the promotion of firearm-related programs and services. This Court should hold that Appellants are likely to succeed on the merits of their association claim and reverse.

20

### C. AB 2571 Violates the Equal Protection Clause

AB 2571's content- and viewpoint-based distinctions also violate Appellants' Fourteenth Amendment right to equal protection. On its face, AB 2571 applies only to "firearm industry members," which is broadly defined to include any entity "engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products." Cal. Bus. & Prof. Code § 22949.80(c)(4)(A). The term includes even more than that, however: An entity "formed for the express purpose of promoting" firearms-related products that also "[a]dvertises events where firearm-related products … are used" or "[s]ponsors or otherwise promotes" those events would also come within the purview of the statute.

*Still*, that broad category manages to create an equal protection problem by singling out, for example, organizations dedicated to promoting and preserving the fundamental right to keep and bear arms. That this overtly regulated group is politically unpopular is easily ascertainable, *see, e.g.*, A.O.B.45; 3-ER-460-61, 465, 474-75, 498-99, 517-18, but their constitutional activities cannot properly justify the State's differential treatment.

## II. THE REMAINING FACTORS SUPPORT GRANTING A PRELIMINARY INJUNCTION

### A. Injunctive Relief Is Necessary to Avoid Irreparable Harm

This Court should act now to restore Appellants' free speech rights. As the State itself concedes, "even minimal loss of First Amendment freedoms constitutes 'irreparable harm' for purposes of seeking injunctive relief." R.B.39; *see Elrod v. Burns*, 427 U.S. 347, 373 (1976). And Appellants have a "special interest in obtaining a

prompt adjudication of their rights" in a First Amendment case, notwithstanding "potential ambiguities of state law." *Sorrell*, 564 U.S. at 563. Because the district court denied Appellant's motion for preliminary injunction, minors (and their parents) are still being deprived of industry information about products they are lawfully entitled to use. And Appellants' speech and press rights are still being chilled by the severe civil penalties that AB 2571 imposes. So if this Court determines that Appellants are likely to succeed on the merits of any one of their alleged constitutional violations, it should also hold that Appellants have established irreparable harm.

### B. The Balance of the Equities and Public Interest Favor an Injunction

The balance of the equities and public interest favor injunctive relief for Appellants. AB 2571 is not tailored to curtail gun violence or stop minors from illegally obtaining firearms, and so its enforcement does not serve those interests in any meaningful way. Enforcement of the statute does curtail constitutionally protected rights under the First and Second Amendments, however, and "it is always in the public interest to prevent the violation of a party's constitutional rights. *Index Newsps. LLC v. U.S. Marshalls Serv.*, 977 F.3d 817 (9th Cir. 2020).

The district court's error in concluding that Appellants were unlikely to succeed on the merits carried into the final two factors relevant to the preliminary injunction analysis. 1-ER-51-52. Thus if the Court finds that "plaintiffs [are] likely to succeed on the merits of their claims," the Court should "accordingly conclude[] that the balance of the equities" tips in their favor and that the public interest favors issuing the injunction. *Id.*

# CONCLUSION

For these reasons, and those explained in Appellants' Opening Brief, the district court erred in denying Appellants' motion for preliminary injunction. This Court should reverse that order and remand for further proceedings.

Dated: February 17, 2023   Respectfully submitted,

        **MICHEL & ASSOCIATES, P.C.**

        s/ Anna M. Barvir
        Anna M. Barvir
        *Attorneys for Plaintiffs-Appellants Junior Sports*
        *Magazines, Inc., Raymond Brown, California*
        *Youth Shooting Sports Association, Inc., Redlands*
        *California Youth Clay Shooting Sports, Inc.,*
        *California Rifle & Pistol Association,*
        *Incorporated, The CRPA Foundation, and Gun*
        *Owners of California, Inc.*

Date: February 17, 2023    **LAW OFFICES OF DONALD KILMER, APC.**

        s/ Donald Kilmer
        Donald Kilmer
        *Attorney for Plaintiff-Appellant Second*
        *Amendment Foundation*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-56090

I am the attorney or self-represented party.

**This brief contains** | 6,273 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [       ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Anna M. Barvir | **Date** | February 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, an electronic PDF of APPELLANTS' REPLY BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated: February 17, 2023   Respectfully submitted,

          MICHEL & ASSOCIATES, P.C.

          s/ Anna M. Barvir
          Anna M. Barvir
          *Attorneys for Plaintiffs-Appellants*